Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com

P. David Lopez (*pro hac vice forthcoming*)
Peter Romer-Friedman (*pro hac vice forthcoming*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

Guerino J. Calemine III (*pro hac vice forthcoming*)
Katherine A. Roe (*pro hac vice forthcoming*)
COMMUNICATIONS WORKERS OF AMERICA
501 3rd Street, N.W.
Washington, DC 20001
Telephone: (202) 434-1100
E-mail: jcalemine@cwa-union.org
E-mail: aroe@cwa-union.org

Adam T. Klein (*pro hac vice forthcoming*)
Robert N. Fisher (Cal. Bar No. 302919)
Jared W. Goldman (*pro hac vice forthcoming*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rfisher@outtengolden.com
E-mail: jgoldman@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Plaintiff Class*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, LINDA BRADLEY, MAURICE ANSCOMBE, LURA CALLAHAN, and others similarly situated,<br><br>     Plaintiffs,<br><br>     vs.<br><br>T-MOBILE US, INC., AMAZON.COM, INC., COX COMMUNICATIONS, INC., COX MEDIA GROUP, LLC, and similarly situated employers and employment agencies, DOES 1 through 1,000,<br><br>     Defendants. | Case No. 17-cv-_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      In this action, the Communications Workers of America ("CWA"), Linda Bradley, Maurice Anscombe, and Lura Callahan (collectively, "Plaintiffs") seek to vindicate the rights of older workers to be free of age discrimination in employment advertising, recruitment, and hiring. They bring this action against T-Mobile US, Inc. ("T-Mobile"), Amazon.com, Inc. ("Amazon"), Cox Communications, Inc., Cox Media Group, LLC (collectively, "Cox"), and a Defendant Class of hundreds of major American employers and employment agencies that, upon information and belief, routinely exclude older workers from receiving their employment and recruiting ads on Facebook, and thus deny older workers job opportunities.  These companies eliminate older workers from receiving job ads by specifically targeting their employment ads to younger workers via Facebook's ad platform.

2.      For example, T-Mobile recently sent the following ad via Facebook to recruit prospective job applicants for its stores nationwide, and in doing so, upon information and belief, limited the population receiving the ad to 18- to 38-year-olds. The screenshot to the right shows that T-Mobile sent the job ad because T-Mobile "wants to reach **people ages 18 to 38 who live or were recently in the United States**."

 

CLASS ACTION COMPLAINT

3.      In another example, upon information and belief, Facebook, as an employer, used its own ad platform to send the following job ad to recruit individuals to work at Facebook, and in doing so limited the population receiving the ad to 21- to 55-year-olds.  The screenshot to the right shows that Facebook sent the job ad because it "wants to reach **people ages 21 to 55 who live or were recently in the United States**."

 

4.      Plaintiffs allege that T-Mobile, Amazon, Cox, and a Defendant Class of hundreds of major American employers and employment agencies have violated federal, state, and local laws that prohibit age discrimination in employment advertising, recruiting, and hiring, upon information and belief.  Plaintiffs seek an injunction to stop America's leading companies from engaging in unlawful age discrimination in employment, as well as other forms of relief for older workers who have been denied job opportunities due to the unlawful and harmful practices described in this Complaint.

5.      Fifty years ago, on December 15, 1967, Congress enacted the Age Discrimination in Employment Act ("ADEA") to prohibit and eradicate systemic age discrimination that older workers faced in the workplace.  *See* Pub. L. No. 90-202, § 2 (Dec. 15, 1967).  Congress found that older workers faced discrimination in hiring and other employment opportunities, and that the

CLASS ACTION COMPLAINT

arbitrary setting of age limits led to higher unemployment rates for older workers. *Id.*; 29 U.S.C. § 621. To combat this discrimination, Congress prohibited employers and employment agencies from discriminating based on age in employment advertising, recruiting, hiring, and other employment opportunities, and Congress made it unlawful to send or publish employment ads that discriminate or indicate a preference or limitation based on age. 29 U.S.C. § 623(a), (b), (e).

6.      Agreeing with Congress that age discrimination in employment was a systemic problem, numerous states, the District of Columbia, and many counties, cities, and towns enacted similar prohibitions on age discrimination in employment.

7.      Sadly, this case reveals that age discrimination remains an entrenched facet of the American workplace. Upon information and belief, nationwide, large and small employers alike apparently believe that it is appropriate and desirable to exclude American workers from job opportunities *solely based on their age*.

8.      In every corner of America, when an older worker loses her job at a coal mine, a steel mill, a call center, a hospital, or an office, and she looks for a new job using the internet and social media to find job opportunities, she likely has no idea that major American companies are purposely refusing to tell her about the next job opportunity that may help her feed her family or make her next mortgage payment to stave off a devastating foreclosure.

9.      Due to this lawsuit, older workers may finally understand why their job searches—that have migrated online in recent years—are more difficult than they ought to be. In fact, their job searches are more difficult than our country's anti-discrimination laws allow. If this lawsuit succeeds, American workers' job searches may be a lot easier in the future.

10.     Unfortunately, harm has already been done, and it continues, as many of the largest companies in our nation—including Facebook, T-Mobile, Amazon, and Cox—have expressly excluded older workers from receiving job advertisements and recruitment via Facebook's paid ad platform, upon information and belief. As a result, these companies and Facebook have denied millions of workers the opportunity to learn about and obtain employment opportunities, upon information and belief.

11.     When selecting the population of Facebook users who will receive employment ads, employers and employment agencies routinely focus their ads on prospective applicants who are in age bands that exclude many workers who are 40-years-old or greater, *e.g.*, workers who are "ages 18 to 38," "ages 22 to 45," or "ages 21 to 55," thereby preventing older workers from receiving advertising and recruitment for job opportunities, upon information and belief.

12.     This pattern or practice of discrimination denies job opportunities to individuals who are searching for and interested in jobs, reduces the number of older workers who apply for jobs with the offending employers and employment agencies, and depresses the number of older workers who are hired by such employers and employment agencies, causing working families to lose out on wages, benefits, and the dignity that comes with a good job.  In addition, these practices make older workers' job searches take far longer than they should, causing economic harm and other forms of distress to them and their families.  For the positions advertised, these age-based restrictions show that the selections for these positions are uniformly motivated by discriminatory animus against older workers.

13.     This practice is not just harmful to older workers—it is unlawful.  By actively excluding workers who are older than a certain age from receiving employment ads and by stating in the ads that the employers or employment agencies want to reach younger workers, both employers and employment agencies clearly state their preference for recruiting and hiring younger workers over older workers; they discriminate against older workers in their advertising, recruitment, and hiring process; and they limit, segregate, and classify job applicants based on their age, all in violation of federal, state, and local laws that prohibit age discrimination in employment.

14.     This practice is systemic in the American economy.  Upon information and belief, from employers in industries such as technology, entertainment, retail, health care, energy, and real estate, to national and local staffing companies, employers and employment agencies routinely exclude older workers when it comes to advertising to and recruiting job applicants.

15.     While advocates for older workers and civil rights have long suspected that employers screen out older workers from the employment pipeline, evidence from Facebook's ad

platform confirms that, approximately 50 years after the passage of the ADEA, age discrimination, rather than equal opportunity, appears to be a common standard in employment advertising, recruiting and hiring, upon information and belief.

16.     Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift.  Like so many other parts of our society, Facebook and other social media platforms have become a dominant force in the national labor market.  In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers.

17.     Like many technologies in the modern economy, Facebook has an unfathomable capacity to make workers aware of economic opportunities, such as jobs.  Through its paid ad platform, Facebook could make it easy for workers to regularly receive employment opportunities on an equal basis.  For tens of millions of forgotten workers whose plants have shuttered, hospitals have closed, and retail stores have been driven out of business by e-commerce, receiving ads for job openings via Facebook could be a godsend—a ray of hope at the end of a long, dark tunnel in which American workers have been discarded by national companies that place profit over people.

18.     In the area of advertising economic opportunities, Facebook has not lived up to its great potential to help workers.  Upon information and belief, here, in search of greater profits, Facebook has turned its powerful ad platform into a conduit for age discrimination; and now Plaintiffs have found that national employers have coordinated with Facebook to exclude an enormous portion of the American labor force from receiving job ads, recruitment, and hiring opportunities—from national employers like T-Mobile, Amazon, Cox, Capital One, Citadel, Defenders, Facebook, Leidos, Sleep Number, and Weichert Realtors, to national staffing and employment agencies.

19.     The basic practice at issue in this case is simple.  When an employer or an employment agency creates, purchases, and sends a Facebook ad to make workers aware of job opportunities and encourage them to apply for various jobs, Facebook requires the employers or employment agencies to select the population of Facebook users who will be eligible to receive the ad, including the age range of the users who will receive the ad.  Following Facebook's

encouragement to narrowly focus ad campaigns on the "right people," including by targeting younger people, upon information and belief, hundreds of major employers and employment agencies routinely focus their Facebook employment ads on users who are under 40-years-old (and sometimes on users who are under higher age thresholds). This prevents workers who are above the selected age threshold from receiving employment ads and pursuing relevant job opportunities.

20.     This case and the facts alleged should not come as a surprise. The public, Facebook, and members of the Defendant Class have known that Facebook's ad platform enabled employers and employment agencies to exclude older workers from receiving job ads.

21.     In November 2016, ProPublica revealed that Facebook's platform made it possible for African Americans, Latinos, and Asian Americans to be excluded from receiving ads for various economic opportunities, such as housing or employment ads.[1] At that time, it was widely known that other protected characteristics, such as age, could be used to exclude Facebook users from receiving employment ads. Upon information and belief, since then, Facebook has not done anything to stop employers from using its ad platform to engage in widespread and harmful acts of age discrimination; and as a result, employers and employment agencies paid millions of dollars to purchase Facebook ads that unlawfully excluded older workers from receiving job ads and other recruitment information.

22.     Facebook's involvement in this practice is not simply that of an intermediary that operates a platform to develop, sell, and deliver ads to Facebook users. As this Complaint shows, like other major employers and employment agencies, Facebook has used its own ad platform to recruit job applicants *to work at Facebook*, and Facebook routinely used the same discriminatory age filters to exclude older workers from seeing Facebook's own employment ads for a range of positions at Facebook's operations throughout the nation, upon information and belief.

---

[1] Julia Angwin and Terry Parris Jr., *Facebook Lets Advertisers Exclude Users by Race: Facebook's system allows advertisers to exclude black, Hispanic, and other "ethnic affinities" from seeing ads*, ProPublica (Oct. 28, 2016), https://www.propublica.org/article/facebook-lets-advertisers-exclude-users-by-race.

**JURISDICTION AND VENUE**

23.     The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and it is a class action in which members of the proposed Plaintiff Class are citizens of different states than at least one defendant.  Plaintiffs Bradley and Callahan are citizens of Ohio, Plaintiff Anscombe is a citizen of Maryland, and Defendant T-Mobile US, Inc. is a citizen of Delaware and Washington State.

24.     This Court has personal jurisdiction over T-Mobile, Amazon, and Cox, because upon information and belief, they conduct substantial business throughout this District, employ a substantial number of workers in this District, created and purchased discriminatory ads in this District via Facebook's ad platform that is located in this District, and sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, including for positions within this District.

25.     This Court has personal jurisdiction over employers and employment agencies in the proposed Defendant Class, as upon information and belief, they created discriminatory ads in this District via Facebook's ad platform that is located in this District, and sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, including for positions within this District.

26.     Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and 2202.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, where all Defendant Class Members created and purchased discriminatory ads via Facebook's ad platform that is located in this District, and sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, including for positions within this District.

28.     In addition to the District of Columbia and state law claims that Plaintiffs are asserting in this Complaint against Defendants, Plaintiffs intend to exhaust their administrative remedies for their federal ADEA claims, and will add those federal claims to this Complaint once such exhaustion is completed.

## THE PARTIES

29.     The Communications Workers of America is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's headquarters are located in Washington, DC.  Its members work, live, and seek employment throughout the United States. CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  As a result, CWA members, including the over 160,000 who are over age 40, include hundreds of thousands of Facebook users.

30.     Plaintiff Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio. She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has skills in a range of areas and would be qualified for a range of positions at T-Mobile, Amazon, Cox, and other Defendant Class Members.  She is willing to work not just in Ohio but beyond her local geographic area.  Upon information and belief, Ms. Bradley has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Ms. Bradley had received such ads, she would

have clicked on those employment ads in order to learn more about those opportunities and pursue them.

31.     Plaintiff Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland.  He is recently unemployed, having previously worked as a cable technician for almost two decades and, before that, in law enforcement.  He regularly uses Facebook, and has used Facebook to seek employment opportunities.  Mr. Anscombe has skills in a range of areas and would be qualified for a range of positions at T-Mobile, Amazon, Cox, and other Defendant Class Members.  He is willing to work not just in Maryland, but also beyond his local geographic area. Upon information and belief, Mr. Anscombe has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Maryland and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Mr. Anscombe had received such ads, he would have clicked on those employment ads in order to learn more about those opportunities and pursue them. The only employment ad that Mr. Anscombe recalls receiving on his Facebook News Feed was via a closed group in Facebook for former law enforcement and was sent by a company recruiting former military and law enforcement officials.

32.     Plaintiff Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio. She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Callahan has skills in a range of areas and would be qualified for a range of positions at T-Mobile, Amazon, Cox, and the other Defendant Class Members.  Upon information and belief, Ms. Callahan has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Ms. Callahan had received such ads, she would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

CLASS ACTION COMPLAINT

33.     T-Mobile US, Inc. is one of the largest wireless companies in the United States. According to T-Mobile's 2016 Annual 10-K report, "T-Mobile provides wireless communications services, including voice, messaging and data, to more than 71 million customers in the postpaid, prepaid and wholesale markets."[2]  In 2016, T-Mobile earned $37.2 billion in revenues.  The company calls itself the "Un-carrier" that is "Un-satisfied with the status quo" and "Un-afraid to innovate."  *Id.*  T-Mobile operates various brands of its wireless communications services, including T-Mobile and MetroPCS, through its owned and operated stores, third party distributors, and websites.  *Id.*  T-Mobile nationally advertises employment opportunities at its stores and other operations that are located throughout the nation, both for the T-Mobile and MetroPCS brands.  At the time of this Complaint, T-Mobile is advertising jobs in 42 states and the District of Columbia. Upon information and belief, T-Mobile has regularly used Facebook's ad platform to send employment advertisements to prospective applicants for a range of positions in its T-Mobile and MetroPCS divisions, including jobs in its retail stores and beyond; and in doing so, T-Mobile has restricted the age range of the population that T-Mobile intended to receive its employment ads to focus on younger workers and exclude older workers.

34.     Amazon.com, Inc., one of the largest online retailers in the world, is a Delaware corporation with its headquarters in Seattle, Washington.  Amazon sells hundreds of millions of products to American consumers, and employed 341,400 full-time and part-time employees as of December 31, 2016.[3]  In 2016, Amazon had $135.9 billion in revenues.  *Id.*  Amazon nationally advertises employment opportunities at its locations throughout the United States.  Upon information and belief, Amazon has regularly used Facebook's ad platform to send employment advertisements to prospective applicants for a range of positions at Amazon throughout the United States; and in doing so Amazon has restricted the age range of the population that Amazon intended

[2] T-Mobile US, Inc. Form 10-K for Calendar Year 2016, Submitted to the U.S. Securities and Exchange Commission, https://www.sec.gov/Archives/edgar/data/1283699/00012836 9917000010/tmus12312016form10-k.htm.

[3] Amazon.com, Inc. Form 10-K for Calendar Year 2016, Submitted to the U.S. Securities and Exchange Commission, https://www.sec.gov/Archives/edgar/data/1018724/00010187241 7000011/amzn-20161231x10k.htm.

1  to receive its employment ads to focus on younger workers and exclude older workers.

2       35.     Cox Communications, Inc. is a broadband communications and entertainment

3  company that provides digital video, telephone, internet, and home security and automation services

4  through its nationwide network.  Cox Communications, Inc. is the third largest cable company in

5  the United States.[4]  Cox Media Group, LLC is an integrated broadcasting publishing, direct

6  marketing and digital media company.  It owns and operates 14 television stations, more than 60

7  radio stations, six newspapers, and over 100 digital services.[5]  Cox Communications, Inc. and Cox

8  Media Group, LLC are both subsidiaries of Cox Enterprises, Inc., a privately held media company

9  that had more than $20 billion revenues and 60,000 employees in 2016.[6]  Upon information and

10  belief, Cox Communications, Inc. and Cox Media Group, LLC have regularly used Facebook's ad

11  platform to send employment advertisements to prospective applicants for a range of positions at

12  each respective company throughout the United States, and in doing so have restricted the age range

13  of the population that they intended to receive their employment ads to focus on younger workers

14  and exclude older workers.  Upon information and belief, Cox Communications, Inc. and Cox

15  Media Group, LLC share marketing and recruitment personnel and resources to create and send

16  employment advertisements via Facebook.

17       36.     The Defendant Class Members other than T-Mobile, Amazon, and Cox, to the extent

18  they are unnamed, are identified for the purposes of this Complaint as Does 1 through 1,000, and

19  will be identified by name through early discovery in this action or a pre-discovery exchange of

20  information with Facebook.

---

[4] Cox Communications, Year in Review, http://www.coxenterprises.com/about-cox/annual-review/cox communications.aspx#.WjiEmWyosx5.

[5] Cox Media Group, Year in Review, http://www.coxenterprises.com/about-cox/annual-review/cox-media-group.aspx#.WjkjH2yosl0.

[6] Cox Enterprises, About Cox, http://www.coxenterprises.com/about-cox.aspx#.WjkkTGyosl1.

# FACTUAL ALLEGATIONS

**A.   Facebook's paid advertising platform has become a critical venue and mechanism for employers and employment agencies to recruit workers**

37.   Facebook is the most popular social media platform in the world.  According to Facebook's 2016 Annual Report, Facebook had 1.23 billion daily active users on average for December 2016, and 1.86 billion monthly active users as of December 31, 2016.[7]

38.   According to the same report, "Facebook enables people to connect, share, discover, and communicate with each other on mobile devices and personal computers. There are a number of different ways to engage with people on Facebook, the most important of which is News Feed which displays an algorithmically-ranked series of stories and advertisements individualized for each person." *Id.*

39.   The News Feed is the page on Facebook where users see their friends' posts, as well as "Sponsored Ads" that advertisers pay Facebook to post on users' News Feeds.  Upon information and belief, about one out of every four or five posts that Facebook users see on their News Feeds are so-called "Sponsored Ads."  Facebook earns billions of dollars a year by placing "Sponsored Ads" on Facebook users' News Feeds on behalf of advertisers, including employers and employment agencies.  In fact, in 2016 Facebook earned approximately $27.6 billion and "generate[d] substantially all of [its] revenue from selling advertising placements to marketers." *Id.*

40.   From its inception, Facebook has been a powerful tool for advertisers because it allows advertisers to target very specific populations with their ads.  Recently, the power to "micro-target" various populations has grown exponentially, as Facebook collects an unfathomable amount of information about ordinary Americans who use Facebook by monitoring what people post, what they read, how long they view posts, and who and what they interact with on their phones, tablets, and computers.  Facebook gives its advertisers the power to use that information to determine which Facebook users will be included or excluded in the population that will receive their ads.

---

[7] Facebook Inc. Form 10K for Fiscal Year Ending December 31, 2016, Submitted to the U.S. Securities and Exchange Commission, https://www.sec.gov/Archives/edgar/data/1326801/00 0132680117000007/fb-12312016x10k.htm

CLASS ACTION COMPLAINT

41.     In explaining how it earns nearly all of its revenues, Facebook states that its "ads let marketers reach people based on a variety of factors including age, gender, location, interests, and behaviors." *Id.* For example, in the context of employment recruiting, Facebook identifies which Facebook users are looking for a new job or are interested in employment, and advertisers can then send ads to those individuals who are looking for work so that advertisers minimize the cost of reaching people who are interested in new jobs and maximize the number of people who respond to employment ads (*i.e.*, the higher the percentage of users who click on the ad, the better for the advertiser and Facebook). Just three months ago, Facebook's Chief Operating Officer Sheryl Sandberg explained that "[t]argeted advertising is how Facebook has helped millions of businesses grow, find customers *and hire people*. Our systems match organizations with [Facebook users] who may be interested in their products or services."[8]

42.     In recent years, Facebook has emerged as one of the largest venues for employers to seek applicants for employment and for workers to find job opportunities. A 2015 survey reported that 92 percent of employment recruiters used social media to recruit applicants for employment.[9]

43.     In addition, a 2016 study by the Society for Human Resource Management found that 66 percent of employers who recruit via social media employ Facebook to recruit applicants for employment.[10] The ability to recruit passive job candidates is the top reason that employers use social media to recruit applicants for employment. And some employers even use social media as their primary source of recruiting. *Id.* at 7, 11.

---

[8] Facebook Post of Facebook COO Sheryl Sandberg (Sept. 20, 2017) (emphasis added), https://www.facebook.com/sheryl/posts/10159255449515177.

[9] AdWeek, Survey: 92% of Recruiters Use Social Media to Find High-Quality Candidates (Sept. 22, 2015), http://www.adweek.com/socialtimes/survey-96-of-recruiters-use-social-media-to-find-high-quality-candidates/627040.

[10] SHRM Survey Findings: Using Social Media for Talent Acquisition—Recruitment and Screening (Jan. 7, 2016), at 9, https://www.shrm.org/hr-today/trends-and-forecasting/research-and-surveys/Documents/SHRM-Social-Media-Recruiting-Screening-2015.pdf.

44.     Employers not only sponsor ads on Facebook users' News Feeds to seek applicants for specific employment opportunities, but they also use Facebook as a main source of showcasing their brands to potential applicants.  Enhancing a company's brand increases the likelihood that a person will apply for employment opportunities with that company in the future.

45.     The vast majority of large employers and employment agencies have "Careers" or "Jobs" pages on Facebook—such as "T-Mobile Careers"—where the employers or employment agencies post information about specific job opportunities and highlight the positive qualities of the company's career opportunities.

46.     When employers and employment agencies send employment ads to Facebook users, they ordinarily link the ad to or direct the Facebook user to their "Careers" Facebook pages, so that when the Facebook user clicks on the ad, the user will be sent to the company's Careers page or a specific portion of the Careers page.  By doing so, the employer draws the attention of the prospective applicant to job opportunities for which she or he should apply and highlights the brand of the employer.

47.     Before the internet and social media, the same sort of advertising and recruitment happened offline, when employers would send direct mail to prospective applicants, hand out flyers, or place newspaper ads that directed prospective applicants to call a phone number to speak with the company's recruiters or attend a job fair.  The only difference between the employment advertising on Facebook and what employers and employment agencies did before the advent of the internet is the medium—Facebook and online social media—but nothing in the law changes or diminishes the obligations of employers or employment agencies to advertise to, recruit, and hire workers in a non-discriminatory manner.

**B.**     **Facebook has eliminated the middlemen in employment recruiting, collecting information on the age of its users and giving employers and employment agencies the data and tools to exclude older workers**

48.     Before the development of the modern internet, if an employer wanted to recruit workers, it would likely hire an employment agency or marketing firm to analyze the relevant labor market; determine the content of ads to send to prospective applicants; decide the audience to be targeted by the ads; identify publications in which to place the ads; and contact and negotiate with newspapers, magazines, television stations, and radio stations to place and pay for the ads.

49.     The employment agency or marketing firm would help the employer to determine how placing ads in different types of publications or media, or delivering mail or flyers to the homes of residents in certain areas, would allow the employer to reach a certain population of individuals who would respond to the ads by contacting the employer and applying for employment.  In some cases, employment agencies or marketing firms would—in contravention of federal, state, and local civil rights laws—offer tools for employers to exclude members of various protected classes (including older workers) from receiving such employment advertising and recruiting, and the employment agency or marketing firm would execute such discriminatory targeting strategies on behalf of those employers.

50.     Upon information and belief, currently when employers want to recruit applicants for employment, Facebook performs nearly all of the necessary functions of an employment agency and marketing firm: Facebook helps the employer to create the ad; collects, develops and provides databases of information on Facebook users to employers so that such employers can know which individuals are looking for employment, know various types of information about those applicants, such as their age and gender, and exclude certain groups of people from their ad campaigns; coordinates with the employer to develop the recruitment, marketing and/or advertising strategy to determine which people will and will not receive the ads; delivers the ads to prospective applicants; collects payments for these services from the employer;  informs the employer of the performance of the ad campaign with numerous data analytics; and retains copies of the ads and data related to them.

51.     In addition, on Facebook's ad platform, Facebook directs users who receive employment ads directly to the employer or employment agency's Careers web site or other web site that is embedded in Facebook's system so that the user can learn more about the company's job opportunities and apply for available positions.  This is no different than 20 years ago when an employment agency or recruiter would send an ad to a worker or speak with a worker, and then assist the worker to contact the employer to apply for an open position.  These acts involve procuring job opportunities for employees and procuring employees for employers or employment agencies.

52.     For employers and employment agencies that want to exclude older workers, Facebook's ad platform is a blessing.  Twenty years ago, an employer would have had to go to great lengths—at a great cost—to determine the age of all potential applicants so that the employer could exclude older workers from its advertising and recruitment.  But today Facebook does exactly that before a single ad has been purchased or sent, upon information and belief.  As described below, Facebook's ad platform identifies the ages of Facebook users and, in turn, encourages and permits employers to exclude older workers from their employment advertising and recruitment campaigns based on their age.

53.     In short, Facebook is an active player in the labor market in which employers and employment agencies search for workers and advertise employment opportunities.  Facebook's services, ad platform, and tools are a central feature of employers and employment agencies' ability to selectively market, recruit, advertise, and brand employment opportunities in a discriminatory manner that excludes older workers.

54.     While Facebook makes it possible to limit which Facebook users will see an ad based on age of the user (including employment ads), federal, state, and local law prohibit age discrimination in advertising and recruiting for job opportunities.  Rather than promoting non-discrimination in employment, Facebook's services, ad platform, and tools, used by employers and employment agencies, have perpetuated age discrimination in employment nationwide, and have greatly diminished the employment opportunities of older Americans, upon information and belief.

**C.    Facebook tells employers which workers are looking for a job and requires employers to select the age of the people who will receive paid employment ads and recruiting so that older workers can be excluded from ad campaigns**

55.    Any employer, employment agency, corporation, or human being who has a Facebook page can create and purchase a paid ad that will be sent to other Facebook users within minutes of Facebook receiving payment for the ad (in dollars, rubles, or other currencies).

56.    The simplest way to create a Facebook ad takes only a few minutes, and involves several basic steps:

(1) the advertiser selects the population of Facebook users who will receive the ad;

(2) the advertiser creates the image and text of the ad, and directs where the ad will link to when it is clicked on by a Facebook user; and

(3) the advertiser purchases the ad, paying Facebook money to show a certain number of impressions of the ad to Facebook users in the selected population.  If the selected population is greater than the number of impressions purchased by the advertiser, then only a portion of the selected population will see the ad, but every person who is not in the selected population will not receive that ad.

57.    The focus of this case is the first step of the process in which the advertiser selects the population of Facebook users who will be eligible to receive the ad.

58.    Upon information and belief, for each ad that an advertiser purchases on Facebook and that Facebook, in turn, sends to Facebook users, there are three mandatory filters that the advertiser is required to select in setting the population who will be eligible to receive the ad: (1) location; (2) age; and (3) gender.  The advertiser must either keep the default setting (the entire United States, 18 to 65+, and male and female), or narrow the scope of the population (for example, male users who live in California and are ages 18 to 40).

59.    First, Facebook requires the advertiser to select the location of the Facebook users who will receive the ad.  The default setting is the entire United States, but upon information and belief, Facebook strongly encourages advertisers to narrow the geographic scope of their ads to make them more effective.

CLASS ACTION COMPLAINT

60.     Second, Facebook requires the advertiser to select the age of the Facebook users who will receive the ad.  Upon information and belief, Facebook knows the age of its users because Facebook asks and encourages users to identify their birthdates in their individual Facebook profiles when they join Facebook, and subsequently asks and encourages them to add this information when they update their profiles.[11]  The default age setting for ads is 18 to 65+, which means that anyone who is 18-years-old or older would receive the ad.  But Facebook strongly encourages advertisers to narrow the age range of the individuals who will receive their ads to make them more effective, upon information and belief.  Because the default age setting is 18 to 65+, any employer or employment agency that selects a narrower and younger age range (such as ages 18 to 40) is consciously and purposefully choosing to target younger prospective applicants and thereby excluding older applicants who will not receive the ad.

61.     Upon information and belief, Facebook does not stop an employer or employment agency from selecting a younger age range (such as ages 18 to 40) that discriminates against older workers in setting the population that will receive an employment ad via Facebook.  And as described below, upon information and belief, hundreds of major employers and employment agencies have used these age range filters to exclude older workers from ever receiving their job ads.  Upon information and belief, Facebook knows that this happens on a regular basis, because Facebook places the ads and Facebook engages in the same type of exclusion of older prospective applicants in its own employment advertising for jobs at Facebook.

62.     Finally, Facebook requires the advertiser to select the gender of the Facebook users who will receive the ad.  The default setting is both male and female, but advertisers, including T-Mobile, Amazon, Cox, and members of the Defendant Class, retain the ability to narrow the gender of the individuals who will receive their ads.

---

[11] Facebook Business, About ad targeting, https://www.facebook.com/business/help/7173682 64947302?helpref=faq_content ("Age" can be used to "Target ads to people within an age range" and "Facebook's age data is from self-reported data meaning that as people sign up to use our services they let us know how old they are.").

**D.     On Facebook, employers and employment agencies can send ads solely to "Young and Hip" people and "Millennials," and Facebook helps employers to identify workers who are demographically similar to their current workers**

63.     Facebook provides advertisers additional ways to target their employment ads to younger workers, thus excluding older workers from receiving job ads and recruitment.  In fact, upon information and belief, Facebook itself uses one of these features (the "Lookalike Audience") when it recruits workers for jobs at Facebook.

64.     In addition to the three mandatory categories that advertisers must select to create a Facebook ad (location, age, and gender), Facebook's Detailed Targeting feature allows advertisers to search for and use thousands of additional categories into which Facebook places its users in order to further limit the population of Facebook users who will receive ads.

65.     Facebook divides these additional categories into what it calls Demographics, Interests, and Behaviors.  For example, Facebook currently identifies more than 16 million American Facebook users as having an "Interest" in "Job Hunting."  In addition, in the "Demographics" category, Facebook has sub-categories of "Work-Industries" that Facebook users fall into, such as "Sales," "Education and Libraries," "Health Care and Medical Services," "Legal Services," "Transportation and Moving," "Food and Restaurants," "Production," and "Construction and Extraction."  Facebook identifies "Job Title" categories, such as Facebook users who list their job title as "Factory Worker," "Maintenance Worker," or "Warehouse Worker."  By putting tens of millions of American Facebook users into these categories, Facebook makes it easier for employers and employment agencies to identify prospective applicants who might be interested in the employment opportunities they are advertising on Facebook and looking to fill.

66.     Many of these additional categories are unrelated to employment or jobs.  For example, one can target an ad to innocuous subjects like the millions of American Facebook users who are interested in the San Francisco Giants or golden retrievers, but one can also target ads to darker subjects like millions of American Facebook users who are interested in the Confederate States of America.[12]

---

[12] Noam Scheiber, *Facebook's Ad-Targeting Problem, Captured in a Literal Shade of Gray*, N.Y. Times (Sept. 28, 2017), https://www.nytimes.com/2017/09/28/technology/facebook-ads.html.

67.     Facebook's additional categories also include groups of Facebook users that are directly related to or highly correlated with age.  For example, Facebook provides advertisers the ability to send employment ads to individuals who fall into the following categories related to a younger age group or categories that ordinarily would be a proxy for younger workers:

- Young & hip – a group of millions of people "whose activities strongly suggest they are young and hip" (according to Facebook); and

- Millennials – a group of millions of people "who have expressed an interest in or like pages related to Millennials" (according to Facebook).

68.     Upon information and belief, like the age range category that all advertisers must select to send an ad, Facebook has done nothing to stop employers or employment agencies from targeting their employment ads and recruiting solely to Facebook users who fall into these "Additional Categories" that primarily include people under the age of 40.

69.     Furthermore, in the context of employment advertising and recruiting, Facebook offers a feature that is legally indistinguishable from word-of-mouth hiring, which has long been considered a discriminatory and unlawful employment practice.

70.     Through Facebook's "Lookalike Audiences" feature, employers and employment agencies provide a list of their existing workers to Facebook, and Facebook then creates a list of Facebook users who are demographically similar to those existing workers.  Then, the employer or employment agency uses the new "Lookalike Audience" list created by Facebook as the population to receive its employment ads.  As Facebook explains, "A Lookalike Audience is a way to reach new people who are likely to be interested in your business because they're similar to your best existing customers."[13]  Facebook uses "traits" such as "location, age, gender and interests" to determine which Facebook users are similar to an advertiser's existing customers or workers.[14]  Facebook, not the advertiser, determines which prospective applicants are similar to the advertiser's

_____

[13] Facebook Business, About Lookalike Audiences, https://www.facebook.com/business/help/164749007013531.

[14] Facebook Business, Targeting tips to reach the right people, https://www.facebook.com/business/a/facebook-ads-targeting-tips.

CLASS ACTION COMPLAINT

existing customers or workers and will thus be targeted to receive an ad in a Lookalike Audience.

After the advertiser uploads its list of existing customers, Facebook will "hash [its] data, upload it

and create [the] audience" that will be used for the Lookalike Audience ad.[15]

71.     Upon information and belief, using Facebook's Lookalike Audience feature in the

context of employment advertising will frequently have a disparate impact on older workers by

disproportionately excluding them from the population that will receive the employment

advertisement.

**E.     Facebook directs advertisers, including employers and employment agencies, to use age to narrow the target audience of their advertisements, and Facebook has not stopped employers from excluding older workers from employment advertising**

72.     Facebook is clear about how its ad platform is supposed to work for companies that

use it to advertise.  Facebook directs and encourages its advertisers (including employers and

employment agencies) to use Facebook's ad platform to target their ads (including employment

ads) to a narrow audience, including targeting audiences based on age.

73.     On the main Facebook Business page in which Facebook instructs advertisers on

how to "[c]hoose your audience," Facebook emphasizes how its services can be used to identify or

target people who fall into various demographics groups.[16]  The page states that "[w]ith our

powerful audience selection tools, you can target people who are right for your business.  Using

what you know about your customers—like demographics, interests and behaviors—you can

connect with people similar to them."  *Id.*  Facebook describes how "[t]here are three options for

choosing your audience on Facebook."  *Id.*  The first is the "Core Audiences" option described

above, where the advertiser can "[s]elect your audience manually *based on characteristics, like age*

*and location*."  *Id.* (emphasis added).  Another option is "Lookalike Audiences" that "[u]se your

customer information to find people similar to them on Facebook" (including age, as noted above).

*Id.*

---

[15] Facebook Business, Create a Custom Audience from a customer file https://www.facebook.com/business/help/170456843145568.

[16] Facebook Business, Choose your audience, https://www.facebook.com/business/products/ads/ad-targeting.

74.     Facebook's main page on ad targeting goes on to describe how its "Core Audiences targeting options . . . allow you to reach people based on their demographics, location, interests and behaviors." *Id.*  Immediately below, Facebook describes the "Demographics" category in which advertisers "[c]hoose people based on traits like *age*, gender, relationship status, education, workplace, job titles and more." *Id.* (emphasis added).  In other words, *age is the first category* that Facebook says should be used to target "the people you want to reach" in an ad campaign.

75.     In a tutorial on how to target Facebook ads to "[c]hoose the right audience," Facebook encourages advertisers to "refine your ad's target audience based on content people have shared about themselves in their Facebook profiles, such as age, gender, relationship status, education and type of work they do."[17]  In the screenshot next to this text, a box shows an ad targeting selection to send the ad to people who are between ages 18 to 34.  *Id.*  At the bottom of the page, Facebook describes how a "narrow" reach of an ad campaign "could help you hone in on specific customers who matter most to your business," and again shows an ad targeting selection that will send the ad to people who are between ages 18 to 34.  *Id.*

76.     While Facebook has a FAQ page about why advertisers "can't target certain age groups with ads," that FAQ answer describes how advertisers should limit their age range if they are "promoting products with age restrictions in different locations," but fails to warn advertisers that they should not narrow the age range when sending employment-related ads because it would violate federal, state, and local civil rights laws.[18]  To the contrary, Facebook's Help Desk has advised users that "[u]sing this age targeting will *prevent* your ads from being delivered to people outside of your age range[.]"[19]

77.     Over the past year, Facebook's advertising platform has come under public and legal scrutiny for discriminating in employment advertising, including a pending class action lawsuit that

---

[17] Facebook Business, Choose the Right Audience https://www.facebook.com/business/a/targeting-audiences-advanced

[18] Facebook Business, I can't target certain age groups with ads, https://www.facebook.com/business/help/103928676365132.

[19] Facebook Business, I want to impose age restrictions on my ads on instagram, https://www.facebook .com/business/help/community/question/?id=10154466593016819.

challenges Facebook's practice of tagging each Facebook user with a racial identity or perceived racial identity (determined by Facebook, not by its users) and allowing employers to exclude people of color from receiving employment ads.  *See* First Amended Complaint, ECF No. 28, *Onuoha v. Facebook, Inc.*, No. 16-cv-06440-EJD (N.D. Cal.).

78.    Since November 2016, when ProPublica first revealed that Facebook allowed advertisers to exclude people of color from receiving housing, employment, and credit ads, Facebook did *nothing* to block or disable employment ads in which employers and employment agencies have excluded older workers.  Upon information and belief, Facebook has been aware over the past year that employers and employment agencies were using Facebook's ad platform to exclude older workers from receiving ads, and that such conduct constitutes unlawful employment discrimination under federal, state, and local laws.

**F.    In ads, employers, employment agencies, and Facebook state that the advertiser wants to reach workers within younger age ranges, communicating that the advertiser has a preference to target and hire younger workers over older workers**

79.    When Facebook places an ad on a person's Facebook page, Facebook, as well as the employer or employment agency who purchased the ad, give the Facebook user an opportunity to see why he or she has been selected to see that particular ad.

80.    Under the so-called "Why am I seeing this" function, Facebook and the advertiser tell the users, for example, that they are seeing the ad because "T-Mobile wants to reach **people ages 18 to 38 who live or were recently in the United States**."  *Supra* ¶ 2 (emphasis in original). In another example, when Facebook sent an ad to recruit workers *to work in Facebook's human resources department*, the ad stated that "Facebook Careers wants to reach **people who may be similar to their customers**" and that "Facebook careers wants to reach **people ages 21 to 55 who live or were recently in the Unites States**."  *Supra* ¶ 3 (emphasis in original).

81.    In the T-Mobile example, the ad is communicating that T-Mobile is interested in recruiting and hiring workers who are ages 18 to 38 throughout the United States, and thus T-Mobile is less interested in or not interested in recruiting or hiring workers who are older than 38-years-old.  Likewise, with respect to Facebook's ad to recruit applicants for positions at Facebook,

the ad is communicating that Facebook is interested in recruiting and hiring workers who are ages 21 to 55 throughout the United States, and thus Facebook is less interested in or not interested in recruiting or hiring workers who are older than 55-years-old.  In both instances, the ads also inform the public that the employer sending the ad has a preference for younger workers over older workers.  It is calculated to encourage younger workers to apply for the relevant employment opportunities.  And it is calculated to discourage older workers from applying for the relevant employment opportunities.  Moreover, these ads have the same effect of encouraging younger workers and discouraging older workers from pursuing these employment opportunities.  Further, any and all selections for the positions advertised are tainted by discriminatory age animus.

**G.    Hundreds of major employers and employment agencies have excluded millions of older workers from receiving job ads when sending employment ads on Facebook**

82.    Upon information and belief, a significant portion of large employers and employment agencies in America routinely use Facebook's ad platform to exclude older workers from receiving employment ads, primarily by selecting an age range for the ad population that excludes older workers; and many companies also use Facebook's Lookalike Audiences feature to send employment ads to workers who are demographically similar to their younger workforces.

83.    Upon information and belief, by using Facebook's ad platform to exclude older workers, these employers and employment agencies work hand-in-hand with Facebook to exclude a large portion of the labor force from hearing about employment opportunities that are routinely advertised to younger workers; and some of the employers and employment agencies who are members of the Defendant Class rely in whole or in part upon third party agents to create, develop, select the population for, and purchase employment ads that will be sent to prospective applicants via Facebook.

84.    This pattern or practice of age discrimination in employment advertising, recruiting, and hiring—excluding older workers from receiving employment ads on Facebook and other comparable venues (hereinafter "pattern or practice of age discrimination")—occurs on a daily basis throughout the United States.

CLASS ACTION COMPLAINT

1    85.    Plaintiffs have identified more than 100 employers and employment agencies that

2 have engaged in age discrimination by sending employment ads that discriminate against older

3 workers by excluding them from the population that receives employment advertisements.  A

4 significant portion of these 100 employers and employment agencies are members of the Defendant

5 Class.

6    86.    Upon information and belief, examples of the major employers and employment

7 agencies who have purchased and sent employment advertisements via Facebook that exclude older

8 workers from receiving those advertisements include the following:

9   • **Amazon.com, Inc.**, an e-commerce giant and a named Defendant in this action,

10      restricted employment ads to people "ages 18-54," "ages 18 to 50," "ages 28 to 55,"

11      and "ages 22 to 40."

12  • **Capital One**, a massive financial services company, restricted various employment

13      ads to people "ages 22 to 54."

14  • **Citadel**, an international financial services company, restricted employment ads to

15      people "ages 18 to 40."

16  • **Cox Communications and Cox Media Group**, both divisions of one of the nation's

17      largest media and telecommunications companies, and named Defendants in this

18      action, restricted various employment ads to people "ages 20 to 45," "ages 20 to 50,"

19      "ages 19 to 55," and "ages 20 to 55."

20  • **Defenders**, a leading national installer of security systems, restricted employment

21      ads to people "ages 20 to 40."

22  • **Facebook, Inc.**, one of the largest technology companies in the world, restricted

23      employment ads to people "ages 21 to 55" and "ages 25 to 60."

24  • **Fairfield Residential**, a large national residential management company serving

25      around 44,000 residential units in 37 markets, restricted employment ads to people

26      "ages 18 to 45" and "ages 21 to 41."

27

28

- **Leidos**, a massive federal defense and government contractor, restricted employment ads to people "ages 24 to 54" and "ages 24 to 58."
- **Sleep Number Corp.**, a national mattress retailer, restricted employment ads to people "ages 25 to 54."
- **T-Mobile**, one of the largest wireless companies in the nation and a named Defendant in this action, restricted employment ads to people "ages 18 to 38" and "ages 18 to 54."
- **Triplebyte,** an employment agency that places workers with hundreds of companies, including major technology companies, restricted employment ads to people "ages 23 to 38."
- **Weichert Realtors**, a national provider of real estate and homeowner services, restricted employment ads to people "ages 20 to 55."

87.    Exemplars of the employment advertisements that these companies recently purchased and sent to Facebook users are set forth in Exhibit A to this Complaint.

88.    The following are exemplars of Amazon and Cox employment advertisements:




CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

 

12      89.     Older workers are harmed by employers, employment agencies, and Facebook's

13 practice of excluding them from receiving employment ads and recruiting, and CWA and its

14 members are harmed by these practices.

15      90.     The pattern or practice challenged in this case has caused massive amounts of harm

16 to older workers who have been systematically excluded from hearing about job opportunities

17 throughout the United States, upon information and belief.  Like the worker Plaintiffs in this case,

18 millions of Americans who are unemployed or looking for a new job with better wages and benefits

19 routinely receive information about employment opportunities via employment ads on Facebook

20 and other forms of social media.  Whereas 20 or 30 year ago workers may have received

21 information about job opportunities in local or regional newspapers or through direct mail, today

22 the internet (and especially social media) is the primary way in which workers search for and obtain

23 information about employment opportunities.

24      91.     Excluding older workers from receiving employment ads makes it far less likely that

25 older prospective applicants will hear about employment opportunities and, in turn, apply for or

26 secure jobs that are open.

27

28

CLASS ACTION COMPLAINT

92.     When older workers do not receive an ad, they will not likely know about the specific employment opportunities being offered.  Or, if there is a deadline to apply for a position, they will be less likely to meet that deadline than younger workers.

93.     Due to this pattern or practice of age discrimination in advertising and recruiting, upon information and belief, the number and proportion of older workers in the applicant pools of employers and employment agencies is artificially depressed.  In turn, employers and employment agencies are less likely to hire older workers than they would have otherwise been if they had advertised to and recruited prospective applicants without regard to age—even if they process workers' applications on an equal basis.  Upon information and belief, members of the proposed Plaintiff Class have all suffered these harms by regularly being denied employment ads and recruiting by members of the Defendant Class.

94.     The magnitude of the harm of this pattern or practice of discrimination on the proposed Plaintiff Class Members is great, because older workers are a large and growing portion of the American labor force.  It is long past the time when workers retired at age 50 or 55 and left the labor force.  Today, older workers are a substantial portion of the national labor force in the United States.  And the labor force participation of older workers has grown much faster in recent years than the labor force participation of younger workers.

95.     According to the Bureau of Labor Statistics ("BLS"), in 2016 there were 86.1 million full time workers between the ages of 25 and 54, and 26.9 million full-time workers who were at least 55 years old.[20]  For part-time workers, older workers make up an even greater share of the employed labor force: in 2016, there were 11.8 million part-time workers between the ages of 25 and 54, and 7.5 million part-time workers who were at least 55 years old.  *Id.*

96.     In addition, the share of older workers in the American labor force is increasing every year.  As BLS recently reported in May of 2017, "about 40 percent of people ages 55 and older were working or actively looking for work in 2014.  That number, known as a labor force

---

[20] Bureau of Labor Statistics, Labor Force Statistics from the Current Population Survey: Employed and unemployed full- and part-time workers by age, sex, race, and Hispanic or Latino ethnicity, https://www.bls.gov/cps/cpsaat08.htm.

participation rate, is expected to increase fastest for the oldest segments of the population—most notably, people ages 65 to 74 and 75 and older—through 2024.  In contrast, participation rates for most other age groups in the labor force aren't projected to change much over the 2014–24 decade."[21]  In addition, "[b]etween 1977 and 2007, employment of workers 65 and over increased 101 percent, compared to a much smaller increase of 59 percent for total employment (16 and over).  The number of employed men 65 and over rose 75 percent, but employment of women 65 and older increased by nearly twice as much, climbing 147 percent."[22]

97.    CWA is also harmed by the pattern or practice of age discrimination challenged in this action.  CWA challenges this pattern or practice of age discrimination on behalf of its own 160,000-plus members who are 40 years old or greater.

98.    As noted above, CWA is an international labor union representing over 700,000 workers in the telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, healthcare, and other industries.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  An important part of protecting the rights of workers and CWA's members is ensuring that all workers are treated fairly and equally in the workplace, regardless of their age, race or color, gender, national origin, disability, sexual orientation, military status or service, and other protected categories recognized by federal, state, and local law.  CWA and its national, regional, and local leaders strive to ensure that the civil rights of workers are respected in the workplaces where they represent workers.

99.    CWA's 700,000-plus members live and work throughout the United States, and search for job opportunities throughout the United States.  Over 160,000 of CWA's members are over age 40 and are protected by federal, state, and local laws that prohibit age discrimination in employment, including in advertising, recruiting, and hiring.  CWA's membership is one of the

---

[21] Mitra Toossi and Elka Torpey, Bureau of Labor Statistics, Older workers: Labor force trends and career options, https://www.bls.gov/careeroutlook/2017/article/older-workers.htm.

[22] Bureau of Labor Statistics, Older workers: Are there more older people in the workplace?, https://www.bls.gov/spotlight/2008/older_workers/.

most diverse in the labor movement, particularly with respect to the variety of industries and positions in which its members work and the industries and positions in which their members seek employment on a regular basis. CWA's members who are 40-years-old or greater have been subjected to and harmed by the unlawful discriminatory practices described in this Complaint.

100.    CWA has associational standing to bring this suit on behalf of its members because it is a membership organization; many of its members would have standing to sue T-Mobile, Amazon, Cox, and Defendant Class Members under the age discrimination laws under which Plaintiffs assert claims in this action; the interests CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA. *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333 (1977).

101.    In addition, CWA has standing in its own right as an aggrieved person who has a right to bring this action to remedy past and continuing harm caused by T-Mobile, Amazon, Cox, and the Defendant Class Members. CWA has been harmed, as CWA has undertaken efforts to identify and combat the age discrimination described in this Complaint, including by engaging in an investigation of the systemic violations and by contacting more than 60 employers and employment agencies to educate them about their harmful and unlawful practices and to ask them to stop such practices. Upon information and belief, as a result of CWA's education and outreach to combat this discrimination, it appears that a number of larger and smaller companies have temporarily stopped excluding older workers from their advertising and recruiting on Facebook. By engaging in these efforts to identify and combat discrimination, CWA's resources have been diverted from activities in which it would ordinarily engage, including collective bargaining, counseling, and assisting its members in various ways, towards addressing such discrimination, and CWA's mission to protect the labor and civil rights of its members has been frustrated.

102.    Upon information and belief, CWA and its members have been harmed in other ways by the exclusion of older workers from advertising and recruiting. The exclusion of older workers from new job opportunities restricts the labor market for CWA's members and makes it harder for them to find jobs when they are unemployed or to find better jobs when they are

employed.  When the job market is tightened for a segment of CWA's membership or potential

membership because of age discrimination, it reduces the bargaining power of CWA and its

members to obtain better wages and benefits in negotiations with employers.  Accordingly, this loss

of bargaining power adversely affects the wages and benefits of CWA's members and, in turn,

adversely affects the membership dues of CWA and the ability of CWA to grow its ranks.

## CLASS ACTION ALLEGATIONS

103.    Plaintiffs seek to certify a Plaintiff Class of older workers who were excluded from

receiving employment ads by a Defendant Class of large employers and employment agencies who

have engaged in the practices challenged in this case, including T-Mobile, Amazon, and Cox.

Plaintiffs will seek to certify the Plaintiff and Defendant Classes pursuant to Rules 23(a) and (b)(3)

of the Federal Rules of Civil Procedure for both the purposes of injunctive and monetary relief.  In

the alternative, Plaintiffs will seek to certify the Plaintiff and Defendant Classes pursuant to Rules

23(a), (b)(2), and (c)(4), or merely under Rules 23(a) and (b)(2).

**Rule 23(a)**

104.    **Plaintiff Class Definition.**  Plaintiffs Bradley, Anscombe, Callahan, and CWA bring

each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or

(c)(4) on behalf of the following persons:

> All Facebook users in the United States who are 40 years old or older who were
> interested in receiving employment-related advertisements or recruiting from
> employers or employment agencies via Facebook's ad platform and were excluded
> from being eligible to receive an employment-related advertisement because one or
> more of the Defendant Class Members placed an upper age limit on the population
> of Facebook users that was eligible to receive an advertisement, at any time from the
> earliest date actionable under the limitations period applicable to the given claim,
> until the date of judgment in this action.

The limitations period for each state law claim is the full statute of limitations period for each such

claim.

105.    Not included in the Class are the following individuals and/or entities: Facebook's

officers and directors and all judges assigned to hear any aspect of this litigation, as well as their

staffs and immediate family members.

106.   **Defendant Class Definition.**   Plaintiffs Bradley, Anscombe, Callahan, and CWA bring each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4) against the following persons:

> All employers or employment agencies who annually employ at least 2,500 employees or annually refer for employment at least 2,500 employees, and have purchased or sent employment-related Facebook advertisements that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim, until the date of judgment in this action.

The limitations period for each state law claim is the full statute of limitations period for each such claim.

107.   Plaintiffs may seek to modify the proposed Plaintiff or Defendant Classes as the case proceeds, including to add subclasses based on the industry of the employers or employment agencies and/or add additional Class Representatives who would represent such subclasses.

108.   **Numerosity.**   The Plaintiff Class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known.  Upon information and belief, the class consists of millions of Facebook users who are at least 40 years old, and those users are geographically dispersed throughout the United States.

109.   The Defendant Class is so numerous that joinder of all members is impracticable. The exact size of the class is not known.  Upon information and belief, the Defendant Class may consist of dozens to hundreds of national companies that annually employ or refer for employment at least 2,500 workers.  (Discovery will be needed to identify the precise number of employers and employment agencies who engaged in the practices challenged in this action.)  Those companies' corporate headquarters and operations are geographically dispersed throughout the United States.

110.   **Commonality.**   There are numerous questions of law or fact that are common to the Class Members.  Upon information and belief, the proposed Plaintiff Class Members were subjected to and injured by the same uniform practice in which employers and employment agencies coordinated with Facebook via Facebook's uniform ad platform to exclude older workers from receiving employment advertisements and recruiting; and the same practice that the Plaintiff

Class challenges caused each Plaintiff Class Member to experience the same type of harm, because they were excluded from the population of Facebook users who were eligible to receive employment-related Facebook ads and thus were deprived important information about job opportunities.

111.    The questions of law or fact that are common to the class members include:

(a)    Did Facebook create, develop, and implement an ad platform in which employers and employment agencies can limit which Facebook users will receive employment-related advertisements based on their age?

(b)    Did employer and employment agency members of the Defendant Class purchase and send Facebook ads via Facebook's uniform ad platform that excluded older workers, including members of the Plaintiff Class, from receiving employment-related ads on Facebook?

(c)    Were members of the Plaintiff Class denied the opportunity to receive employment-related advertisements that were purchased and sent by the Defendant Class Members because the Defendant Class Members placed an upper limit on the age of the Facebook users who were eligible to receive the advertisements?

(d)    Did the Defendant Class Members, in excluding older workers from receiving employment-related advertisements, violate state laws that prohibit age discrimination in employment advertising, recruiting, and hiring, including because (1) the ads challenged in this action indicate a preference or discrimination based on age, (2) the challenged practice constitutes intentional discrimination, and (3) the challenged practice has a disparate impact on older workers?

(e)    Whether and what types of injunctive and/or declaratory relief should be ordered with respect to the past and ongoing pattern or practice of the Defendant Class Members?

(f)    Whether and what types and amounts of damages should be awarded to Plaintiffs and the members of the Proposed Plaintiff Class?

CLASS ACTION COMPLAINT

112.    **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the Plaintiff Class they seek to represent.  The claims of the Named Plaintiffs arise from the same pattern or practice and rely upon the same legal theories and factual allegations that the challenged pattern or practice violates a variety of state civil rights statutes.  Likewise, upon information and belief, the members of the Defendant Class all engaged in the same uniform practice of excluding older workers from receiving employment-related ads, and the unlawful conduct of the Named Defendants, T-Mobile, Amazon, and Cox, is typical of the unlawful conduct in which the other Defendant Class Members engaged throughout the United States.

113.    **Adequacy.**  The Named Plaintiffs will adequately represent the members of the Class, do not have any conflicts with the other Class Members, and are represented by experienced counsel who have substantial experience in employment discrimination and class action litigation, and who will vigorously prosecute the action on behalf of the Class.

**Rule 23(b)(3)**

114.    This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

115.    The questions of law and fact common to the members of the Plaintiff and Defendant Classes predominate over questions affecting individual class members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

116.    By resolving the common issues described above in a single class proceeding, each member of the Proposed Plaintiff Class will receive a determination of whether the employer and employment agency Defendant Class Members violated age discrimination laws by excluding the Plaintiff Class Members from employment ads in the same uniform manner.

117.    Members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions.  Although the relative damages that the Plaintiff Class Members have suffered is not de minimis, their damages are modest compared to the expense and burden of individual prosecution of this litigation.  In fact, because Facebook, T-Mobile, Amazon, Cox, and other Defendant Class Members do not disclose to individuals which employment ads they have

been excluded from receiving, many Plaintiff Class Members will have no reasonable likelihood of obtaining such information and asserting their claims unless this action proceeds as a class action.

118. Other than this action, no litigation concerning age discrimination in advertising and recruiting via Facebook ads has been commenced by any member of the Plaintiff Class.

119. This is not only an appropriate forum for these claims because jurisdiction and venue are proper, but it is the most appropriate forum because all of the purchasing, creating, and sending of the unlawful employment advertisements took place in this District via Facebook's operations and ad platform, which ties together all of the members of the Defendant Class. Facebook has its headquarters and a substantial portion of its operations in this District. Moreover, prosecuting this case as a single class action against numerous defendants will ensure that there are not inconsistent judgments and that a single injunction and rule will apply to employers and employment agencies who purchase, create, and send employment ads via Facebook's ad platform.

120. Concentration of the litigation in this forum is desirable, as this action challenges a company-wide practice, and it will benefit the Plaintiff and Defendant Class Members to have all of the Class Members' claims and defenses adjudicated in a single proceeding.

**Rule 23(b)(2)**

121. This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members have violated age discrimination laws in the same manner as to all members of the Plaintiff Class, and have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Proposed Class they seek to represent.

122. Upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members expressly excluded older workers from receiving employment advertisements sent via Facebook, and continue to engage in this uniform unlawful practice. Plaintiffs and the Plaintiff Class seek a declaration that the age discrimination challenged in this action is unlawful and an injunction preventing the Defendant Class Members, including Facebook, from sending such

1  discriminatory ads in the future.

2  **Rule 23(c)(4)**

3      123.    Pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring

4  this action to adjudicate particular issues that are appropriate to adjudicate with respect to T-Mobile,

5  Amazon, Cox, and all members of the Defendant Class, including but not limited to whether the

6  pattern or practice that they have all, upon information and belief, engaged in—excluding older

7  workers from receiving employment advertisements and recruiting via Facebook's ad platform—

8  violates various civil rights laws that prohibit discrimination in employment advertising, recruiting,

9  and hiring, and whether this unlawful practice should be enjoined to prevent continuing and

10  additional harm to older workers impacted by this practice.

11                                   **COUNTS**

12                              **FIRST COUNT:**
13  **Discriminatory Publication or Advertising by an Employer or Employment Agency**
     **State Law Claims Under the State Laws Identified in the Count**
14  **By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members**

15      124.    Plaintiffs incorporate all foregoing paragraphs into this Count.

16      125.    The District of Columbia Human Rights Act and other similar state statutes make it

17  unlawful for an employer or employment agency to publish or print or cause to be printed or

18  published notices or advertisements that relate to employment or referral for employment by an

19  employer or employment agency that indicates any preference, limitation, specification, or

20  distinction based on age.  D.C. Code § 2–1402.11(a)(4)(B); *see also* Ala. Code § 25-1-27; Minn.

21  Stat. Ann. § 363A.08 subd. 4(a)(3); N.J. Stat. Ann. § 10:5-12(c); N.Y. Exec. Law § 296(d), (3-a)(b);

22  Ohio Rev. Code Ann. § 4112.02(E)(4); Wash. Rev. Code Ann. §§ 49.60.180(4) & 49.44.090(2).

23      126.    The Defendant Class Members are employers or employment agencies within the

24  meaning of the D.C. Human Rights Act and similar state statutes as they employ for compensation

25  or are persons who act in the interests of employers directly or indirectly, or they procure

26  employees for an employer or procure for employees opportunities to work for an employer,

27  including agents of such an employment agency.  D.C. Code § 2–1401.02(10), (11); *see also* Ala.

28

Code § 25-1-20(2), (3); Minn. Stat. Ann. § 363A.03 subds. 16, 17; N.J. Stat. Ann. § 10:5-5(b), (e); N.Y. Exec. Law § 292(2), (5); Ohio Rev. Code Ann. § 4112.01(2), (5); Wash. Rev. Code Ann. § 49.60.040(11), (12).

127.     The Plaintiff Class Members are employees within the meaning of the D.C. Human Rights Act and similar state statutes as they are seeking employment from an employer or an employment agency.  D.C. Code § 2–1401.02(9); *see also* Minn. Stat. Ann. § 363A.03 subd. 15; N.J. Stat. Ann. § 10:5-5(f); N.Y. Exec. Law § 292(6); Ohio Rev. Code Ann. § 4112.01(3); Wash. Rev. Code Ann. § 49.60.040(10).

128.     The Plaintiffs Class Members are protected by these statutory provisions, as they are at least 40 years old.  *See* D.C. Code § 2–1401.02(2) (age protects individuals 18 years of age or older); *see also* Ala. Code § 25-1-21 (40 years of age and over); Minn. Stat. Ann. § 363A.03 subd. 2 (age of majority or older); N.J. Stat. Ann. § 10:5-12(a) (up to 70 years of age); Ohio Rev. Code Ann. § 4112.14(A) (40 or older); Wash. Rev. Code Ann. § 49.44.090(2) (40 or older).

129.     As described above, upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members, who are either employers or employment agencies or both, have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements and recruiting on Facebook's ad platform.

130.     This pattern or practice violates the publication provision of the D.C. Human Rights Act and analogous state anti-discrimination laws identified earlier in this count.  When an employer or employment agency makes a statement within an employment advertisement that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater—for example, by T-Mobile stating that the company wants to reach people between the ages of 18 and 38—the advertisement communicates the message that the employer or employment agency is less interested in or not interested in recruiting or hiring older workers.  Such an advertisement informs the reader of the advertisement and the public at large that the employer

sending the advertisement has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.

131.    Furthermore, these types of advertisements that state that the employer or employment agency wants to reach younger workers are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

132.    The D.C. Human Rights Act and similar state anti-discrimination statutes under which Plaintiffs bring their claims do not require exhaustion of administrative remedies before filing an action in court.  *See* D.C. Code § 2–1403.16(a) (stating that an action may be filed in court without filing a charge of discrimination); Ala. Code § 25-1-29 (stating that pursuit of an administrative action or remedy is not required prior to filing suit); Minn. Stat. Ann. § 363A.28 subd. 1 (stating that an aggrieved person may bring a civil action or file a charge with the commissioner); N.J. Stat. Ann. § 10:5-13 (stating that a complainant may file suit without first filing a complaint with the division or any municipal office); N.Y. Exec. Law § 297(9) (stating that an aggrieved person can file suit in any court of appropriate jurisdiction unless he or she has already filed an administrative charge); Ohio Rev. Code Ann. § 4112.02(L) (stating that an aggrieved individual may enforce his or her rights by instituting a civil action); *Washington State Commc'n Access Project v. Regal Cinemas, Inc.*, 293 P.3d 413, 427–28 (Wash. Ct. App. 2013) (Washington Law Against Discrimination does not require administrative exhaustion prior to filing a suit).

**SECOND COUNT:**
**Intentional and Disparate Impact Discrimination in**
**Recruiting and Hiring by an Employer or Employment Agency**
**State Law Claims Under the State Laws Identified in the Count**
**By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members**

133.    Plaintiffs incorporate all foregoing paragraphs into this Count.

134.    The District of Columbia Human Rights Act and other similar state statutes make it unlawful for an employer or an employment agency to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment, or to limit or segregate or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their status as an employee. D.C. Code § 2–1402.11(a)(1)-(2); *see also* Ala. Code §§ 25-1-22, 25-1-23; Minn. Stat. Ann. § 363A.08 subds. 2, 3; N.J. Stat. Ann. § 10:5-12(a), (c); N.Y. Exec. Law § 296(1)(a), (b), (3-a)(a), Ohio Rev. Code Ann. §§ 4112.02(A), (B), 4112.14(A); Wash. Rev. Code Ann. §§ 49.60.180, 49.44.090(1), (2).

135.    The D.C. Human Rights Act and other similar statutes identified in the prior paragraph prohibit both intentional age discrimination and disparate impact age discrimination in employment, including with respect to prospective applicants or applicants for employment.

136.    As described above, upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members, who are either employers or employment agencies or both, have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements and recruiting on Facebook's ad platform.

137.    The Defendant Class Members are employers or employment agencies within the meaning of the D.C. Human Rights Act and similar state statutes, as they employ for compensation or are persons who act in the interests of employers directly or indirectly, or they procure employees for an employer or procure for employees opportunities to work for an employer, including agents of such an employment agency.  D.C. Code § 2–1401.02(10), (11); *see also* Ala.

Code § 25-1-20(2), (3); Minn. Stat. Ann. § 363A.03 subds. 16, 17; N.J. Stat. Ann. § 10:5-5(b), (e); N.Y. Exec. Law § 292(2), (5); Ohio Rev. Code Ann. § 4112.01(2), (5); Wash. Rev. Code Ann. § 49.60.040(11), (12).

138.    The Plaintiff Class Members are employees within the meaning of the D.C. Human Rights Act and similar state statutes as they are seeking employment from an employer or an employment agency.  D.C. Code § 2–1401.02(9); *see also* Minn. Stat. Ann. § 363A.03; N.J. Stat. Ann. § 10:5-5(f); N.Y. Exec. Law § 292(6); Ohio Rev. Code Ann. § 4112.01(3); Wash. Rev. Code Ann. § 49.60.040(10).

139.    The Plaintiff Class Members are protected by these statutory provisions, as they are at least 40 years old.  *See* D.C. Code § 2–1401.01(2); *see also* Ala. Code § 25-1-21; Minn. Stat. Ann. § 363A.03 subd. 2; N.J. Stat. Ann. § 10:5-12(a); Ohio Rev. Code Ann. § 4112.14(A); Wash. Rev. Code Ann. § 49.44.090(1).

140.    This pattern or practice of discrimination challenged in this action is undertaken by these employers and employment agencies with the intent and purpose of discouraging and preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.  This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the D.C. Human Rights Act and the other state laws identified earlier in this Count.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that young workers do

1   receive from the same employers and employment agencies.

2   141.   In addition to constituting intentional discrimination, the pattern or practice of

3   discrimination challenged in this action and undertaken by these employers and employment

4   agencies constitutes unlawful disparate impact discrimination, upon information and belief.

5   Excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and

6   the Defendant Class Members direct their employment advertisements and recruiting on

7   Facebook's ad platform has the effect of disproportionately excluding older workers who are 40-

8   years-old or greater from receiving employment advertising, recruiting, and hiring opportunities

9   based on their age.  Upon information and belief, the disparities between workers who are 40-years-

10   old or greater and workers who are younger than 40 years old in receiving these employment

11   opportunities is statistically significant.

12   142.   Upon information and belief, excluding older workers from receiving the same

13   employment advertisements that are provided to younger workers causes and has a disproportionate

14   adverse effect on the employment advertising and recruitment opportunities that older workers

15   receive and their opportunities to be hired by the employers and employment agencies who are

16   Defendant Class Members in this action.  This pattern or practice has the effect of limiting,

17   segregating, and classifying older workers and depriving them of employment opportunities

18   because it places prospective applicants into groups that will and will not be targeted for advertising

19   and recruitment opportunities in a manner that results in older workers disproportionately being in

20   the group of prospective applicants who will not receive advertising or recruiting.  For example, if

21   an employer excludes workers who are more than 45-years-old from receiving advertising and

22   recruiting, this conduct will disproportionately result in workers who are 40-years-old or older

23   being excluded from receiving ads and recruiting and, consequently, the opportunity to be hired,

24   even if some workers who are 40-years-old or older do receive such advertising and recruiting.

25   143.   The D.C. Human Rights Act and similar state anti-discrimination statutes under

26   which Plaintiffs bring their claims do not require exhaustion of administrative remedies before

27   filing an action in court.  *See* D.C. Code § 2–1403.16(a); *see also* Ala. Code § 25-1-29; Minn. Stat.

28

CLASS ACTION COMPLAINT

Ann. § 363A.28 subd. 1; N.J. Stat. Ann. § 10:5-13; N.Y. Exec. Law § 297(9); Ohio Rev. Code Ann. § 4112.02(L); *Washington State Commc'n Access Project*, 293 P.3d at 427-28.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against T-Mobile, Amazon, Cox, and the Defendant Class Members on all claims and respectfully request that this Court award the following relief:

A. Declare that the pattern or practice described above violates various state laws prohibiting age discrimination in employment.

B. Enter an order enjoining T-Mobile, Amazon, Cox, and members of the Defendant Class from continuing to engage in acts that violate the same statutes.

C. Certify a Class under Rule 23(a), (b)(3), or in the alternative under Rule 23(a), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, appoint Plaintiffs' counsel as Class Counsel, appoint the Named Plaintiffs as the Plaintiff Class Representatives, and appoint T-Mobile, Amazon, Cox, as the Defendant Class Representatives.

D. Require T-Mobile, Amazon, Cox, and members of the Defendant Class to pay Plaintiffs and members of the Plaintiff Class for the economic harm they have suffered due to such unlawful age discrimination, as well as punitive damages.

E. Require T-Mobile, Amazon, Cox, and the Defendant Class Members to pay Plaintiffs' attorneys' fees and costs.

F. Grant such other and further relief as the Court deems proper, appropriate, just, or equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Respectfully submitted,                                        December 20, 2017

*/s/ Jahan C. Sagafi*                                          P. David Lopez (*pro hac vice forthcoming*)
Jahan C. Sagafi (Cal. Bar No. 224887)                         Peter Romer-Friedman (*pro hac vice*
OUTTEN & GOLDEN LLP                                            *forthcoming*)
One Embarcadero Center, 38th Floor                            OUTTEN & GOLDEN LLP
San Francisco, CA 94111                                        601 Massachusetts Ave. NW
Telephone: (415) 638-8800                                      Second Floor West

Facsimile:  (415) 638-8810
E-mail: jsagafi@outtengolden.com

Guerino J. Calemine III (*pro hac vice forthcoming*)
Katherine A. Roe (*pro hac vice forthcoming*)
COMMUNICATIONS WORKERS
OF AMERICA
501 3rd Street, N.W.
Washington, DC 20001
Telephone: (202) 434-1100
E-mail:  jcalemine@cwa-union.org
E-mail: aroe@cwa-union.org

Washington, DC 20001
Telephone: (202) 847-4400
Facsimile:  (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

Adam T. Klein (*pro hac vice forthcoming*)
Robert N. Fisher (Cal. Bar No. 302919)
Jared W. Goldman (*pro hac vice forthcoming*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rfisher@outtengolden.com
E-mail: jgoldman@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Plaintiff Class*