Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
E-mail: jsagafi@outtengolden.com

P. David Lopez (*pro hac vice*)
Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

Patricia Shea (*pro hac vice*)
Katherine A. Roe (*pro hac vice*)
COMMUNICATIONS WORKERS
OF AMERICA
501 3rd Street, N.W.
Washington, DC 20001
Telephone: (202) 434-1100
E-mail: pats@cwa-union.org
E-mail: aroe@cwa-union.org

Adam T. Klein (*pro hac vice*)
Robert N. Fisher (Cal. Bar No. 302919)
Jared W. Goldman (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rfisher@outtengolden.com
E-mail: jgoldman@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Plaintiff Class and Collective*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

COMMUNICATIONS WORKERS OF
AMERICA, LINDA BRADLEY, MAURICE
ANSCOMBE, LURA CALLAHAN, RENIA
HUDSON, and others similarly situated,

      Plaintiffs,

      vs.

T-MOBILE US, INC., AMAZON.COM, INC.,
COX COMMUNICATIONS, INC., COX
MEDIA GROUP, LLC, and similarly situated
employers and employment agencies, DOES 1
through 1,000,

      Defendants.

Case No. 17-cv-07232-BLF

**SECOND AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      In this action, the Communications Workers of America ("CWA"), Linda Bradley, Maurice Anscombe, Lura Callahan, and Renia Hudson (collectively, "Plaintiffs") seek to vindicate the rights of older workers to be free of age discrimination in employment advertising, recruitment, and hiring.  They bring this action against T-Mobile US, Inc. ("T-Mobile"), Amazon.com, Inc. ("Amazon"), Cox Communications, Inc., Cox Media Group, LLC (collectively, "Cox"), and a Defendant Class of hundreds of major American employers and employment agencies that, upon information and belief, routinely exclude older workers from receiving their employment and recruiting ads on Facebook, and thus deny older workers job opportunities.  These companies eliminate older workers from receiving job ads by specifically targeting their employment ads to younger workers via Facebook's ad platform.  And these employers and employment agencies state in their job advertisements that they are interested in reaching younger workers who fall into a specific age band of Facebook users who were selected to receive the job advertisements, thereby encouraging younger workers to and discouraging older workers from applying for various jobs.

2.      For example, T-Mobile sent the following ad via Facebook to recruit prospective job applicants for its stores nationwide, and in doing so, upon information and belief, limited the population receiving the ad to 18- to 38-year-olds.  The screenshot to the right shows that T-Mobile sent the job ad because T-Mobile "wants to reach **people ages 18 to 38 who live or were recently in the United States**."




SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

3.      In another example, upon information and belief, Facebook, as an employer, used its own ad platform to send the following job ad to recruit individuals to work at Facebook, and in doing so limited the population receiving the ad to 21- to 55-year-olds.  The screenshot to the right shows that Facebook sent the job ad because it "wants to reach **people ages 21 to 55 who live or were recently in the United States**."




4.      Plaintiffs allege that T-Mobile, Amazon, Cox, and a Defendant Class of hundreds of major American employers and employment agencies have violated federal, state, and local laws that prohibit age discrimination in employment advertising, recruiting, and hiring, upon information and belief.  Plaintiffs seek an injunction to stop America's leading companies from engaging in unlawful age discrimination in employment, as well as other forms of relief for older workers who have been denied job opportunities due to the unlawful and harmful practices described in this Complaint.

5.      Fifty years before this action was filed, on December 15, 1967, Congress enacted the Age Discrimination in Employment Act to prohibit and eradicate systemic age discrimination that older workers faced in the workplace.  *See* Pub. L. No. 90-202, § 2 (Dec. 15, 1967).  Congress found that older workers faced discrimination in hiring and other employment opportunities, and that the arbitrary setting of age limits led to higher unemployment rates for older workers.  *Id.*; 29

3

U.S.C. § 621.  To combat this discrimination, Congress prohibited employers and employment agencies from discriminating based on age in employment advertising, recruiting, hiring, and other employment opportunities, and Congress made it unlawful to send or publish employment ads that discriminate or indicate a preference or limitation based on age.  29 U.S.C. § 623(a), (b), (e).

6.      Agreeing with Congress that age discrimination in employment was a systemic problem, numerous states, including California and Ohio, the District of Columbia, and many counties, cities, and towns enacted similar prohibitions on age discrimination in employment.

7.      Sadly, this case reveals that age discrimination remains an entrenched facet of the American workplace.  Upon information and belief, nationwide, large and small employers alike apparently believe that it is appropriate and desirable to exclude American workers from job opportunities *solely based on their age*.

8.      In every corner of America, when an older worker loses her job at a coal mine, a steel mill, a call center, a hospital, or an office, and she looks for a new job using the internet and social media to find job opportunities, she likely has no idea that major American companies are purposely refusing to tell her about the next job opportunity that may help her feed her family or make her next mortgage payment to stave off a devastating foreclosure.

9.      Due to this lawsuit, older workers may finally understand why their job searches—that have migrated online in recent years—are more difficult than they ought to be.  In fact, their job searches are more difficult than our country's anti-discrimination laws allow.  If this lawsuit succeeds, American workers' job searches may be a lot easier in the future.

10.      Unfortunately, harm has already been done, and it continues, as many of the largest companies in our nation—including Facebook, T-Mobile, Amazon, and Cox—have expressly and blatantly excluded older workers from receiving job advertisements and recruitment via Facebook's paid ad platform, upon information and belief.  As a result, these companies and Facebook have denied millions of workers the opportunity to learn about and obtain employment opportunities, upon information and belief.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT      17-cv-07232-BLF

11.     When selecting the population of Facebook users who will receive employment ads, employers and employment agencies routinely focus their ads on prospective applicants who are in age bands that exclude many workers who are 40-years-old or greater, *e.g.*, targeting workers who are "ages 18 to 38," "ages 22 to 45," or "ages 21 to 55," thereby preventing older workers from receiving advertising and recruitment for job opportunities, upon information and belief.

12.     This pattern or practice of discrimination denies job opportunities to individuals who are searching for and interested in jobs, reduces the number of older workers who apply for jobs with the offending employers and employment agencies, and depresses the number of older workers who are hired by such employers and employment agencies, causing working families to lose out on wages, benefits, and the dignity that comes with a good job.  In addition, these practices make older workers' job searches take far longer than they should, causing economic harm and other forms of distress to them and their families.  For the positions advertised, these age-based restrictions show that the selections for these positions are uniformly motivated by discriminatory animus against older workers.

13.     This practice is not just harmful to older workers—it is unlawful.  By actively excluding workers who are older than a certain age from receiving employment ads and by stating in the ads that the employers or employment agencies want to reach younger workers, both employers and employment agencies clearly state a preference for recruiting and hiring younger workers over older workers; they discriminate against older workers in their advertising, recruitment, and hiring process; and they limit, segregate, and classify job applicants based on their age, all in violation of federal, state, and local laws that prohibit age discrimination in employment.

14.     This practice is systemic in the American economy.  Upon information and belief, from employers in industries such as telecommunications, technology, entertainment, retail, health care, energy, and real estate, to national and local staffing companies, employers and employment agencies routinely and deliberately exclude older workers when it comes to advertising to and recruiting job applicants.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

15.     While advocates for older workers and civil rights have long suspected that employers screen out older workers from the employment pipeline, evidence from Facebook's ad platform confirms that, approximately 50 years after the passage of the ADEA, age discrimination, rather than equal opportunity, appears to be a common standard in employment advertising, recruiting and hiring, upon information and belief.

16.     Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift.  Like so many other parts of our society, Facebook and other social media platforms have become a dominant force in the national labor market.  In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers.

17.     Like many technologies in the modern economy, Facebook has an unfathomable capacity to make workers aware of economic opportunities, such as jobs.  Through its paid ad platform, Facebook could make it easy for workers to regularly receive employment opportunities on an equal basis.  For tens of millions of forgotten workers whose plants have shuttered, hospitals have closed, and retail stores have been driven out of business by e-commerce, receiving ads for job openings via Facebook could be a godsend—a ray of hope at the end of a long, dark tunnel in which American workers have been discarded by national companies that place profit over people.

18.     In the area of advertising economic opportunities, Facebook has not lived up to its great potential to help workers.  Upon information and belief, here, in search of greater profits, Facebook has turned its powerful ad platform into a mechanism for age discrimination; and now Plaintiffs have found that national employers have coordinated with Facebook to exclude an enormous portion of the American labor force from receiving job ads, recruitment, and hiring opportunities—from national employers like T-Mobile, Amazon, Cox, Arhaus, Capital One, Citadel, Defenders, Facebook, IKEA, Leidos, Sleep Number, and Weichert Realtors, to national staffing and employment agencies.

19.     The basic practice at issue in this case is simple.  When an employer or an employment agency creates, purchases, and sends a Facebook ad to make workers aware of job opportunities and encourage them to apply for various jobs, Facebook requires the employers or

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

employment agencies to select the population of Facebook users who will be eligible to receive the ad, including the age range of the users who will receive the ad.  Following Facebook's encouragement to narrowly focus ad campaigns on the "right people," including by targeting younger people, upon information and belief, hundreds of major employers and employment agencies routinely focus their Facebook employment ads on users who are under 40-years-old (and sometimes on users who are under higher age thresholds).  This prevents workers who are above the selected age threshold from receiving employment ads and pursuing relevant job opportunities.

20.    This case and the facts alleged should not come as a surprise.  The public, Facebook, and members of the Defendant Class have known that Facebook's ad platform enabled and encouraged employers and employment agencies to exclude older workers from receiving job ads. In November 2016, ProPublica revealed that Facebook's platform made it possible for African Americans, Latinos, and Asian Americans to be excluded from receiving ads for various economic opportunities, such as housing or employment ads.[1]  At that time, it was widely known that other protected characteristics, such as age, could be used to exclude Facebook users from receiving employment ads.  Upon information and belief, since then, Facebook has not done anything to stop employers from using its ad platform to engage in widespread and harmful acts of age discrimination; and as a result, employers and employment agencies paid millions of dollars to purchase Facebook ads that unlawfully excluded older workers from receiving job ads and other recruitment information.

21.    In addition, in the wake of federal court litigation that was filed in 2016 over Facebook's ad platform being used to exclude people of color from receiving job advertisements due to their race or national origin, all of the employers and employment agencies who are Defendant Class Members in this case knew and/or should have known that it was or could be unlawful to exclude older workers from receiving their job advertisements via Facebook.

---

[1] Julia Angwin and Terry Parris Jr., *Facebook Lets Advertisers Exclude Users by Race: Facebook's system allows advertisers to exclude black, Hispanic, and other "ethnic affinities" from seeing ads*, ProPublica (Oct. 28, 2016), https://www.propublica.org/article/facebook-lets-advertisers-exclude-users-by-race.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

Nevertheless, upon information and belief the Defendant Class Members, including T-Mobile, Amazon, and Cox continued to exclude older workers from receiving their job advertisements via Facebook and making statements on Facebook that they wanted to reach workers within younger age bands.  And upon information and belief, the Defendant Class Members, T-Mobile, Amazon, and Cox, did not attempt to offset the harm of targeting of younger workers with job advertisements via Facebook by similarly targeting older workers with job advertisements via Facebook.

22.    Facebook's involvement in this practice is not simply that of an intermediary that operates a platform to develop, sell, and deliver ads to Facebook users.  As this Complaint shows, like other major employers and employment agencies, Facebook has used its own ad platform to recruit job applicants *to work at Facebook*, and Facebook routinely used the same discriminatory age filters to exclude older workers from seeing Facebook's own employment ads for a range of positions at Facebook's operations throughout the nation, upon information and belief.

23.    In response to the filing of this action, Facebook publicly affirmed that it believes that age-restrictive job advertising is appropriate and that Facebook encourages employers to engage in this practice.  In fact, a Facebook Vice President told the *New York Times* that "age-based targeting for employment purposes is an accepted industry practice and for good reason."[2]  As such, Facebook has encouraged, endorsed, aided and abetted, and executed discriminatory age-restricted advertisements and recruiting on behalf of employers and other employment agencies, both in the past and in the present.  And while Facebook entered into a settlement agreement in July 2018 with the Washington State Attorney General in which Facebook agreed to take certain steps to prevent employers from excluding workers from receiving job advertisements based upon their race, disability, veteran status, and/or sexual orientation, Facebook consciously decided not to stop employers and employment agencies from expressly excluding older workers from receiving their job advertisements via Facebook.

---

[2] Julia Angwin, Noam Scheiber and Ariana Tobin, *Facebook Job Ads Raise Concerns About Age Discrimination*, N.Y. Times (Dec. 20, 2017), https://www.nytimes.com/2017/12/20/business/facebook-job-ads.html.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

24.     If age-restrictive job advertising has apparently become an "accepted industry practice" among American employers and employment agencies, that does not make it lawful under the Age Discrimination in Employment Act or similar state and local laws.  In fact, both the AARP, the leading voice of older Americans, and the bipartisan leaders of the United States Senate Aging Committee have condemned age-restrictive job advertising.[3]

## JURISDICTION AND VENUE

25.     The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and it is a class action in which members of the proposed Plaintiff Class are citizens of different states than at least one defendant.  Plaintiffs Bradley and Callahan are citizens of Ohio, Plaintiff Anscombe is a citizen of Maryland, Plaintiff Hudson is a citizen of California, and Defendant T-Mobile US, Inc. is a citizen of Delaware and Washington State.

26.     The Court has subject matter jurisdiction over Plaintiffs' and the collective members' ADEA claims pursuant to 29 U.S.C. § 1331.  The court also has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

27.     This Court has personal jurisdiction over T-Mobile and Amazon because upon information and belief, T-Mobile and Amazon conduct substantial business throughout this District, employ thousands of workers in this District and California, they intentionally created and purchased discriminatory ads in this District via Facebook's ad platform that is located in this District, they interacted with Facebook's employees who are located in this District to create, purchase, and publish discriminatory ads, upon information and belief, and they intentionally sent such discriminatory ads from this District to Facebook users who are located in this District,

---

[3] Jennifer Valentino-DeVries, AARP and Key Senators Urge Companies to End Age Bias in Recruiting on Facebook, ProPublica (Jan. 8, 2018), https://www.propublica.org/article/aarp-and-key-senators-urge-companies-to-end-age-bias-in-recruiting-on-facebook.

9

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

California, and throughout the United States, and those advertisements intentionally solicited workers to apply for positions throughout the State of California, including in this District.

28.     Upon information and belief, during the events that are challenged in this action, Amazon employed tens of thousands of employees in California and intentionally sent Facebook advertisements throughout the nation (including advertisements sent to persons located in and outside of California, such as the District of Columbia, Ohio, and Maryland) that advertised thousands to tens of thousands of jobs that are located in California, and T-Mobile and Amazon excluded older workers from receiving those ads.  Upon information and belief, during the events that are challenged in this action, Amazon operated 23 Fulfillment and Sortation Centers in California, 9 Prime Now Hubs in California, 2 Tech Hubs in California, 8 Campus Pick-Up locations in California, and 4 Amazon Books stores in California.  Indeed, Amazon has stated that it has created more than 39,000 full-time jobs in California.[4]

29.     Upon information and belief, during the events that are challenged in this action, T-Mobile employed thousands of employees in California and intentionally sent Facebook advertisements throughout the nation (including advertisements sent to persons located in and outside of California, such as the District of Columbia, Ohio, and Maryland) that advertised thousands of jobs that are located in California, and T-Mobile excluded older workers from receiving those ads.   Upon information and belief, during the events challenged in this action, T-Mobile operated more than 700 locations in California.

30.     Upon information and belief, Amazon and T-Mobile each sent at least hundreds of thousands of age-restricted advertisements to Facebook users throughout the United States, including users in California, advertising positions in California, the District of Columbia, Ohio, and many other states.  When Amazon and T-Mobile excluded older workers from receiving job advertisements about positions in California, they caused harm to older workers throughout the United States who were deterred from seeking positions in California, and Amazon and T-Mobile

---

[4] Amazon.com, *Amazon's Economic Impact Across the U.S.*, About Amazon, https://www.aboutamazon.com/investing-in-the-u-s (last visited Aug. 20, 2018).

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

knew that older workers in and outside of California would be harmed by such discriminatory advertising.

31.     This Court has personal jurisdiction over Cox because upon information and belief, it conducts substantial business in the state of California, employs thousands of workers in the state of California, intentionally created and purchased discriminatory ads in this District via Facebook's ad platform that is located in this District, interacted with Facebook's employees who are located in this District to create, purchase, and publish discriminatory ads, and intentionally sent such discriminatory ads from this District to Facebook users who are located in this District, California, and throughout the United States, and those advertisements (including advertisements sent to persons located in and outside of California, such as the District of Columbia, Ohio, and Maryland) intentionally solicited workers to apply for positions in the State of California, and Cox excluded older workers from receiving those ads.  Upon information and belief, according to California Employment Development Department labor market data, during the events challenged in this action Cox operated approximately eighteen locations in California and employed over 1,000 workers at those locations.[5]

32.     Upon information and belief, Cox sent at least thousands to tens of thousands of advertisements to Facebook users throughout the United States advertising positions in California, the District of Columbia, Ohio, and other states.  Upon information and belief, during the events that are challenged in this action, Cox employed over 1,000 employees in California and intentionally sent Facebook ads throughout the nation that advertised at least dozens of jobs that are located in California.  When Cox excluded older workers from receiving job advertisements about positions in California, it caused harm to older workers throughout the nation who were deterred from seeking positions in California, and Cox knew that older workers in and outside of California would be harmed by such discriminatory advertising.

---

5 *See* California Employment Development Department, *Labor Market Data Library*, https://www.labormarketinfo.edd.ca.gov/aspdotnet/databrowsing/empMain.aspx?menuChoice=emp (last visited Aug. 20, 2018).

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

33.     This Court has personal jurisdiction over employers and employment agencies in the proposed Defendant Class, as upon information and belief, they created discriminatory ads in this District via Facebook's ad platform that is located in this District, they sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, and/or their advertisements solicited workers to apply for positions in the State of California and/or in this District.

34.     Upon information and belief, all of the Defendant Class Members, including T-Mobile, Amazon, and Cox, employed Facebook as their agent and employment agency to create, develop, purchase, and send their job advertisements to Facebook users in order to solicit and recruit workers to apply for positions in and outside of California.  Upon information and belief, the Defendant Class Members retained control and/or had the ability to control Facebook's conduct and activities with respect to the Defendant Class Members' advertising jobs, recruiting employees, and communicating information to Facebook users.  Upon information and belief, in sending age-restricted job advertisements that excluded older workers from receiving such ads and in stating in the advertisements that Defendant Class Members wanted to reach Facebook users between specific ages, Facebook acted within the scope of its agency and responsibility as the agent and employment agency[6] of the Defendant Class Members and the Defendant Class Members took such actions and made such statements jointly with Facebook.  All of the Defendant Class Members, who are employers within the meaning of the ADEA and the California, District of Columbia, and Ohio laws set forth herein, are responsible for the acts of Facebook, their agent and employment agency, including acts related to advertising jobs, communicating information about jobs, recruiting employees, and hiring employees.

35.     Upon information and belief, all of the Defendant Class Members, including T-Mobile, Amazon, and Cox agreed to follow the same terms and conditions of the same contract

---

[6] Facebook is an employment agency under the ADEA and equivalent state laws because in light of the acts alleged in this Complaint, Facebook regularly undertakes with or without compensation to procure employees for an employer, place employees, or procure opportunities for employees to work for an employer.  29 U.S.C. § 630(c); *see* Cal. Gov. Code § 12926(e); D.C. Code § 2–1401.02(11); Ohio Rev. Code Ann. § 4112.01(5).

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

with Facebook, its agent, by agreeing to Facebook's Statement of Rights and Responsibilities and/or Terms of Service ("Facebook contract").[7]  The Facebook contract requires its users, including the Defendant Class Members who have advertised jobs on Facebook and the members of the Plaintiff Class who have used Facebook, to resolve any disputes related to their use of Facebook in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, to "submit to the personal jurisdiction of such courts for the purpose of litigating all such claims" related to their use of Facebook, and that any dispute over the use of Facebook will be resolved under California law.  In addition, the Facebook contract mandates that the advertisers not engage in any conduct that is "discriminatory," a requirement that all of the Defendant Class Members have violated by virtue of the practices challenged in this action.  By agreeing to the Facebook contract under which all Defendant Class Members agreed to submit to the personal jurisdiction of this Court and resolve all disputes in this Court related to their use of Facebook, all Defendant Class Members consented to personal jurisdiction and venue in this Court and have waived any argument that exercising personal jurisdiction over them with respect to their discriminatory advertising on Facebook is improper, unlawful, or unconstitutional.  By excluding older workers from receiving job advertisements via the same Facebook ad platform, all of the Defendant Class Members collectively altered, distorted, manipulated, and harmed national, regional, and local labor markets and job opportunities for the Plaintiff Class Members, including the labor market for workers in this District and California, and accordingly the Defendant Class Members lengthened the time of older workers to obtain employment, including employees inside and outside of California who have sought employment in California and this District.

36.    Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and 2202.

37.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, where all Defendant Class Members created and purchased discriminatory ads via

---

[7] Facebook, Terms of Service, https://www.facebook.com/terms.php (last visited Aug. 20, 2018).

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

Facebook's ad platform that is located in this District, and sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, including for positions within this District.  Plaintiffs have exhausted their administrative remedies with respect to their federal ADEA claims and their California Fair Employment and Housing Act ("FEHA") claims.  On May 10, 2018 (in the case of Bradley, Anscombe, and Callahan) and on August 15, 2018 (in the case of Hudson), they received right to sue letters from the Equal Employment Opportunity Commission regarding their ADEA charges against the Named Defendants, and on May 22, 2018 (in the case of Bradley, Anscombe, and Callahan) and on August 14, 2018 (in the case of Hudson) they received right to sue letters from the California Department of Fair Employment and Housing regarding their FEHA charges against the Named Defendants.

## THE PARTIES

38.     The Communications Workers of America is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's headquarters are located in Washington, DC.  CWA also has offices, local unions, and members in California, and is accordingly a citizen of California.  Its members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA educates its members about the value of social media for networking and advocacy.  As a result, CWA members, including the over 160,000 who are over age 40, include hundreds of thousands of Facebook users.  CWA has thousands of members who are members of the proposed Class, including Plaintiffs Bradley, Callahan, Anscombe, and Hudson.

39.     Plaintiff Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  Prior to the filing of the Original Complaint, she was laid off from her longstanding job at a call center in Franklin County, Ohio.  Ms. Bradley is and has been a member of CWA during the period

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

in which she has been affected by the discrimination she challenges in this case.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has decades of customer service and sales experience in the telecommunications industry and the healthcare industry.  She has skills in a range of areas, including interpersonal communication skills and leadership skills.  Ms. Bradley graduated from high school and has attended undergraduate courses.  Upon information and belief, due to her skills and experience, Ms. Bradley would be qualified for a range of positions at T-Mobile, including but not limited to Account Care Expert and Customer Service Representative Trainer; Ms. Bradley would be qualified for a range of positions at Amazon, including but not limited to Customer Service Associate and Seller Support Associate; Ms. Bradley would be qualified for a range of positions at Cox, including but not limited to Call Center Customer Service Representative, Call Center Sales Representative, and Call Center Customer Retention Specialist; and Ms. Bradley would be qualified for a range of positions at the other Defendant Class Members.  Upon information and belief, T-Mobile, Amazon, and Cox used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, and hire for some or all of these positions, including for positions in California, and Defendant Class Members used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, and hire for similar positions, including for positions in California.  Ms. Bradley is willing to work not just in Ohio but beyond her local geographic area.

40.    Upon information and belief, Ms. Bradley has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Ms. Bradley had received such ads from each of the Defendant Class Members, she would have clicked on those employment ads in order to learn more about those opportunities and she would have pursued them.  Because Ms. Bradley did

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

1  not receive such ads from the Defendant Class Members, she did not learn about specific job

2  opportunities at those employers or employment agencies and was thus deterred from applying for

3  such job opportunities.  Upon information and belief, Ms. Bradley was qualified to perform one or

4  more job at each of the Defendant Class Members that was offered during the time period at issue

5  in this case.  Upon information and belief, Ms. Bradley was denied the opportunity to receive job

6  advertisements from Amazon, T-Mobile, Cox, and the Defendant Class Members because of her

7  age, including the job advertisements of Amazon, T-Mobile, and Cox that advertised positions in

8  California.

9        41.    Plaintiff Maurice Anscombe is a 57-year-old man who lives in Baltimore County,

10  Maryland.  Mr. Anscombe is and has been a member of CWA during the period in which he has

11  been affected by the discrimination he challenges in this case.  He is seeking employment, having

12  previously worked as a cable technician for almost two decades and, before that, in law

13  enforcement.  He regularly uses Facebook, and has used Facebook to seek employment

14  opportunities.  Mr. Anscombe has skills in a range of areas, including telecommunications

15  networks, computers, law enforcement, and corporate security.  He has an associate degree in

16  Applied Science from Bronx Community College.   Upon information and belief, due to his skills

17  and experience, Mr. Anscombe would be qualified for a range of positions at T-Mobile, including

18  but not limited to Associate Installation Technician and Installation Supervisor; Mr. Anscombe

19  would be qualified for a range of positions at Amazon, including but not limited to Cabling

20  Technician, Network Technician, Data Center Technician, and Loss Prevention Specialist; and Mr.

21  Anscombe would be qualified for a range of positions at Cox, including but not limited to Universal

22  Home Technician; and Mr. Anscombe would be qualified for a range of positions at the other

23  Defendant Class Members.  Upon information and belief, T-Mobile, Amazon, and Cox used age-

24  restricted job advertisements published on Facebook's ad platform during the relevant period to

25  advertise, recruit, solicit, and hire for some or all of these positions, including for positions in

26  California, and Defendant Class Members used age-restricted job advertisements published on

27  Facebook's paid ad platform during the relevant period to advertise, recruit, solicit, and hire for

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1   similar positions, including for positions in California.  Mr. Anscombe is willing to work not just in

2   Maryland, but also beyond his local geographic area.  For example, Mr. Anscombe has searched for

3   work in Maryland, the District of Columbia, and the D.C. Metropolitan Area, and has been

4   interested in receiving and responding to job opportunities in these and other places.

5          42.     Upon information and belief, Mr. Anscombe has routinely been denied employment

6   advertisements and recruitment that similarly situated workers have received in Maryland and

7   throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox,

8   and the Defendant Class Members in this action.  If Mr. Anscombe had received such ads from

9   each of the Defendant Class Members, he would have clicked on those employment ads in order to

10  learn more about those opportunities and he would have pursued them.  The only employment ad

11  that Mr. Anscombe recalls receiving on his Facebook News Feed was via a closed group in

12  Facebook for former law enforcement officials and was sent by a company recruiting former

13  military and law enforcement officials.  Because Mr. Anscombe did not receive such ads from the

14  Defendant Class Members, he did not learn about specific job opportunities at those employers or

15  employment agencies and was thus deterred from applying for such job opportunities.  Upon

16  information and belief, Mr. Anscombe was qualified to perform one or more job at each of the

17  Defendant Class Members that was offered during the time period at issue in this case.  Upon

18  information and belief, Mr. Anscombe was denied the opportunity to receive job advertisements

19  from Amazon, T-Mobile, Cox, and the Defendant Class Members because of his age, including

20  advertisements of Amazon, T-Mobile, and Cox that advertised positions in California.

21         43.     Plaintiff Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio.

22  Ms. Callahan is and has been a member of CWA during the period in which she has been affected

23  by the discrimination she challenges in this case.  Prior to the filing of the Original Complaint, she

24  was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She

25  regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Callahan

26  has decades of customer service and sales experience in the telecommunications industry and has

27  retail sales experience.  Ms. Callahan has skills in a range of areas, including interpersonal

28                                              17

communication skills, and she has graduated from high school.  Upon information and belief, due to her skills and experience, Ms. Callahan would be qualified for a range of positions at T-Mobile, including but not limited to Account Care Expert and Customer Service Representative Trainer; Ms. Callahan would be qualified for a range of positions at Amazon, including but not limited to Customer Service Associate and Seller Support Associate; and Ms. Callahan would be qualified for a range of positions at Cox, including but not limited to Call Center Customer Service Representative, Call Center Sales Representative, and Call Center Customer Retention Specialist; and Ms. Callahan would be qualified for a range of positions at the other Defendant Class Members. Upon information and belief, T-Mobile, Amazon, and Cox used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for some or all of these positions, including for positions in California, and Defendant Class Members used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for similar positions, including for positions in California.

44.     Upon information and belief, Ms. Callahan has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Ms. Callahan had received such ads from the Defendant Class Members, she would have clicked on those employment ads in order to learn more about those opportunities and would have pursued them. Because Ms. Callahan did not receive such ads from the Defendant Class Members, she did not learn about specific job opportunities at those employers or employment agencies and was thus deterred from applying for such job opportunities. Upon information and belief, Ms. Callahan was qualified to perform one or more job at each of the Defendant Class Members that was offered during the time period at issue in this case.  Upon information and belief, Ms. Callahan was denied the opportunity to receive job advertisements from Amazon, T-Mobile, and Cox, and the Defendant Class Members because of her age, including advertisements of Amazon, T-Mobile, and Cox that advertised positions in California.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

45.     Renia Hudson is a 58-year-old woman who lives in Sacramento County, California. Prior to the filing of the Original Complaint, she was recently laid off from her longstanding job at a call center in Oakland, California.  Ms. Hudson is and has been a member of CWA during the period in which she has been affected by the discrimination she challenges in this case.  She regularly uses Facebook and has used Facebook to seek employment opportunities.  Ms. Hudson has decades of customer service and sales experience in the telecommunications industry, and she has human resources and accounting experience.  She has skills in a range of areas, including interpersonal communication skills and accounting skills.  She has graduated from high school, she has taken courses towards a bachelor's degree in Business Administration, and she intends to complete the degree.  Upon information and belief, due to her skills and experience, Ms. Hudson would be qualified for a range of positions at T-Mobile, including but not limited to Account Care Expert and Customer Service Representative Trainer; Ms. Hudson would be qualified for a range of positions at Amazon, including but not limited to Customer Service Associate and Seller Support Associate; Ms. Hudson would be qualified for a range of positions at Cox, including but not limited to Call Center Customer Service Representative, Call Center Sales Representative, and Call Center Customer Retention Specialist; and Ms. Hudson would be qualified for a range of positions at at other Defendant Class Members.  Upon information and belief, T-Mobile, Amazon, and Cox used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for some or all of these positions, including for positions in California, and Defendant Class Members used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for similar positions, including for positions in California.  Ms. Hudson is willing to work not just in California, but also beyond her local geographic area.

46.     Upon information and belief, Ms. Hudson has routinely been denied employment advertisements and recruitment that similarly situated workers have received in California and throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action.  If Ms. Hudson had received such ads from each of

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1  the Defendant Class Members, she would have clicked on those employment ads in order to learn

2  more about those opportunities and she would have pursued them.  Because Ms. Hudson did not

3  receive such ads from the Defendant Class Members, she did not learn about specific job

4  opportunities at those employers or employment agencies and was thus deterred from applying for

5  such job opportunities.  Upon information and belief, Ms. Hudson was qualified to perform one or

6  more job at each of the Defendant Class Members that was offered during the time period at issue

7  in this case.  Upon information and belief, Ms. Hudson was denied the opportunity to receive job

8  advertisements from Amazon, T-Mobile, Cox, and the Defendant Class Members because of her

9  age, including advertisements of Amazon, T-Mobile, and Cox that advertised positions in

10  California.

11     47.  T-Mobile US, Inc. is one of the largest wireless companies in the United States.

12  According to T-Mobile's 2016 Annual 10-K report, "T-Mobile provides wireless communications

13  services, including voice, messaging and data, to more than 71 million customers in the postpaid,

14  prepaid and wholesale markets."[8]  In 2016, T-Mobile earned $37.2 billion in revenues, and

15  employed approximately 50,000 full-time and part-time employees as of December 16, 2016.  *Id*.

16  The company calls itself the "Un-carrier" that is "Un-satisfied with the status quo" and "Un-afraid

17  to innovate." *Id*.  T-Mobile operates various brands of its wireless communications services,

18  including T-Mobile and MetroPCS, through its owned and operated stores, third party distributors,

19  and websites. *Id*.  T-Mobile nationally advertises employment opportunities at its stores and other

20  operations that are located throughout the nation, both for the T-Mobile and MetroPCS brands.  At

21  the time of this Complaint, T-Mobile is advertising jobs in 42 states and the District of Columbia.

22  Upon information and belief, T-Mobile has regularly used Facebook's ad platform to send

23  employment advertisements to prospective applicants for a range of positions in its T-Mobile and

24  MetroPCS divisions, including jobs in its retail stores and beyond; and in doing so, T-Mobile has

25

26  [8] T-Mobile US, Inc. Form 10-K for Calendar Year 2016, Submitted to the U.S. Securities and
   Exchange Commission, https://www.sec.gov/Archives/edgar/data/1283699/00012836

27  9917000010/tmus12312016form10-k.htm.

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

1  restricted the age range of the population that T-Mobile intended to receive its employment ads to

2  focus on younger workers and exclude older workers.

3      48.     Amazon.com, Inc., one of the largest online retailers in the world, is a Delaware

4  corporation with its headquarters in Seattle, Washington.  Amazon sells hundreds of millions of

5  products to American consumers, and employed 341,400 full-time and part-time employees as of

6  December 31, 2016.[9]  In 2016, Amazon had $135.9 billion in revenues.  *Id.*  Amazon nationally

7  advertises employment opportunities at its locations throughout the United States.  Upon

8  information and belief, Amazon has regularly used Facebook's ad platform to send employment

9  advertisements to prospective applicants for a range of positions at Amazon throughout the United

10 States; and in doing so Amazon has restricted the age range of the population that Amazon intended

11 to receive its employment ads to focus on younger workers and exclude older workers.

12     49.     Cox Communications, Inc. is a broadband communications and entertainment

13 company that provides digital video, telephone, internet, and home security and automation services

14 through its nationwide network.  Cox Communications, Inc. is the third largest cable company in

15 the United States.[10]  Cox Media Group, LLC is an integrated broadcasting, publishing, direct

16 marketing and digital media company.  It owns and operates 14 television stations, more than 60

17 radio stations, six newspapers, and over 100 digital services.[11]  Cox Communications, Inc. and Cox

18 Media Group, LLC are both subsidiaries of Cox Enterprises, Inc., a privately held media company

19 that had more than $20 billion revenues and 60,000 employees in 2016. [12]  Upon information and

20 belief, Cox Communications, Inc. and Cox Media Group, LLC have regularly used Facebook's ad

21

22 [9] Amazon.com, Inc. Form 10-K for Calendar Year 2016, Submitted to the U.S. Securities and
23 Exchange Commission, https://www.sec.gov/Archives/edgar/data/1018724/00010187241
   7000011/amzn-20161231x10k.htm.

24 [10] Cox Communications, Year in Review, http://www.coxenterprises.com/about-cox/annual-
25 review/cox communications.aspx#.WjiEmWyosx5.

26 [11] Cox Media Group, Year in Review, http://www.coxenterprises.com/about-cox/annual-
27 review/cox-media-group.aspx#.WjkjH2yosl0.

28 [12] Cox Enterprises, About Cox, http://www.coxenterprises.com/about-cox.aspx#.WjkkTGyosl1.

21

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

platform to send employment advertisements to prospective applicants for a range of positions at each respective company throughout the United States, and in doing so have restricted the age range of the population that they intended to receive their employment ads to focus on younger workers and exclude older workers.  Upon information and belief, Cox Communications, Inc. and Cox Media Group, LLC share marketing and recruitment personnel and resources to create and send employment advertisements via Facebook.

50.     The Defendant Class Members other than T-Mobile, Amazon, and Cox, to the extent they are unnamed, are identified for the purposes of this Complaint as Does 1 through 1,000, and will be identified by name through third-party discovery requests served on Facebook.

## FACTUAL ALLEGATIONS

**A.     Facebook's paid advertising platform has become a critical venue and mechanism for employers and employment agencies to recruit workers**

51.     Facebook is the most popular social media platform in the world.  According to Facebook's 2016 Annual Report, Facebook had 1.23 billion daily active users on average for December 2016, and 1.86 billion monthly active users as of December 31, 2016.[13]

52.     According to the same report, "Facebook enables people to connect, share, discover, and communicate with each other on mobile devices and personal computers.  There are a number of different ways to engage with people on Facebook, the most important of which is News Feed which displays an algorithmically-ranked series of stories and advertisements individualized for each person." *Id.*

53.     The News Feed is the page on Facebook where users see their friends' posts, as well as "Sponsored Ads" that advertisers pay Facebook to post on users' News Feeds.  Upon information and belief, about one out of every four or five posts that Facebook users see on their News Feeds are so-called "Sponsored Ads."  Facebook earns billions of dollars a year by placing "Sponsored Ads" on Facebook users' News Feeds on behalf of advertisers, including employers and

---

[13] Facebook Inc. Form 10K for Fiscal Year Ending December 31, 2016, Submitted to the U.S. Securities and Exchange Commission, https://www.sec.gov/Archives/edgar/data/1326801/00 0132680117000007/fb-12312016x10k.htm

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

employment agencies.  In fact, in 2016 Facebook earned approximately $27.6 billion and "generate[d] substantially all of [its] revenue from selling advertising placements to marketers." *Id.*

54.    From its inception, Facebook has been a powerful tool for advertisers because it allows advertisers to target very specific populations with their ads.  Recently, the power to "micro-target" various populations has grown exponentially, as Facebook collects an unfathomable amount of information about ordinary Americans who use Facebook by monitoring what people post, what they read, how long they view posts, and who and what they interact with on their phones, tablets, and computers.  Facebook gives its advertisers the power to use that information to determine which Facebook users will be included or excluded in the population that will receive their ads.

55.    In explaining how it earns nearly all of its revenues, Facebook states that its "ads let marketers reach people based on a variety of factors including age, gender, location, interests, and behaviors." *Id.*  For example, in the context of employment recruiting, Facebook identifies which Facebook users are looking for a new job or are interested in employment, and advertisers can then send ads to those individuals who are looking for work so that advertisers minimize the cost of reaching people who are interested in new jobs and maximize the number of people who respond to employment ads (*i.e.*, the higher the percentage of users who click on the ad, the better for the advertiser and Facebook).  In September 2017, Facebook's Chief Operating Officer Sheryl Sandberg explained that "[t]argeted advertising is how Facebook has helped millions of businesses grow, find customers *and hire people*.  Our systems match organizations with [Facebook users] who may be interested in their products or services."[14]

56.    In recent years, Facebook has emerged as one of the largest venues for employers to seek applicants for employment and for workers to find job opportunities.  A 2015 survey reported that 92 percent of employment recruiters used social media to recruit applicants for employment.[15]

---

[14] Facebook Post of Facebook COO Sheryl Sandberg (Sept. 20, 2017) (emphasis added), https://www.facebook.com/sheryl/posts/10159255449515177.

[15] AdWeek, Survey: 92% of Recruiters Use Social Media to Find High-Quality Candidates (Sept. 22, 2015), http://www.adweek.com/socialtimes/survey-96-of-recruiters-use-social-media-to-find-high-quality-candidates/627040.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

57.     In addition, a 2016 study by the Society for Human Resource Management found that 66 percent of employers who recruit via social media employ Facebook to recruit applicants for employment.[16]  The ability to recruit passive job candidates is the top reason that employers use social media to recruit applicants for employment.  And some employers even use social media as their primary source of recruiting.  *Id.* at 7, 11.

58.     Employers not only sponsor ads on Facebook users' News Feeds to seek applicants for specific employment opportunities, but they also use Facebook as a main source of showcasing their brands to potential applicants.  Enhancing a company's brand increases the likelihood that a person will apply for employment opportunities with that company in the future.

59.     The vast majority of large employers and employment agencies have "Careers" or "Jobs" pages on Facebook—such as "T-Mobile Careers"—where the employers or employment agencies post information about specific job opportunities and highlight the positive qualities of the company's career opportunities.

60.     When employers and employment agencies send employment ads to Facebook users, they ordinarily link the ad to or direct the Facebook user to their "Careers" Facebook pages, so that when the Facebook user clicks on the ad, the user will be sent to the company's Careers page or a specific portion of the Careers page.  By doing so, the employer draws the attention of the prospective applicant to job opportunities for which she or he should apply and highlights the brand of the employer.

61.     Before the internet and social media, the same sort of advertising and recruitment happened offline, when employers would send direct mail to prospective applicants, hand out flyers, or place newspaper ads that directed prospective applicants to call a phone number to speak with the company's recruiters or attend a job fair.  The only difference between the employment advertising on Facebook and what employers and employment agencies did before the advent of the internet is the medium—Facebook and online social media—but nothing in the law changes or

---

[16] SHRM Survey Findings: Using Social Media for Talent Acquisition—Recruitment and Screening (Jan. 7, 2016), at 9, https://www.shrm.org/hr-today/trends-and-forecasting/research-and-surveys/Documents/SHRM-Social-Media-Recruiting-Screening-2015.pdf.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

diminishes the obligations of employers or employment agencies to advertise to, recruit, and hire workers in a non-discriminatory manner.

**B.     Facebook has eliminated the middlemen in employment recruiting, collecting information on the age of its users and giving employers and employment agencies the data and tools to exclude older workers**

62.     Before the development of the modern internet, if an employer wanted to recruit workers, it would likely hire an employment agency or marketing firm to analyze the relevant labor market; determine the content of ads to send to prospective applicants; decide the audience to be targeted by the ads; identify publications in which to place the ads; and contact and negotiate with newspapers, magazines, television stations, and radio stations to place and pay for the ads.

63.     The employment agency or marketing firm would help the employer to determine how placing ads in different types of publications or media, or delivering mail or flyers to the homes of residents in certain areas, would allow the employer to reach a certain population of individuals who would respond to the ads by contacting the employer and applying for employment.  In some cases, employment agencies or marketing firms would—in contravention of federal, state, and local civil rights laws—offer tools for employers to exclude members of various protected classes (including older workers) from receiving such employment advertising and recruiting, and the employment agency or marketing firm would execute such discriminatory targeting strategies on behalf of those employers.

64.     Upon information and belief, currently when employers want to recruit applicants for employment, Facebook performs nearly all of the necessary functions of an employment agency and marketing firm: Facebook helps the employer to create the ad; collects, develops and provides databases of information on Facebook users to employers so that such employers can know which individuals are looking for employment, know various types of information about those applicants, such as their age and gender, and exclude certain groups of people from their ad campaigns; coordinates with the employer to develop the recruitment, marketing and/or advertising strategy to determine which people will and will not receive the ads; delivers the ads to prospective applicants; collects payments for these services from the employer; informs the employer of the performance of

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

the ad campaign with numerous data analytics; and retains copies of the ads and data related to them.

65.     In addition, on Facebook's ad platform, Facebook directs users who receive employment ads directly to the employer or employment agency's Careers web site or other web site that is embedded in Facebook's system so that the user can learn more about the company's job opportunities and apply for available positions.  This is no different than 20 years ago when an employment agency or recruiter would send an ad to a worker or speak with a worker, and then assist the worker to contact the employer to apply for an open position.  These acts involve procuring job opportunities for employees and procuring employees for employers or employment agencies.

66.     For employers and employment agencies that want to exclude older workers, Facebook's ad platform is a blessing.  Twenty years ago, an employer would have had to go to great lengths—at a great cost—to determine the age of all potential applicants so that the employer could exclude older workers from its advertising and recruitment.  But today Facebook does exactly that before a single ad has been purchased or sent, upon information and belief.  As described below, Facebook's ad platform identifies the ages of Facebook users and, in turn, encourages and permits employers to exclude older workers from their employment advertising and recruitment campaigns based on their age.

67.     In short, Facebook is an active player in the labor market in which employers and employment agencies search for workers and advertise employment opportunities.  Facebook's services, ad platform, and tools are a central feature of employers' and employment agencies' ability to selectively market, recruit, advertise, and brand employment opportunities in a discriminatory manner that excludes older workers.

68.     Though Facebook makes it possible to limit which Facebook users will see an ad based on age of the user (including employment ads), federal, state, and local law prohibit age discrimination in advertising and recruiting for job opportunities.  Rather than promoting non-discrimination in employment, Facebook's services, ad platform, and tools, used by employers and

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT      17-cv-07232-BLF

employment agencies, have perpetuated age discrimination in employment nationwide, and have

greatly diminished the employment opportunities of older Americans, upon information and belief.

**C.     Facebook tells employers which workers are looking for a job and requires
        employers to select the age of the people who will receive paid employment
        ads and recruiting so that employers and employment agencies can exclude older
        workers from receiving their job advertisements**

69.     Any employer, employment agency, corporation, or human being who has a

Facebook page can create and purchase a paid ad that will be sent to other Facebook users within

minutes of Facebook receiving payment for the ad (in dollars, rubles, or other currencies).

70.     The simplest way to create a Facebook ad takes only a few minutes, and involves

several basic steps:

> (1) the advertiser selects the population of Facebook users who will receive the ad;

> (2) the advertiser creates the image and text of the ad, and directs where the ad will
> link to when it is clicked on by a Facebook user; and

> (3) the advertiser purchases the ad, paying Facebook money to show a certain
> number of impressions of the ad to Facebook users in the selected population.  If the
> selected population is greater than the number of impressions purchased by the
> advertiser, then only a portion of the selected population will see the ad, but every
> person who is not in the selected population will not receive the ad.

71.     The focus of this case is the first step of the process in which the advertiser selects

the population of Facebook users who will be eligible to receive the ad.

72.     Upon information and belief, for each ad that an advertiser purchases on Facebook

and that Facebook, in turn, sends to Facebook users, there are three mandatory filters that the

advertiser is required to select in setting the population who will be eligible to receive the ad: (1)

location; (2) age; and (3) gender.  The advertiser must either keep the default setting (the entire

United States, 18 to 65+, and male and female), or narrow the scope of the population (for example,

male users who live in California and are ages 18 to 40).

73.     First, Facebook requires the advertiser to select the location of the Facebook users

who will receive the ad.  The default setting is the entire United States, but upon information and

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

belief, Facebook strongly encourages advertisers to narrow the geographic scope of their ads to make them more effective.

74.     Second, Facebook requires the advertiser to select the age of the Facebook users who will receive the ad.  Upon information and belief, Facebook knows the age of its users because Facebook requires users to identify their birthdates in their individual Facebook profiles when they join Facebook.[17]  The default age setting for ads is 18 to 65+, which means that anyone who is 18-years-old or older would receive the ad.  But Facebook strongly encourages advertisers to narrow the age range of the individuals who will receive their ads to make them more effective, upon information and belief.  Because the default age setting is 18 to 65+, any employer or employment agency that selects a narrower and younger age range (such as ages 18 to 40) is consciously and purposefully choosing to target younger prospective applicants and thereby excluding older applicants who will not receive the ad.

75.     Upon information and belief, Facebook does not stop an employer or employment agency from selecting a younger age range (such as ages 18 to 40) that discriminates against older workers in setting the population that will receive an employment ad via Facebook.  And as described below, upon information and belief, hundreds of major employers and employment agencies have used these age range filters to exclude older workers from ever receiving their job ads.  Upon information and belief, Facebook knows that this happens on a regular basis, because Facebook places the ads and Facebook engages in the same type of exclusion of older prospective applicants in its own employment advertising for jobs at Facebook.

76.     Finally, Facebook requires the advertiser to select the gender of the Facebook users who will receive the ad.  The default setting is both male and female, but advertisers, including T-Mobile, Amazon, Cox, and members of the Defendant Class, retain the ability to narrow the gender of the individuals who will receive their ads.

---

[17] Facebook Business, About ad targeting, https://www.facebook.com/business/help/7173682 64947302?helpref=faq_content ("Age" can be used to "Target ads to people within an age range" and "Facebook's age data is from self-reported data meaning that as people sign up to use our services they let us know how old they are.").

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

**D.     On Facebook, employers and employment agencies can send ads solely to "Young and Hip" people and "Millennials," and Facebook helps employers to identify workers who are demographically similar to their current workers**

77.     Facebook provides advertisers additional ways to target their employment ads to younger workers, thus excluding older workers from receiving job ads and recruitment.  In fact, upon information and belief, Facebook itself uses one of these features (the "Lookalike Audience") when it recruits workers for jobs at Facebook.

78.     In addition to the three mandatory categories that advertisers must select to create a Facebook ad (location, age, and gender), Facebook's Detailed Targeting feature allows advertisers to search for and use thousands of additional categories into which Facebook places its users in order to further limit the population of Facebook users who will receive ads.

79.     Facebook divides these additional categories into what it calls Demographics, Interests, and Behaviors.  For example, at the time this Complaint was filed, Facebook identified more than 16 million American Facebook users as having an "Interest" in "Job Hunting."  In addition, in the "Demographics" category, Facebook has sub-categories of "Work-Industries" that Facebook users fall into, such as "Sales," "Education and Libraries," "Health Care and Medical Services," "Legal Services," "Transportation and Moving," "Food and Restaurants," "Production," and "Construction and Extraction."  Facebook identifies "Job Title" categories, such as Facebook users who list their job title as "Factory Worker," "Maintenance Worker," or "Warehouse Worker." By putting tens of millions of American Facebook users into these categories, Facebook makes it easier for employers and employment agencies to identify prospective applicants who might be interested in the employment opportunities they are advertising on Facebook and looking to fill.

80.     Many of these additional categories are unrelated to employment or jobs.  For example, one can target an ad to innocuous subjects like the millions of American Facebook users who are interested in the San Francisco Giants or golden retrievers, but one can also target ads to darker subjects like the millions of American Facebook users who are interested in the Confederate States of America.[18]

---

[18] Noam Scheiber, *Facebook's Ad-Targeting Problem, Captured in a Literal Shade of Gray*, N.Y. Times (Sept. 28, 2017), https://www.nytimes.com/2017/09/28/technology/facebook-ads.html.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

81.     Facebook's additional categories also include groups of Facebook users that are directly related to or highly correlated with age.  For example, Facebook provides advertisers the ability to send employment ads to individuals who fall into the following categories related to a younger age group or categories that ordinarily would be a proxy for younger workers:

- Young & hip – a group of millions of people "whose activities strongly suggest they are young and hip" (according to Facebook); and

- Millennials – a group of millions of people "who have expressed an interest in or like pages related to Millennials" (according to Facebook).

82.     Upon information and belief, like the age range category that all advertisers must select to send an ad, Facebook has done nothing to stop employers or employment agencies from targeting their employment ads and recruiting solely to Facebook users who fall into these "Additional Categories" that primarily include people under the age of 40.

83.     Furthermore, in the context of employment advertising and recruiting, Facebook offers a feature that is legally indistinguishable from word-of-mouth hiring, which has long been considered a discriminatory and unlawful employment practice.

84.     Through Facebook's "Lookalike Audiences" feature, employers and employment agencies provide a list of their existing workers to Facebook, and Facebook then creates a list of Facebook users who are demographically similar to those existing workers.  Then, the employer or employment agency uses the new "Lookalike Audience" list created by Facebook as the population to receive its employment ads.  As Facebook explains, "[a] Lookalike Audience is a way to reach new people who are likely to be interested in your business because they're similar to your best existing customers."[19]  Facebook uses "traits" such as "location, age, gender and interests" to determine which Facebook users are similar to an advertiser's existing customers or workers.[20]  Facebook, not the advertiser, determines which prospective applicants are similar to the advertiser's

---

[19] Facebook Business, About Lookalike Audiences, https://www.facebook.com/business/help /164749007013531.

[20] Facebook Business, Targeting tips to reach the right people, https://www.facebook.com/business/ a/facebook-ads-targeting-tips.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

existing customers or workers and will thus be targeted to receive an ad in a Lookalike Audience. After the advertiser uploads its list of existing customers, Facebook will "hash [its] data, upload it and create [the] audience" that will be used for the Lookalike Audience ad.[21]

85.    Upon information and belief, using Facebook's Lookalike Audience feature in the context of employment advertising involves disparate treatment, because it determines which workers receive job advertising, recruitment, and hiring based in part on their age, thereby excluding them from the population that will receive the employment advertisement because of their age.

86.    Many members of the Defendant Class, as defined below, use the lookalike feature to determine which individuals will receive their job ads and notices.  Facebook routinely uses lookalike audiences to determine which individuals will receive its job ads and notices, which results in disparate treatment discrimination against older workers.

**E.    Facebook directs advertisers, including employers and employment agencies, to use age to narrow the target audience of their advertisements, and Facebook has not stopped employers from excluding older workers from employment advertising**

87.    Facebook is clear about how its ad platform is supposed to work for companies that use it to advertise.  Facebook directs and encourages its advertisers (including employers and employment agencies) to use Facebook's ad platform to target their ads (including employment ads) to a narrow audience, including targeting audiences based on age.

88.    On the main Facebook Business page in which Facebook instructs advertisers on how to "[c]hoose your audience," Facebook emphasizes how its services can be used to identify or target people who fall into various demographics groups.[22]  The page states that "[w]ith our powerful audience selection tools, you can target people who are right for your business.  Using what you know about your customers—like demographics, interests and behaviors—you can connect with people similar to them."  *Id.*  Facebook describes how "[t]here are three options for

---

[21] Facebook Business, Create a Custom Audience from a customer file https://www.facebook.com/business/help/170456843145568.

[22] Facebook Business, Choose your audience, https://www.facebook.com/business/products/ads/ad-targeting.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

choosing your audience on Facebook." *Id.*  The first is the "Core Audiences" option described above, where the advertiser can "[s]elect your audience manually *based on characteristics, like age and location*." *Id.* (emphasis added).  Another option is "Lookalike Audiences" that "[u]se your customer information to find people similar to them on Facebook" (including age, as noted above). *Id.*

89.     Facebook's main page on ad targeting goes on to describe how its "Core Audiences" targeting options . . . allow you to reach people based on their demographics, location, interests and behaviors." *Id.*  Immediately below, Facebook describes the "Demographics" category in which advertisers "[c]hoose people based on traits like *age*, gender, relationship status, education, workplace, job titles and more." *Id.* (emphasis added).  In other words, *age is the first category* that Facebook says should be used to target "the people you want to reach" in an ad campaign.

90.     In a tutorial on how to target Facebook ads to "[c]hoose the right audience," Facebook encourages advertisers to "refine your ad's target audience based on content people have shared about themselves in their Facebook profiles, such as age, gender, relationship status, education and type of work they do."[23]  In the screenshot next to this text, a box shows an ad targeting selection to send the ad to people who are between ages 18 to 34.  *Id.*  At the bottom of the page, Facebook describes how a "narrow" reach of an ad campaign "could help you hone in on specific customers who matter most to your business," and again shows an ad targeting selection that will send the ad to people who are between ages 18 to 34.  *Id.*

91.     While Facebook has a FAQ page about why advertisers "can't target certain age groups with ads," that FAQ answer describes how advertisers should limit their age range if they are "promoting products with age restrictions in different locations," but fails to warn advertisers that they should not narrow the age range when sending employment-related ads because it would violate federal, state, and local civil rights laws.[24]  To the contrary, Facebook's Help Desk has

---

[23] Facebook Business, Choose the Right Audience https://www.facebook.com/business/a/targeting-audiences-advanced
[24] Facebook Business, I can't target certain age groups with ads, https://www.facebook.com/business/help/103928676365132.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

advised users that "[u]sing this age targeting will *prevent* your ads from being delivered to people outside of your age range[.]"[25]

92.     Furthermore, to encourage its advertisers, including employers and employment agencies, to exclude Facebook users from receiving advertisements, Facebook provides detailed analytical ad performance data to advertisers on how their ad campaigns are performing, including on how the ad is performing among Facebook users within certain age ranges.  By providing this data on an ongoing basis, Facebook encourages advertisers to limit the age range of their advertisements so that their advertisements will focus on the highest performing age ranges, even if that means completely excluding users who are outside the highest performing age ranges from receiving the ads.

93.     Over the past year, Facebook's advertising platform has come under public and legal scrutiny for discriminating in employment advertising, including a pending class action lawsuit that challenges Facebook's practice of tagging each Facebook user with a racial identity or perceived racial identity (determined by Facebook, not by its users) and allowing employers to exclude people of color from receiving employment ads.  *See* First Amended Complaint, ECF No. 28, *Onuoha v. Facebook, Inc.*, No. 16-cv-06440-EJD (N.D. Cal.).

94.     Since November 2016, when ProPublica first revealed that Facebook allowed advertisers to exclude people of color from receiving housing, employment, and credit ads, Facebook did *nothing* to block or disable employment ads in which employers and employment agencies have excluded older workers.  Upon information and belief, Facebook has been aware over the past year that employers and employment agencies were using Facebook's ad platform to exclude older workers from receiving ads, and that such conduct constitutes unlawful employment discrimination under federal, state, and local laws.

95.     Furthermore, upon information and belief, in addition to encouraging and allowing employers and employment agencies to restrict which Facebook users will receive job ads based on

---

[25] Facebook Business, I want to impose age restrictions on my ads on instagram, https://www. facebook .com/business/help/community/question/?id=10154466593016819.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

their age, Facebook itself decides within a population selected by an employer or employment agency to receive a job advertisement which Facebook users will actually receive the advertisement, and in making this decision about which users will receive the job ads Facebook considers the age of its users; and often, this means that a disproportionate number of job ads are sent to younger workers instead of older workers.  Upon information and belief, when Facebook's own algorithm disproportionately directs ads to younger workers at the exclusion of older workers because of the age of the older workers, Facebook and the advertisers who are using Facebook as an agent and employment agency to send their job advertisements and recruit employees are engaging in disparate treatment and intentional discrimination.  This phenomenon compounds and exacerbates the age discrimination that employers and employment agencies engage in when they manually select a younger population to send their job ads via Facebook's ad platform.  When the Defendant Class Members, including T-Mobile, Amazon, and Cox, have selected a ceiling on the age of people who will receive their job advertisements, older workers are automatically excluded from receiving the advertisement, they have no chance of receiving such ads, and the sole reason why older workers—including Plaintiffs Bradley, Anscombe, Callahan, and Hudson—have been completely excluded from receiving the job advertisements at issue is the Defendant Class Members' intentional decisions to prevent older workers from receiving their job advertisements. Even older workers who have not been automatically excluded from seeing the advertisements because their age does not exceed the ceiling selected by the employer or employment agency will be less likely to receive the advertisements due to Facebook's algorithm employed by the Defendant Class Members.

96.     When Facebook applies its own algorithm to determine which users will actually receive job advertisements via its ad platform, apart from the decisions of the advertisers of which population to target, Facebook creates or develops information that determines which users will receive ads and learn about job opportunities.  However, because advertisers, including the Defendant Class Members, use Facebook as their agent and employment agency to create, develop, and send job advertisements and recruit employees, the advertisers are fully responsible for jointly

34

deploying a discriminatory recruitment tool and for the actions of their agent, Facebook, in sending the discrimination ads.

**F.      In job advertisements, employers, employment agencies, and Facebook state that the advertiser wants to reach workers within younger age ranges, communicating that the advertiser has a preference to target, receive applications from, interview, and hire younger workers over older workers, and employers and employment agencies exclude older workers from receiving their job advertisements**

97.      When Facebook places an ad on a person's Facebook page on behalf of an employer or employment agency, Facebook and the employer or employment agency who purchased the ad give the Facebook user an opportunity to see why he or she has been selected to see that particular ad and they inform the user why the employer or employment agency selected that user and other users to receive the advertisement.

98.      Under the so-called "Why am I seeing this" function, Facebook and the advertiser tell the users, for example, that they are seeing the ad because "T-Mobile wants to reach **people ages 18 to 38 who live or were recently in the United States**." *Supra* ¶ 2 (emphasis in original). In another example, when Facebook sent an ad to recruit workers *to work in Facebook's human resources department*, the ad stated that "Facebook Careers wants to reach **people who may be similar to their customers**" and that "Facebook careers wants to reach **people ages 21 to 55 who live or were recently in the Unites States**." *Supra* ¶ 3 (emphasis in original).

99.      In the T-Mobile example, the ad is communicating that T-Mobile is interested in recruiting and hiring workers who are ages 18 to 38 throughout the United States, and thus T-Mobile is less interested in or not interested in recruiting or hiring workers who are older than 38-years-old.  Likewise, with respect to Facebook's ad to recruit applicants for positions at Facebook, the ad is communicating that Facebook is interested in recruiting and hiring workers who are ages 21 to 55 throughout the United States, and thus Facebook is less interested in or not interested in recruiting or hiring workers who are older than 55-years-old.  In both instances, the ads also inform the public that the employer or employment agency sending the ad has a preference for younger workers over older workers or does not want to recruit or hire people older than the relevant age ceiling.  These ads are calculated and intended to encourage younger workers to apply for the

35

relevant employment opportunities.  These ads are calculated and intended to discourage older workers from applying for the relevant employment opportunities.  In fact, research shows that people who click on the "Why am I seeing this" portion of paid advertisements are more likely to engage with an advertisement when they are told that they are seeing the ad because of information that they have provided to Facebook, such as a person's age.  Moreover, these ads have the same effect of encouraging younger workers and discouraging older workers from pursuing these employment opportunities.  Furthermore, any and all selections for the positions advertised are tainted by discriminatory age animus.

**G.     Hundreds of major employers and employment agencies have excluded millions of older workers from receiving job ads when sending employment ads on Facebook**

100.    Upon information and belief, a significant portion of large employers and employment agencies in America—including the Defendant Class Members—have routinely used Facebook's ad platform to exclude older workers from receiving employment ads, primarily by selecting an age range for the ad population that excludes older workers, and many of these companies use Facebook's Lookalike Audiences feature to send employment ads to workers who are demographically similar to their younger workforces.

101.    Upon information and belief, by using Facebook's ad platform to exclude older workers, these employers and employment agencies work hand-in-hand with Facebook to exclude a large portion of the labor force from hearing about employment opportunities that are routinely advertised to younger workers; and some of the employers and employment agencies who are members of the Defendant Class rely in whole or in part upon third party agents to create, develop, select the population for, and purchase employment ads that will be sent to prospective applicants via Facebook.

102.    This pattern or practice of age discrimination in employment advertising, recruiting, and hiring—excluding older workers from receiving employment ads on Facebook and other comparable venues (hereinafter "pattern or practice of age discrimination")—occurs on a daily basis throughout the United States.  Plaintiffs have identified more than 100 employers and employment agencies that have engaged in age discrimination by sending employment ads that

36

discriminate against older workers by excluding them from the population that receives employment advertisements.  A significant portion of these 100 employers and employment agencies are members of the Defendant Class.

103.    Upon information and belief, examples of the major employers and employment agencies who have purchased and sent employment advertisements via Facebook that exclude older workers from receiving those advertisements include the following:

- **Amazon.com, Inc.**, an e-commerce giant and a named Defendant in this action, restricted employment ads to people "ages 18-54," "ages 18 to 50," "ages 28 to 55," and "ages 22 to 40."

- **Arhaus**, an upscale furniture retailer with 70 locations across the United States, restricted employment ads to people "ages 28-55."

- **Capital One**, a massive financial services company, restricted various employment ads to people "ages 22 to 54."

- **Citadel**, an international financial services company, restricted employment ads to people "ages 18 to 40."

- **Cox Communications and Cox Media Group**, both divisions of one of the nation's largest media and telecommunications companies, and named Defendants in this action, restricted various employment ads to people "ages 20 to 45," "ages 20 to 50," "ages 19 to 55," and "ages 20 to 55."

- **Defenders**, a leading national installer of security systems, restricted employment ads to people "ages 20 to 40."

- **Facebook, Inc.**, one of the largest technology companies in the world and the operator of the online platforms on which these ads are creates, purchased, and displayed, restricted employment ads to people "ages 21 to 55" and "ages 25 to 60."

- **Fairfield Residential**, a large national residential management company serving around 44,000 residential units in 37 markets, restricted employment ads to people "ages 18 to 45" and "ages 21 to 41."

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

- **IKEA**, a massive international furniture retailer with 43 stores in the U.S., restricted employment ads to people "ages 18 to 54."
- **Leidos**, a massive federal defense and government contractor, restricted employment ads to people "ages 24 to 54" and "ages 24 to 58."
- **Sleep Number Corp.**, a national mattress retailer, restricted employment ads to people "ages 25 to 54."
- **T-Mobile**, one of the largest wireless companies in the nation and a named Defendant in this action, restricted employment ads to people "ages 18 to 38" and "ages 18 to 54."
- **Triplebyte,** an employment agency that places workers with hundreds of companies, including major technology companies, restricted employment ads to people "ages 23 to 38."
- **Weichert Realtors**, a national provider of real estate and homeowner services, restricted employment ads to people "ages 20 to 55."
- **Enterprise Rent-a-Car**, a national rental car company, restricted employment ads to people "ages 22 to 40."
- **University of Maryland Medical System**, the medical system of a major public university, restricted employment ads to people "ages 25 to 55."

104.    Exemplars of the employment advertisements that these companies—all of which are Defendant Class Members—recently purchased and sent to Facebook users are set forth in **Exhibit A** to this Second Amended Complaint.

105.    The following are exemplars of Amazon and Cox employment advertisements:

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF






106.    The exemplars in Exhibit A are merely a small number of the numerous age-restricted job advertisements that T-Mobile, Amazon, Cox, the other larger employers and employment agencies mentioned by name, and the Defendant Class Members each sent in the past years throughout the nation.

107.    Upon information and belief, prior to December 2017, all of the job advertising campaigns that T-Mobile, Amazon, and Cox and that many of the Defendant Class Members were running and sending via Facebook were age-restricted and set an upper age limit on which

Facebook users would receive the job advertisements that excluded older workers.

108.    Upon information and belief, T-Mobile, Amazon, and Cox each sent age-restricted job advertisements and notices to Facebook users who resided, were located, and/or were searching for employment throughout the United States, including in California, the District of Columbia, Ohio, and Maryland.

109.    Upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members each directed, requested, approved of, and/or authorized Facebook, its agent, to exclude persons above certain ages from receiving their job advertisements or notices that were sent throughout the United States regarding employment throughout the United States, including California, and directed, requested, approved of, and/or authorized Facebook to include as a portion of the job advertisements or notices a statement that the employer "wants to reach people" between certain "ages"; and Facebook, the agent of T-Mobile, Amazon, Cox, and the Defendant Class Members, executed these directions and requests, thereby excluding older workers from receiving the job advertisements or notices of T-Mobile, Amazon, Cox, and the Defendant Class Members, and stating that these employers "want[] to reach people" between certain "ages."

110.    Upon information and belief, the age-restricted advertisements that T-Mobile, Amazon, Cox, and the Defendant Class Members purchased, directed, approved of, authorized, and sent advertised jobs and provided information to Facebook users who received the ads about jobs that were located throughout the states where these employers employ workers, including jobs in California, the District of Columbia, and Ohio. Accordingly, upon information and belief, all of the job advertisements that T-Mobile, Amazon, Cox, and the Defendant Class Members sent to Facebook users directed the Facebook users to information about their jobs in California and all of the other states in which these employers employ employees.

111.    The Defendant Class Members, including T-Mobile, Amazon, and Cox, purchased, developed, created, and sent their age-restricted job advertisements in and from Facebook's ad platform and business that is located in California.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

112.     Upon information and belief, at least prior to the filing of this Complaint, the Defendant Class Members, including T-Mobile, Amazon, and Cox, did not send job advertisements via Facebook that targeted older workers, and thus in this critical medium of Facebook job advertising and recruiting the Defendant Class Members only targeted younger workers without similarly targeting older workers to receive their job advertisements, and nor did they use other forms of social media to disproportionately target older workers with job advertisements to offset the harm of excluding older workers from receiving their job advertisements via Facebook.

113.     Older workers are harmed by employers, employment agencies, and Facebook's practice of excluding them from receiving employment ads and recruiting, and CWA's members are harmed by these practices.

114.     The pattern or practice challenged in this case has caused massive amounts of harm to older workers who have been systematically excluded from hearing about job opportunities throughout the United States, upon information and belief.  Like the worker Plaintiffs in this case, millions of Americans who are unemployed or looking for a new job with better wages and benefits routinely receive information about employment opportunities via employment ads on Facebook and other forms of social media.  Whereas 20 or 30 year ago workers may have received information about job opportunities in local or regional newspapers or through direct mail, today the internet (and especially social media) is the primary way in which workers search for and obtain information about employment opportunities.

115.     Employers and employer agencies, including the Defendant Class Members, routinely send paid Facebook ads to encourage prospective applicants to apply for open positions and to explore their "Careers" or "Jobs" pages on Facebook to learn about a range of job opportunities that are available.  Often, the positions that are being advertised and recruited for are temporary or seasonal positions that will be filled immediately, which means that receiving and responding to the specific advertisement on Facebook is critical to pursuing and obtaining the position of employment and not receiving the specific advertisement will mean that a person will not hear about, pursue, or obtain the position of employment.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

116.    Employers and employment agencies send these ads and conduct this recruitment via Facebook because they know that a significant portion of prospective applicants will only learn about the relevant job opportunities – and will only apply – if they receive a paid ad that is directed to their Facebook news feed.

117.    In fact, many employers, including members of the Defendant Class, collect information on how individuals come to apply for jobs and thus can readily identify how many and what portion of applicants apply for positions of employment due to seeing a Facebook ad.  In many cases, the number and portion of applicants who apply for positions solely or primarily due to seeing a Facebook ad is significant, such that excluding older workers from receiving job ads may result in thousands of fewer applications at a single company in a year and/or result in hundreds to thousands of fewer older workers hired in a single year.

118.    Excluding older workers from receiving employment ads makes it far less likely that older prospective applicants will hear about employment opportunities and, in turn, apply for or secure jobs that are open.  When older workers do not receive an ad, they will not likely know about the specific employment opportunities being offered.  Or, if there is a deadline to apply for a position, they will be less likely to meet that deadline than younger workers.

119.    Due to this pattern or practice of age discrimination in advertising and recruiting, upon information and belief, the number and proportion of older workers in the applicant pools of employers and employment agencies is artificially depressed.  In turn, employers and employment agencies are less likely to hire older workers than they would have otherwise been if they had advertised to and recruited prospective applicants without regard to age—even if they process workers' applications on an equal basis.

120.    Upon information and belief, members of the proposed Plaintiff Class have all suffered these harms by regularly being denied employment ads and recruiting by members of the Defendant Class, which, in turn, deterred them from applying and being hired for various positions at the Defendant Class Members.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

121.    As noted above, upon information and belief, all of the named Plaintiffs have regularly used Facebook to seek employment opportunities, have skills in a range of areas that would qualify them for a range of positions at T-Mobile, Amazon, Cox, and other Defendant Class Members, have routinely been denied employment advertisements and recruitment that similarly situated workers have received throughout the nation, including employment ads and recruitment from T-Mobile, Amazon, Cox, and the Defendant Class Members in this action, and if they had received such ads from each of the Defendant Class Members, they would have clicked on those employment ads in order to learn more about those opportunities and they would have pursued them.  Because these named Plaintiffs did not receive such ads from the Defendant Class Members, they did not learn about specific job opportunities at those employers or employment agencies and were thus deterred from applying for such job opportunities and prevented from being hired for these positions.  Upon information and belief, the named Plaintiffs were qualified to perform one or more job at each of the Defendant Class Members that was offered during the time period at issue in this case.

122.    The magnitude of the harm of this pattern or practice of discrimination on the proposed Plaintiff Class Members is great, because older workers are a large and growing portion of the American labor force.  It is long past the time when workers retired at age 50 or 55 and left the labor force.  Today, older workers are a substantial portion of the national labor force in the United States.  And the labor force participation of older workers has grown much faster in recent years than the labor force participation of younger workers.

123.    According to the Bureau of Labor Statistics ("BLS"), in 2016 there were 86.1 million full time workers between the ages of 25 and 54, and 26.9 million full-time workers who were at least 55 years old.[26]  For part-time workers, older workers make up an even greater share of the employed labor force: in 2016, there were 11.8 million part-time workers between the ages of 25 and 54, and 7.5 million part-time workers who were at least 55 years old.  *Id.*

---

[26] Bureau of Labor Statistics, Labor Force Statistics from the Current Population Survey: Employed and unemployed full- and part-time workers by age, sex, race, and Hispanic or Latino ethnicity, https://www.bls.gov/cps/cpsaat08.htm.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

124.    In addition, the share of older workers in the American labor force is increasing every year.  As BLS recently reported in May of 2017, "about 40 percent of people ages 55 and older were working or actively looking for work in 2014.  That number, known as a labor force participation rate, is expected to increase fastest for the oldest segments of the population—most notably, people ages 65 to 74 and 75 and older—through 2024.  In contrast, participation rates for most other age groups in the labor force aren't projected to change much over the 2014–24 decade."[27]  In addition, "[b]etween 1977 and 2007, employment of workers 65 and over increased 101 percent, compared to a much smaller increase of 59 percent for total employment (16 and over).  The number of employed men 65 and over rose 75 percent, but employment of women 65 and older increased by nearly twice as much, climbing 147 percent."[28]

125.    CWA challenges this pattern or practice of age discrimination on behalf of its own 160,000-plus members who are 40 years old or greater.

126.    As noted above, CWA is an international labor union representing over 700,000 workers in the telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, healthcare, and other industries.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  An important part of protecting the rights of workers and CWA's members is ensuring that all workers are treated fairly and equally in the workplace, regardless of their age, race or color, gender, national origin, disability, sexual orientation, military status or service, and other protected categories recognized by federal, state, and local law.  CWA and its national, regional, and local leaders strive to ensure that the civil rights of workers are respected in the workplaces where they represent workers.

---

[27] Mitra Toossi and Elka Torpey, Bureau of Labor Statistics, Older workers: Labor force trends and career options, https://www.bls.gov/careeroutlook/2017/article/older-workers.htm.

[28] Bureau of Labor Statistics, Older workers: Are there more older people in the workplace?, https://www.bls.gov/spotlight/2008/older_workers/.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

127.    CWA's 700,000-plus members live and work throughout the United States, and search for job opportunities throughout the United States.  Over 160,000 of CWA's members are over age 40 and are protected by federal, state, and local laws that prohibit age discrimination in employment, including in advertising, recruiting, and hiring.  CWA's membership is one of the most diverse in the labor movement, particularly with respect to the variety of industries and positions in which its members work and the industries and positions in which their members seek employment on a regular basis.  CWA's members who are 40-years-old or greater and have used Facebook to seek employment opportunities have been subjected to and harmed by the unlawful discriminatory practices described in this Complaint, and upon information and belief these CWA members are located throughout the United States, including in California, the District of Columbia, and Ohio.  CWA seeks relief in this action on behalf of all of these CWA members who have been impacted nationwide.

128.    CWA has associational standing to bring this suit on behalf of its members because it is a membership organization; many of its members would have standing to sue T-Mobile, Amazon, Cox, and Defendant Class Members under the age discrimination laws under which Plaintiffs assert claims in this action; the interests CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA.  *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333 (1977).

129.    Upon information and belief, thousands of older CWA members have been harmed by being excluded from advertising and recruiting by the Defendants in this action, including Plaintiffs Bradley, Anscombe, Callahan, and Hudson.  These CWA members, who are geographically located in California, Ohio, the District of Columbia, and throughout the nation, would have received far more job advertisements from the Defendant Class Members had the Defendant Class Members not excluded these CWA members from receiving their job advertisements and recruiting.  The exclusion of older workers from new job opportunities makes it harder for them to find jobs when they are unemployed or to find better jobs when they are employed.  As a result, older workers experience longer periods of unemployment and receive

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

lower wages and benefits.  CWA Members Bradley, Anscombe, Callahan, and Hudson have all experienced longer periods of employment because they have not received job advertisements from members of the Defendant Class because of their respective ages.  In this action, CWA seeks an injunction to stop the Defendant Class Members from engaging in age-restricted advertising and recruiting in order to ensure that CWA's members can receive equal opportunity in searching for and applying for jobs.

130.   The practice of excluding older workers from receiving job advertisements via Facebook involves and causes the harm of segregating and classifying applicants and employees based on their age, discriminating against persons because of their age and age-based stereotypes, including the stereotype that older workers are less desirable, productive, efficient, or employable, steering away older applicants from applying for positions for which they are qualified, and denying information to older workers who are entitled to receive information about job opportunities in a non-discriminatory manner.  All of the Plaintiff Class Members, including Bradley, Anscombe, Callahan, and Hudson, have been harmed in all of these ways by the Defendant Class Members.

131.   The Defendant Class Members' practice of excluding older workers from receiving job advertisements via Facebook is a continuing violation, and their agent, Facebook, continues to offer all of the Defendant Class Members tools to exclude older workers from receiving their job advertisements.

## CLASS ACTION ALLEGATIONS

132.   Plaintiffs seek to certify a Plaintiff Class of older workers who were excluded from receiving employment ads by a Defendant Class of large employers and employment agencies who have engaged in the practices challenged in this case, including T-Mobile, Amazon, and Cox.  Plaintiffs will seek to certify the Plaintiff and Defendant Classes pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for both the purposes of injunctive and monetary relief.  In the alternative, Plaintiffs will seek to certify the Plaintiff and Defendant Classes pursuant to Rules 23(a), (b)(2), and (c)(4), or merely under Rules 23(a) and (b)(2).

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

**Rule 23(a)**

133.   **Plaintiff Class Definition.**  Plaintiffs Bradley, Anscombe, Callahan, and Hudson bring each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4) on behalf of the following persons:

> All persons  in  the  United  States  who  from  the  earliest  date  actionable  under  the limitations applicable to the given claim until the date of judgment in this action (1) were 40 years old or older (2) used Facebook during a time in which they were searching for employment, and (3) were excluded from being eligible to receive an employment-related advertisement or notice because one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement or notice.

The limitations period for each claim is the full statute of limitations period for each such claim.

134.   Not included in the Class are the following individuals and/or entities: Facebook's officers and directors and all judges assigned to hear any aspect of this litigation, as well as their staffs and immediate family members.

135.   Plaintiffs will only seek to certify a Plaintiff Class for the purpose of asserting non-federal claims against the members of the Defendant Class.

136.   **Defendant Class Definition.**  Plaintiffs Bradley, Anscombe, Callahan, and Hudson, and CWA bring each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4) against the following persons:

> All employers or employment agencies who annually employ at least 2,500 employees or annually refer for employment at least 2,500 employees, and have purchased or sent employment-related Facebook advertisements or notices that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement or notice, at any time from the earliest date actionable under the limitations period applicable to the given claim, until the date of judgment in this action.

The limitations period for each claim is the full statute of limitations period for each such claim.

137.   Plaintiffs will seek to certify a Defendant Class for the purpose of asserting both federal and state law claims against the members of the Defendant Class, including the federal ADEA claims that each of the Plaintiffs has against any of the Defendant Class Members.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

138.    Plaintiffs may seek to modify the proposed Plaintiff or Defendant Classes as the case proceeds, including to add subclasses based on the industry of the employers or employment agencies and/or add additional Class Representatives who would represent such subclasses.

139.    **Numerosity.**  The Plaintiff Class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known.  Upon information and belief, the class consists of millions of Facebook users who are at least 40 years old, and those users are geographically dispersed throughout the United States.

140.    The Defendant Class is so numerous that joinder of all members is impracticable. The exact size of the class is not known.  Upon information and belief, the Defendant Class may consist of dozens to hundreds of national companies that annually employ or refer for employment at least 2,500 workers.  (Discovery will be needed to identify the precise number of employers and employment agencies who engaged in the practices challenged in this action.)  Those companies' corporate headquarters and operations are geographically dispersed throughout the United States.

141.    **Commonality.**  There are numerous questions of law or fact that are common to the Class Members.  Upon information and belief, the proposed Plaintiff Class Members were subjected to and injured by the same uniform practice in which employers and employment agencies coordinated with Facebook via Facebook's uniform ad platform to exclude older workers from receiving employment advertisements and recruiting; and each member of the Defendant Class engaged in the same practice that Plaintiffs and the Plaintiff Class challenge, which caused Plaintiffs and Plaintiff Class Member to experience the same type of harm, because they were excluded from the population of Facebook users who were eligible to receive employment-related Facebook ads and thus were deprived important information about job opportunities.  Each Defendant Class Member used Facebook's ad platform to place an age ceiling on which Facebook users would see their job advertisements and gave instructions to Facebook to not send the advertisement to anyone above the relevant age ceiling.  Each Defendant Class member consequently excluded older workers from receiving their job advertisements.  And each Defendant Class Member made the same exact statement that it wanted to reach people between a certain age

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

range, communicating the same message regarding its preference, discrimination, or limitation based on age.

142.    The questions of law or fact that are common to the class members include:

(a)    Did Facebook create, develop, and implement an ad platform in which employers and employment agencies can limit which Facebook users will receive employment-related advertisements based on their age?

(b)    Did employer and employment agency members of the Defendant Class purchase and send Facebook ads via Facebook's uniform ad platform that excluded older workers, including members of the Plaintiff Class, from receiving employment-related ads on Facebook?

(c)    Were members of the Plaintiff Class denied the opportunity to receive employment-related advertisements that were purchased and sent by the Defendant Class Members because the Defendant Class Members placed an upper limit on the age of the Facebook users who were eligible to receive the advertisements?

(d)    Did the Defendant Class Members, in excluding older workers from receiving employment-related advertisements, violate state laws that prohibit age discrimination in employment advertising, recruiting, and hiring, including because (1) the ads challenged in this action indicate a preference or discrimination based on age, and (2) the challenged practice constitutes intentional discrimination?

(e)    Whether the pattern or practice challenged in this action is a continuing violation.

(f)    Whether and what types of injunctive and/or declaratory relief should be ordered with respect to the past and ongoing pattern or practice of the Defendant Class Members?

(g)    Whether and what types and amounts of damages should be awarded to Plaintiffs and the members of the proposed Plaintiff Class?

143.    **Typicality.** The claims of the Named Plaintiffs are typical of the claims of the Plaintiff Class they seek to represent.  The claims of the Named Plaintiffs arise from the same

49

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

pattern or practice and rely upon the same legal theories and factual allegations that the challenged pattern or practice violates a variety of state civil rights statutes.  Likewise, upon information and belief, the members of the Defendant Class all engaged in the same uniform practice of excluding older workers from receiving employment-related ads, and the unlawful conduct of the Named Defendants, T-Mobile, Amazon, and Cox, is typical of the unlawful conduct in which the other Defendant Class Members engaged throughout the United States.

144.    **Adequacy.**  The Named Plaintiffs will adequately represent the members of the Class, do not have any conflicts with the other Class Members, and are represented by experienced counsel who have substantial experience in employment discrimination and class action litigation, and who will vigorously prosecute the action on behalf of the Class.

**Rule 23(b)(3)**

145.    This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

146.    The questions of law and fact common to the members of the Plaintiff and Defendant Classes predominate over questions affecting individual class members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

147.    By resolving the common issues described above in a single class proceeding, each member of the proposed Plaintiff Class will receive a determination of whether the employer and employment agency Defendant Class Members violated age discrimination laws by excluding the Plaintiff Class Members from employment ads in the same uniform manner.

148.    Members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions.  Although the relative damages that the Plaintiff Class Members have suffered are not *de minimis*, their damages are modest compared to the expense and burden of individual prosecution of this litigation.  In fact, because Facebook, T-Mobile, Amazon, Cox, and other Defendant Class Members do not disclose to individuals which employment ads they have been excluded from receiving, many Plaintiff Class Members will have no reasonable likelihood of obtaining such information and asserting their claims unless this action proceeds as a class action.

149.   Other than this action, no litigation concerning age discrimination in advertising and recruiting via Facebook ads has been commenced by any member of the Plaintiff Class.

150.   This is not only an appropriate forum for these claims because jurisdiction and venue are proper, but it is the most appropriate forum because all of the purchasing, creating, and sending of the unlawful employment advertisements took place in this District via Facebook's operations and ad platform, which ties together all of the members of the Defendant Class.  Facebook has its headquarters and a substantial portion of its operations in this District.  Moreover, prosecuting this case as a single class action against numerous defendants will ensure that there are not inconsistent judgments and that a single injunction and rule will apply to employers and employment agencies who purchase, create, and send employment ads via Facebook's ad platform.

151.   Concentration of the litigation in this forum is desirable, as this action challenges company-wide practices, and it will benefit the Plaintiff and Defendant Class Members to have all of the Class Members' claims and defenses adjudicated in a single proceeding.

**Rule 23(b)(2)**

152.   This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members have violated age discrimination laws in the same manner as to all members of the Plaintiff Class, and have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Proposed Class they seek to represent.

153.   Upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members expressly excluded older workers from receiving employment advertisements sent via Facebook, and continue to engage in this uniform unlawful practice.  Plaintiffs and the Plaintiff Class seek a declaration that the age discrimination challenged in this action is unlawful and an injunction preventing the Defendant Class Members, including Facebook, from sending such discriminatory ads in the future.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

**Rule 23(c)(4)**

154.    Pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action to adjudicate particular issues that are appropriate to adjudicate with respect to T-Mobile, Amazon, Cox, and all members of the Defendant Class, including but not limited to whether the pattern or practice that they have all, upon information and belief, engaged in—excluding older workers from receiving employment advertisements and recruiting via Facebook's ad platform— violates various civil rights laws that prohibit discrimination in employment advertising, recruiting, and hiring, and whether this unlawful practice should be enjoined to prevent continuing and additional harm to older workers impacted by this practice.

## COLLECTIVE ACTION ALLEGATIONS

155.    Plaintiffs Bradley, Anscombe, Callahan, and Hudson bring this collective action pursuant to the ADEA, 29 U.S.C. § 216(b), 626(b), seeking liability-phase injunctive and declaratory relief, monetary relief, and other make-whole relief on behalf of a collective of all members of the proposed Plaintiff Class:

 All persons in the United States who from the earliest date actionable under the limitations applicable to the given claim until the date of judgment in this action (1) were 40 years old or older (2) used Facebook during a time in which they were searching for employment, and (3) were excluded from being eligible to receive an employment-related advertisement or notice because one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement or notice.

156.    Plaintiffs and other potential members of the collective are similarly situated in that they were all subjected to the same discriminatory publishing, advertising, recruiting, and hiring practices by the Defendant Class members that had the purpose and effect of denying them equal opportunity in job advertising, recruitment, and hiring because of their age.

157.    There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

158.    As part of their regular business practices, the Defendant Class Members have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT      17-cv-07232-BLF

ADEA with respect to Plaintiffs and the collective.  The pattern, practice, and/or policy includes, but is not limited to:

(a)     Publishing or causing to be published employment advertisements or notices that indicate a limitation, preference, or discrimination based on age; and

(b)     Willfully utilizing a system for advertising, recruiting, and hiring employees that classifies and segregates applicants based on age, that excludes applicants ages 40 and over from receiving advertising, recruiting, and hiring opportunities, and that discriminates based on age.

159.     The Defendant Class Members maintained and implemented these policies or practices with the purpose and effect of denying advertising, recruiting, and hiring opportunities to Plaintiffs and members of the collective because of their age, and discouraging and deterring members of the collective from seeking job opportunities at the Defendant Class Members.  These policies or practices cannot be justified on the basis of reasonable factors other than age. The Defendant Class Members are aware or should have been aware that federal law requires them to conduct advertising, recruitment, and hiring without regard to the applicant's age.

## COUNTS

### FIRST COUNT

**Discriminatory Publication or Advertising by an Employer or Employment Agency
Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(e)**

**By the Plaintiffs and Plaintiff Collective Members Against the Defendant Class Members**

160.     Plaintiffs incorporate all foregoing paragraphs into this Count.

161.     The federal Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer or employment agency to print or publish or cause to be printed or published notices or advertisements that relate to employment or referral for employment by an employer or employment agency that indicate any preference, limitation, specification, or distinction based on age. 29 U.S.C. § 623(e) ("It shall be unlawful for an employer, labor organization, or employment agency to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for

53

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age.").

162.   The Defendant Class Members are employers or employment agencies within the meaning of the ADEA, as they employ 20 or more employees in the current calendar year and/or "regularly undertak[e] with or without compensation to procure employees for an employer" or are "an agent of such a person."  29 U.S.C. § 630(b), (c).

163.   The Plaintiff Class Members are applicants and/or employees within the meaning of the ADEA as they are seeking employment from an employer whether directly or through an employment agency.  29 U.S.C. § 630(f).

164.   The Plaintiff Class Members are protected by the ADEA, as they are at least 40 years old.  *See* 29 U.S.C. § 631(a).

165.   As described above, upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members, who are either employers or employment agencies or both, have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements and recruiting on Facebook's ad platform.

166.   This pattern or practice violates the publication provision of the ADEA, 29 U.S.C. § 623(e).  When an employer or employment agency makes a statement within an employment advertisement or notice—in the Why and I Seeing This portion of the advertisement or notice—that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater—for example, by T-Mobile stating that the company wants to reach people between the ages of 18 and 38—the advertisement or notice communicates the message that the employer or employment agency is less interested in or not interested in recruiting or hiring older workers, including workers who are older than the upper age to which the advertisement or notice was sent. Such an advertisement or notice informs the ordinary reader of the advertisement and the public at

54

large, including the named Plaintiffs and proposed Plaintiff Class Members, that the employer

sending the advertisement or notice has a preference for younger workers over older workers in

recruiting and hiring and that the employer or employment agency is limiting job opportunities to

younger workers and drawing a distinction between younger and older workers in the advertising,

recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at

large would, in fact, understand that this message is expressing a preference, discrimination, or

limitation based on age.

167.    In addition, an ordinary reader of the Why am I seeing this portion of the

advertisement or notice would understand that the Defendant Class Member advertiser is, in fact,

sending the advertisement solely to or primarily to persons who are within the stated age range

(such as 18 to 38 years old or 22 to 40 years old) and understand that the Defendant Class Member

advertiser has a preference, discrimination, or limitation based on age.

168.    T-Mobile, Amazon, Cox, and the Defendant Class Members knew or reasonably

should have known that when they directed Facebook—their agent in creating, developing, and

sending their job advertisements—to exclude older workers from seeing their job advertisements

that a portion of the "Sponsored Ad" would make a statement that the employer or employment

agency wants to reach people with a limited age range.  Facebook clearly informs its advertisers

about how its ad platform works and in particular how Facebook's ad transparency functions will

be included with ads that are created and disseminated on Facebook's platform. Facebook publicly

available "Advertiser Help Center" details its policy of telling users why they are being shown

specific ads.  Facebook describes the "Why am I seeing this" function under a sub-section titled

"Our Advertising Principles," and Facebook highlights this function as part of Facebook's

commitment to advertising transparency.  Facebook emphasizes that "anyone can visit their Ad

Preferences to learn about the interests and information that influence the ads they see."

169.    Regardless of Defendant Class Members' knowledge or awareness that such a

statement about targeting younger workers would be made in the Facebook advertisements or

notices, the Defendant Class Members are responsible for the actions of Facebook, their agent in

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1  creating, developing, and sending their job advertisements.  At all times, in excluding older workers

2  from receiving the job advertisements and in making statements about why Facebook users were

3  seeing those job advertisements, Facebook was acting within the scope of its agency relationship to

4  the Defendant Class Members.

5  170.   In addition, regardless of the content of the advertisement or notice, the practice of

6  excluding older workers from receiving employment-related advertisements or notices constitutes

7  the publishing of an advertisement or notice that indicates a preference based on age.  In the same

8  manner that refusing to advertise jobs or housing in predominantly African-American communities

9  indicates a preference based upon race, when the Defendant Class Members undertake advertising

10  campaigns that remove older workers from the population that will receive job-related

11  advertisements and notices that they publish or cause to be published, the ad campaigns indicate a

12  preference, discrimination, or limitation based on age.  An ordinary reader of the Defendant Class

13  Members' age-restricted job advertising campaigns would clearly understand that by excluding

14  older workers from seeing the job ads, the ad campaigns and advertisers and are expressing a

15  preference, discrimination, or limitation based on age.

16  171.   Moreover, when employers or employment agencies use Facebook's ad platform to

17  limit the population of Facebook users who will receive their job advertisements or notices—for

18  example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38

19  years old—the employers or employment agencies are publishing or causing to be published to

20  Facebook an advertisement or notice that indicates a preference or discrimination based on age.

21  Facebook fully understands these discriminatory or preferential notices and instructions, as

22  Facebook routinely or always publishes the job ads or notices and employers or employment

23  agencies tell Facebook that they prefer to send job ads and notices to workers in a younger age

24  range.  These types of advertisements or notices that state that the employer or employment agency

25  wants to reach younger workers and that intentionally exclude older workers from receiving the ads

26  or notices are intended to have and do have the effect of encouraging younger workers to apply for

27  the relevant employment opportunities and discouraging older workers from applying for the

28

56

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1   relevant employment opportunities.

2       172.    Plaintiffs have exhausted their administrative remedies with respect to their ADEA

3   claims.

4                               **SECOND COUNT**

5               **Disparate Treatment Discrimination in**
        **Recruiting and Hiring by an Employer or Employment Agency**

6       **Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), (b)**

7       **By the Plaintiffs and Plaintiff Collective Members Against the Defendant Class Members**

        173.    Plaintiffs incorporate all foregoing paragraphs into this Count.

8       174.    The ADEA makes it unlawful for an employer or an employment agency to fail or

9   refuse to hire an individual or otherwise discriminate against an individual with respect to terms,

10  conditions, or privileges of employment, or to limit or segregate or classify individuals in a way that

11  would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their

12  status as an employee.  29 U.S.C. § 623(a)(1)-(2), (b).

13      175.    Specifically, ADEA § 623(a) provides that it is "unlawful for an employer" "to fail

14  or refuse to hire or to discharge any individual or otherwise discriminate against any individual with

15  respect to his compensation, terms, conditions, or privileges of employment, because of such

16  individual's age," or "to limit, segregate, or classify his employees in any way which would deprive

17  or tend to deprive any individual of employment opportunities or otherwise adversely affect his

18  status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(1)-(2).

19      176.    Likewise, ADEA § 623(b) makes it "unlawful for an employment agency to fail or

20  refuse to refer for employment, or otherwise to discriminate against, any individual because of such

21  individual's age, or to classify or refer for employment any individual on the basis of such

22  individual's age."  29 U.S.C. § 623(b).

23      177.    Both of these provisions prohibit disparate treatment in employment, including with

24  respect to prospective applicants or applicants for employment.

25      178.    As described above, upon information and belief, T-Mobile, Amazon, Cox, and the

26  Defendant Class Members, who are either employers or employment agencies or both, have a

27  pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring

28
                                        57

by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

179.     The Defendant Class Members are employers or employment agencies within the meaning of the ADEA, as they employ 20 or more employees in the current calendar year and/or "regularly undertak[e] with or without compensation to procure employees for an employer" or are "an agent of such a person."  29 U.S.C. § 630(b), (c).

180.     The Plaintiff Class Members are applicants and/or employees within the meaning of the ADEA as they are seeking employment from an employer whether directly or through an employment agency.  29 U.S.C. § 630(f).

181.     The Plaintiffs Class Members are protected by the ADEA, as they are at least 40 years old.  *See* 29 U.S.C. § 631(a).

182.     This pattern or practice of discrimination challenged in this action is undertaken by these employers and employment agencies with the intent and purpose of discouraging and preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.  This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.

183.     In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that young workers do receive

from the same employers and employment agencies.

184.    Upon information and belief, the Defendant Class Members have intentionally excluded older workers from receiving their job advertisements via Facebook because the Defendant Class Members prefer to have younger workers apply for jobs at their companies at a higher rate than older workers do, and because the Defendant Class Members know and intend that sending thousands to millions of job advertisements to younger workers but not to older workers will increase the number of younger persons who will click on the ads and apply for jobs at the employers or employment agencies and will decrease the number of older persons who will click on the ads and apply for jobs at the employers or employment agencies, and moreover the Defendant Class Members know and intend that this discriminatory advertising practice will increase the number of younger workers hired by them and decrease the number of older workers hired by them. Indeed, in the case of each Defendant Class Member, at least one of its employees or agents knowingly and purposefully changed the age range for the job advertisement population from the standard 18+ setting (which reaches all people 18 and over) to a smaller range such as 18 to 38-years-old.

185.    Upon information and belief, by excluding older workers from receiving their job advertisements via Facebook, the Defendant Class Members and their discriminatory advertising campaigns have caused significantly fewer older workers to click on job ads for these employers or employment agencies, significantly fewer older workers to apply for the advertised positions, and significantly fewer older workers to be hired by these employers or employment agencies, including the named Plaintiffs who would have pursued employment opportunities for which they were qualified at the Defendant Class Members had they been affirmatively contacted by the companies via a job advertisement on Facebook.

186.    Moreover, upon information and belief, the Defendant Class Members received real-time information from Facebook about the performance of their job advertising campaigns, which informed the Defendant Class Members that their discriminatory exclusion of older workers from the population that would receive the job advertisements was working as the Defendant Class

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

1  Members intended—to effectively eliminate older workers from receiving, seeing, and interacting
2  with the ads, and applying for positions at their companies.

3      187.   Upon information and belief, even when certain job openings are posted on the
4  internet publicly, a substantial portion of people who apply for those job openings will hear about
5  and apply for those jobs solely because they become aware of those job openings through a paid job
6  advertisement on Facebook.  Accordingly, refusing to send older workers job advertisements on
7  Facebook while sending job advertisements to younger workers causes a larger number of younger
8  workers to apply for the jobs than older workers compared to a situation in which all workers
9  received the job advertisements without regard to their age.  This practice is analogous to offline
10 discriminatory recruitment that steers younger workers into applying and steers older workers away
11 from applying.  Upon information and belief, each of the Defendant Class Members received
12 significantly fewer applications from older workers and hired fewer workers than they would have
13 received and hired had they not excluded older workers from receiving their job advertisements on
14 Facebook.  And by artificially reducing the number of older workers who applied and were hired,
15 the Defendant Class Members' practice of excluding older workers from receiving their job
16 advertisements on Facebook caused a greater number of similarly situated younger workers to
17 apply and be hired by the Defendant Class Members relative to similarly situated older workers.

18     188.   As noted above, Plaintiffs have exhausted their administrative remedies with respect
19 to their ADEA claims against the Defendants.

20                        **THIRD COUNT**
21   **Discriminatory Publication or Advertising by an Employer or Employment Agency**
        **State Law Claims (California, District of Columbia, and Ohio)**
22    **By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members**
23     189.   Plaintiffs incorporate all foregoing paragraphs into this Count.
24     190.   The California Fair Employment and Housing Act ("FEHA"), the District of
25 Columbia Human Rights Act ("DCHRA"), and the Ohio Fair Employment Practices Law
26 ("OFEPL") make it unlawful for an employer or employment agency to publish or print or cause to
27 be printed or published notices or advertisements that relate to employment or referral for
28                                    60

employment by an employer or employment agency that indicate any preference, limitation, specification, or distinction based on age.  Cal. Gov. Code §12940(d); D.C. Code § 2–1402.11(a)(4)(B); Ohio Rev. Code Ann. § 4112.02(E)(4).

191.   The Defendant Class Members are employers or employment agencies within the meaning of the California FEHA, the DCHRA and OFEPL as they employ for compensation or are persons who act in the interests of employers directly or indirectly, or they procure employees for an employer or procure for employees opportunities to work for an employer, including agents of such an employment agency.  Cal. Gov. Code § 12926(d)-(e); D.C. Code § 2–1401.02(10), (11); Ohio Rev. Code Ann. § 4112.01(2), (5).

192.   The Plaintiff Class Members are applicants and/or employees within the meaning of the California FEHA, DCHRA and OFEPL as they are seeking employment from an employer or an employment agency.  Cal. Gov. Code § 12926(c); D.C. Code § 2–1401.02(9); Ohio Rev. Code Ann. § 4112.01(3).

193.   The Plaintiffs Class Members are protected by these statutory provisions, as they are at least 40 years old.  *See* Cal. Gov. Code § 12926(b) (age protects individuals who are 40 years of age and over); D.C. Code § 2–1401.02(2) (age protects individuals 18 years of age or older); Ohio Rev. Code Ann. § 4112.14(A) (40 or older).

194.   As described above, upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members, who are either employers or employment agencies or both, have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements and recruiting on Facebook's ad platform.

195.   This pattern or practice violates the publication provision of the California FEHA, DCHRA, and OFEPL identified earlier in this count.  When an employer or employment agency makes a statement within an employment advertisement or notice that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater—for

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

example, by T-Mobile stating that the company wants to reach people between the ages of 18 and 38—the advertisement or notice communicates the message that the employer or employment agency is less interested in or not interested in recruiting or hiring older workers, including workers who are older than the upper age to which the advertisement or notice was sent.  Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including the named Plaintiffs and proposed Plaintiff Class Members, that the employer sending the advertisement or notice has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, or limitation based on age.

196.    In addition, an ordinary reader of the "Why and I Seeing This" portion of the advertisement or notice would understand that the Defendant Class Member advertiser is, in fact, sending these advertisements solely to or primarily to persons who are within the stated age range (such as 18 to 38 years old, or 22 to 40 years old) and understand that the Defendant Class Member advertiser has a preference, discrimination, or limitation based on age.

197.    T-Mobile, Amazon, Cox, and the Defendant Class Members knew or reasonably should have known that when they directed Facebook—their agent in creating, developing, and sending their job advertisements—to exclude older workers from seeing their job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach people between a certain age range.

198.    Regardless of Defendant Class Members' knowledge or awareness that such a statement about an age range would be made in the Facebook advertisement or notice, the Defendant Class Members are responsible for the actions of Facebook, their agent in creating, developing, and sending their job advertisements.  At all times, in excluding older workers from receiving the job advertisements and in making statements about why Facebook users were seeing

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

those job advertisements, Facebook was acting within the scope of its agency relationship to the Defendant Class Members.

199.    In addition, regardless of the content of the advertisement or notice, the practice of excluding older workers from receiving employment-related advertisements or notices constitutes publishing or causing to published an advertisement or notice that indicates a preference based on age.  In the same manner that refusing to advertise jobs or housing in predominantly African-American communities indicates a preference based upon race, when the Defendant Class Members undertake ad campaigns that remove older workers from the population that will receive job-related advertisements and notices that they publish or cause to be published, the ad campaigns indicate a preference, discrimination, or limitation based on age.  An ordinary reader of the Defendant Class Members' age-restricted job advertising campaigns would understand that by excluding older workers from seeing the job ads the ad campaigns and Defendant Class Members are expressing a preference, discrimination, or limitation based on age.

200.    Moreover, when employers or employment agencies use Facebook's ad platform to limit the population of Facebook users who will receive their job advertisements or notices—for example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38 years old—the employers or employment agencies are publishing or causing to be published to Facebook an advertisement or notice that indicates a preference or discrimination based on age. Facebook fully understands these discriminatory or preferential notices and instructions, as Facebook routinely or always publishes the job ads or notices or employers or employment agencies tell Facebook that they prefer to send job ads and notices to workers in a younger age range. These types of advertisements or notices that state that the employer or employment agency wants to reach younger workers and that intentionally exclude older workers from receiving the ads or notices are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT    17-cv-07232-BLF

201.    The DCHRA and OFEPL under which Plaintiffs bring their claims do not require exhaustion of administrative remedies before filing an action in court.  *See* D.C. Code § 2–1403.16(a) (stating that an action may be filed in court without filing a charge of discrimination); Ohio Rev. Code Ann. § 4112.02(L) (stating that an aggrieved individual may enforce his or her rights by instituting a civil action).  As noted above, Plaintiffs have exhausted their administrative remedies with respect to their California FEHA claims against the Defendants.

**FOURTH COUNT**

**Intentional Discrimination in
Recruiting and Hiring by an Employer or Employment Agency
State Law Claims (California, District of Columbia, and Ohio)**

**By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members**

202.    Plaintiffs incorporate all foregoing paragraphs into this Count.

203.    The California FEHA, DCHRA and OFEPL make it unlawful for an employer or an employment agency to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment, or to limit or segregate or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their status as an employee. Cal. Gov. Code §12940(d); D.C. Code § 2–1402.11(a)(1)-(2); Ohio Rev. Code Ann. §§ 4112.02(A), (B), 4112.14(A).

204.    The California FEHA, DCHRA and OFEPL identified in the prior paragraph prohibit intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

205.    As described above, upon information and belief, T-Mobile, Amazon, Cox, and the Defendant Class Members, who are either employers or employment agencies or both, have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile, Amazon, Cox, and the Defendant Class Members direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT      17-cv-07232-BLF

206.    The Defendant Class Members are employers or employment agencies within the meaning of the California FEHA, DCHRA and OFEPL, as they employ for compensation or are persons who act in the interests of employers directly or indirectly, or they procure employees for an employer or procure for employees opportunities to work for an employer, including agents of such an employment agency.  Gov. Code § 12926(d)-(e); D.C. Code § 2–1401.02(10), (11); Ohio Rev. Code Ann. § 4112.01(2), (5).

207.    The Plaintiff Class Members are employees within the meaning of the California FEHA, DCHRA and OFEPL as they are seeking employment from an employer or an employment agency.  Cal. Gov. Code § 12926(c); D.C. Code § 2–1401.02(9); Ohio Rev. Code Ann. § 4112.01(3).

208.    The Plaintiff Class Members are protected by these statutory provisions, as they are at least 40 years old.  *See* Cal. Gov. Code § 12926(b) (age protects individuals who are 40 years of age and over); D.C. Code § 2–1401.01(2); Ohio Rev. Code Ann. § 4112.14(A).

209.    This pattern or practice of discrimination challenged in this action is undertaken by these employers and employment agencies with the intent and purpose of discouraging and preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.  This pattern or practice of discrimination constitutes intentional discrimination under the California FEHA, DCHRA, and OFEPL identified earlier in this Count.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1  advertising, recruitment, and hiring opportunities that young workers do receive from the same

2  employers and employment agencies.

3  210.   Upon information and belief, the Defendant Class Members have intentionally

4  excluded older workers from receiving their job advertisements via Facebook because the

5  Defendant Class Members prefer to have younger workers apply for jobs at their companies at a

6  higher rate than older workers do, and because the Defendant Class Members know and intend that

7  sending thousands to millions of job advertisements to younger workers but not to older workers

8  will increase the number of younger persons who will click on the ads and apply for jobs at the

9  employers or employment agencies and will decrease the number of older persons who will click on

10  the ads and apply for jobs at the employers, and moreover the Defendant Class Members know and

11  intend that this discriminatory advertising will increase the number of younger workers hired by

12  them and decrease the number of older workers hired by them.  Indeed, in the case of each

13  Defendant Class Member, at least one of its employees or agents knowingly and purposefully

14  changed the age range for the job advertisement from the standard 18+ setting (which reaches all

15  people 18 and over) to a smaller range such as 18 to 38 years old.

16  211.   Upon information and belief, by excluding older workers from receiving their job

17  advertisements via Facebook, the Defendant Class Members and their discriminatory advertising

18  campaigns have caused significantly fewer older workers to click on job ads for these employers or

19  employment agencies, significantly fewer older workers to apply for the advertised positions, and

20  significantly fewer older workers to be hired by these employers or employment agencies, including

21  the named Plaintiffs who would have pursued employment opportunities for which they were

22  qualified at the Defendant Class Members had they been affirmatively contacted by the companies

23  via a job advertisement on Facebook.

24  212.   Moreover, upon information and belief, the Defendant Class Members received real-

25  time information from Facebook about the performance of their job advertising campaigns, which

26  informed the Defendant Class Members that their discriminatory exclusion of older workers from

27  the population that would receive the job advertisements was working as intended—to effectively

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

eliminate older workers from receiving, seeing, and interacting with the ads, and applying for positions at their companies.

213.    Upon information and belief, even when certain job openings are posted on the internet publicly, a substantial portion of people who apply for those job openings will hear about and apply for those jobs solely because they become aware of those job openings through a paid job advertisement on Facebook.  Accordingly, refusing to send older workers job advertisements on Facebook while sending job advertisements to younger workers causes a larger number of younger workers to apply for the jobs than older workers to apply for the jobs compared to a situation in which all workers received the job advertisements without regard to their age.  This practice is analogous to offline discriminatory recruitment.  Upon information and belief, each of the Defendant Class Members received significantly fewer applications from older workers and hired fewer workers than they would have otherwise received and hired had they not excluded older workers from receiving their job advertisements on Facebook.  And by reducing the number of older workers who applied and were hired, the Defendant Class Members' practice of excluding older workers from receiving their job advertisements on Facebook caused a greater number of similarly situated younger workers to apply and be hired by the Defendant Class Members relative to similarly situated older workers.

214.    The DCHRA and OFEPL under which Plaintiffs bring their claims do not require exhaustion of administrative remedies before filing an action in court.  *See* D.C. Code § 2–1403.16(a); Ohio Rev. Code Ann. § 4112.02(L).   As noted above, Plaintiffs have exhausted their administrative remedies with respect to their California FEHA claims against the Defendants.

## FIFTH COUNT

### California Unruh Civil Rights Act
### Cal. Civ. Code § 51

### By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members

215.    Plaintiffs incorporate all foregoing paragraphs into this Count.

216.    The California Unruh Civil Rights Act provides in part: "All persons within the jurisdiction of this state are free and equal" and "are entitled to full and equal accommodations,

advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

217.    The lists of protected classes in the Unruh Act are not exclusive and extend beyond the protected classes enumerated in the law.  Accordingly, California appellate courts have held that "the Unruh Act proscribes arbitrary discrimination based on an individual's age—a personal characteristic similar to the classifications enumerated in the Act."  *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1145 (Ct. App. 2018).

218.    The Defendant Class Members, including T-Mobile, Amazon, and Cox, are business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51(b), as they have fixed locations of business in California, they sell goods and services to consumers throughout California, their primary purpose and goals are to conduct business, generate revenue, and earn profit, and they earn millions of dollars—and likely billions of dollars in the case of T-Mobile and Amazon—in revenues from their business activities in California.

219.    The Unruh Act applies to business transactions and services that are conducted via the internet, as well as internet-related conduct that is related to the activities of traditional brick-and-mortar establishments that have fixed, traditional presences.

220.    By purchasing, authorizing, and sending job advertisements to Facebook users throughout the nation (including in California) that excluded older workers from receiving such job advertisements, and segregating younger and older workers in their job advertising, the Defendant Class Members, including T-Mobile, Amazon, and Cox, intentionally discriminated against persons because of their age and deprived persons the full and equal advantages, privileges, and services in their business establishments because of such persons' ages, including by denying them information about employment opportunities and information about their services, goods, and establishments. By engaging in this unlawful practice in their online job advertising, the Defendant Class Members, including T-Mobile, Amazon, and Cox, discriminatorily prevented older workers from experiencing online and offline opportunities to learn about and participate fully in the employment opportunities and other services of these employers' business establishments and prevented or deterred them from

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

1  contracting with such employers.

2      221.    These and other discriminatory practices described in this Complaint constitute

3  disparate treatment and intentional discrimination that violates Cal. Civ. Code § 51(b).

4      222.    For violating Cal. Civ. Code § 51, the Defendant Class Members are liable to

5  Plaintiffs and the Plaintiff Class Members in the amount of no less than $4,000 for each and every

6  violation.  In this case, there is a violation each time an impression of a job ad of the Defendant

7  Class Members was not sent to a person who is 40-years-old or older because the person was

8  excluded from receiving the advertisement because of his or her age.

9  ### SIXTH COUNT

10  ### California Unruh Civil Rights Act
### Cal. Civil Code § 51.5

11  ### By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members

12      223.    Plaintiffs incorporate all foregoing paragraphs into this Count.

13      224.    The California Unruh Civil Rights Act provides in part:  "No business establishment

14  of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from,

15  contract with, sell to, or trade with any person in this state on account of any characteristic listed or

16  defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders,

17  directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or

18  customers, because the person is perceived to have one or more of those characteristics, or because

19  the person is associated with a person who has, or is perceived to have, any of those

20  characteristics."  Cal. Civ. Code § 51.5(a).

21      225.    Cal. Civ. Code § 51(b) prohibits age discrimination.

22      226.    The Defendant Class Members, including T-Mobile, Amazon, and Cox, are business

23  establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51(b), as they have fixed

24  locations of business in California, they sell goods and services to consumers throughout California,

25  their primary purpose and goals are to conduct business, generate revenue, and earn profit, and they

26  earn millions of dollars—and likely billions of dollars in the case of T-Mobile and Amazon—in

27  revenues from their business activities in California.

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT     17-cv-07232-BLF

227.     By purchasing, authorizing, authorizing, and sending job advertisements to Facebook users throughout the nation that excluded older workers from receiving such job advertisements, and segregating younger and older workers in their job advertising, the Defendant Class Members, including T-Mobile, Amazon, and Cox, intentionally discriminated against persons because of their age and have boycotted, blacklisted, refused to contract with, sell to, and trade with persons because of their age, including by denying them information about employment opportunities and information about their services, goods, and establishments, and preventing or deterring them from contracting with such employers.  By engaging in this unlawful practice in their online job advertising, the Defendant Class Members, including T-Mobile, Amazon, and Cox discriminatorily prevented older workers from experiencing the online and offline opportunities to learn about and participate fully in the employment opportunities and other services of these employers' business establishments.  These and other discriminatory practices described in this Complaint constitute disparate treatment and intentional discrimination that violates Cal. Civ. Code § 51.5.

228.     For violating Cal. Civ. Code § 51.5, the Defendant Class Members are liable to Plaintiffs and the Plaintiff Class Members in the amount of no less than $4,000 for each and every violation.  In this case, there is a violation each time an impression of a job ad of the Defendant Class Members was not sent to a person who is 40-years-old or older because the person was excluded from receiving the advertisement because of his or her age.

### SEVENTH COUNT

**Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200, *et seq*.**

**By the Plaintiffs and Plaintiff Class Members Against the Defendant Class Members**

229.     Plaintiffs incorporate all foregoing paragraphs into this Count.

230.     Unfair practices prohibited by the UCL include "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

231.     The named Defendants and Defendant Class Members have committed unlawful and unfair business practices, including but not limited to discriminating against Plaintiffs and Class

70

1    Members because of their age in violation of the FEHA's employment discrimination provisions

2    and in violation of the Unruh Act.

3            232.    As described above, due to the unlawful and unfair business practices of the

4    Defendants and Defendant Class Members, Plaintiffs and Plaintiff Class Members have suffered

5    injury in fact, including being denied information about job opportunities and other services, and

6    being denied wages and other benefits of employment that they would have pursued and obtained

7    had they received equal and fair employment advertising, recruitment, and hiring.

8            233.    The Defendants and Defendant Class Members' conduct alleged herein occurred

9    during the four years preceding the filing of the Original Complaint.

10           234.    The Defendants and Defendant Class Members unfairly obtained profits as a direct

11   and proximate result of their unlawful and unfair conduct alleged herein.  Plaintiffs and Plaintiff

12   Class Members are therefore entitled to disgorgement by the Defendants and Defendant Class

13   Members of those profits.

14           235.    Defendants and Defendant Class Members committed the unlawful actions herein

15   despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring

16   Plaintiffs and Plaintiff Class Members, from an improper and evil motive amounting to malice, and

17   in conscious disregard of the rights of Plaintiffs and the Plaintiff Class Members. Plaintiffs and

18   Class Members are therefore entitled to recover punitive damages from Defendants in an amount

19   according to proof.

20           236.    Plaintiffs and Class Members are entitled to declaratory relief declaring that the

21   Defendants and Defendant Class Members' pattern or practice of excluding older workers from

22   receiving equal advertising, recruiting, and hiring is unlawful and appropriate injunctive relief.

23

24                                    *        *        *

25

26

27

28
                                            71

1

**PRAYER FOR RELIEF**

2
  WHEREFORE, Plaintiffs pray that judgment be entered against T-Mobile, Amazon, Cox,

3
and the Defendant Class Members on all claims and respectfully request that this Court award the

4
following relief:

5
    A. Declare that the pattern or practice described above violates the federal
6
      ADEA, the California FEHA, California Unruh Act, California UCL,
      DCHRA, and OFEPL;

7

    B. Enter an order preliminarily and permanently enjoining T-Mobile, Amazon,
8
      Cox, and members of the Defendant Class from continuing to engage in acts
      that violate the same federal and state statutes;

9

10
    C. Certify a Plaintiff and a Defendant Class under Rule 23(a), (b)(3), or in the
      alternative under Rule 23(a), (b)(2), and (c)(4) of the Federal Rules of Civil
11
      Procedure, certify a collective action under 29 U.S.C. § 216(b) and 626(b),
      appoint Plaintiffs' counsel as Class Counsel, appoint the Named Plaintiffs as
12
      the Plaintiff Class and Collective Representatives, and appoint T-Mobile,
      Amazon, and Cox as the Defendant Class Representatives;

13

14
    D. Require T-Mobile, Amazon, Cox, and members of the Defendant Class to
      pay Plaintiffs and members of the Plaintiff Class for the back pay and other
15
      economic harm they have suffered due to such unlawful age discrimination,
      as well as any restitution, p enalties, liquidated damages, exemplary damages,
16
      punitive damages, and pre-judgment and post-judgment interest as provided
      by law, that may be owed;

17

18
    E. Require T-Mobile, Amazon, Cox, and the Defendant Class Members to pay
      Plaintiffs' attorneys' fees and costs;

19

20
    F. Appoint a monitor to ensure that T-Mobile, Amazon, Cox, and members of
      the Defendant Class comply with the injunction provisions of any decree that
21
      the Court orders;

22
    G. Enter an order retaining jurisdiction over this action to ensure that T-Mobile,
      Amazon, Cox, and members of the Defendant Class comply with such a
23
      decree; and

24
    H. Grant such other and further relief as the Court deems proper, appropriate,
25
      just, or equitable.

26

27

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT  17-cv-07232-BLF

1

## DEMAND FOR JURY TRIAL

2      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 623(c)(2),

3  Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they

4  have a right to jury trial.

5  Respectfully submitted,                              August 20, 2018

6
                                                     */s/ Peter Romer-Friedman*
7      Jahan C. Sagafi (Cal. Bar No. 224887)        P. David Lopez (*pro hac vice*)
       OUTTEN & GOLDEN LLP                          Peter Romer-Friedman (*pro hac vice*)
8      One Embarcadero Center, 38th Floor           OUTTEN & GOLDEN LLP
       San Francisco, CA 94111 Telephone:           601 Massachusetts Ave. NW
9      (415) 638-8800 Facsimile:  (415)             Second Floor West
       638-8810                                     Washington, DC 20001
10     E-mail: jsagafi@outtengolden.com             Telephone: (202) 847-4400 Facsimile:
                                                    (646) 952-9114
11                                                  E-mail: pdl@outtengolden.com
12                                                  E-mail: prf@outtengolden.com

13     Patricia Shea (*pro hac vice*) Katherine     Adam T. Klein (*pro hac vice*)
       A. Roe (*pro hac vice*)                      Robert N. Fisher (Cal. Bar No. 302919)
14     COMMUNICATIONS WORKERS  OF                   Jared W. Goldman (*pro hac vice*)
       AMERICA                                      OUTTEN & GOLDEN LLP
15      501 3rd Street, N.W.                        685 Third Avenue, 25th Floor
        Washington, DC 20001                        New York, NY 10017
16      Telephone: (202) 434-1100                   Telephone: (212) 245-1000 Facsimile:
       E-mail: pats@cwa-union.org                   (646) 509-2060
17     E-mail: aroe@cwa-union.org                   E-mail: atk@outtengolden.com
18                                                  E-mail: rfisher@outtengolden.com E-
                                                    mail: jgoldman@outtengolden.com
19

20          *Attorneys for Plaintiffs and the Proposed Plaintiff Class and Collective*

21

22

23

24

25

26

27

28
                                            73