GIBSON, DUNN & CRUTCHER LLP
JASON C. SCHWARTZ, admitted *pro hac vice*
  jschwartz@gibsondunn.com
JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
GRETA B. WILLIAMS, SBN 267695
  gbwilliams@gibsondunn.com
ANNA M. MCKENZIE, *pro hac vice* application forthcoming
  amckenzie@gibsondunn.com
NAIMA L. FARRELL, *pro hac vice* application forthcoming
  nfarrell@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile:  202.467.0539

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Amazon.com, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| LINDA BRADLEY, et al., | CASE NO. 5:17-cv-07232-BLF |
|---|---|
| Plaintiffs, | **DEFENDANT AMAZON.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| T-MOBILE US, INC., et al., | |
| Defendants. | **Hearing:**<br>Date:    January 24, 2019<br>Time:    9:00 a.m.<br>Place:   San Jose Courthouse, Courtroom 3<br>Judge:   Hon. Beth L. Freeman |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on January 24, 2019, or as soon thereafter as the matter may be heard before the Honorable Beth L. Freeman, in Courtroom 3 of the United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendant Amazon.com, Inc. ("Amazon") will and hereby does move this Court under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing all of the claims and causes of action contained in Plaintiffs' Third Amended Complaint.

For the reasons set forth in the Memorandum of Points and Authorities that follows, Amazon moves this Court (1) under Rule 12(b)(1) to dismiss Plaintiffs' advertising claim under the Age Discrimination in Employment Act, *see* 29 U.S.C. § 623(e), all the claims asserted by the Communications Workers of America, and the claims Plaintiffs assert under the laws of the District of Columbia and California, for lack of subject matter jurisdiction because Plaintiffs have not established their standing to sue under Article III of the United States Constitution with respect to those claims; (2) under Rule 12(b)(2) to dismiss all of Plaintiffs' claims for lack of personal jurisdiction; and (3) under Rule 12(b)(6) to dismiss all of Plaintiffs' claims for failure to state a claim.

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1

II. ALLEGED FACTS AND PROCEDURAL HISTORY ................................................. 2

III. ARGUMENT ........................................................................................................ 4

    A.    Plaintiffs Lack Standing To Pursue Most Of Their Claims. ......................................... 4

        1.    Plaintiffs Do Not Have Standing To Pursue Their Advertising Claims. .......... 5

        2.    CWA Does Not Have Standing To Assert Any Claims. .................................. 6

        3.    Plaintiffs Lack Standing To Bring Claims Under California And D.C. Law. ................................................................................................................. 7

    B.    The Court Should Dismiss Plaintiffs' Claims For Lack Of Personal Jurisdiction. ................................................................................................................. 8

    C.    The Court Should Dismiss Plaintiffs' Claims For Failure To State A Claim. ............. 13

        1.    Plaintiffs Have Not Stated A Claim Of Discriminatory Advertising (Count I). ..................................................................................................... 13

        2.    Plaintiffs Have Not Stated A Claim Of Disparate Treatment (Count II). ....... 17

            a.    Plaintiffs Fail To Allege They Would Have Learned About Amazon Job Opportunities But For Their Age. ................................. 17

            b.    Plaintiffs Have Not Alleged The Elements Of A Failure-To-Hire Claim. ...................................................................................... 18

            c.    Plaintiffs Have Not Alleged Discrimination Against Any Individual With Respect To Compensation, Terms, Or Privileges Of Employment. ................................................................ 21

            d.    Plaintiffs Have Not Adequately Alleged That Amazon Intended To  Discriminate Based On Age. ..................................................... 22

        3.    Plaintiffs Have Not Stated A Claim For Unlawful Employment Agency Practices. .................................................................................................... 23

        4.    Plaintiffs' State Law Claims Also Fail As A Matter Of Law. ........................ 24

IV. CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams Shell v. Shell Oil Co.*,
165 F. Supp. 2d 1096 (C.D. Cal. 2001) ........................................................................10

*Advice Co. v. Novak*,
2009 WL 210503 (N.D. Cal. Jan. 23, 2009) .................................................................12

*Ahmed v. Cty. of Sacramento*,
2011 WL 3876172 (E.D. Cal. Sept. 1, 2011) ................................................................18

*Al Haj v. Pfizer Inc.*,
2018 WL 1784126 (N.D. Ill. Apr. 13, 2018) ................................................................12

*Alcorn v. Anbro Eng'g, Inc.*,
468 P.2d 216 (Cal. 1970) ..............................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................13, 22

*Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*,
159 F.3d 1178 (9th Cir. 1998) .........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................13

*Bellinger v. Coos Bay Sch. Dist.*,
711 F. App'x 398 (9th Cir. 2017) ..................................................................................19

*Borja-Valdes v. City & Cty. of S.F.*,
2015 WL 5522287 (N.D. Cal. Sept. 18, 2015) .............................................................19

*Boyd v. City of Wilmington, N.C.*,
943 F. Supp. 585 (E.D.N.C. 1996) ...........................................................................14, 15

*Bradley v. Cty. of Sacramento Dep't of Human Assistance of N. Cal. Welfare Div.*,
2014 WL 4078945 (E.D. Cal. Aug. 14, 2014) ..............................................................20

*Brazil v. Dole Food Co., Inc.*,
2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ...................................................6, 16, 17

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) ............................................................................8, 10, 11, 12, 13

*Broomfield v. Craft Brew All., Inc.*,
2017 WL 3838453 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, 2017 WL
5665654 (N.D. Cal. Nov. 27, 2017) ................................................................................7

Gibson, Dunn &
Crutcher LLP

*Brush v. San Francisco Newspaper Printing Co.*,
   315 F. Supp. 577 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972)....................23, 24

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015), *aff'd*, 2017 WL 6525501 (9th Cir. Dec. 21, 2017) ............................................................................................................................10

*Carr v. Beverly Health Care & Rehab. Servs., Inc.*,
   2013 WL 5946364 (N.D. Cal. Nov. 5, 2013)......................................................................20

*Cole v. Boeing Co.*,
   845 F. Supp. 2d 277 (D.D.C. 2012) ............................................................................7, 8

*College Source, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011)..............................................................................................12

*Cummins v. City of Yuma*,
   2009 WL 10673475 (D. Ariz. Feb. 5, 2009), *aff'd* 410 F. App'x 72 (9th Cir. 2011) ....................19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..........................................................................................................9, 10

*Davis v. D.C.*,
   246 F. Supp. 3d 367 (D.D.C. 2017) .....................................................................................6

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................................................7

*E.E.O.C. v. Marion Motel Assocs.*,
   763 F. Supp. 1338 (W.D.N.C. 1991), *aff'd*, 961 F.2d 211 (4th Cir. 1992)....................14

*Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*,
   833 F.2d 1334 (9th Cir. 1987)..............................................................................................23

*Enoh v. Hewlett Packard Enter. Co.*,
   2018 WL 3377547 (N.D. Cal. July 11, 2018) .....................................................................12

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
   829 F. Supp. 402 (D.D.C. 1993), *aff'd in part, rev'd in part on other grounds*, 28 F.3d 1268 (D.C. Cir. 1994) ...............................................................................................5

*Fenerjian v. Nongshim Co., Ltd*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ..................................................................................7

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................................7

*Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*,
   685 F.2d 1149 (9th Cir. 1982)..............................................................................................20

*Glabecki v. Gorman-Lavelle Corp.*,
　2018 WL 2299168 (N.D. Ohio May 21, 2018)...............................................................24

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
　564 U.S. 915 (2011) ......................................................................................................8, 9

*Grant v. Harcourt Brace Coll. Publishers*,
　191 F.3d 452 (6th Cir. 1999).............................................................................................25

*In re Graphics Processing Units Antitrust Litig.*,
　527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................................7

*Greenfield v. Field Enters., Inc.*,
　1972 WL 155 (N.D. Ill. Feb. 1, 1972) ..............................................................................24

*Gross v. FBL Fin. Servs., Inc.*,
　557 U.S. 167, 129 S. Ct. 2343 (2009)...............................................................................17

*Guz v. Bechtel Nat'l, Inc.*,
　8 P.3d 1089 (Cal. 2000) ...................................................................................................25

*Hailes v. United Air Lines*,
　464 F.2d 1006 (5th Cir. 1972)........................................................................................4, 5

*Hazen Paper Co. v. Biggins*,
　507 U.S. 604 (1993)..........................................................................................................22

*Heath v. Google*,
　No. 5:15-cv-1824-BLF, Tr. of Proceedings (N.D. Cal. July 12, 2018) ...........................22

*Henderson v. United Student Aid Funds, Inc.*,
　2015 WL 12658485 (S.D. Cal. Apr. 8, 2015) ...................................................................10

*Hishon v. King & Spalding*,
　467 U.S. 69 (1984).............................................................................................................21

*Hodgson v. Approved Pers. Serv., Inc.*,
　529 F.2d 760 (4th Cir. 1975).............................................................................................14

*Horowitz v. AT&T Inc.*,
　2018 WL 1942525 (D.N.J. Apr. 25, 2018) .......................................................................12

*Illinois v. Xing Ying Emp't Agency*,
　2018 WL 1397427 (N.D. Ill. Mar. 20, 2018)....................................................................14

*Int'l Bhd. of Teamsters v. United States*,
　431 U.S. 324 (1977)...........................................................................................................19

*Jenkins v. Pooke*,
　2009 WL 10692010 (N.D. Cal. July 13, 2009)..................................................................12

*JibJab Media Inc. v. White Castle Mgmt.*,
  2013 WL 12123696 (C.D. Cal. May 14, 2013) ...................................................12

*Knapp v. Sage Payment Sols., Inc.*,
  2018 WL 659016 (N.D. Cal. Feb. 1, 2018) .......................................................16

*Koslow v. Epstein Becker & Green, P.C.*,
  1998 WL 241642 (D.D.C. Mar. 10, 1998), *vacated*, 1998 WL 412417 (D.D.C.
  June 22, 1998) ...................................................................................................24

*Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*,
  78 F.3d 1360 (9th Cir. 1995) ..............................................................................6

*Liqiang Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*,
  2018 WL 457211 (N.D. Cal. Jan. 18, 2018) .....................................................19

*Livingston v. Kemper Sports Mgmt. Inc.*,
  2012 WL 5349174 (E.D. Cal. Oct. 26, 2012) .....................................................6

*Manzoor v. Travis Credit Union*,
  2012 WL 2921380 (E.D. Cal. July 17, 2012) ...................................................21

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) ..........................................................................16

*Max Sound Corp. v. Google, Inc.*,
  147 F. Supp. 3d 948 (N.D. Cal. 2015) ................................................................4

*McDonnell v. Nature's Way Prods. LLC*,
  2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...............................................11, 13

*Monteilh v. AFSCME, AFL-CIO*,
  982 A.2d 301 (D.C. 2009) ...................................................................................7

*Moore v. Greyhound Bus Lines, Inc.*,
  2018 WL 3361395 (S.D. Cal. July 10, 2018), *reconsideration denied*, 2018 WL
  3862007 (S.D. Cal. Aug. 14, 2018) .....................................................................7

*Moran v. Selig*,
  447 F.3d 748 (9th Cir. 2006).........................................................................21, 22

*Netgear, Inc. v. Redzone Wireless, LLC*,
  2017 WL 2351359 (N.D. Cal. May 31, 2017), *appeal dismissed*, 2017 WL
  4216892 (9th Cir. Sept. 15, 2017) .....................................................................11

*NuboNau, Inc. v. NB Labs, Ltd.*,
  2012 WL 843503 (S.D. Cal. Mar. 9, 2012) .......................................................12

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009)............................................................................18

Gibson, Dunn &
Crutcher LLP

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................................18

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015)...............................................................................................11

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
    2017 WL 3129147 (E.D. Pa. July 24, 2017)........................................................................13

*Poland v. Chertoff*,
    494 F.3d 1174 (9th Cir. 2007)..................................................................................................5

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015)..................................................................................................9

*Rulenz v. Ford Motor Co.*,
    2013 WL 2181241 (S.D. Cal. May 20, 2013)..........................................................................7

*Rupert v. Bond*,
    68 F. Supp. 3d 1142 (N.D. Cal. 2014) ..................................................................................23

*Salyers v. Metro. Life Ins. Co.*,
    871 F.3d 934 (9th Cir. 2017)..................................................................................................15

*Skurkis v. Montelongo*,
    2016 WL 4719271 (N.D. Cal. Sept. 9, 2016) .......................................................................10

*Smith v. Level 3 Commc'ns Inc.*,
    2014 WL 7463803 (N.D. Cal. Dec. 30, 2014).......................................................................25

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................................................................4

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)..................................................................................................25

*Square v. Potter*,
    2009 WL 10671413 (C.D. Cal. June 22, 2009), *aff'd sub nom. Square v. Donahoe*,
    430 F. App'x 633 (9th Cir. 2011) ..........................................................................................22

*Stewart v. Am. Ass'n of Physician Specialists, Inc.*,
    2015 WL 7722349 (C.D. Cal. Nov. 30, 2015).......................................................................23

*Strother v. S. Cal. Permanente Med. Grp.*,
    79 F.3d 859 (9th Cir. 1996)....................................................................................................25

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) .........................................................................................................7

Gibson, Dunn &
Crutcher LLP

AMAZON'S MOTION TO DISMISS - CASE NO. 5:17-CV-07232

*Surface Supplied Inc. v. Kirby Morgan Dive Sys.*,
2013 WL 2355446 (N.D. Cal. May 29, 2013) ...............................................................12

*Swallows v. Barnes & Noble Book Stores, Inc.*,
128 F.3d 990 (6th Cir. 1997) ..........................................................................................15

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .............................................................................................9

*Thomas v. Gandhi*,
525 F. Supp. 2d 103 (D.D.C. 2007), *aff'd*, 377 F. App'x 25 (D.C. Cir. 2010) .............25

*Warth v. Seldin*,
422 U.S. 490 (1975) ..........................................................................................................6

*Wenokur v. AXA Equitable Life Ins. Co.*,
2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ....................................................................13

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ........................................................................................10

*Wynn v. Nat'l Broad. Co.*,
234 F. Supp. 2d 1067 (C.D. Cal. 2002) ...........................................................15, 16, 19, 20

*Yartzoff v. Thomas*,
809 F.2d 1371 (9th Cir. 1987) ........................................................................................19

**Statutes**

29 U.S.C. § 216 ......................................................................................................................4

29 U.S.C. § 623 ..............................................................................................................*passim*

29 U.S.C. § 626 ......................................................................................................................5

29 U.S.C. § 630 ...............................................................................................................21, 23

29 U.S.C. § 631 ......................................................................................................................4

Cal. Civ. Code § 51–52 ..........................................................................................................7

Cal Gov't Code §§ 12900–12996 .......................................................................................7, 24

D.C. Code § 2–1402.11 ......................................................................................................7, 24

Ohio Rev. Code Ann. § 4112.02 ...........................................................................................24

**Rules**

Fed. R. Civ. P. 12(b) ......................................................................................................*passim*

1

**Regulations**

2

29 C.F.R. § 1625.4 ...................................................................................................14, 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is Plaintiffs' fourth bite at the apple.  Their Third Amended Complaint of age discrimination in job advertising on Facebook still falls far short of meeting the threshold requirements of litigation, including Article III standing, personal jurisdiction, and pleading the essential elements of their claims.  Nothing in the Third Amended Complaint even remotely suggests that Defendants' alleged conduct impaired Plaintiffs' ability to learn about, apply for, or receive offers of employment.  And, as the experience of Renia Hudson—a former named Plaintiff who abandoned this case when Defendants brought the facts about her job search to light—shows, the opposite is true:  *Ms. Hudson received an offer of employment from Amazon for a job she learned about on Facebook*, completely undermining Plaintiffs' entire theory.  This unwieldy, improper, and groundless lawsuit cannot proceed.[1]

*First*, Plaintiffs fail to establish standing with respect to their ADEA advertising claim because their allegations do not demonstrate a "real, present interest" in any of the jobs in the challenged ads.  The generic allegations pertaining to the union plaintiff (the Communications Workers of America, or "CWA") likewise fall far short of establishing standing.  And because the individual Plaintiffs are from Ohio and Maryland, they lack standing to assert claims under California or D.C. law.

*Second*, Plaintiffs do not allege facts sufficient to establish personal jurisdiction over Amazon (or any other Defendant).  This Court cannot exercise general jurisdiction over Amazon, as it is not headquartered, incorporated, or otherwise "at home" in California.  And Plaintiffs, as non-Californians alleging violations outside of California, cannot establish that their claims arise out of Amazon's forum-related activities, and thus have not established specific jurisdiction over Amazon.

*Third*, Plaintiffs fail to state the basic elements of their age discrimination claims.  With respect to their advertising claim, Plaintiffs' allegations demonstrate that Amazon placed facially non-discriminatory ads that do not violate the ADEA or related state laws.  With respect to their disparate treatment claim, Plaintiffs do not allege that they applied for a particular position, were qualified for that position, or that a younger person with similar qualifications received the position—*all* of which are necessary to plead a *prima facie* disparate treatment hiring or recruiting claim.  Nor have they adequately alleged

---

[1]  This motion applies equally to Amazon and the other Defendants, as explained in their joinder briefs.

that Amazon intended to discriminate against them based on their age, especially since Amazon makes its job ads available to all persons through a wide variety of outlets, including publicly available websites, i.e., www.amazon.jobs and www.amazondelivers.jobs, a fact of which the Court can take judicial notice.  Plaintiffs' state law claims fail for many of the same reasons.

## II.  ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiffs bring this putative class action on behalf of "millions of Facebook users who are at least 40 years old," against Amazon.com, Inc.,[2] T-Mobile US, Inc., Cox Communications, Inc., Cox Media Group, LLC (collectively, "Defendants"), and a putative defendant class of "hundreds of major American employers and employment agencies."  (Pls.' Third Am. Compl., Dkt. 72 ("TAC") ¶¶ 1, 4, 137.)  Plaintiffs initially filed suit on December 20, 2017, and filed a First Amended Complaint on May 29, 2018.  (*See* Compl., Dkt. 1; Pls.' First Am. Compl., Dkt. 56.)  On July 30, 2018, Amazon moved to dismiss that Complaint and to strike the class and collective allegations.  (*See* Amazon's Mot. to Dismiss Am. Compl., Dkt. 63; Defs.' Mot. to Strike, Dkt. 64.)

Plaintiffs filed a Second Amended Complaint on August 20, 2018, in which they attempted to remedy the defects identified in Defendants' initial motions.  (Pls.' Second Am. Compl., Dkt. 68.)  Most significantly, Plaintiffs added a California Plaintiff, Renia Hudson.  Plaintiffs alleged that Ms. Hudson "did not learn about specific job opportunities" at Defendant Class Members "and was thus deterred from applying for such job opportunities."  (*See id.* ¶ 46.)  Plaintiffs also alleged that she was "prevented from being hired for" various positions at the Defendant Class Members (*id.* ¶ 121), and "experienced longer periods of [un]employment because [she had] not received job advertisements from members of the Defendant Class because of [her] age[]" (*id.* ¶ 129).  Amazon's records revealed that those allegations were inaccurate.  (*See* Joint Stip. Regarding Filing of Third Am. Compl. to Remove Pl. Renia Hudson ("Joint Stip.") at 1, Dkt. 71.)  In fact, Ms. Hudson received a job offer from an

---

[2] For the fourth time, despite ample notice that Amazon.com, Inc. ("Amazon") does not employ anyone (Amazon's Mot. to Dismiss Am. Compl., Dkt. 63, at 2 n.2), Plaintiffs have named it as a defendant in this matter.  Without conceding that it is a properly named defendant, Amazon brings this Motion on behalf of itself and any other affiliated entities that may be added or substituted in this matter.

Gibson, Dunn &
Crutcher LLP

Amazon entity in March 2018 for a position she learned about on Facebook, but she failed to take the final steps necessary for hire, despite multiple follow-up messages from Amazon. (*Id.*) Ms. Hudson later applied for, received, and accepted an offer of employment for another Amazon job. (*Id.* at 2.) After Amazon raised these facts, Plaintiffs' counsel agreed to file an amended pleading removing Ms. Hudson as a Plaintiff. (*Id.*) Plaintiffs filed their Third Amended Complaint on October 4, 2018.

Yet Plaintiffs still allege that Defendants engaged in age discrimination by targeting some of their job ads on Facebook toward certain age groups. (TAC ¶ 4.) According to Plaintiffs, the purported use of age filters "makes it far less likely that older prospective applicants will hear about employment opportunities and, in turn, apply for or secure jobs that are open." (*Id.* ¶ 116.) Plaintiffs also allege that some members of the proposed defendant class use Facebook's "Lookalike Audiences" feature— which selects ad recipients based on their similarity to existing workers or customers—to "determine which individuals will receive their job ads and notices." (*Id.* ¶ 84.) Plaintiffs claim this results in disparate treatment "because it determines which workers will receive job advertising, recruitment, and hiring based in part on their age." (*Id.* ¶ 83.)

And Plaintiffs allege nothing to suggest that Defendants discouraged anyone over the age of 40 from applying for any position. They do not allege that age filters applied to all of Defendants' job ads on Facebook. Nor do they allege that Facebook was the only job ad platform Defendants used. (It was not.) Indeed, they do not even allege that they failed to see Defendants' job ads on other platforms or media, including Defendants' employment websites. Nor do they allege *any* facts regarding the identities or qualifications of individuals who applied for or received job offers from Defendants; thus, members of Plaintiffs' putative class, like former Plaintiff Hudson—and others in the protected age category—may have learned of, applied for, and received offers of employment for the positions that were the subject of the alleged ads described in the Third Amended Complaint.

Instead, the allegations regarding the three named Plaintiffs are limited to sparse, cookie-cutter assertions. Plaintiffs claim that they have "skills in a range of areas" and "would be qualified for a range of positions." (TAC ¶¶ 39, 41, 43.) But although Plaintiffs identify certain skills that the named Plaintiffs purportedly have and specific positions for which they believe they would be qualified, they do not allege that Defendants posted age-restricted advertisements for any of the specific positions for

which they claim to be qualified.  (*See id.*)  They merely generically allege that "T-Mobile, Amazon, and Cox used age-restricted job advertisements" to advertise for "some or all" of the positions for which Plaintiffs allegedly were qualified.  (*Id.*; *see also id*. ¶¶ 40, 42, 44.)

With respect to CWA, Plaintiffs allege that it has "members who are 40-years-old or greater and have used Facebook to seek employment opportunities [who] have been subjected to and harmed by the unlawful discriminatory practices described in [the] Complaint," and that its members include the named Plaintiffs and others "located in California, Ohio, the District of Columbia, and throughout the nation." (TAC ¶¶ 38, 125, 127.)  There is no information about the specific employment ads CWA's members were allegedly precluded from viewing, whether they were qualified for the specific jobs that were the subject of Amazon's allegedly age-restricted ads, or whether those members in fact applied for or were denied job offers by any Defendant (much less Amazon).

Plaintiffs assert two claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631, *et seq*., against the putative defendant class on behalf of millions of individuals:  (1) discriminatory advertising (Count I); and (2) disparate treatment (Count II).  (TAC ¶¶ 158–86.)  Plaintiffs also assert claims on behalf of a putative nationwide class under California, Ohio, and D.C. law. (*Id.* ¶¶ 187–234.)  Plaintiffs seek to certify their proposed classes under Federal Rules of Civil Procedure 23(a) and (b)(3) or, alternatively, (b)(2) and (c)(4).  (*Id.* ¶¶ 130–52.)  They also seek to certify a collective action under 29 U.S.C. §§ 216(b) and 626(b).  (*Id.* ¶¶ 153–57.)

### III.  ARGUMENT

### A.    Plaintiffs Lack Standing To Pursue Most Of Their Claims.

To establish Article III standing, Plaintiffs must allege facts demonstrating they have suffered an injury in fact that is fairly traceable to the challenged conduct of Defendants and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "If the [C]ourt determines that [Plaintiffs have] not demonstrated standing to sue, the action must be dismissed for lack of subject matter jurisdiction." *Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D. Cal. 2015).  The Court should dismiss Plaintiffs' ADEA advertising claim because they have not alleged facts demonstrating a "real, present interest" in any of the jobs in the challenged ads. *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972).  The Court should also dismiss all of CWA's

claims because its allegations do not establish associational standing.  Finally, the Court should dismiss Plaintiffs' claims under California and D.C. law for lack of standing because no named Plaintiff resides or adequately alleges injury in those jurisdictions.

### 1.     Plaintiffs Do Not Have Standing To Pursue Their Advertising Claims.

The ADEA's enforcement provision authorizes "persons aggrieved" by prohibited employment advertising practices to bring a civil action seeking relief.  *See* 29 U.S.C. §§ 623(e), 626(c)(1).  As courts interpreting Title VII's analogous provision have observed, "[c]learly Congress had not intended that every reader of a discriminatory newspaper advertisement would have standing to sue the advertiser."  *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 829 F. Supp. 402, 404 (D.D.C. 1993), *aff'd in part, rev'd in part on other grounds*, 28 F.3d 1268 (D.C. Cir. 1994).  To be aggrieved under Title VII's advertising provision, "a person must be able to demonstrate that he has a real, present interest in the type of employment advertised . . . [and] must be able to show he was effectively deterred by the improper ad from applying for such employment."  *Hailes*, 464 F.2d at 1008.  Given the parallels between the Title VII and ADEA advertising provisions, the same standing prerequisites should apply. *See, e.g.*, *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007).

Here, Plaintiffs lack standing to pursue their advertising claim because they have not alleged that they have "a real, present interest in the type of employment advertised" in the challenged Facebook ads.  Plaintiffs Anscombe and Callahan allege that they are age 40 or over, "ha[ve] used Facebook to seek employment opportunities" (without specifying which opportunities or how they used Facebook), have "skills in a range of areas," and were "qualified for a range of positions" at each of the named Defendants' and the "hundreds" of putative defendant class members' companies.  (TAC ¶¶ 1, 41–44.)  Plaintiff Bradley makes similar allegations, and adds that she once received an unspecified job ad in her Facebook newsfeed and contacted that unnamed employer.  (*Id.* ¶¶ 39–40.)  Plaintiffs' additional allegations identifying generic skills that they purportedly have and specific positions at Amazon for which they believe they would be qualified are unmoored from the challenged ads (*see id.* ¶¶ 39, 41, 43), and thus do not demonstrate any interest in the job opportunities Amazon advertised in the ads at issue.  Plaintiff CWA's allegations are likewise far removed from Amazon's challenged ads,

alleging at most that its members are a "rich pool of potential candidates" for unspecified job opportunities with unspecified employers, that it has 160,000 members over age 40, and that hundreds of thousands of its members (age unspecified) are Facebook users. (*Id.* ¶ 38.)  Thus, Plaintiffs' allegations, even taken as true, do not demonstrate a "real, present interest" in any of the jobs advertised.  And although Plaintiffs allege that Facebook's "Why am I seeing this" message caused recipients to "understand that the Defendant Class Member advertiser has a preference, discrimination, or limitation based on age" (*id.* ¶ 165), they do not allege that they saw this message, much less could have been deterred by it.  *Cf. Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *8–9 (N.D. Cal. Sept. 23, 2013) (finding no standing to sue over allegedly unlawful website statements that plaintiff never viewed). Plaintiffs therefore lack standing to assert an ADEA discriminatory advertising claim.  For the same reasons, Plaintiffs lack standing to assert California and D.C. advertising claims.  *See Livingston v. Kemper Sports Mgmt. Inc.*, 2012 WL 5349174, at *4–5 (E.D. Cal. Oct. 26, 2012) (using Title VII cases to conclude that plaintiff was not "aggrieved" under California's Fair Employment and Housing Act ("FEHA"), Cal Gov't Code §§ 12900–12996); *Davis v. D.C.*, 246 F. Supp. 3d 367, 393–94 (D.D.C. 2017) (Title VII cases used to interpret District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, provisions with "similar words").

### 2.   CWA Does Not Have Standing To Assert Any Claims.

CWA's claim to associational standing also fails.  (TAC ¶¶ 126–27.)  As relevant here, such standing exists only where the organization's members have standing to sue in their own right and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1367 (9th Cir. 1995).  An organization cannot assert associational standing if the alleged injury "is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof."  *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975).  Here, determining whether any CWA member was injured, and to what extent, would turn on individualized proof of that member's Facebook use, skills, employment status, job search and compensation history, and other questions.  The individual

Gibson, Dunn &
Crutcher LLP

plaintiffs—the only identified CWA members—vary in terms of geography, work history, and qualifications and thus illustrate the individualized nature of the claims and the necessity of member participation. (*Compare* TAC ¶¶ 39, 43 (alleging Ms. Bradley and Ms. Callahan previously worked "at a call center in Franklin County, Ohio"), *with id.* ¶ 41 (alleging Mr. Anscombe, a resident of Baltimore, Maryland, "previously worked as a cable technician for almost two decades[,] and, before that, in law enforcement").) Thus, CWA lacks standing to assert any claims.

### 3.    Plaintiffs Lack Standing To Bring Claims Under California And D.C. Law.

This Court should dismiss Plaintiffs' claims under California and District of Columbia law because none of the Plaintiffs resides, or was injured, in those jurisdictions. *See Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058, 1082–83 (N.D. Cal. 2014) (dismissing claims for states in which named plaintiffs did not allege living or being injured); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007).

Where "a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009). In the context of a nationwide class action, asserting state law claims "require[s] a named plaintiff from each of the states whose laws are alleged to be violated." *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *14 n.8 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) (Freeman, J.). Consistent with these general rules, the DCHRA "is not extraterritorial." *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284 (D.D.C. 2012). For a court to exercise jurisdiction over a claim under the DCHRA, "[e]ither the decision must be made, or its effects must be felt, or both must have occurred, in" D.C. *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301, 305 (D.C. 2009). Likewise, California has a strong presumption against the extraterritorial application of its law, *see Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) (California's § 17200 does not apply extraterritorially), and neither FEHA nor California's Unruh Civil Rights Act, Cal. Civ. Code § 51–52, apply where the alleged discrimination takes place outside of California. *Moore v. Greyhound Bus Lines, Inc.*, 2018 WL 3361395, at *2 (S.D. Cal. July 10, 2018), *reconsideration denied*, 2018 WL 3862007 (S.D. Cal. Aug. 14, 2018) (Unruh Act cannot apply extraterritorially); *Rulenz v. Ford Motor*

1  *Co.*, 2013 WL 2181241, at *3 (S.D. Cal. May 20, 2013) (FEHA applies only where the alleged "tortious

2  conduct occurred in the state of California.").

3       Here, Plaintiffs have not sufficiently alleged that Defendants—which are headquartered in other

4  states (*see* TAC ¶ 46)—made any discriminatory decisions in California or D.C., or that any of the

5  named Plaintiffs experienced the effects of Defendants' purportedly discriminatory conduct in those

6  jurisdictions.  The individual Plaintiffs reside in Ohio and Maryland and do not allege any injury in

7  D.C. or California.  (*See id.* ¶¶ 39–44.)  Indeed, the Third Amended Complaint contains no allegations

8  tying them to California.  Plaintiffs' broad and vague allegations attempting to connect Defendants to

9  California—*e.g.*, that Defendants "created and purchased" ads on Facebook, which is "located in this

10  District," and that Defendants "conduct[] substantial business" in California (*id.* ¶¶ 27; 31)—are insuf-

11  ficient to show any injurious conduct in California with respect to the named Plaintiffs.

12       With respect to Plaintiffs' DCHRA claim, the only allegations that allude to any connection

13  between the individual Plaintiffs and D.C. are Plaintiff Anscombe's vague allegations that he "has

14  searched for work in . . . D.C." and "has been interested in receiving and responding to job opportunities

15  [there]."  (TAC ¶ 41.)  But these bare-bones allegations—which do not indicate the time frame during

16  which Mr. Anscombe sought employment in D.C., let alone whether he used Facebook to pursue em-

17  ployment there (or whether any ads at issue related to employment there)—do not demonstrate that he

18  suffered injury in D.C.  *See Cole*, 845 F. Supp. 2d at 284 (dismissing DCHRA claims predicated on

19  purportedly discriminatory acts that did not occur in D.C.).  Nor does the fact that CWA is headquar-

20  tered in D.C. confer such standing because CWA seeks standing only in a representative capacity to

21  pursue the alleged claims of its members (none of whom are identified as residing in D.C.) and because,

22  in any event, it lacks standing to pursue *any* of its claims.  (*See supra* Part III.A.2.)

23  **B.   The Court Should Dismiss Plaintiffs' Claims For Lack Of Personal Jurisdiction.**

24       A court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) if it lacks general

25  personal jurisdiction over the defendant or specific personal jurisdiction with respect to the claim.

26  *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779 (2017); *Goodyear Dunlop Tires Ops.,*

27  *S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Neither general nor specific jurisdiction exists in California

28  with respect to Plaintiffs' claims against Amazon—all of which are brought by out-of-state Plaintiffs

and none of which arises out of Amazon's alleged contacts with California.  And because the Court lacks personal jurisdiction over the claims of the only named CWA members, the Court lacks personal jurisdiction over Plaintiff CWA's representative claims as well.

As a threshold matter, Plaintiffs' contention that Defendants have "waived" their personal jurisdiction defense is without merit.  (*See* TAC ¶ 35.)  In support, Plaintiffs point to Facebook's "Terms of Service," under which Plaintiffs claim that Defendants "agreed to submit to the personal jurisdiction of this Court and resolve all disputes in this Court related to their use of Facebook." (*Id.*)  Plaintiffs' allegations completely misconstrue the Terms of Service, which are incorporated by reference into the Third Amended Complaint.  (*See id.*)  The Terms of Service's venue selection clause—from which Plaintiffs have selectively quoted—applies only to any "claim, cause of action, or dispute you [i.e., the user] have against us [i.e., Facebook] that arises out of or relates to these Terms or the Facebook products." (Decl. of Jason Schwartz ("Schwartz Decl."), Ex. A § 4.4.)  Thus, by its own terms, the venue selection clause does not apply to disputes *between* Facebook users; it applies only to claims the user has against Facebook.  (*See id.*)  Moreover, the Terms of Service expressly "do not confer any third-party beneficiary rights," thereby foreclosing any argument that Plaintiffs could enforce the personal jurisdiction waiver against any of the Defendants.  (*Id*. § 5.6.)

Because Amazon (and the other Defendants) have not waived their personal jurisdiction defense, there must be either general jurisdiction or specific jurisdiction over Plaintiffs' claims in order for them to proceed in this Court.  Here, there is neither.

1.  A court may assert general jurisdiction to hear "any and all claims" against a corporation only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919).  In all but "exceptional" cases, a corporation is considered to be "at home" *only* in its "place of incorporation and principal place of business."  *Id.* at 127 & n.19.

There is no general jurisdiction over Amazon in California.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068, 1070 (9th Cir. 2015) (holding that plaintiff bears the burden of proving jurisdiction is proper and affirming dismissal based on lack of general jurisdiction).  "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations

1    will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

2    Plaintiffs concede that Amazon is neither incorporated nor headquartered in California.  (TAC ¶ 46.)

3    Plaintiffs' generic allegations that Amazon "conduct[s] substantial business" and "employ[s] thousands

4    of workers in this District," operates facilities in California, and "has created more than 39,000 full-

5    time jobs in California" (*id.* ¶¶ 27–28), without more, cannot sustain a finding of general jurisdiction

6    over Amazon in California.  *See Daimler*, 571 U.S. at 123, 137–38 (no general jurisdiction based on

7    corporation's multiple offices, continuous operations, and substantial sales in forum); *Cahen v. Toyota*

8    *Motor Corp.*, 147 F. Supp. 3d 955, 963-64 (N.D. Cal. 2015) (no general jurisdiction where corporation

9    was allegedly "doing business in all fifty states" and made substantial sales, operated a research center,

10    and solicited employees for jobs in forum state), *aff'd*, 2017 WL 6525501 (9th Cir. Dec. 21, 2017).

11        2.  The Court also lacks specific jurisdiction over the individual Plaintiffs' claims.  A court may

12    assert specific jurisdiction over a defendant only where its "'suit-related conduct . . . create[s] a sub-

13    stantial connection with the forum State.'"  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23

14    (9th Cir. 2017) (citation omitted).  Specific jurisdiction exists "only when three requirements are satis-

15    fied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the ben-

16    efits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related

17    activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is

18    reasonable."  *Id.* at 1023 (internal quotation marks and brackets omitted).  "[T]he Court must determine

19    whether plaintiffs have made a prima facie case of personal jurisdiction as to each defendant based on

20    each defendant's own contacts with [the forum state]."  *Skurkis v. Montelongo*, 2016 WL 4719271, at

21    *4 (N.D. Cal. Sept. 9, 2016).  Moreover, where plaintiffs bring claims on behalf of a putative class, the

22    specific jurisdiction requirements must be satisfied as to each of the named plaintiffs' claims.  *See*

23    *Henderson v. United Student Aid Funds, Inc.*, 2015 WL 12658485, at *4 (S.D. Cal. Apr. 8, 2015)

24    ("Specific personal jurisdiction in a class action is based only on the [claims of] named plaintiffs and

25    may not be based on allegations about the residency of unnamed putative class members."); *Abrams*

26    *Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001) (personal jurisdiction require-

27    ments "must be satisfied for each and every named plaintiff").  "What is needed is a connection between

28    [California] and the specific claims at issue."  *Bristol-Myers*, 137 S. Ct. at 1781.

The individual Plaintiffs are Ohio and Maryland residents asserting discrimination under the ADEA and state laws.  These non-California Plaintiffs are not alleged to have suffered any injury in California, which weighs heavily against personal jurisdiction.  *See, e.g.*, *Bristol-Myers*, 137 S. Ct. at 1782 (California court could not exercise personal jurisdiction over claims that "involve[d] no harm in California and no harm to California residents"); *McDonnell v. Nature's Way Prods. LLC*, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (dismissing class claims against nonresident defendant brought on behalf of nonresident plaintiffs under other states' laws).  Plaintiffs attempt to rectify this defect by alleging that Amazon "conduct[s] substantial business throughout this District, employ[s] thousands of workers in . . . California," and sent age-restricted ads for jobs in California "to Facebook users through-out the United States, including users in California."  (TAC ¶¶ 27, 28, 30.)  These allegations are insufficient to establish personal jurisdiction over Amazon in California.  *See Netgear, Inc. v. Redzone Wireless, LLC*, 2017 WL 2351359, at *3 (N.D. Cal. May 31, 2017) (Freeman, J.), *appeal dismissed*, 2017 WL 4216892 (9th Cir. Sept. 15, 2017) (finding no specific jurisdiction over claims even though defendant "reached out to a California based company, . . . negotiated the sale of products shipped from California, [and] paid for products via wire transfer to a bank in California").

*First*, Plaintiffs' allegations regarding the number of Amazon employees and facilities in California are irrelevant to the specific jurisdiction analysis because they are disconnected from the alleged discrimination underlying the out-of-state Plaintiffs' claims.  *See Bristol-Myers*, 137 S. Ct. at 1781; *Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015).

*Second*, Plaintiffs' allegations related to Amazon's use of Facebook are likewise insufficient to establish specific jurisdiction over Plaintiffs' claims.  Plaintiffs allege that Amazon "created and purchased" ads on Facebook, which is "located in this District," that Amazon "interacted with Facebook's employees . . . in this District to create, purchase, and publish discriminatory ads," and that Amazon "sent . . . discriminatory ads from this District to Facebook users," again presumably because Facebook is "located in this District."  (TAC ¶ 27.)  But the mere fact that *Facebook* is headquartered in this district cannot give rise to personal jurisdiction over every company that advertises on Facebook.  "'[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.'"  *Bristol-Myers*, 137 S. Ct. at 1781 (citation omitted).  Consistent with this general

principle, courts have repeatedly held that an out-of-state defendant's use of a third-party advertising platform located in a particular district does not create specific jurisdiction.  *See Surface Supplied Inc. v. Kirby Morgan Dive Sys*., 2013 WL 2355446, at *4 (N.D. Cal. May 29, 2013) ("Advertising . . . on Facebook . . . is not sufficient to support a finding of purposeful availment."); *Advice Co. v. Novak*, 2009 WL 210503, at *4, *15 (N.D. Cal. Jan. 23, 2009) (no specific jurisdiction where defendants "enter[ed] into advertising relationships with California-based companies such as Google, Inc."); *JibJab Media Inc. v. White Castle Mgmt.*, 2013 WL 12123696, at *7 (C.D. Cal. May 14, 2013) ("Facebook ads [did] not constitute 'individual targeting' such as would support a finding of 'purposeful direction'" in California); *NuboNau, Inc. v. NB Labs, Ltd.*, 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012) (no "purposeful direction at California" by promoting business on Facebook).

*Third*, Plaintiffs' allegations are too vague and conclusory to establish personal jurisdiction. Plaintiffs have not identified *which* ads were allegedly sent from California, *who* the targeted recipients of these ads were, or *what* positions were the subject of these ads.  They have therefore failed to meet their burden of alleging that "but for" Amazon's "forum-related conduct, [their] injur[ies] would not have occurred."  *Jenkins v. Pooke*, 2009 WL 10692010, at *5 (N.D. Cal. July 13, 2009), *R. & R. adopted*, 2009 WL 10691375 (N.D. Cal. Aug. 19, 2009); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *11 (N.D. Cal. July 11, 2018) (Freeman, J.) (dismissing case for improper venue where plaintiffs established no link between "upper-level employment decisions not specific to any Plaintiff" made in the district and the termination of plaintiffs residing outside the district).

*Finally*, Plaintiffs' conclusory allegations that Amazon "advertised thousands to tens of thousands of jobs . . . located in California" to "Facebook users throughout the United States, including users in California" (TAC ¶¶ 28, 30), fail to establish a sufficient connection between the claims of the individual named Plaintiffs—all of whom are located *outside* California—and Amazon's alleged conduct in California.  *See, e.g.*, *Bristol-Myers*, 137 S. Ct. at 1781 (allegations that California residents were injured in California and sustained the same injuries as nonresidents were insufficient to assert specific jurisdiction over nonresidents' claims); *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *15 (D.N.J. Apr. 25, 2018) (dismissing ADEA claims of nonresident named plaintiffs); *Al Haj v. Pfizer*

*Inc.*, 2018 WL 1784126, at \*6 (N.D. Ill. Apr. 13, 2018) (in a putative nationwide class action, dismissing non-forum state law claims of a named plaintiff who did not claim to have suffered harm in the forum state).  Indeed, this is precisely the type of allegation that *Bristol-Myers* found insufficient.  In *Bristol-Myers*, the Supreme Court held that a California court did not have specific jurisdiction over *nonresident* plaintiffs' claims against a *nonresident* defendant relating to alleged injuries caused by out-of-state drug sales—even though the Court had specific jurisdiction over *resident* plaintiffs' claims.  137 S. Ct. at 1781.  Many courts have relied on *Bristol-Myers* to find personal jurisdiction lacking over nonresident plaintiffs' claims against nonresident defendants, including in the class action context.  *See, e.g.*, *McDonnell*, 2017 WL 4864910, at \*4 (dismissing class claims against nonresident defendant brought on behalf of nonresident plaintiffs under other states' laws); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at \*4 n.4 (D. Ariz. Oct. 2, 2017); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 3129147, at \*9 (E.D. Pa. July 24, 2017).  Similarly, Plaintiffs' vague allegations that Plaintiffs Bradley and Anscombe are willing to work "beyond" their "local geographic area[s]" (TAC ¶¶ 39, 41), are insufficient to plausibly establish a nexus between their discrimination claims and California.  *See Bristol-Myers*, 137 S. Ct. at 1781.

Having failed to allege facts demonstrating either specific or general jurisdiction in this Court, the individual named Plaintiffs' claims should be dismissed.  *See* Fed. R. Civ. P. 12(b).

3.  Finally, because the Court lacks personal jurisdiction over the individual Plaintiffs' claims, the Court also lacks personal jurisdiction over claims brought by Plaintiff CWA because Plaintiffs do not identify a single CWA member other than the individual Plaintiffs.  (*See* TAC ¶¶ 38, 127–28.)  Thus, the Court should dismiss all of Plaintiffs' claims for lack of personal jurisdiction.

**C.     The Court Should Dismiss Plaintiffs' Claims For Failure To State A Claim.**

The Court should also dismiss Plaintiffs' claims in their entirety under Rule 12(b)(6) because Plaintiffs fail to allege enough facts to state a plausible claim to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In evaluating plausibility, the Court should not accept unreasonable inferences, conclusory statements, or unwarranted deductions; facts that merely show the defendant was "possibly" liable are insufficient to avoid dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1.     Plaintiffs Have Not Stated A Claim Of Discriminatory Advertising (Count I).**

Plaintiffs allege that Amazon has engaged in discriminatory advertising practices under Section 4(e) of the ADEA.  (TAC ¶¶ 158–70.)  That provision prohibits an employer from printing, publishing, or causing to be printed or published any employment ad "indicating any preference, limitation, spec-ification, or discrimination, based on age."  29 U.S.C. § 623(e); *see also Hodgson v. Approved Pers. Serv., Inc.*, 529 F.2d 760, 763 (4th Cir. 1975) (enjoining use of terms like "young," "boy," and "recent college graduate" in ads).  The provision focuses on the ad's *content*, as illustrated by the ADEA's implementing regulations, which prohibit "[h]elp wanted notices or advertisements . . . [that] *contain* terms and phrases that limit or deter the employment of older individuals."  29 C.F.R. § 1625.4 (em-phasis added).  Thus, in assessing whether an ad violates § 623(e), courts focus on what the ad says, not where it appears.  *See, e.g.*, *E.E.O.C. v. Marion Motel Assocs.*, 763 F. Supp. 1338, 1340 (W.D.N.C. 1991), *aff'd*, 961 F.2d 211 (4th Cir. 1992) (focusing on language in ad urging "young, energetic per-sons" to apply); *Boyd v. City of Wilmington, N.C.*, 943 F. Supp. 585, 591 (E.D.N.C. 1996) (ad did not violate § 623(e) because its text did "not evince an intent to discriminate against older applicants"); *Illinois v. Xing Ying Emp't Agency*, 2018 WL 1397427, at *1 (N.D. Ill. Mar. 20, 2018) (analyzing ad promising to "provide the best Mexicans," and concluding that it violated Title VII's analogous adver-tising provision).

Plaintiffs do not allege that Amazon printed, published, or caused to be published any ad containing terms or phrases that indicate a preference or limitation based on age.  The only alleged Amazon ads included in Plaintiffs' pleading are facially neutral as to age and do not use any impliedly discriminatory terms indicating that Amazon would only hire or prefer to hire candidates of a certain age demographic.  (TAC ¶¶ 102, 103; Ex. A.)  Thus, Plaintiffs' advertising claim fails for the simple reason that the ADEA's advertising provision does not prohibit the complained-of practice:  displaying individual job ads to people within certain demographics.  *See* 29 U.S.C. § 623(e).  For example, under Plaintiffs' legal theory, employers could be prohibited from placing job ads in *Seventeen Magazine*— a publication reaching younger readers—because doing so could be construed as expressing a preference for certain applicants.  They could also be prohibited from conducting on-campus interviews or seeking applicants for clerkships at law schools, since these practices likewise generally reach younger applicants.  The text of § 623(e), however, cannot be read to prohibit any of these practices—

which occur because of the inevitable reality that not every ad will reach every segment of the population—and no case law supports Plaintiffs' novel and expansive interpretation.

Seeking to avoid this conclusion, Plaintiffs point to Facebook's "Why am I seeing this" feature, which informed those ad recipients who clicked the link that they were receiving the ad because Amazon allegedly "want[ed] to reach people" within a particular age range. (TAC ¶¶ 95–96, 103.) But Plaintiffs' reliance on this message is misplaced for three independent reasons.

*First*, the "Why am I seeing this" message is not part of the ad but a separate communication that Facebook shares with users who want "to see why [they have] been selected to see [a] particular ad." (TAC ¶ 95.) It therefore has no bearing on whether the ads comply with § 623(e). *See Boyd*, 943 F. Supp. at 590 (focusing on language of ad, which indicated a preference for "candidates for MPA or MSIR degrees," and concluding it did not violate the ADEA).

*Second*, Facebook—not Amazon—provided the information to interested users about why they were seeing a particular ad. Indeed, Plaintiffs themselves describe the "Why am I seeing this" feature as one of "Facebook's ad transparency functions" (TAC ¶ 166), and Plaintiffs do not allege that the advertising services Amazon contracted Facebook to provide included the publication of the "Why am I seeing this" message to Facebook users. Facebook's decision to provide this information to interested users cannot give rise to liability by Amazon under § 623(e).

In an effort to circumvent their own acknowledgment of Facebook's responsibility for the challenged statements, Plaintiffs make the conclusory allegation that Defendants "employed Facebook as their agent" and that "Facebook acted within the scope of its agency" when it stated in "ad[s] that Defendant Class Members wanted to reach Facebook users between specific ages." (TAC ¶ 34; *see id.* ¶¶ 166, 167.) Under the ADEA an employer may be liable for its agent's acts only if the agent was acting on behalf of and under the employer's authority. *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1094 (C.D. Cal. 2002). In determining vicarious liability, courts look to common law agency principles derived from the Restatement of Agency. *See, e.g.*, *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 n.7 (6th Cir. 1997). Under the Restatement, "[a] principal is subject to direct liability to a third party harmed by an agent's conduct when the agent acts with actual [or apparent] authority or the principal ratifies

the agent's conduct."  Restatement (Third) Of Agency § 7.03 (2006).

Plaintiffs allege nothing suggesting that Facebook displayed the "Why am I seeing this" message on Amazon's behalf or that Amazon otherwise authorized its display.  *See Wynn*, 234 F. Supp. 2d at 1094.  To the contrary, Plaintiffs allege the message implements "*Facebook's* ad transparency functions*" (TAC ¶ 166 (emphasis added)), rather than purporting to be a communication from *Amazon*. Thus, Plaintiffs' allegations provide no basis for concluding that Facebook acted with actual authority when it made the "Why am I seeing this" message available to users.  *See* Restatement (Third) Of Agency § 3.01 (Actual authority "is created by a principal's manifestation to an agent that . . . expresses the principal's assent that the agent take action on the principal's behalf.").  Nor are there any allegations from which to conclude that Facebook acted with Amazon's apparent authority, as Plaintiffs do not allege that Amazon did anything to convey to Facebook users that Amazon authorized Facebook to show interested users the "Why am I seeing this" message.  *See Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (apparent authority requires "[t]he principal's manifestations . . . under circumstances which create in [the agent] a reputation of authority.").  Finally, Plaintiffs' allegations are insufficient to establish that Amazon ratified Facebook's delivery of the "Why am I seeing this" message as a communication on Amazon's behalf—as distinct from a Facebook communication.  *See Knapp v. Sage Payment Sols., Inc.*, 2018 WL 659016, at *7 (N.D. Cal. Feb. 1, 2018) ("[A] party is deemed to have ratified an agent's conduct where, 'knowing the facts,' such party 'accepts the benefits of the agent's actions.'").  Facebook's "Our Advertising Principles"—which Plaintiffs have incorporated by reference into their pleading (*see* TAC ¶ 166)—do not inform advertisers that ad recipients will be notified of any age filters; they simply inform users that "[c]licking on [that transparency feature] tells you [i.e., the user] more about why you were shown the ad." (*See* Schwartz Decl., Ex. B.)  Nor does Facebook's decision to make this feature available benefit Amazon.

*Third*, Plaintiffs allegedly never received the ads and thus never saw the "Why am I seeing this" message.  (*See* TAC ¶¶ 10, 19, 40, 42, 44.)  They could not have been deterred by a message they never received.  *See* 29 C.F.R. § 1625.4 (prohibiting ad terms that "deter the employment of older individuals").  *Cf. Brazil v. Dole Food Co.*, 2013 WL 5312418, at *8–9 (N.D. Cal. Sept. 23, 2013) (dismissing claims based on allegedly unlawful website statements that plaintiff never viewed).

Gibson, Dunn & Crutcher LLP

## 2.      Plaintiffs Have Not Stated A Claim Of Disparate Treatment (Count II).

The ADEA's disparate treatment provision prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To prevail on a disparate treatment claim, a plaintiff must demonstrate that age was the "but-for" cause of the challenged employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2345 (2009).  Here, Plaintiffs have not plausibly alleged that, but for their age, they would have received jobs at Amazon.

### a.      Plaintiffs Fail To Allege They Would Have Learned About Amazon Job Opportunities But For Their Age.

Plaintiffs have not plausibly alleged that, absent purported age targeting, they would have seen the job ads at issue.  Their own allegations demonstrate the opposite.  Plaintiffs allege that "Facebook itself decides within a population selected by an employer . . . to receive a job advertisement which Facebook users will actually receive the advertisement" (TAC ¶ 93), and that "Facebook applies its own algorithm to determine which users will actually receive job advertisements via its ad platform" (*id.* ¶ 94).  Thus, even Facebook users within the allegedly targeted age range did not necessarily receive the ads in question.  Indeed, according to the "Why am I seeing this" messages described in the pleading, *all* of the ads were distributed based on factors other than age.  (*See id.* ¶ 103 ("You're seeing this ad because Amazon . . . wants to reach people ages 18 to 54 *who live or were recently near Silver Spring, Maryland*"); *id.* Ex. A at 3 (same); *id.* at 4 (same); *id.* at 5 ("*One reason* you're seeing this ad is that Amazon . . . wants to reach people interested in *Employment, based on activity such as liking Pages or clicking on ads*.  There *may be other reasons* you're seeing this ad, including that Amazon . . . wants to reach people ages 18 to 50 *who live or were recently near Silver Spring, Maryland*."); *id.* at 6 ("*One reason* you're seeing this ad is that Amazon Web Services wants to reach *people interested in Apache Hadoop, based on activity such as liking Pages or clicking on ads*.  There *may be other reasons* you're seeing this ad, including that Amazon Web Services wants to reach people ages 28 to 55 who live or were recently in the United States.") (emphases added).)  Plaintiffs also allege that Amazon uses Facebook's "Lookalike Audience" feature, which determines which Facebook users will

receive an ad based on many factors, including location and interests.  (*Id.* ¶¶ 82–83.)  Thus, the challenged ads could have been screened out due to various filters other than age and may not have reached Plaintiffs regardless.  Plaintiffs' conclusory allegation that "the sole reason" they did not receive "the job advertisements at issue is the Defendant Class Members' intentional decisions to prevent older workers from receiving their job advertisements" (TAC ¶ 93) is "contradicted by documents referred to in Complaint," and the Court need not accept it as true.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Indeed, even absent any age filters, the named Plaintiffs would not have received three of the five Amazon ads Plaintiffs cite, as those were targeted at Silver Spring, Maryland, where none resides. (TAC ¶ 103; *id.* Ex. A at 3–5.)  Moreover, Plaintiff Bradley's age did not disqualify her from receiving four of the five cited Amazon ads because, at age 45, she was within the alleged targeted age range. (TAC, Ex. A at 3–6.)  Thus, to the extent she alleges she did not receive those ads, it was not because of her age.  And even if the cited ads had been targeted at Plaintiffs, they *still* may not have seen them. That would depend on other factors, such as how much time each spent on Facebook, including on the dates the ads were published, and Plaintiffs allege nothing regarding the extent of their Facebook use.

Nor do Plaintiffs plausibly allege that Amazon's purported age targeting prevented them from learning about job opportunities at Amazon by other means.  There would be no logical reason for Plaintiffs to think that *all* job opportunities are advertised *only* on Facebook, such that the absence of a Facebook ad must mean there is no such opportunity.  The Court may take judicial notice of the fact that *all* Amazon job opportunities are available for viewing on www.amazon.jobs and www.amazondelivers.jobs.  *See, e.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (in Rule 12(b)(6) context, courts may take judicial notice of publicly accessible websites).

### b.    Plaintiffs Have Not Alleged The Elements Of A Failure-To-Hire Claim.

Plaintiffs do not plausibly allege that Amazon's alleged advertising practices caused them not to obtain a job with Amazon.  To the contrary, former Plaintiff Renia Hudson received *two* job offers from Amazon.  (Joint Stip. at 1–2.)  In any event, Plaintiffs do not allege they were qualified for any position at Amazon that was the subject of an age-restricted ad, applied for any position at Amazon, or were dissuaded or prevented from applying for a position at Amazon.  *See Ahmed v. Cty. of Sacramento*,

Gibson, Dunn & Crutcher LLP

2011 WL 3876172, at *4 (E.D. Cal. Sept. 1, 2011), *recommendations adopted in full*, ECF No. 18 (Sept. 29, 2011) (dismissing case because plaintiff "fail[ed] to allege that he was well-qualified for the internship position," it was unclear whether plaintiff applied for the job, and plaintiff did not "assert[] a clear allegation that his age was the 'but for' cause of defendants' failure to name him as an intern").

To establish a *prima facie* case of disparate treatment under the ADEA for failure to hire, a plaintiff must demonstrate that:  (1) he was within the protected class of individuals 40 or older; (2) he applied for a particular position; (3) he was qualified for that position; and (4) a younger person with similar qualifications received the position.  *Bellinger v. Coos Bay Sch. Dist.*, 711 F. App'x 398, 399 (9th Cir. 2017).  Because Plaintiffs have not sufficiently pled three out of four required elements, their failure-to-hire claim must be dismissed.  *Liqiang Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*, 2018 WL 457211, at *3 (N.D. Cal. Jan. 18, 2018) (a plaintiff asserting an ADEA claim must plead sufficient facts with respect to all the required elements of that claim).

*First*, Plaintiffs have not alleged that a single named Plaintiff (or even a single putative class member) ever applied for a position at Amazon.  (*See* TAC ¶¶ 39–44.)  Employment discrimination claims are properly dismissed for failure to state a claim where a plaintiff fails to allege that she applied for the position she purportedly sought.  *See Borja-Valdes v. City & Cty. of S.F.*, 2015 WL 5522287, at *7 (N.D. Cal. Sept. 18, 2015) (dismissing age discrimination claim where plaintiff did not apply for positions).  On this basis alone, Plaintiffs' failure-to-hire claim fails.  *Cummins v. City of Yuma*, 2009 WL 10673475, at *3 (D. Ariz. Feb. 5, 2009), *aff'd* 410 F. App'x 72 (9th Cir. 2011).

Plaintiffs may attempt to circumvent this application requirement by relying on the "deterred applicant" theory first recognized in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) ("*Teamsters*"), which, in rare circumstances, permits a claimant to pursue her claim even when she is a non-applicant.  However, a plaintiff may proceed under this theory only if she has "allege[d] facts sufficient to support an inference that applying for a job would have been a 'futile gesture.'"  *Wynn*, 234 F. Supp. 2d at 1098; *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (noting that the failure to apply for a position will defeat a failure-to-hire action except "in unusual circumstances").  Here, Plaintiffs have not identified any specific position for which Amazon advertised using age-restricted ads that they would have applied for and been qualified to receive absent

Amazon's allegedly discriminatory practices, nor have they alleged any facts that could sustain an inference that applying for such a position at Amazon would have been a "futile gesture" due to their age. Indeed, the experience of former Plaintiff Hudson completely undermines this theory: she learned about an Amazon job *on Facebook*, and then applied for and was offered the position. (Joint Stip. at 2.)[3] Further, "[s]ince *Teamsters*, courts have allowed plaintiffs to assert a deterred applicant theory only in those cases where the defendant employer hired remarkably few individuals from the protected class." *Wynn*, 234 F. Supp. 2d at 1098 (collecting cases, including *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1154 (9th Cir. 1982) (permitting a deterred applicant claim where defendant employed no women "wire chiefs")). Although Plaintiffs allege that "Defendant Class Members[']. . . discriminatory advertising campaigns have caused . . . significantly fewer older workers to be hired by these employers" (TAC ¶ 183), their Third Amended Complaint lacks any allegation that the actual number of older workers that Amazon has hired is particularly low.

*Second*, Plaintiffs have not alleged any facts to demonstrate their purported qualifications for any specific position at Amazon that was the subject of an age-restricted ad. *See Bradley v. Cty. of Sacramento Dep't of Human Assistance of N. Cal. Welfare Div.*, 2014 WL 4078945, at *5 (E.D. Cal. Aug. 14, 2014) (dismissing failure-to-hire claim where plaintiff failed to sufficiently allege that she was qualified for the position). Instead, Plaintiffs allege they would be qualified for a "range of positions at Amazon." (TAC ¶¶ 39, 41, 43.) They allege Plaintiffs Bradley and Callahan would be qualified to work at Amazon as a "Customer Service Associate and Seller Support Associate," and that Plaintiff Anscombe would be qualified to work as a "Cabling Technician, Network Technician, Data Center Technician, and Loss Prevention Specialist." (*Id.*) But none of these positions was advertised in the

---

[3] Plaintiffs are judicially estopped from advancing claims inconsistent with these facts, which the Court accepted when permitting Plaintiffs to file a Third Amended Complaint. *Carr v. Beverly Health Care & Rehab. Servs., Inc.*, 2013 WL 5946364, at *6 (N.D. Cal. Nov. 5, 2013) (applying judicial estoppel to dismiss claims under Rule 12(b)(6)). Plaintiffs also agreed that "Defendants may refer to any facts regarding Renia Hudson throughout this litigation." Joint Stip. at 3.

age-restricted ads Plaintiffs have identified.  (*See id.* ¶ 103; *id.* Ex. A at 2-6.)  Plaintiffs' broad allegation that "T-Mobile, Amazon, and Cox" used age-restricted ads to recruit for "some or all" of the positions for which Plaintiffs claim they would be qualified *(id.* ¶¶ 39, 41, 43) is insufficient to show that Amazon used age-restricted ads to recruit for the specific positions for which Plaintiffs claim they are qualified. Plaintiffs' generic allegations that they have "skills in a range of areas" and were "qualified to perform one or more job[s] at each of the Defendant Class Members that was offered during the time period at issue in this case" *(id.* ¶¶ 40, 42, 44), are likewise insufficient.

*Third*, Plaintiffs do not plausibly allege that a position for which they applied was filled by someone substantially younger.  *See, e.g.*, *Manzoor v. Travis Credit Union*, 2012 WL 2921380, at *4 (E.D. Cal. July 17, 2012) (dismissing failure-to-hire claim where plaintiff did not allege that position was filled by someone substantially younger with similar qualifications).  Indeed, Plaintiffs allege no facts regarding the identities, ages, or qualifications of the individuals who *actually* received offers from Amazon for the positions that were the subject of the alleged ads on Facebook, which makes it impossible to discern whether the individuals hired were younger than Plaintiffs.

### c.   Plaintiffs Have Not Alleged Discrimination Against Any Individual With Respect To Compensation, Terms, Or Privileges Of Employment.

Plaintiffs also have not plausibly alleged that Amazon "discriminate[d] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Targeting certain job ads to individuals based on their age does not constitute discrimination "with respect to" an individual's "compensation, terms, conditions, or privileges of employment," and therefore cannot form the basis of such a claim.  Indeed, Plaintiffs have no employment relationship with Amazon whatsoever, rendering the entire clause inapplicable.

The Supreme Court has construed "terms, conditions, and privileges of employment" to mean benefits that are "part and parcel" of an employee's status.  *Hishon v. King & Spalding*, 467 U.S. 69, 75–76 (1984) (interpreting identical language in Title VII); 29 U.S.C. § 630(l) (the term "compensation, terms, conditions, or privileges of employment" "encompasses all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan").  Under Ninth Circuit precedent, only benefits that "are awarded *on the basis of an employment relationship*" are subject to Title VII's

identical prohibition on discrimination in the "terms, conditions, or privileges of employment." *Moran v. Selig*, 447 F.3d 748, 754 (9th Cir. 2006).

Here, Plaintiffs' disparate treatment claim is predicated on the allegation that Amazon "exclude[d] older workers from the population of individuals to whom" it directed its "employment advertisements and recruiting on Facebook's ad platform." (TAC ¶ 163.)  Receiving a job-related ad on Facebook (or anywhere else), however, is not a benefit "awarded on the basis of an employment relationship," and therefore is not protected by the ADEA.  *See Moran*, 447 F.3d at 754.

### d.    Plaintiffs Have Not Adequately Alleged That Amazon Intended To Discriminate Based On Age.

Plaintiffs' disparate treatment claim also fails because Plaintiffs have not adequately alleged that Amazon intended to discriminate against them based on age.  In a disparate treatment case, an employer can be liable only if it acted on "inaccurate and stigmatizing stereotypes" or with animus. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).  Here, although Plaintiffs conclusorily allege that putative defendant class members acted "with the intent and purpose of discouraging and preventing older workers from applying for jobs" (TAC ¶ 180), and "have intentionally excluded older workers from receiving their job advertisements via Facebook because [they] know and intend that this discriminatory advertising practice will . . . decrease the number of older workers hired by them" (*id.* ¶ 182), they have not supported these contentions with "sufficient factual matter." *Iqbal*, 556 U.S. at 678.  Moreover, Plaintiffs' allegations regarding the *effect* of Amazon's purportedly discriminatory advertising practices (*see* TAC ¶¶ 183, 185), even if true, would not be sufficient to show intentional discrimination for purposes of their disparate treatment claim (and Plaintiffs have abandoned their disparate impact claim altogether).  *See Heath v. Google*, No. 5:15-cv-1824-BLF, Tr. of Proceedings at 27:7–13 (N.D. Cal. July 12, 2018) (expressing skepticism regarding viability of disparate treatment claim where plaintiffs had not identified any "evidence of anyone saying anything about a plan to have a younger work force" and instead sought to rely on inferences drawn from statistics).  Indeed, Plaintiffs have not alleged anything about Amazon demonstrating discriminatory animus toward older individuals or that Amazon's employment decisions were motivated by "inaccurate and stigmatizing stereotypes" regarding older workers.  Nothing in the Third Amended Complaint gives rise to any

Gibson, Dunn & Crutcher LLP

inference that Amazon intended to discriminate.  *See Square v. Potter*, 2009 WL 10671413, at *2 (C.D. Cal. June 22, 2009), *aff'd sub nom. Square v. Donahoe*, 430 F. App'x 633 (9th Cir. 2011) (dismissing disparate treatment claim where plaintiff "present[ed] nothing but her own speculation to suggest that any of her supervisors were motivated by discriminatory animus").   Former Plaintiff Hudson's experience demonstrate the opposite:  she was twice offered employment by Amazon.  (Joint Stip. at 1–2.)  Plaintiffs have failed to plead *prima facie* ADEA claims of intentional discrimination.

### 3.    Plaintiffs Have Not Stated A Claim For Unlawful Employment Agency Practices.

Plaintiffs also allege disparate treatment under 29 U.S.C. § 623(b), which prohibits employment agencies from "fail[ing] or refus[ing] to refer for employment, or otherwise . . . discriminat[ing] against, any individual because of such individual's age."  The ADEA defines an "employment agency" as "any person regularly undertaking . . . to procure employees for an employer."  29 U.S.C. § 630; *see also Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 833 F.2d 1334, 1337 (9th Cir. 1987) ("employment agency" under Title VII is "an intermediary between applicant and employer").  Plaintiffs allege that Defendants "are either employers or employment agencies or both." (TAC ¶ 176.)  They do not, however, allege any facts to support the legal conclusion that Amazon is an "employment agency," nor could they, since Amazon is "not in the business of employee placement."  *Stewart v. Am. Ass'n of Physician Specialists, Inc.*, 2015 WL 7722349, at *5 (C.D. Cal. Nov. 30, 2015) (non-profit was not "employment agency" under Title VII because it was not involved in creating "direct employment relationships between third parties").

Plaintiffs further allege that Facebook is an "employment agency" under the ADEA and that it "acted within the scope of its agency . . . as the . . . employment agency of the Defendant Class Members" in sending age-restricted ads.  (TAC ¶ 34.)  In concluding that Facebook is an "employment agency," Plaintiffs merely parrot the ADEA's definition of that term, which encompasses "any person regularly undertaking with or without compensation to procure employees for an employer."  (*Id.* at n.6 (citing 29 U.S.C. § 630(c)).)  The Court need not accept these legal conclusions as true.  *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1153 (N.D. Cal. 2014) (Freeman, J.).  In fact, Facebook is not "engaged in the business of procuring employees or employment opportunities—any more than [it is] engaged in the used car business or in the real estate business when [it] accept[s] and [sends ads] designed to bring

1   buyers and sellers together in those fields." *Brush v. San Francisco Newspaper Printing Co.*, 315 F.

2   Supp. 577, 580 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972).  Indeed, courts have concluded

3   under Title VII that newspapers are not "employment agencies" simply because they publish job-

4   related ads.  *See Greenfield v. Field Enters., Inc.*, 1972 WL 155, at *4 (N.D. Ill. Feb. 1, 1972); *Brush*,

5   315 F. Supp. at 580.  Thus, Facebook's alleged actions in this case could not give rise to Defendants'

6   liability under 29 U.S.C. § 623(b), even if there were some basis for holding Defendants vicariously

7   liable for Facebook's independent conduct (which there is not, *see supra* Part III.C.1).

8       For these reasons, Plaintiffs' claim under 29 U.S.C. § 623(b) must be dismissed.

9       **4.       Plaintiffs' State Law Claims Also Fail As A Matter Of Law.**

10      As a threshold matter, Plaintiffs' California and D.C. claims fail as a matter of law because

11   those jurisdictions' statutes do not apply extraterritorially and there is no named Plaintiff from either

12   of those jurisdictions.  *See supra* Part III.A.3.

13      Plaintiffs' state law claims also fail for the same reasons described above because the state

14   statutes Plaintiffs invoke are generally similar to the ADEA provisions at issue with respect to the core

15   elements required to prove each claim.  (The statutes do, however, differ in other respects, such as

16   causation standards and the ages of covered persons.  *See* Defs.' Mot. to Strike.)

17      *First*, Plaintiffs have not stated a claim of discriminatory advertising under any state law.  All

18   of the statutes pleaded bar employers from publishing employment ads and notices that express a pref-

19   erence, limitation, specification, discrimination, or distinction based on age.  *See* Cal. Gov't Code

20   § 12940(d); D.C. Code § 2–1402.11(a)(4)(B); Ohio Rev. Code Ann. § 4112.02(E)(4).  As with the

21   ADEA's advertising provision, courts interpreting these statutes focus on the content of the ads.  *See,*

22   *e.g.*, *Glabecki v. Gorman-Lavelle Corp.*, 2018 WL 2299168, at *7 (N.D. Ohio May 21, 2018) (job ad

23   seeking "someone trying to get back on their feet **or** a younger person trying to get a good start in life"

24   did not support discrimination claim under ADEA or Ohio law); *Koslow v. Epstein Becker & Green,*

25   *P.C.*, 1998 WL 241642, at *1–2 (D.D.C. Mar. 10, 1998), *vacated*, 1998 WL 412417 (D.D.C. June 22,

26   1998) (evaluating job ad seeking associate "between 2 and 6 years out of law school" under ADEA

27   and DCHRA).  Because Plaintiffs identify only facially neutral Amazon ads, *supra* Part III.C.1, Plain-

28   tiffs cannot prevail under any of the state advertising laws they invoke.

*Second*, Plaintiffs' state law disparate treatment claims fail for the same reasons their ADEA disparate treatment claim fails.  *See, e.g.*, *Thomas v. Gandhi*, 525 F. Supp. 2d 103, 108 (D.D.C. 2007), *aff'd*, 377 F. App'x 25 (D.C. Cir. 2010) (finding plaintiff failed to plead *prima facie* failure-to-hire claim under ADEA and D.C. law under same analysis); *Grant v. Harcourt Brace Coll. Publishers*, 191 F.3d 452 (6th Cir. 1999) (affirming same under ADEA and Ohio law); *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1123–24 (Cal. 2000) (applying same analysis under ADEA and California law).

*Third*, Plaintiffs' claims under the California Unruh Civil Rights Act fail because that Act "'has no application to employment discrimination.'"  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (citation omitted).  The Unruh Act secures equal access to public accommodations and proscribes discrimination by business establishments "in the course of furnishing goods, services, or facilities to . . . clients, patrons or customers."  *Alcorn v. Anbro Eng'g, Inc.*, 468 P.2d 216, 220 (Cal. 1970).  The Act does not cover claims premised on an employment relationship between a plaintiff and defendant.  *Id.*; *see also Sprewell*, 266 F.3d at 989 (affirming dismissal of Cal. Civ. Code §§ 51 & 51.5 claims "stemm[ing] from [plaintiff's] employment relationships" with defendants).  Here, Plaintiffs attempt to cast their claims in the Unruh Act mold by alleging that Defendants, including Amazon, impermissibly "deprived persons the full and equal advantages, privileges, and services in their business establishments" based on age "by denying them information about employment opportunities and information about their services, goods, and establishments."  (TAC ¶ 218; *id.* ¶ 225 (alleging Defendants "have boycotted, blacklisted, refused to contract with, sell to, and trade with persons because of their age" based on the same alleged practices)).  But Plaintiffs' artful pleading efforts cannot change the fact that their claims are, at their core, employment-related claims that courts uniformly recognize the Unruh Act does not cover.  *See, e.g.*, *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 874–75 (9th Cir. 1996).  Thus, Plaintiffs' Unruh Act claims fail.

*Finally*, Plaintiffs' claim under the California Business and Professions Code fails because it is derivative of their other insufficient claims.  *See, e.g.*, *Smith v. Level 3 Commc'ns Inc.*, 2014 WL 7463803, at *4 (N.D. Cal. Dec. 30, 2014).

## IV.  CONCLUSION

Amazon asks the Court to dismiss Plaintiffs' Third Amended Complaint with prejudice.

Gibson, Dunn & Crutcher LLP

1   Dated: October 11, 2018                    GIBSON, DUNN & CRUTCHER LLP

2                                                By:   */s/ Jason C. Schwartz*
3                                                       Jason C. Schwartz

4                                                      Rachel S. Brass
                                                       Joshua S. Lipshutz
5                                                      Greta B. Williams
                                                       Anna M. McKenzie
6                                                      Naima L. Farrell

7                                                      Attorneys for Amazon.com, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28