Jahan C. Sagafi   (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com

Patricia Shea (*pro hac vice*)
Katherine A. Roe (*pro hac vice*)
COMMUNICATIONS WORKERS
OF AMERICA
501 3rd Street, N.W.
Washington, DC 20001
Telephone: (202) 434-1100
E-mail: jcalemine@cwa-union.org
E-mail: aroe@cwa-union.org

P. David Lopez (*pro hac vice*)
Peter Romer-Friedman (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile:  (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

Adam T. Klein (*pro hac vice*)
Robert N. Fisher (Cal. Bar No. 302919)
Jared W. Goldman (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rfisher@outtengolden.com
E-mail: jgoldman@outtengolden.com

*Attorneys for Plaintiffs and the Proposed
Plaintiff Class and Collective.*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, LINDA BRADLEY, MAURICE ANSCOMBE, LURA CALLAHAN, and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE US, INC., AMAZON.COM, INC., COX COMMUNICATIONS, INC., COX MEDIA GROUP, LLC, and similarly situated employers and employment agencies, DOES 1 through 1,000,<br><br>Defendants. | Case No. 17-cv-07232-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Date:          April 18, 2019<br>Time:          9:00 a.m.<br>Courtroom:  San Jose Courthouse, Rm 3<br>Judge:         Hon. Beth L. Freeman |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

ARGUMENT ................................................................................................................. 5

I.    Plaintiffs Satisfy the Pleading Standards for Stating ADEA and State Law Claims ..................... 5

      A.    Plaintiffs Have Stated a Publication Claim Under the ADEA ............................................ 5

            1.    The ADEA's Publication Provision Bars Discriminatory Ad Campaigns and Advertisements Regardless of Intent ........................................................................ 5

            2.    Ads or Notices That Reference Age Indicate a Preference or Discrimination ....... 7

            3.    Ad Campaigns That Exclude Older Workers From Receiving Job Ads Based on Their Age Indicate a Preference or Discrimination Based on Age ................... 7

            4.    Defendants Violated the ADEA's Publication Provision by Excluding Older Workers From Receiving Their Job Ads .................................................... 10

            5.    Defendants' Ad Content Facially Violates the ADEA's Publication Provision ... 13

                a.    "Why Am I Seeing This Ad" Statement Is Part of an Ad or Notice ......... 13

                b.    Defendants Cannot Shift Blame to Facebook for the Biased Statement .. 14

                c.    Plaintiffs Need Not See the "Why Am I Seeing This Ad" Statement ...... 16

      B.    Plaintiffs Have Stated a Claim for Disparate Treatment in Hiring Under the ADEA ...... 17

            1.    The Complaint Alleges That Age Caused the Exclusion of Older Workers ........ 17

            2.    Plaintiffs Have Alleged a Plausible Disparate Treatment Hiring Claim Based on Direct Evidence of a Facially Discriminatory Policy .......................................... 20

                a.    Plaintiffs Plead Intentional Discrimination by Alleging That Defendants Had a Facially Discriminatory Policy ...................................................... 20

                b.    Plaintiffs Need Not Plead a Prima Facie Case or Satisfy *McDonnell Douglas*, But Plaintiffs Do Plead a Prima Facie Case Through Direct Evidence of a Facially Discriminatory Policy ......................................... 22

                c.    While Not Necessary to State a Claim, Plaintiffs Make Factual Allegations That Would Satisfy the *McDonnell Douglas* Factors ............ 23

      C.    Plaintiffs Sufficiently Allege the Unnamed Defendants Are Employment Agencies ...... 24

      D.    Defendants Fail to Argue for the Dismissal of Plaintiffs' ADEA § 623(a)(2) Claim ...... 26

             PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

E.      Plaintiffs Have Sufficiently Pled Their State Law Claims ................................ 26

F.      The Court Must Disregard Materials Beyond the Complaint ............................ 27

II.   This Forum Has Personal Jurisdiction Over the Defendants ........................................ 29

A.      The Standard for Specific Personal Jurisdiction in This Circuit ...................... 29

B.      Plaintiffs Have Established That the Alleged Violations Occurred in California ........... 30

        1.      Defendants' Active Use of Facebook to Create, Target, and Deliver Discriminatory Ads Occurred in California ........................................... 30

        2.      Defendants' Use of Facebook to Advertise Jobs and Hire in California Independently Supports Personal Jurisdiction ...................................... 33

        3.      The Cases on Which Defendants Rely Are Distinguishable ................ 35

C.      Defendants Fail to Show It Would Be Unreasonable to Litigate in this Forum .............. 36

III.  Plaintiffs Have Standing to Pursue Their Claims .......................................................... 37

A.      Plaintiffs Are Aggrieved Persons Injured by Defendants' Discrimination ..................... 37

B.      CWA Has Associational Standing to Sue on Behalf of its Members .............................. 40

C.      The Worker Plaintiffs and CWA Have Standing to Assert Their State Law Claims ....... 42

CONCLUSION ............................................................................................................................. 44

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE(S)

*Advice Co. v. Novak,*
   No. 08 Civ. 1951, 2009 WL 210503 (N.D. Cal. Jan. 23, 2009)..................................................... 35

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle,*
   829 F.2d 933 (9th Cir. 1987)..................................................... 40

*Alch v. Super. Ct. of L.A.,*
   122 Cal. App. 4th 339 (2004)..................................................... 27

*Ardalan v. McHugh,*
   No. 13 Civ. 01138, 2015 WL 546778 (N.D. Cal. Feb. 10, 2015)..................................................... 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................... 5

*Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California,*
   159 F.3d 1178 (9th Cir. 1998)..................................................... 40

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017)..................................................... 36

*Bank of Am. Corp. v. City of Miami, Fla.,*
   137 S.Ct. 1296 (2017)..................................................... 37, 38

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................... 5

*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008)..................................................... 36

*Box v. A & P Tea Co.,*
   772 F.2d 1372 (7th Cir. 1985)..................................................... 24

*Boyd v. City of Wilmington, N.C.,*
   943 F. Supp. 585 (E.D.N.C. 1996)..................................................... 7, 14

*Bradley v. Cty. of Sacramento Dep't of Human Assistance of N. Cal. Welfare Div.,*
   No. 13 Civ. 2420, 2014 WL 4078945 (E.D. Cal. Aug. 14, 2014)..................................................... 23

*Brazil v. Dole Food Co., Inc.,*
   2013 WL 5312418 (N.D. Cal. Sept. 23, 2013)..................................................... 40

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*,
　137 S. Ct. 1773 (2017) ........................................................................................ 30, 32

*Broomfield v. Craft Brew All., Inc.*,
　No. 17 Civ. 01027, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ........................................ 34

*Burch v. Cal. Dep't of Motor Vehicles*,
　No. 13 Civ. 1283, 2013 WL 6844493 (E.D. Cal. Dec. 23, 2013) .................................... 5, 22

*Calder v. Jones*,
　465 U.S. 783 (1984) ................................................................................................ 30

*Campbell v. Arco Marine*,
　50 Cal. Rptr. 2d 626 (1996) ...................................................................................... 43

*Candelore v. Tinder, Inc.*,
　19 Cal. App. 5th 1138 (Cal. Ct. App. 2018) ................................................................ 27

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
　No. 15 Civ. 02177, 2017 WL 607602 (N.D. Cal. Feb. 15, 2017) ...................................... 27

*Chambers v. Wynne Sch. Dist.*,
　909 F.2d 1214 (8th Cir. 1990) .................................................................................. 24

*Cooper v. Federal Reserve Bank of Richmond*,
　467 U.S. 867 (1984) ................................................................................................ 19

*Cmty. House, Inc. v. City of Boise*,
　490 F.3d 1041 (9th Cir. 2007) ................................................................................ 6, 20

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014) ........................................................................................ 32, 33

*Darensburg v. Metro. Transp. Comm'n.*,
　No. 05 Civ. 01597, 2005 WL 2277031 (N.D. Cal. Sept. 19, 2005) .................................... 41

*Doe v. Virgin Am., Inc.*,
　No. 18 Civ. 02420, 2018 WL 5291987 (N.D. Cal. Oct. 22, 2018) .................................... 43

*Diamond Multimedia Syss., Inc. v. Super. Court*,
　968 P.2d 539 (1999) ................................................................................................ 43

*Dytch v. Yoon*,
　No. 10 Civ. 02915, 2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ...................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

*EEOC v. Borden's, Inc.*,
   724 F.2d 1390 (9th Cir. 1984) ................................................................................ 20

*EEOC v. Marion Motel Assocs.*,
   763 F. Supp. 1338 (W.D.N.C. 1991) ....................................................................... 21

*Elliott v. QF Circa 37, LLC*,
   No. 16 Civ. 0288, 2018 WL 2933467 (S.D. Cal. June 12, 2018) ............................ 7

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ............................................................................ 19

*Enlow v. Salem-Keizer Yellow Cab Co.*,
   389 F.3d 802 (9th Cir. 2004) .................................................................................. 22

*Enoh v. Hewlett Packard Enter. Co.*,
   No. 17 Civ. 04212, 2018 WL 3377547 (N.D. Cal. July 11, 2018) .......................... 35

*Fintech Fund, FLP v. Horne*,
   No. 18 Civ. 1125, 2018 WL 3329862 (S.D. Tex. July 6, 2018) .............................. 31

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
   905 F.3d 597 (9th Cir. 2018) ............................................................................ 30, 36

*George Wash. Univ. v. D.C. Bd. of Zoning Adjustment*,
   831 A.2d 921 (D.C. 2003) ...................................................................................... 42

*Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*,
   685 F.2d 1149 (9th Cir. 1982) ................................................................................ 24

*Godwin v. Hunt Wesson, Inc.*,
   150 F.3d 1217 (9th Cir. 1998), as amended ........................................................... 22

*Green v. Kinney Shoe Corp.*,
   704 F. Supp. 259 (D.D.C. 1988) ............................................................................. 42

*Gross v. FBL Fin. Servs., Inc.*,
   129 S. Ct. 2343 (2009) ........................................................................................... 17

*Guevara v. UMH Props., Inc.*,
   No. 11 Civ. 2339, 2014 WL 5488918 (W.D. Tenn. Oct. 29, 2014) .................. 7, 8, 12

*Hailes v. United Air Lines*,
   464 F.2d 1006 (5th Cir. 1972) .......................................................................... 14, 39

*Harris v. Itzhaki*,
    183 F.3d 1043 (9th Cir. 1999) ........................................................................... 15

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................................. 38, 39

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993) ................................................................................. 17, 21

*Heldt v. Tata Consultancy Servs., Ltd.*,
    132 F. Supp. 3d 1185 (N.D. Cal. 2015) ............................................................. 37

*Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*,
    253 F. Supp. 3d 1115 (D. Or. 2017) ................................................................. 34

*Herring Networks, Inc. v. AT&T Servs., Inc.*,
    No. 16 Civ. 01636, 2016 WL 4055636 (C.D. Cal. July 25 2016) ....................... 32

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) .............................................................................. 37

*Hodgson v. Approved Pers. Serv., Inc.*,
    529 F.2d 760 (4th Cir. 1975) ....................................................................... 7, 8, 13

*Horowitz v. AT&T Inc.*,
    No. 17 Civ. 4827, 2018 WL 1942525 (D. N.J. Apr. 25, 2018) .......................... 35

*Hous. Rights Ctr. v. Sterling*,
    404 F. Supp. 2d 1179 (C.D. Cal. 2004) ..................................................... *passim*

*Illinois v. Xing Ying Emp't Agency*,
    No. 15 Civ. 10235, 2018 WL 1397427 (N.D. Ill. Mar. 20, 2018) ....................... 6, 7

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    No. 16 Civ. 06391, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ...................... 35

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) .......................................................................... 19, 24, 39

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991) ............................................................................................ 21

*Jacobson v. Hair*,
    No. 09 Civ. 09377, 2011 WL 13112239 (C.D. Cal. Jan. 31, 2011) .................... 22

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

*JibJab Media Inc. v. White Castle Mgmt.*,
    No. 12 Civ. 04178, 2013 WL 12123696 (C.D. Cal. May 14, 2013) ...................................................... 35

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ...................................................................................................................... 31

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
    222 F.3d 289 (7th Cir. 2000) ........................................................................................................ 39

*L.A. Dep't of Water & Power v. Manhart*,
    435 U.S. 702 (1978) ...................................................................................................................... 21

*Latta v. C.L. Otter*,
    771 F.3d 456 (9th Cir. 2014) ........................................................................................................ 21

*Lexmark Int'l, Inc.v. Static Control Components, Inc.*,
    134 S.Ct. 1377 (2014) ................................................................................................................... 38

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co, Inc.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ......................................................................................... 33

*Lodestar Anstalt v. Bacardi & Co. Ltd.*,
    No. 16 Civ. 06411, 2017 WL 3534984 (C.D. Cal. Aug. 14, 2017) ........................................ 33, 34

*Lucas v. Ferrara Candy Co.*,
    No. 13 Civ. 1525, 2014 WL 3611130 (N.D. Ill. July 22, 2014) ...................................... 12, 21, 32

*Lucas v. Gold Standard Baking, Inc.*,
    No. 13 Civ. 1524, 2014 WL 518000 (N.D. Ill. Feb. 10, 2014) ..................................................... 32

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012) ......................................................................................................... 31

*Martin v. Holiday Universal Inc.*,
    No. 90 Civ. 1188, 1990 WL 209266 (D. Md. Oct.3, 1990) .......................................................... 42

*Martinez v. Optimus Props., LLC*,
    No. 16 Civ. 08598, 2017 WL 1040743 (C.D. Cal. Mar. 14, 2017) ............................................ 8, 12

*Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*,
    No. 07 Civ. 00495, 2007 WL 4440962 (D. Haw. Dec. 19, 2007) ............................................ 40, 41

*Mavrix Photo, Inc. v. Brand Techs, Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................................................................... 31

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)............................................................................................ 37

*McCamey v. Hewlett Packard Co.*,
  No. 11 Civ. 0702, 2011 WL 4056158 (E.D. Cal. Sept. 12, 2011) ....................................... 43

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ............................................................................................................ 22

*Miller v. Maxwell's Int'l Inc.*,
  991 F.2d 583 (9th Cir. 1993)............................................................................................... 15

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
  692 F.3d 983 (9th Cir. 2012) .............................................................................................. 28

*Moeller v. Taco Bell Corp.*,
  816 F. Supp. 2d 831 (N.D. Cal. 2011) ................................................................................. 42

*Monteilh v. AFSCME, AFL-CIO*,
  982 A.2d 301 (D.C. 2009)................................................................................................... 42

*Morrow v. Miss. Publishers Corp.*,
  No. 72 Civ. 17, 1972 WL 236 (S.D. Miss. Nov. 27, 1972)................................................... 25

*MSGI Sec. Sols., Inc. v. Hyundai Syscomm Corp.*,
  No. 09 Civ. 03330, 2010 WL 2735406 n.1 (N.D. Cal. July 12, 2010) ................................. 26

*NAACP v. ITT Cmty. Dev. Corp.*,
  399 F. Supp. 366 (D.D.C. 1975) ........................................................................................... 8

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015)............................................................................................. 44

*Netgear, Inc. v. Redzone Wireless, LLC*,
  No. 16 Civ. 06974, 2017 WL 2351359 (N.D. Cal. May 31, 2017)....................................... 35

*Nevarez v. Sumavision SFO LLC*,
  No. 17 Civ. 03137, 2018 WL 827969 (N.D. Cal. Feb. 12, 2018) ............................... 5, 14, 27

*New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc.*,
  No. 08 Civ. 1731, 2010 WL 2674474 (D.N.J. June 30, 2010)............................................. 34

*NuboNau, Inc. v. NB Labs, Ltd.*,
  No. 10 Civ. 2631, 2012 WL 843503 (S.D. Cal. Mar. 9, 2012) ............................................ 35

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

*Ochoa v. J.B. Martin and Sons Farms, Inc.*,
   287 F.3d 1182 (9th Cir. 2002) .......................................................................... 32

*Olagues v. Russoniello*,
   797 F.2d 1511 (9th Cir. 1986) .......................................................................... 40

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ............................................................................ 38

*Oman v. Delta Air Lines, Inc.*,
   889 F.3d 1075 (9th Cir. 2018) .......................................................................... 43

*Or. Advocacy Ctr. v. Mink*,
   322 F.3d 1101 (9th Cir. 2003) .......................................................................... 41

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
   757 F.2d 1058 (9th Cir. 1985) .......................................................................... 30

*Passantino v. J&J Consumer Prods.*,
   212 F.3d 493 (9th Cir. 2000) ............................................................................ 30

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) .......................................................................... 29

*Peterson v. Archstone*,
   601 F. Supp. 2d 123 (D.D.C. 2009) ................................................................. 42

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ..................................................................... 34, 35

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
   413 U.S. 376 (1973) ....................................................................................... 9, 14

*Quarles v. Gen. Invest. & Develop. Co.*,
   260 F. Supp. 2d 1 (D.D.C. 2003) ..................................................................... 42

*Ragin v. New York Times Co.*,
   923 F.2d 995 (2d Cir. 1991) ............................................................................... 7

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .......................................................................... 29

*Reyes v. Checksmart Fin., LLC*,
   701 F. App'x 655 (9th Cir. 2017) ..................................................................... 38

ix

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ................................................................................ 2

*Rhapsody Sols., LLC v. Cryogenic Vessel Alts., Inc.*,
  No. 12 Civ.1168, 2013 WL 820589 (S.D. Tex. Mar. 5, 2013) ............................. 31

*Salyers v. Metro. Life Ins. Co.*,
  871 F.3d 934 (9th Cir. 2017) ........................................................................ 15, 16

*Santiago v. City of L.A.*,
  No. 15 Civ. 08444, 2016 WL 7176694 (C.D. Cal. Nov. 17, 2016) ...................... 41

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ..................................................................... 29, 36

*Sheppard v. David Evans & Assoc.*,
  694 F.3d 1045 (9th Cir. 2012) ............................................................................. 22

*Sims v. Worldpac Inc.*,
  No. 12 Civ. 05275, 2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ........................ 43

*Sloan v. General Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................. 34

*Smith v. City of Jackson*,
  544 U.S. 228 (2005) .............................................................................................. 6

*Smyly v. IBM Corp.*,
  No. 93 Civ. 20149, 1995 WL 7745 (N.D. Cal. Jan. 4, 1995) .............................. 24

*Solis v. Northridge Custom Homes, LLC*,
  No. 10 Civ. 1743, 2011 WL 13213635 (E.D. La. Feb. 17, 2011) ........................ 34

*Sullivan v. Oracle Corp.*,
  254 P.3d 237 (2011) ............................................................................................. 43

*Surface Supplied Inc. v. Kirby Morgan Dive Sys.*,
  No. 13 Civ. 575, 2013 WL 2355446 (N.D. Cal. May 29, 2013) .......................... 35

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (202) ............................................................................................... 22

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  No. 17 Civ. 00561, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ..................... 31

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  135 S. Ct. 2507 (2015) .................................................................................. 6

*Thompson v. N. Am. Stainless, LP*,
  562 U.S. 170 (2011) ..................................................................................... 38

*Trans World Airlines, Inc. v. Thurston*,
  469 U.S. 111 (1985) .............................................................................. 6, 21, 22

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ................................................................................ 40, 41

*United States v. Hunter*,
  459 F.2d 205 (4th Cir. 1972) ....................................................................... 7, 10

*United States v. Real Estate One, Inc.*,
  433 F. Supp. 1140 (E.D. Mich. 1977) ............................................................... 9

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ..................................................................................... 18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..................................................................................... 29

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*,
  704 F.3d 668 (9th Cir. 2012) .......................................................................... 29

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) ........................................................................ 32

*Wynn v. Nat'l Broad. Co.*,
  234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................ 15

**Statutes**

29 U.S.C. § 621 ...................................................................................... *passim*

29 U.S.C. § 623 ...................................................................................... *passim*

29 U.S.C. § 626 ....................................................................................... 37, 41

29 U.S.C. § 630 ....................................................................................... 15, 24

42 U.S.C. § 2000e(c) ............................................................................... 6, 9, 25

42 U.S.C. § 3601 .......................................................................................... 8

42 U.S.C. § 3604(c) ........................................................................................... 2, 6, 9

Cal. Civ. Code § 51(b) ............................................................................................. 27

Cal. Code Civ. Proc. § 410.10 ................................................................................ 29

**RULES**

Fed. R. Civ. P. 12 ......................................................................................... 5, 36, 37

**REGULATIONS**

29 C.F.R. § 100.75(c) .................................................................................... 8, 9, 11

29 C.F.R. § 1604.5 ........................................................................................ 8, 9, 11

29 C.F.R. § 1625.4 ....................................................................................... 7, 11,13

**OTHER AUTHORITIES**

29 Fed. Reg. 2477 (Feb. 12, 1964) ............................................................................ 9

45 Fed. Reg. 57102 (Aug. 26, 1980) ...................................................................... 8, 9

45 Fed. Reg. 57104 (Aug. 26, 1980) ...................................................................... 8, 9

EEOC Compliance Manual § 631.2(b)(1) Private Employment Agencies,
    2006 WL 4672853 (2006) ................................................................................... 25

1

**<u>INTRODUCTION</u>**

2    Plaintiffs respectfully submit the following Opposition to Defendants' Motion to Dismiss and

3    supplemental memoranda.  *See* Amazon.com, Inc.'s Mot. to Dismiss Plaintiffs' Third Am. Compl.

4    ("Mot."), ECF No. 73; T-Mobile US, Inc.'s Joinder in and Supp. Mem. in Support of Mot. ("T-Mobile

5    Br."), ECF No. 75; Cox Media Group, LLC and Cox Communications, Inc.'s Joinder in Mot. and Supp.

6    Mem. in Support of Mot. ("Cox Br."), ECF No. 76.

7    This case seeks to ensure that our nation's most fundamental civil rights laws are not undermined

8    by employers' use of new "microtargeting" technologies that enable them to exclude workers from their

9    advertising and recruiting campaigns based on workers' statutorily-protected demographics.

10    In the 1960s, Congress enacted civil rights laws prohibiting employers from engaging in

11    discriminatory advertising and recruiting that denies opportunity to workers based on their race, sex, or

12    age, including the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights

13    Act of 1964 ("Title VII").  Some 50 years after the ADEA was enacted, Plaintiffs discovered that

14    hundreds of major American employers were using new digital, online tools provided by Facebook to

15    systematically target their job ads on Facebook's ad platform to younger workers and simultaneously

16    exclude older workers from receiving the same job ads.  Defendants Amazon.com, Inc. ("Amazon"), T-

17    Mobile US, Inc. ("T-Mobile"), and Cox Communications, Inc., and Cox Media Group, LLC (together,

18    "Cox") created, purchased, and sent hundreds of thousands of job ads to Facebook users and in doing so

19    harnessed Facebook's sophisticated "microtargeting" tools to remove older workers from the audience

20    of people who received their job ads—an obvious violation of the ADEA and analogous state laws that

21    bar employment advertising that indicates a preference or discrimination based on age.

22    Defendants claim—without citing any legal authority—that federal and state civil rights laws do

23    not prohibit them from refusing to send job advertisements to and recruit older workers based on their

24    age, and that the law only prohibits publishing ads that contain discriminatory content.  But this position

25    is contrary to decades of federal case law, regulations, and government enforcement recognizing that

26    advertising schemes like Defendants' that steer advertising away from people based on their protected

27    class status violate civil rights laws.  In fact, earlier this year, the Department of Justice ("DOJ") told a

28    federal court that publishing housing ads on Facebook that exclude people based on their protected class

1

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

status—the same practice Defendants engaged in here with job ads—violates the Fair Housing Act's ("FHA") publication provision, 42 U.S.C. § 3604(c), which is identical in all relevant ways to the ADEA's publication provision, 29 U.S.C. § 623(e).  Statement of Interest of the United States of America at 9-12, *Nat'l Fair Hous. All. v. Facebook, Inc.*, No. 18 Civ. 2689 (S.D.N.Y. Aug. 17, 2018), ECF No. 48 ("DOJ Statement of Interest"), Ex. A to Decl. of Peter Romer-Friedman.[1]

The merits of Plaintiffs' claims are strong.  They challenge practices that are clear, facial violations of the ADEA's publication provision and disparate treatment provision and equivalent state laws.  Defendants' personal jurisdiction and standing arguments are also meritless.  There is specific jurisdiction in this forum, the locus of nearly all the unlawful conduct.  And Plaintiffs amply allege they were harmed by Defendants' pattern or practice of discrimination, which is sufficient to confer standing.

## FACTUAL BACKGROUND

In recent years, "employment advertising, recruiting, and hiring has undergone a seismic shift," as "social media has become a primary means for big and small employers to identify, recruit, and hire workers."  ECF No. 72 (Third Am. Compl.) ("TAC") ¶ 16.  Facebook, the social media giant, "has emerged as one of the largest venues for employers to seek applicants for employment and for workers to find job opportunities."  *Id*. ¶ 54.  While Facebook's sophisticated ad targeting tools and vast troves of information on its users "could make it easy" for workers to receive information about job opportunities "on an equal basis," Defendants "have coordinated with Facebook" to bluntly and systematically exclude older workers from receiving job ads "based on their age." *Id*. ¶¶ 7, 17-18; *see also id.* ¶ 52.

The basic practices at issue in this case are simple.  "When an employer . . . creates, purchases, and sends a Facebook ad to make workers aware of job opportunities and encourage them to apply for various jobs, Facebook requires the employers . . . to select the population of Facebook users who will be eligible to receive the ad, including the age range of the users who will receive the ad." *Id.* ¶ 19; *see also id*. ¶¶ 67-74.  "Following Facebook's encouragement to narrowly focus ad campaigns on the 'right

---

[1] Plaintiffs request that the Court take judicial notice of the Statement of Interest of the United States. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that a court "may take judicial notice of court filings and other matters of public record").

people,' including by targeting younger people," Defendants "routinely focus their Facebook employment ads on users who are under 40-years-old [ ]and sometimes on users who are under higher age thresholds," such as users who are under 45, thereby excluding many workers who are 40 or older from receiving their job ads.  *Id.* ¶ 19; *see also id.* ¶¶ 85-90.  Defendants created, developed, purchased, authorized, and sent via Facebook's ad platform hundreds of thousands of age-restricted job ads to workers nationally to solicit and recruit them to apply for jobs, including in California, the District of Columbia, and Ohio.  *Id.* ¶¶ 30, 32.  By using Facebook's age filters to target job ads to younger workers and exclude older workers, Defendants prevented older workers from receiving their job ads.  *Id.* ¶ 19.

Moreover, workers who did receive the ads saw a statement in the ads identifying why they received the ad—because their own age fell *within* the specific age range Defendants "want[ ] to reach." *Id.* ¶¶ 95-97.   For example, "T-Mobile sent the following ad via Facebook to recruit prospective job applicants for its stores nationwide" and "limited the population receiving the ad to 18- to 38-year olds."

 

*Id.* ¶ 2.  The image on the right with "Why am I seeing this ad" at the top identifies the audience of people who received this job ad ("ages 18 to 38 who live or were recently in the United States") and informs anyone who receives this ad that a "reason[]" why the person is "seeing this ad" is because "T-Mobile wants to reach people" in that audience, *i.e.*, 18 to 38 years old.  *Id.*  Exhibit A to the Complaint provides "[e]xemplars of the employment ad[s]" that T-Mobile, Amazon, Cox, and 12 other national employers sent, though they "are merely a small number of the numerous age-restricted job ad[s]" that these employers "each sent in the past years throughout the nation."  *Id.* ¶ 102-104; *id.*, Ex. A at 2-76.

Defendants used additional tools to exclude older workers from receiving their job ads due to their age: (1) Facebook's "lookalike" audience feature that provides employers with a list of Facebook

users who are demographically similar (including in age) to their existing workers; and (2) Facebook's delivery algorithm that determines which Facebook users will actually receive an ad within the broader audience of persons an advertiser selects to be eligible to receive the ad, but does so in a biased way so that younger workers are more likely to receive the ad than older workers. *Id.* ¶¶ 82-84, 93, 98-99.

Due to Defendants' pattern or practice of excluding older workers from receiving their job ads on Facebook—today, a highly important way of learning about job openings—Defendants denied these workers information on job opportunities, deterred older workers from applying for positions, and depressed the number and proportion of older workers who apply to and are hired by Defendants. *Id.* ¶¶ 110-119. These activities all occurred in this District, where Defendants actively coordinated with and directed the actions of Facebook, their agent, to deliberately target younger workers and exclude older workers in job ad campaigns nationwide. *Id.* ¶¶ 27-32. Defendants "intentionally created and purchased discriminatory ads in this District via Facebook's ad platform . . . located in this District" and "interacted with Facebook's employees . . . located in this District" to do the same. *Id.* ¶¶ 27, 31.

In this case, three of the named Plaintiffs are older workers—Linda Bradley, 45, Lura Callahan, 67, and Maurice Anscombe, 57—who searched for work, regularly used Facebook, and were denied job ads on Facebook by T-Mobile, Amazon, Cox, and hundreds of major employers who excluded older workers from receiving their job ads and deterred these workers from applying for jobs at these employers. *Id.* ¶¶ 38-45. These Plaintiffs bring their claims on behalf of a class and collective of similarly situated older workers who were denied job ads by T-Mobile, Amazon, Cox, and a class of hundreds of large employers who did the same. *Id.* ¶¶ 1, 130-134. The fourth Plaintiff is the Communications Workers of America ("CWA"), an international union that represents 700,000 members nationwide, including numerous members who were subjected to and harmed by Defendants' pattern-or-practice of discrimination within California and beyond. *Id.* ¶¶ 38, 123-127.

Plaintiffs assert that Defendants' advertising, recruiting, and hiring practices violate several provisions of the federal ADEA and the laws of California, the District of Columbia ("D.C."), and Ohio, including provisions that prohibit advertising that indicates a preference based on age, prohibit disparate treatment in hiring based on age, and prohibit segregating and classifying persons based on age. *Id.* ¶¶ 158-234 (stating counts under federal, California, D.C., and Ohio law).

<div align="center"><strong><u>ARGUMENT</u></strong></div>

**I.**    **<u>Plaintiffs Satisfy the Pleading Standards for Stating ADEA and State Law Claims</u>**

The Court should deny the motion to dismiss for failure to state a claim.  To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must only "plead 'enough facts to state a claim to relief that is plausible on its face,' which requires that 'the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ardalan v. McHugh*, No. 13 Civ. 01138, 2015 WL 546778, at *2 (N.D. Cal. Feb. 10, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiffs amply satisfy the pleading standards for their claims under the ADEA and three analogous state laws.  In their motion, Defendants fail to apply the correct standard for measuring the plausibility of Plaintiffs' claims under *Iqbal*.  Defendants often disregard the well-pleaded allegations or question whether the Complaint's factual allegations are plausible.  But plausibility "does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the nonconclusory factual allegations, when assumed to be true, 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Burch v. Cal. Dep't of Motor Vehicles*, No. 13 Civ. 1283, 2013 WL 6844493, at *3 (E.D. Cal. Dec. 23, 2013) (quoting *Iqbal*, 556 U.S. at 678).  Thus, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Nevarez v. Sumavision SFO LLC*, No. 17 Civ. 03137, 2018 WL 827969, at *1 (N.D. Cal. Feb. 12, 2018) (internal quotation omitted).

**A.**    **<u>Plaintiffs Have Stated a Publication Claim Under the ADEA</u>**

**1.**    **<u>The ADEA's Publication Provision Bars Discriminatory Ad Campaigns and Advertisements Regardless of Intent</u>**

In 1967, Congress enacted the ADEA because "older workers" were "disadvantaged in their efforts to" obtain and "retain employment," older workers faced "arbitrary age limits" that had "become a common practice," and older workers faced higher "long-term unemployment" and "grave" "employment problems." 29 U.S.C. §§ 621(a)(1)-(3).  Congress' overarching, remedial goal was to "promote employment of older persons based on their ability rather than age," and "to prohibit arbitrary age discrimination in employment." *Id.* § 621(b).  Thus, when Congress enacted the ADEA and other

<div align="center">5</div>

employment and housing discrimination laws from 1964 to 1968, it barred discrimination in advertising so that all people can learn about and pursue job and housing opportunities. *See* FHA of 1968, 42 U.S.C. § 3604(c); ADEA of 1967, 29 U.S.C. § 623(e); Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(b).

These publication provisions make it unlawful to publish or cause to be published advertisements or notices regarding employment or housing that indicate a preference, discrimination, limitation, or specification based on certain protected classes. *See* 42 U.S.C. § 3604(c) (race, sex, and others); 29 U.S.C. § 623(e) (age); 42 U.S.C. § 2000e-3(b) (race, sex, and others). For example, ADEA § 623(e) provides that: "It shall be unlawful for an employer . . . or employment agency to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age."

As courts have recognized and Defendants appear to concede, ADEA § 623(e) should be interpreted consistently with the nearly identical publication provisions in other civil rights laws enacted in the 1960s. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (holding that interpretation of Title VII "applies with equal force" to the ADEA); *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *see also Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2518 (2015) ("[C]ases interpreting Title VII and the ADEA provide essential background and instruction in [FHA cases]."); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 n.3 (9th Cir. 2007); Mot. at 5-6, 14 (arguing that ADEA § 623(e) should be interpreted consistently with Title VII). As there is "extremely limited[] case law" on publication provisions in employment laws, *Illinois v. Xing Ying Emp't Agency*, No. 15 Civ. 10235, 2018 WL 1397427, at *2 (N.D. Ill. Mar. 20, 2018), the Court should interpret § 623(e) consistently with cases and guidance on other laws' identical provisions.

A plaintiff is not required to allege or prove that the defendant *intended* to discriminate to state a publication claim. *Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1193 (C.D. Cal. 2004). An advertisement or notice violates the law if it suggests a "preference, limitation or discrimination to the

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

'ordinary listener' or reader," and thus "does not require evidence of discriminatory intent." *Id.* (citing *United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972), and *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991)).  "District courts in the Ninth Circuit have followed" this ordinary reader standard.  *Elliott v. QF Circa 37, LLC*, No. 16 Civ. 0288, 2018 WL 2933467, at *19 (S.D. Cal. June 12, 2018).  Thus, to state an ADEA publication claim, Plaintiffs must allege three elements: (1) Defendants printed or published, or caused to be printed or published, an ad or a notice; (2) the ad or notice related to employment; and (3) the ad or notice indicated a preference, discrimination, or limitation based on age.  29 U.S.C. § 623(e); *see Guevara v. UMH Props., Inc.*, No. 11 Civ. 2339, 2014 WL 5488918, at *5 (W.D. Tenn. Oct. 29, 2014) (stating similar elements for an analogous housing publication claim).

Federal courts, the Department of Justice, and federal regulations have long recognized that ads or notices can indicate a preference or discrimination, *either* (1) based on the ad's *content*, or (2) by excluding certain groups from receiving the advertising based on membership in a protected class.

### 2.   Ads or Notices That Reference Age Indicate a Preference or Discrimination

First, *the content* of an ad or notice may not express an age-related preference.  For example, in describing what types of ads or notices violate ADEA § 623(e), the Equal Employment Opportunity Commission's ("EEOC") regulations state that "[h]elp wanted notices or advertisements may not contain terms and phrases" such as "age 25 to 35, young, college student, recent college graduate, boy, girl, or others of a similar nature."  29 C.F.R. § 1625.4(a).  Courts have followed this regulation (or its predecessor) to hold job ads or notices that contain age-related phrases like "age 25 to 35" violate § 623(e).  *Hodgson v. Approved Pers. Serv., Inc.*, 529 F.2d 760, 763 (4th Cir. 1975); *Boyd v. City of Wilmington, N.C.*, 943 F. Supp. 585, 591 (E.D.N.C. 1996) (contrasting ads with age range or requesting "college graduates" with an ad that merely seeks education relevant to a job).  Ads that reference members of a protected class also indicate a preference or discrimination.  *Xing Ying*, 2018 WL 1397427, at *2 (reference to "Mexicans" in employment-related notice indicated nationality-based preference).

### 3.   Ad Campaigns That Exclude Older Workers From Receiving Job Ads Based on Their Age Indicate a Preference or Discrimination Based on Age

Second, *regardless of an ad's content*, an ad campaign that targets certain groups while avoiding members of a protected class, including by placing ads in publications that disproportionately exclude

people in a protected class, violates § 623(e) by indicating a preference. *See Martinez v. Optimus Props., LLC*, No. 16 Civ. 08598, 2017 WL 1040743, at *5 (C.D. Cal. Mar. 14, 2017); *Guevara*, 2014 WL 5488918, at *5; DOJ Statement of Interest at 9-12; 24 C.F.R. § 100.75(c)(3)-(4); 29 C.F.R. § 1604.5.

As the Department of Justice explained in a nearly identical challenge to housing ads on Facebook that excluded people from receiving ads based on protected statuses, "unlawful discrimination can occur through the choice of *who receives an ad, regardless of whether the content of the ad itself is facially discriminatory.*"  DOJ Statement of Interest at 10 (emphasis added) (citing 24 C.F.R § 100.75(c), and 45 Fed. Reg. 57102, 57104 (Aug. 26, 1980)).  "To define the audience for an ad, and to publish an ad only to that audience, can 'cause' a discriminatory statement or advertisement to be both 'made' and 'published.'"  *Id.* at 11-12 (citing *Martinez*, 2017 WL 1040743, at *5 ("Defendants selectively advertised to particular segments of the housing market while denying information to people with disabilities, Latinos, and families with children. Their discriminatory advertising theory is viable."); *Guevara*, 2014 WL 5488918, at *6 ("allegation that Defendant only advertised in Spanish language media outlets is sufficient to state a claim"); *see Sterling*, 404 F. Supp. 2d at 1193 ("notices and banners written only in Korean would suggest to the ordinary reader a racial preference for Korean tenants.").

An ad campaign that excludes people from receiving job or housing ads due to their protected status causes at least the same harm and offends the same purpose of non-discrimination as an ad that has discriminatory content.  *See* 29 U.S.C. § 621(b); 42 U.S.C. § 3601.  A job ad that states an employer wants to hire recent college graduates will "discourage the older job hunter from seeking that particular job and denies them an actual job opportunity." *Hodgson*, 529 F.2d at 766.  But an ad campaign that targets ads to prevent people in a protected class (*e.g.*, older workers) from seeing the ad causes *even greater harm* as class members lose out on the chance to hear about an opportunity *and* pursue it.

To address the persistent problem of exclusionary advertising in housing,[2] the federal government developed detailed regulations to make clear that exclusionary ad campaigns indicate an

---

[2] *See, e.g.*, *NAACP v. ITT Cmty. Dev. Corp.*, 399 F. Supp. 366, 366 (D.D.C. 1975) (consent decree where defendant "engaged in racially discriminatory advertising and marketing practices" to focus ads

unlawful preference.  24 C.F.R. § 100.75(c)(3)-(4); 45 Fed. Reg. at 57102.  These regulations explain that the FHA's publication provision is violated when an advertiser "select[s] media or locations for advertising [housing] which deny particular segments of the housing market information about housing opportunities because of" membership in a protected class.  24 C.F.R. § 100.75(c)(3).  Likewise, "[r]efusing to publish advertising" on housing to avoid notifying members of a protected class constitutes a discriminatory publication.  *Id.* § 100.75(c)(4).  Indeed, "whenever the advertiser determines the manner for advertising" based on the protected status "of persons who receive or do not receive a publication," the ad campaign unlawfully indicates a preference.  45 Fed. Reg. at 57104.

Similarly, the EEOC's regulations interpreting Title VII's publication provision focus not only on the content of job ads, but also on the *manner* by which employers advertise them.  They state that "[t]he *placement of an advertisement in columns classified* by publishers on the basis of sex . . . will be considered an expression of a preference, limitation, specification, or discrimination based on sex," 29 C.F.R. § 1604.5 (emphasis added), *without regard to the words* the employer uses in its job ad.  In fact, in *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973), the Supreme Court observed that it is "commonsense" that the segregation of job ads is "connected" to "discrimination in employment," as reflected in the EEOC's advertising regulations.  *Id.* at 381 n.7.

ADEA § 623(e) must be interpreted consistently with FHA § 3604(c) and Title VII's § 2000e-3(b), to bar ad campaigns that selectively exclude older applicants.  To an ordinary reader, ad campaigns that disproportionately send ads to younger workers to the exclusion of older workers indicate a preference, discrimination, or limitation based on age.  Moreover, ADEA § 623(e)'s text—that broadly bars any ad or notice "indicating any preference, limitation, specification, or discrimination, based on age,"—represents an expansion of the more limited, specific bar on age-biased advertising when compared to President Johnson's 1964 executive order on federal contracting that merely barred "advertisements for employees" that "specify" "a maximum age limit for such employment."  Exec. Order 11141, 29 Fed. Reg. 2477 (Feb. 12, 1964).  If Congress wanted to limit § 623(e) to barring ads

---

away from blacks); *United States v. Real Estate One, Inc.*, 433 F. Supp. 1140, 1144, 1152 (E.D. Mich. 1977) (FHA violation where advertiser focused ads in papers with primarily black readers).

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

that have *content* that references age, it could have codified the very specific language of Executive Order 11141. But instead, Congress adopted the same broad language as Title VII and the FHA that has been understood by the federal government to regulate advertising far beyond the content of ads.

Indeed, it would undermine the ADEA's key remedial purposes—"to promote employment of older persons based on their ability rather than their age" and "prohibit arbitrary age discrimination in employment," 29 U.S.C. § 621(b), to interpret § 623(e) only to limit an ad's content and not bar ad campaigns that are deliberately hidden from older workers, steering them away from job opportunities. Defendants' interpretation of the ADEA and similar laws would lead to absurd results, allowing employers to only advertise their job ads to white younger men, and hide their job ads from women, people of color, and older workers. Such an interpretation and result would improperly "circumnavigate congressional intent in [] remedial statute[s] designed to eliminate the humiliation and social cost of [] discrimination." *Hunter*, 459 F.2d at 215. The Court should reject Defendants' contrary interpretation.

### 4. Defendants Violated the ADEA's Publication Provision by Excluding Older Workers From Receiving Their Job Ads

Plaintiffs allege that when sending job ads to prospective applicants via Facebook, Defendants violated ADEA § 623(e) both by routinely excluding older workers from receiving their job ads and by including discriminatory content in their job ads. TAC ¶¶ 163-169. As described above, each theory of liability independently violates ADEA § 623(e). *Supra* at 7-10.

For the first practice of exclusionary ad campaigns, Plaintiffs sufficiently allege all the elements of a § 623(e) claim. First, Plaintiffs allege that (1) Defendants printed or published, or caused to be printed or published, ads or notices, and (2) those ads relate to employment. 29 U.S.C. § 623(e). The Complaint describes how Defendants purchased, approved, authorized, and sent via Facebook's ad platform hundreds of thousands of employment-related ads to workers nationwide to solicit and recruit them to apply for jobs at Defendants, and gives examples of Defendants' job-related ads. TAC ¶¶ 27, 31, 32, 34, 98, 100-104, 108-109, 139; *id.*, Ex. A at 2-7, 18-31, 59-66. The exemplars of Defendants' job ads—"a small number of the numerous age-restricted job ad[s]" Defendants "each sent in the past years throughout the nation," make explicit references to jobs and employment, and state they are hiring. *See, e.g.*, *id.* ¶¶ 2, 104; *id.*, Ex. A at 3 ("Part-Time Jobs at Amazon"); *id.* at 4 ("Amazon is hiring part-

time seasonal associates"); *id.* at 21 ("Explore our Careers" at Cox); *id.* at 22 ("Cox [] is looking for sharp talent to join our team"); *id.* at 60 ("Launch a Customer Care career with T-Mobile").

Plaintiffs plead the third § 623(e) element (that Defendants' ad campaign indicated a preference or discrimination based on age), by: (1) regularly excluding older workers including Plaintiffs from the population of individuals to whom ads were sent, TAC ¶¶ 1, 10, 28-33, 45-47, 98-105, 119, 139, 151, 163, 168; (2) directing, requesting, and approving Facebook's removal of older workers from the population to which it sent ads, *id.* ¶¶ 107-109; and (3) targeting job ads to younger workers without sending comparable ads to older workers. *Id.* ¶ 110. Based on these allegations, an ordinary reader would understand these ad campaigns to indicate a preference or discrimination based on age. *Id.* ¶ 168.

Defendants do not dispute that Plaintiffs have alleged the first two elements of a § 623(e) claim. Instead, Defendants argue that ADEA § 623(e) does not prohibit them from explicitly sending job ads to younger workers while excluding older workers. Mot. at 14 ("Plaintiffs advertising claim fails for the simple reason that the ADEA's advertising provision does not prohibit the complained-of practice: displaying individual job ads to people within certain demographics."). Defendants fail to cite any law, regulation, or case to support their argument. They simply state that § 623(e)'s text "cannot be read to prohibit" the discriminatory placement of advertising, but fail to explain why this is so. *See id.* at 14-15.

Defendants' view of the law is incorrect. Regardless of an ad's content, selective or segregated advertising may indicate an unlawful preference, since selecting who receives an ad (and who does not) based on a protected status like race or age indicates that an advertiser prefers one group over another. 24 C.F.R. § 100.75(c)(3); 29 C.F.R. § 1604.5; DOJ Statement of Interest at 10-12. While the EEOC's cursory regulation on § 623(e), 29 C.F.R. § 1625.4(a), gives a few examples of discriminatory content that violates § 623(e), that regulation is not and does not purport to be exhaustive of all the types of advertising that violates § 623(e), and it does not suggest that § 623(e) only regulates the content of ads.

Rather than offering legal authority to defend their view or argue why the alleged facts do not state a claim, Defendants offer strawman arguments that two specific practices could be outlawed: (1) on-campus interviewing and the recruitment of law clerks at law schools, and (2) the placement of an ad in *Seventeen Magazine*, a publication primarily read by young people. Mot. at 14.

As to the first argument, the on-campus interview/law school recruitment scenario is irrelevant since § 623(e) does not regulate interviews, but addresses "notice[s] or advertisement[s]."  29 U.S.C. § 623(e).  Other ADEA provisions apply to interviews.  Second, the hypothetical of a single ad in *Seventeen* violating the ADEA is a far cry from Defendants' use of Facebook's ad platform – an entire medium unto itself – to systematically deny job ads to countless older workers.  If Amazon placed most of its job ads in *Seventeen*, but placed few or none in magazines with older readerships, its campaigns would plainly indicate a preference based on age.  *Guevara*, 2014 WL 5488918, at *6 (ad campaign indicated preference by advertising extensively in Spanish-language media to target Hispanic applicants); *Martinez*, 2017 WL 1040743, at *5 (ad campaign shows a preference by primarily advertising on websites that "target young, English-speaking, single, non-disabled people"); *Sterling*, 404 F. Supp. 2d at 1193 (ads only in Korean show preference for Koreans); *cf. Lucas v. Ferrara Candy Co.*, No. 13 Civ. 1525, 2014 WL 3611130, at *5 (N.D. Ill. July 22, 2014) (an employer "soliciting laborers primarily in Spanish-language media" provides evidence that the employer preferred Latino laborers over African-American laborers and intended to discriminate).

The facts alleged here fall squarely within the circumstances courts and federal regulators have long held constitute discriminatory advertising.  As new technologies make it easier for employers to selectively target job applicants, the ADEA's bar on discriminatory ad campaigns that target people based on age has become even more critical.  There has been a "seismic shift" in "employment advertising, recruiting, and hiring" in recent years that has led "social media [to] become a primary means for big and small employers to identify, recruit, and hire workers."  TAC ¶ 16.  In this context, Defendants targeted younger workers and excluded older workers from their Facebook job ad campaigns, without offsetting this disparity through other means of reaching older workers.  *Id.* ¶ 110.

In fact, new technologies have allowed employers to more precisely and overtly discriminate.  Historically, to conduct an exclusionary ad campaign, an advertiser had to selectively publish ads in publications read principally by certain demographic groups.  But with Facebook's microtargeting tools, Defendants literally hide their ads from *everyone* older than the age ranges they choose.  *Id*. ¶ 19.  To any ordinary person, this exclusionary targeting indicates an age-based preference.  That is all Plaintiffs are required to do to plead a plausible § 623(e) claim.  *See Guevara*, 2014 WL 5488918, at *6.

Finally, Cox is wrong that Plaintiffs failed to plead a § 623(e) claim because the exemplars of Cox's ads targeted potential applicants near the District of Columbia and Silver Spring, Maryland.  Cox Br. at 10.  The ads still targeted younger workers and excluded older workers like Plaintiffs and CWA's members.  TAC ¶¶ 39-44, 119, 125-27.  Plaintiffs could not include every Cox ad in their complaint, and instead limited the exemplars to "a small number of the numerous age-restricted job ad[s]" Defendants "each sent in the past years throughout the nation."  *Id.* ¶ 104.  Likewise, T-Mobile claims—without offering authority—that Plaintiffs cannot state a claim as the ad exemplars Plaintiffs cite do not identify specific positions.  T-Mobile Br. at 3-4.  But to state a § 623(e) claim, Plaintiffs need only allege that the ads "relat[e] to employment," which Plaintiffs did.  *Supra* at 7.  In any event, the Complaint alleges that T-Mobile and other employers use their "Careers" Facebook pages to send ads to potential applicants who, in turn, click on the ads and are shown specific "job opportunities."  TAC ¶¶ 57-58.

## 5. Defendants' Ad Content Facially Violates the ADEA's Publication Provision

Plaintiffs' allegations also state a claim based on the *content* of the ads Defendants published or caused to be published on Facebook.  Plaintiffs allege that the ads told users that they received the ads because Defendants "want[ed] to reach people between" certain age ranges that excluded millions of persons 40 and older.  TAC ¶¶ 95-97, 164-67.  They further allege that Defendants knew when they directed Facebook "to exclude older workers from seeing their job ad[s] that a portion of the 'Sponsored Ad' would make" a statement about which applicants Defendants "want[ed] to reach with[in] a limited age range."  *Id.* ¶ 166.  These statements facially violate ADEA § 623(e), because an ordinary reader would understand the ad's content to mean that Defendants were specifically targeting and more interested in hiring younger workers than older workers.  *Id.* ¶¶ 97, 164-65.

### a. "Why Am I Seeing This Ad" Statement Is Part of an Ad or Notice

Defendants do not dispute that a statement indicating that an employer wants to reach potential applicants within a certain age range that excludes older workers indicates a preference based on age.  Nor could they, as the EEOC's regulations and federal courts have concluded that references to age ranges violate ADEA § 623(e).  *See* 29 C.F.R. § 1625.4(a); *Hodgson*, 529 F.2d at 763 & n.2.  Instead, they argue the "Why am I seeing this ad" statement is a "separate communication" Facebook provides to users and not an advertisement that falls within ADEA § 623(e).  Mot. at 15.  This argument is meritless.

First, the Complaint alleges the "Why am I seeing this ad" statement *is* part of the ad. TAC ¶ 107 (Defendants "directed, requested, approved of, and/or authorized Facebook to include as a portion of the job advertisements or notices a statement that the employer 'wants to reach people' between certain 'ages'"); *id.* ¶ 164 (identifying the "Why [am] I Seeing This portion of the advertisement or notice" as "communicat[ing]" a discriminatory message); *id.* ¶ 166 (stating that Defendants knew "a portion of the 'Sponsored Ad' would make a statement that [they] want[ed] to reach people with a limited age range"). At the pleading stage, the Court must accept this allegation as true. *Nevarez*, 2018 WL 827969, at *1.

Second, even if somehow the "Why am I seeing this ad" statement were not part of the ad, it is still a "notice" under 29 U.S.C. § 623(e). *See* Webster's Ninth New Collegiate Dictionary 808 (defining "notice" as "a written or printed announcement"); TAC ¶ 107 (calling age-related statements "notices").

Third, contrary to Defendants' contention, the statement *does* relate to employment.  It tells recipients "*[y]ou're seeing this ad*" because the employer "wants to reach people ages 18 to 38" (or in other limited age ranges).  TAC ¶¶ 2 (emphasis added) 96, 103.  Thus, by its own terms, the statement directly relates and is connected to the very employment "ad" the person was shown.  *Id.* ¶¶ 2, 103 (showing employment-related information in ad images next to the "Why am I seeing this ad" images).

Defendants' cases favor Plaintiffs here.  For example, *Boyd* considered the "context of the complete announcement" to interpret the ad's language to decide if an employer violated § 623(e).  943 F. Supp. at 591.  Thus, *Boyd* supports viewing the "Why am I seeing this ad" statement as within the four corners of the job ad, as it must be considered as part of the "complete announcement."  Likewise, in *Hailes v. United Air Lines*, 464 F.2d 1006 (5th Cir. 1972), a case Defendants rely on regarding standing, the Fifth Circuit held Title VII's publication provision was violated by the placement of a job ad in a "Help Wanted-Female" column, without a corresponding ad in the "Help Wanted-Male" column, showing that a court may consider an ad's context to construe the message the ad indicates.  *Id.* at 1009; *accord Pittsburgh Press*, 413 U.S. at 381 n.7 (citing *Hailes*, 464 F.2d at 1009, for the same proposition).

### b.  Defendants Cannot Shift Blame to Facebook for the Biased Statement

Defendants' attempt to shift blame to Facebook for the "Why am I seeing this ad" statement must be rejected.  First, § 623(e) applies to ads the employer "cause[s] to be printed or published."  29 U.S.C. § 623(e).  The Complaint alleges that Defendants caused the statement to be published as they

"directed, requested, approved of, and/or authorized Facebook to include . . . a statement that the employer 'wants to reach people' between certain 'ages.'" TAC ¶ 107.  It also alleges Defendants "knew" when they "directed Facebook" to exclude older workers from their ad campaigns that the "Why am I seeing this" statement would refer to an age range, and Facebook educates advertisers on how these ad transparency statements work.  *Id.* ¶ 166.  These allegations are more than sufficient to show that Defendants caused the "Why am I seeing this ad" statements to be published.

Defendants argue there is no claim that they "contracted Facebook" to specifically make the "Why am I seeing this ad" message.  Mot. at 15.  But § 623(e) does not require a contractual obligation.  If this were true, employers could escape liability by never signing a contract with a publisher.  And even if—contrary to the Complaint—Facebook were solely responsible for the "Why am I seeing this ad" statement, "[u]nder the ADEA, an employer may be liable for the acts of its agents." *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1094 (C.D. Cal. 2002) (citing 29 U.S.C. § 630(b)).  As Defendants concede, Mot. at 15, "[t]he term 'employer' under . . . the ADEA . . . is defined to include any agent of the employer." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (citing 29 U.S.C. § 630(b)).  The Complaint alleges Facebook was Defendants' agent in "creat[ing], develop[ing], . . . and send[ing] [Defendants'] job ad[s] to Facebook users."  TAC ¶ 34.  Defendants do not dispute that Facebook was their agent in the general sense that it helped to create, develop and send their job ads.

Instead, Defendants try to carve out the "Why am I seeing this ad" statement from their agency relationship. But the Complaint specifically alleges that Defendants knew the "Why am I seeing this ad" statement would be contained in their ads and "directed, requested, approved of, and/or authorized Facebook to include" the statement in their ads.  TAC ¶¶ 107, 166.  It also alleges at all times that Defendants "retained control and/or had the ability to control Facebook's conduct and activities" about their ad campaigns and "communicating information to Facebook users." *Id.* ¶ 34.  Therefore, these allegations adequately plead an agency relationship, particularly since "the question of agency" is ordinarily "submitted to the jury." *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999).

In fact, the allegations are sufficient under several agency theories.  Facebook acted with express actual authority because Defendants directed, requested, approved, and authorized Facebook to do a specific act—displaying the "Why am I seeing this ad" statement with an age range. *Salyers v. Metro.*

*Life Ins. Co*., 871 F.3d 934, 940 (9th Cir. 2017) ("Express actual authority derives from an act specifically mentioned to be done[.]") (internal citation and quotation omitted).  Facebook also had implied actual authority, which "comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." *Id*. (internal citation and quotation omitted).  The Defendants directed Facebook to exclude older workers from their ads, which they knew would cause Facebook to send the "Why am I seeing this ad" statement with a specific age range.  TAC ¶¶ 107, 166.  By sending the discriminatory statement, Facebook acted consistently with Defendants' direction.  Even if Defendants did not know the statement would be made, the statement is consistent with their direction to Facebook to target persons in a specific age range.

Finally, Facebook had apparent authority, which "results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers*, 871 F.3d at 940 (internal quotations omitted).  As the Complaint alleges, Defendants knowingly permitted Facebook to send the "Why am I seeing this ad" statement in job ads Defendants "sponsored."  TAC ¶¶ 2, 103.  A reasonable Facebook user could easily conclude that Facebook had authority to make these statements for employers, when Facebook displayed ads containing employers' names and logos, and information on why the employers wanted to reach her.

### c.  Plaintiffs Need Not See the "Why Am I Seeing This Ad" Statement

Defendants argue Plaintiffs cannot state an ADEA § 623(e) claim over the "Why am I seeing this ad" statement as Plaintiffs do not allege they saw the statement or were deterred from applying due to it.  Mot. at 16.  This is not a requirement.  Section 623(e) only requires publication of a discriminatory ad, not that the plaintiff actually read or relied on it.  *See Sterling*, 404 F. Supp. 2d at 1193-94 (holding an ordinary reader would perceive ads printed only in Korean to indicate a preference; it was "irrelevant" that plaintiff could not "speak Korean" or "read the contents of these banners").  Even if § 623(e) did require Plaintiffs to allege that the statement harmed them, they have done so.  They allege the statement communicates Defendants' preference for younger workers over older workers, "encourag[ing] younger workers to apply for the relevant employment opportunities" to the exclusion of older workers.  TAC ¶ 97.  Indeed, research shows the age-based statement makes recipients more likely to click on the ad.  *Id.*

To state the obvious, victims of discrimination may prevail at trial even if they did not have contemporaneous access to the facially discriminatory materials that ultimately prove their claims.

**B.    Plaintiffs Have Stated a Claim for Disparate Treatment in Hiring Under the ADEA**

Plaintiffs sufficiently allege a class-based hiring discrimination claim under ADEA § 623(a)(1). They allege that Defendants' pattern or practice of refusing to advertise to and recruit older workers on Facebook because of their age denied these workers information and access to job openings for which they were qualified, deterred older workers from applying for such positions, and depressed the number and proportion of older workers who applied to and were hired by Defendants.  TAC ¶¶ 110-19. Plaintiffs allege that this facially discriminatory practice constitutes disparate treatment in hiring by "treat[ing] older workers who are 40-years old or greater worse than younger workers who are under 40-years-old," and was undertaken "with the intent and purpose of discouraging and preventing older workers from applying for jobs" and being hired "based on their age."  *Id*. ¶ 180.  Defendants took these actions because they "prefer to have younger workers apply for jobs at their companies" and to "decrease the number of older workers hired."  *Id*. ¶ 182.  Defendants attack Plaintiffs' hiring discrimination claim by misstating the law and ignoring the well-pleaded factual allegations.

**1.    The Complaint Alleges That Age Caused the Exclusion of Older Workers**

Defendants argue that Plaintiffs fail to allege that age was a "but for" cause of the practices and harm they challenge.  Mot. at 17 (citing *Gross v. FBL Fin. Servs., Inc*., 129 S. Ct. 2343, 2345 (2009)). Their argument ignores the facts in the Complaint and misconstrues the meaning of causation.

The Complaint describes several ways that Defendants expressly used age to exclude workers from receiving their ads: (1) they used Facebook's age filter to direct Facebook to send ads only to users within certain age ranges; (2) they used Facebook's "lookalike" tool to create a list of potential ad recipients based on their demographic similarity (including age) to Defendants' existing employees; and (3) they used Facebook's delivery algorithm that relies on age in a discriminatory way to decide which Facebook users within a selected audience will receive the ad.  TAC ¶¶ 72-73, 82-84, 93, 98-100.

*Each of these tools* relies on age to exclude older workers from receiving Defendants' job ads. Thus, if any one caused older workers to be denied the opportunity to receive an ad and information about a job opening, Plaintiffs will have shown that age is a but for cause of these harms.  *Hazen Paper*

*Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."); *cf. Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (citing Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27, and Comment b (2010) (causation is satisfied if multiple acts could cause same result)). For instance, if an employer imposes an 18-55 age filter excluding all people over 55, the age filter would be a but for cause as to why a 56-year-old does not receive the ad, even if the delivery algorithm's age bias might also exclude the person from getting the ad. In either scenario, age-based acts would cause the exclusion. Likewise, when a 50-year-old is not excluded by an 18-55 age filter, but is excluded by age bias in the delivery algorithm, age is a but for cause of the exclusion.

Defendants argue that there could be reasons other than age why Plaintiffs were not shown certain ads, pointing to the fact that some of Defendants' ads did not exclude all workers who are 40 and older, and that other factors could cause a specific worker not to receive the ads. Mot. at 18. This argument misapprehends Plaintiffs' pattern or practice claims and allegations. Plaintiffs are not claiming that Defendants denied every single job ad that they sent via Facebook to all older workers under all circumstances. Instead, they allege that Defendants engaged in several systemic practices that routinely and directly excluded older workers from receiving job ads due to their age, while similarly situated younger workers received them. TAC ¶ 119. In other words, Plaintiffs are not arguing every job ad was denied to every older worker, but rather that every age-restricted job ad that Defendants sent caused an injury to members of the proposed Plaintiff Class who were excluded based on their age.

For example, even if on occasion a 45-year old Plaintiff were eligible to receive a job ad from Defendants—since in some instances Defendants set an 18-50 age filter for the target audience that would include the 45-year-old, Mot. at 18; TAC, Ex. A at 5—Defendants still directly caused the worker to be denied *other* job ads when they routinely established age ranges for other job ads that excluded 45-year-olds, or when the delivery algorithm excluded the worker due to her age. Moreover, a 18-50 age filter would still cause millions of workers who are older than 50 to be denied job ads by the employer.

While it is possible that in some cases a worker did not receive a specific job ad for a reason other than age (*e.g.*, an ad sent to people who live in a different state or have a specific interest), this does not obviate the fact that the same worker *was allegedly denied* other job ads due to her age. For

example, the Plaintiffs in Ohio may not have received ads sent to users in the District of Columbia region due to their location.  But this does not mean that Defendants did not exclude these Plaintiffs from receiving job ads that were only sent to younger people in Ohio.  *See* TAC ¶¶ 39-40, 43-44.

Under Defendants' view of causation, an employer would only be liable if it discriminated *every single time it acted*.  For example, an employer who routinely hired 50% of applicants under 40 could not be held liable for hiring only 10% of applicants who are 40 and older, as sometimes (though far less often) it still hired older workers.  This rule would end pattern or practice claims where plaintiffs seek to show "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 505 (N.D. Cal. 2012) (quoting *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977))).  In fact, as *Teamsters* instructed, in a pattern or practice case like this one, the initial class-wide liability phase focuses on whether "discrimination was the company's standard operating procedure." *Id*. (quoting *Teamsters*, 431 U.S. at 336).  Only if Plaintiffs meet their burden in the initial phase will Defendants bear the burden to prove they did not discriminate against specific class members. *Id*.  Thus, if it were ever necessary to identify which Class Members were denied specific job ads, that inquiry would occur *after* a class-wide liability trial.

Moreover, discovery is needed to identify which Plaintiffs were denied which ads, as Defendants sent age-restricted ads nationwide and have not produced any of their ads in this case.  TAC ¶¶ 27, 30, 31.  At the pleading stage, Plaintiffs' allegations that Defendants engaged in a pattern or practice of discrimination must be accepted as true, including that the "sole reason why older workers—including [the named Plaintiffs]—have been completely excluded from receiving the job ad[s] at issue is the" age range Defendants placed on their job ads. *Id*. ¶ 93.  Defendants are wrong to suggest that other facts in the Complaint contradict this allegation.  Mot. at 18.  Although the exemplars illustrate a small number of Defendants' age-restricted ads, they show that the named Plaintiffs would be excluded.  An Amazon ad targeted "people ages 18 to 54 who live or were recently near Silver Spring, Maryland," TAC ¶ 103, and a Cox ad targeted "people ages 20 to 45 who live or were recently in District of Columbia." *Id.* Plaintiff Anscombe lives near Silver Spring in Baltimore County (MD), "has searched for work in Maryland, the District of Columbia, and the D.C. Metropolitan Area," *id*. ¶ 41, and is older than the age

ranges in these ads.  Thus, it is likely that Anscombe was not sent these ads due to his age.  The same is true for Ohio Plaintiffs Bradley, 45, and Callahan, 67, who have "decades of customer service and sales experience," *id.* ¶¶ 39, 43, but were denied an ad T-Mobile sent to "people interested in customer service" who are "18 to 38 who live or were recently in the United States." *Id.* ¶ 2.

Finally, contrary to Defendants' view, Plaintiffs do not claim that Facebook ads were the only way workers could learn about jobs at these employers or that Defendants only advertised jobs on Facebook.  Mot. at 18.  Instead, they allege that Facebook is "one of the largest venues for employers to seek applicants," TAC ¶¶ 53-59, that Defendants systematically excluded older workers from receiving their job ads due to their age, *id.* ¶ 112, and that "even when certain job openings are posted on the internet publicly, a substantial portion of people who apply for those job openings will hear about and apply for those jobs solely because they become aware of those job openings through a paid job advertisement on Facebook." *Id.* ¶ 185.  Plaintiffs allege that this happened to them. *Id.* ¶ 209. Regardless of whether Defendants advertised on other media, the Complaint alleges that age caused Defendants to deny Plaintiffs job ads on Facebook, which must be accepted as true at this stage.

### 2.   Plaintiffs Have Alleged a Plausible Disparate Treatment Hiring Claim Based on Direct Evidence of a Facially Discriminatory Policy

Defendants make two arguments why Plaintiffs have not stated a plausible claim under ADEA § 623(a)(1): (1) that Plaintiffs have not alleged intentional discrimination based on stereotypes or animus, and (2) that they have not pled a prima facie case.  Mot. at 18-23.  As described herein, controlling law holds that Plaintiffs need not allege either of these things to state a claim.  However, Plaintiffs have sufficiently alleged intentional discrimination based on Defendants' facially discriminatory policy, and they have alleged a prima facie case through direct evidence of the same facially discriminatory policy.

### a.   Plaintiffs Plead Intentional Discrimination by Alleging That Defendants Had a Facially Discriminatory Policy

Plaintiffs need not allege stereotyping or a bad purpose where they challenge a facially discriminatory policy—which Plaintiffs have done here by alleging that Defendants expressly excluded older workers from their Facebook ad campaigns based on their age. *City of Boise*, 490 F.3d at 1048-49. A facially discriminatory policy that "treat[s]" two groups "differently" supplies "the intent necessary to support a finding of discrimination under the disparate treatment theory," and "facially discriminatory

1    practices are intentional discrimination" "regardless of the subjective motivation." *EEOC v. Borden's,*

2    *Inc.*, 724 F.2d 1390, 1393 (9th Cir. 1984) (internal quotations omitted).  "Whether facial discrimination

3    exists 'does not depend on why' a policy discriminates, but 'rather on the explicit terms of the

4    discrimination.'"  *Latta v. C.L. Otter*, 771 F.3d 456, 467 (9th Cir. 2014) (quoting *Int'l Union, United*

5    *Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199

6    (1991)).  Thus, "the absence of a malevolent motive does not convert a facially discriminatory policy

7    into a neutral policy with a discriminatory effect." *Johnson Controls*, 499 U.S. at 199.

8         These principles apply to ADEA disparate treatment claims.  *Hazen Paper*, 507 U.S. at 610 ("a

9    formal, facially discriminatory policy requiring adverse treatment of employees with [a] trait" gives rise

10   to disparate treatment liability, which "depends on whether the protected trait (under the ADEA, age)

11   actually motivated the employer's decision") (citing *Thurston*, 469 U.S. at 121 (policy where "method

12   of transfer available to a disqualified captain depends upon his age" "is discriminatory on its face"), and

13   *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 704-18 (1978)).

14        The Complaint amply alleges facially discriminatory practices that exclude older workers from

15   receiving job ads and being recruited based on their age, due to the age ranges that include younger

16   workers but exclude older workers. TAC ¶¶ 2, 70, 72, 98, 101-03, 119, 139, 176, 180.  This pattern or

17   practice of excluding older workers from receiving job ads simply because they are older than the

18   desired age range expressly relies on age and "treats older workers . . .  worse than younger workers . . .

19   in advertising, recruiting, and hiring . . . based on their age." *Id.* ¶ 180.

20        In any event, Plaintiffs do allege that Defendants acted with discriminatory animus.  They allege

21   that Defendants had the intent and purpose of discouraging older workers from applying and of hiring

22   fewer older workers, as they preferred younger workers, and that the practice was due to stereotypes that

23   older workers are less desirable.  TAC ¶¶ 72, 128 180, 182.  Also, where, as here, an employer publishes

24   ads that have discriminatory content or exclude certain groups from receiving ads, this gives rise to an

25   inference of the employer's intent to discriminate. *EEOC v. Marion Motel Assocs.*, 763 F. Supp. 1338,

26   1340 (W.D.N.C. 1991); *Ferrara Candy Co.*, 2014 WL 3611130, at *5 (plausibility of a disparate

27   treatment claim bolstered by the employer primarily running job ads in Spanish-language media).

28

b.   **Plaintiffs Need Not Plead a Prima Facie Case or Satisfy *McDonnell Douglas*, But Plaintiffs Do Plead a Prima Facie Case Through Direct Evidence of a Facially Discriminatory Policy**

Defendants are wrong that Plaintiffs have not stated a plausible hiring discrimination claim because the Complaint fails to allege facts for each element of the four-part test under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Mot. at 18-21.  Defendants frivolously argue Plaintiffs must plead a prima facie case.  Mot. at 19.  The Supreme Court rejected this argument 16 years ago. *See Burch*, 2013 WL 6844493, at *5 (stating that *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 [] (2002) "specifically holds that such allegations are not required" to plead a discrimination claim).  This is still the law.  "A plaintiff in an ADEA case is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss."  *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012).  But when "a plaintiff [does] plead[] a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss."  *Id.*

Contrary to Defendants' claim, *McDonnell Douglas* does not apply to cases like this where Plaintiffs allege direct evidence of age discrimination, rather than only circumstantial evidence.  *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004); *Thurston*, 469 U.S. at 121.  "When a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, [courts] do not apply the burden-shifting analysis set forth in *McDonnell Douglas*."  *Enlow*, 389 F.3d at 812.  "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  *Jacobson v. Hair*, No. 09 Civ. 09377, 2011 WL 13112239, at *16 (C.D. Cal. Jan. 31, 2011) (internal quotation omitted); *see Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998) (collecting examples of direct evidence of bias).

In cases like this where "there is direct evidence that the" employer's policy "depends upon his age," *i.e.*, the employer has a policy that is "discriminatory on its face," a prima facie case is established. *Thurston*, 469 U.S. at 121.  As in *Thurston*, Plaintiffs allege direct evidence that Defendants expressly relied on age to exclude older workers from their advertising and recruiting on Facebook, TAC ¶¶ 38-44, 98-107, 118-19, 182.  Thus, Plaintiffs have established a prima facie case through direct evidence, even though they need not do so at this stage.  *Sheppard*, 694 F.3d at 1050 n.2.

1

### c.    While Not Necessary to State a Claim, Plaintiffs Make Factual Allegations That Would Satisfy the *McDonnell Douglas* Factors

Even though Plaintiffs need not allege the *McDonnell Douglas* factors, the Complaint does allege sufficient facts addressing those factors.  First, it alleges that each Plaintiff was qualified for a range of positions at each named Defendant, identifies one or more position at each Defendant they would have pursued if Defendants had sent job ads to them, and alleges that Defendants "used age-restricted job ad[s] . . . to advertise, recruit, and hire for some or all of these positions" for which they are qualified.  TAC ¶¶ 39-44, 119, 128, 209.  The Complaint identifies each named Plaintiff's education, experience, and skills that align directly with the positions for which they are qualified.  *See, e.g.*, *id.* ¶¶ 39, 41, 43.  It alleges that younger workers were treated more favorably than Plaintiffs.  *Id.* ¶ 185.  And it alleges that Defendants' discrimination deterred and prevented them and other older workers from learning about and applying for positions at Defendants.  *Id.* ¶¶ 98-99, 119, 182, 183.

Defendants claim Plaintiffs' allegations are "insufficient" to show Plaintiffs are qualified for the advertised positions, but fail to explain why.  They cite just a single case where the plaintiff offered zero facts on her qualifications, and did not even allege her age in the complaint.  *See Bradley v. Cty. of Sacramento Dep't of Human Assistance of N. Cal. Welfare Div.*, No. 13 Civ. 2420, 2014 WL 4078945, at *5 (E.D. Cal. Aug. 14, 2014).  They improperly urge the Court to disregard the allegation that they used age-restricted ads to recruit for some or all the positions Plaintiffs were qualified for, and wrongly claim the exemplars are all the ads they sent.  *See* Mot. at 21; TAC ¶ 104 (stating that the exemplars are a small portion of their ads).  Moreover, Defendants used these ads to attract workers into their Careers sites that listed numerous positions, not just the ones highlighted in their paid ads.  TAC ¶¶ 57-58.

Defendants claim that Plaintiffs do not allege that younger workers were treated better than them or were hired.  But this ignores the allegations in the Complaint that younger workers received better advertising, recruiting, and hiring opportunities, and the challenged practices "caused a greater number of similarly situated younger workers to apply and be hired by the Defendant[s] relative to similarly situated older workers."  *Id.* ¶ 185.  Discovery plainly would be needed to identify those younger workers, if that is even necessary to do in this pattern-or-practice discrimination case.

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

While Defendants concede that a plaintiff is not required to allege that she applied to state a plausible hiring discrimination claim, Mot. at 19-20 (citing *Teamsters*, 431 U.S. 324), a plaintiff need not allege that applying would be a "futile gesture," as Defendants claim. *Id.* at 20. Where an employer affirmatively initiates the hiring process and does so in a discriminatory way that prevents persons from applying, a plaintiff need not apply. *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1154 (9th Cir. 1982) (not necessary to apply if "the employer normally initiated" hiring); *Smyly v. IBM Corp.*, No. 93 Civ. 20149, 1995 WL 7745, at *5 (N.D. Cal. Jan. 4, 1995) (following *Gifford* to allow race hiring bias claim where employer affirmatively sought out applicants in a biased way); *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990) (no need to apply where job opening not advertised and plaintiff had no knowledge of job); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) ("the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied"). Here, Defendants initiated the hiring process by affirmatively contacting applicants to invite them to apply, and did so in a biased way that excluded older workers, preventing them from applying and being hired. TAC ¶¶ 98-99, 119, 182, 183.

C.     **Plaintiffs Sufficiently Allege the Unnamed Defendants Are Employment Agencies**

Defendants argue that *they* are not employment agencies. Mot at 23. But this is irrelevant, as the Complaint alleges that T-Mobile, Amazon, and Cox are *employers* and Plaintiffs do not seek to hold *them* liable as employment agencies. TAC ¶ 176. A party can be held liable as either an employer or an employment agency under the ADEA. *See* 29 U.S.C. § 623(a), (b), (e). While the Complaint also asserts claims against employment agencies like Triplebyte and Facebook, TAC ¶¶ 34, 101, they are members of the proposed Defendant Class, not named parties. *Id.* ¶¶ 166, 177.

Defendants argue that Facebook is not an employment agency. Mot. at 24. This is irrelevant to Defendants' liability. The ADEA imposes liability on employers, 29 U.S.C. § 623(a), (e), as well as an employer's "agent." *Id.* § 630(b). ADEA § 630(b)'s phrase "agent of such person" is not limited to employment agencies that work for employers (although an employment agency can be an employer's agent). *Id.* As noted above, Defendants are liable for their own acts that violate § 623(a) & (e), whether or not Facebook is their agent or an employment agency. In any event, the Complaint *does allege* that Facebook is an "employment agency" under the ADEA, which is defined as "any person regularly

undertaking with or without compensation to procure employees for an employer[.]" 29 U.S.C. § 630(c). As relevant here, the ADEA and Title VII define this term the same way. *See* 42 U.S.C. § 2000e(c).

Moreover, the Complaint does not merely parrot the ADEA's employment agency definition, but instead includes detailed allegations about how Facebook routinely procures employees for employers and has become one of the world's largest employment agencies. *See* TAC ¶¶ 54, 60-65. It alleges that Facebook collects data on prospective employees, including their ages, other demographics, and whether they are looking for work; gives that information to employers; collaborates with employers to develop ad campaigns; delivers ads to specific workers whom employers want to recruit; and directs workers who click job ads to employers' websites to learn about and apply for jobs. *See id.* ¶¶ 62-63. Facebook takes these actions and more to procure employees for employers, including for Defendants. *See id.*

Defendants are wrong that Facebook is like a newspaper, which some courts have held is not considered an employment agency under civil rights laws. Unlike a newspaper that passively publishes ads created by others, Facebook is "an active player in the labor market," *id.* ¶ 65, by working with and for employers to find workers and classify them based on demographics, develop ad campaigns to reach them, recruit workers by sending ads, and direct workers to employers to apply for jobs. *Id.* ¶¶ 60-65.

Moreover, courts and the EEOC have long recognized that a newspaper *can* be an employment agency if it affirmatively acts to classify or segregate ads in a discriminatory way, such as creating separate columns for "Female" and "Male" jobs or honoring advertisers' designations of ads for specific groups. *Morrow v. Miss. Publishers Corp.*, No. 72 Civ. 17, 1972 WL 236, at *1-4 (S.D. Miss. Nov. 27, 1972); EEOC Compliance Manual § 631.2(b)(1) Private Employment Agencies, 2006 WL 4672853 (2006) (newspaper "is not liable as an employment agency" if it "doesn't exercise control, or actively classify advertisements") (citing *Morrow*, 1972 WL 236, at *1-4, and Commission Decision No. 74-117, CCH EEOC Decisions (1983) ¶ 6429 n.2 (*Morrow* suggests newspaper is an employment agency "if a newspaper actively participates in classifying the advertisement which it publishes")). Here, Plaintiffs allege that Facebook plays a central, active role in classifying workers based on age and other demographics and assisting employers to decide how ads are categorized and matched with people based on their age. Thus, Plaintiffs amply allege that Facebook is an employment agency under the ADEA.

**D. Defendants Fail to Argue for the Dismissal of Plaintiffs' ADEA § 623(a)(2) Claim**

The Complaint alleges claims under three separate ADEA sections: § 623(a)(1), § 623(a)(2), and § 623(e). TAC ¶¶ 158-186. Defendants argue for dismissing the § 623(a)(1) and § 623(e) claims, but make no argument at all on why the Court should dismiss the § 623(a)(2) claim, which is based on the segregation and classification of applicants. TAC ¶¶ 172-73, 181. Thus, the § 623(a)(2) claim will remain in the case regardless of how this motion is resolved. *See MSGI Sec. Sols., Inc. v. Hyundai Syscomm Corp*., No. 09 Civ. 03330, 2010 WL 2735406, at *1 n.1 (N.D. Cal. July 12, 2010). Even if Defendants mistakenly failed to argue that the § 623(a)(2) claim should be dismissed, they cannot do so in their reply. *See Dytch v. Yoon*, No. 10 Civ. 02915, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011). Defendants also fail to argue for for dismissing the state law claims regarding the segregation and classification of workers, TAC ¶¶ 201, 207, and thus those claims will remain in the action.[3]

**E. Plaintiffs Have Sufficiently Pleaded Their State Law Claims**

Defendants argue that Plaintiffs' claims under California, Ohio, and District of Columbia law should be dismissed for the same reasons as Plaintiffs' federal claims. Mot. at 24. Although Plaintiffs do not agree that their federal and state laws are identical in all ways, for the purposes of this motion they agree with Defendants that the Court should interpret their state law claims consistent with federal law in deciding whether Plaintiffs have sufficiently pled them. And because Plaintiffs have stated plausible claims under the ADEA, they have stated plausible claims under the state laws too.

Defendants fail to cite authority supporting their argument that the publication provisions of the state laws only bar discriminatory content, not exclusionary advertising. Instead, they cite a California statute that has language similar to the ADEA, an Ohio district court decision that did not involve a § 623(e) publication claim but rather a § 623(a)(1) termination claim, and a D.C. district court decision that held that an ad's content was not discriminatory without considering whether exclusionary advertising is illegal (the theory was not raised). *See* Mot. at 24. Defendants also assert that Plaintiffs'

---

[3] In response to this motion, Plaintiffs do not object to striking from the case the portion of their § 623(a)(1) claim that is unrelated to hiring, *i.e.*, that Defendants "otherwise discriminate[d] against an individual with respect to terms, conditions, or privileges of employment." *Id.* ¶ 172; *see* Mot. at 21-22.

state law claims fail to allege facts under *McDonnell Douglas*, but point to three cases involving circumstantial evidence (not direct evidence) that were decided at summary judgment (not at the pleading stage). *Id.* at 25. As shown above, at the pleading stage Plaintiffs were not required to plead facts under *McDonnell Douglas*, which does not even apply to a direct evidence case.

Finally, Plaintiffs have stated an Unruh Act claim. The Act may not apply to the employment relationship, but it *does apply* when a company denies services that a person may need to pursue a job opportunity. *Alch v. Super. Ct. of L.A.*, 122 Cal. App. 4th 339, 394 (2004). And Plaintiffs are not just potential applicants; they are also consumers who "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments." Cal. Civ. Code § 51(b); TAC ¶ 214. The Act bars "discrimination based on an individual's age" in conducting business online, not just brick and mortar stores. *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1142, 1145 (Cal. Ct. App. 2018). Defendants plainly discriminated based on age by inviting younger—not older—consumers to access and participate in their online business services. TAC ¶¶ 217-218. Finally, Plaintiffs state a derivative Unfair Competition Law claim as they stated federal and state law claims. *See* Mot. at 25.

### F.   The Court Must Disregard Materials Beyond the Complaint

In moving to dismiss, Defendants make several references to Renia Hudson, who was a plaintiff in the Second Amended Complaint, but withdrew her claims with prejudice before Plaintiffs filed their Third Amended Complaint (which is now the operative complaint). *See* Stipulation Regarding Filing of TAC ("Stip."), ECF No. 70; Mot. 1-3, 18, 20, 23. But the very few facts about Hudson in the stipulation that Defendants point to—that she applied to Amazon after she learned about a position on Facebook, and failed to take steps to be hired—fall "outside the four corners of the complaint," and do not meet any exception to the rule that "the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15 Civ. 02177, 2017 WL 607602, at *2 (N.D. Cal. Feb. 15, 2017) (internal quotation omitted). Even if the Court could properly consider facts that only relate to Hudson personally, those facts cannot possibly override facts the current Plaintiffs allege in the operative complaint, which must be accepted as true at this stage. *See Nevarez*, 2018 WL 827969, at *1.

Although the parties agreed in the stipulation that "Defendants may refer to any facts regarding Renia Hudson throughout the litigation," Stip. at 3, neither the parties nor the Court agreed to change the legal standard that applies to a Rule 12(b)(6) motion or agreed that the remaining Plaintiffs would be bound by facts that are specific to Hudson.  In making a cursory argument for judicial estoppel in a footnote, Mot. at 20 n.3, Defendants offer no authority to support their novel view that the current Plaintiffs can be bound by facts about the withdrawn claims of a *different party* with whom they have no privity.  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012) ("judicial estoppel bars only inconsistent positions taken by the same party").

Moreover, the minimal facts on Hudson are not inconsistent with the allegations Plaintiffs make, thus precluding judicial estoppel.  *See id.*  As described above, Plaintiffs do not claim all older workers were denied *all* of Defendants' job ads or that none of the Class Members applied to work for the Defendants, but instead they claim that Defendants had a pattern-or-practice of denying older workers their job ads.  *See supra* at 17-20.  Notably, the stipulation does not even say that Hudson *received a job ad* from Amazon, merely that she "learned about" "a position" "on Facebook."  Stip. at 1.

Finally, Plaintiffs would not derive any "unfair advantage" by having the Court apply the ordinary Rule 12(b)(6) standard and disregard the minimal facts about Hudson at this stage.  *Milton H. Greene Archives*, 692 F.3d at 993-94.  Defendants possessed the TAC *before* the parties filed the stipulation about Hudson and they agreed the TAC would "make no other changes" other than removing references to Hudson, "unless otherwise agreed to by Defendants."  Stip. at 2.  If Defendants believed the TAC they approved would make factual allegations that are inconsistent with the stipulation they signed, they should not have signed the stipulation or consented to the filing of the TAC.  Thus, if anyone is trying to obtain an unfair advantage here *it is Defendants*.  (Indeed, Defendants only alerted Plaintiffs' counsel of the potential inaccuracy of Hudson's allegations the day before Defendants were scheduled to file their Motion to Dismiss, *see* Stip. at 1).  By allowing Hudson to remove herself from the case because she had pled a few inaccurate facts, while keeping their own accurate allegations in the Third Amended Complaint, the current Plaintiffs hardly engaged in conduct "tantamount to a knowing misrepresentation to or even fraud on the court"—this Circuit's historical touchstone for applying judicial estoppel.  *Milton H. Greene Archives*, 692 F.3d at 994 (citation and internal quotation omitted).

## II.   **This Forum Has Personal Jurisdiction Over the Defendants**

Plaintiffs have satisfied their *prima facie* burden to demonstrate specific jurisdiction over each Defendant regarding their claims that Defendants violated the ADEA and state laws by directing job ads and openings to Facebook users based on their age.  Contrary to Defendants' suggestion (Mot. at 8-13; Cox Br. at 5-9; T-Mobile Br. at 3-5), Defendants were not passive users of Facebook advertising. Rather, Plaintiffs allege that Defendants actively coordinated with Facebook *in this forum* to deliberately exclude older job applicants.  TAC ¶ 18 (Defendants "coordinated with Facebook to exclude an enormous portion of the American labor force from receiving job ads, recruitment, and hiring opportunities.").  Because Defendants purposefully directed their conduct to this forum, coordinated with Facebook to design and implement discriminatory ad campaigns in this forum, and directed those ad campaigns to residents of this forum, jurisdiction over Defendants comports with due process.

### A.   **The Standard for Specific Personal Jurisdiction in This Circuit**

Where no federal statute governs personal jurisdiction, the district court applies the forum law governing service of process.  *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  California's long-arm statute extends to the full reach of federal due process.  *See* Cal. Code Civ. Proc. § 410.10.  On a Rule 12(b)(2) motion that is based on written filings and is not subject to an evidentiary hearing, "plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (internal quotation marks omitted)); *accord Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  (T-Mobile and Amazon submitted no declarations other than to authenticate a few exhibits. Cox did, but its declarations concern only the number of their California employees and the location of their talent acquisition team in Atlanta, which subject to discovery may be accepted as true in this motion).  The Court must accept uncontroverted allegations as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Ranza*, 793 F.3d at 1068.

The Ninth Circuit has recognized the following test for specific jurisdiction in California: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).

Under Ninth Circuit law, the commission of an intentional tort in the forum state constitutes "purposeful availment" and satisfies the first two elements of this test. *Id.* (citing *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)). The Ninth Circuit recently clarified that where a tort is committed in a state, a plaintiff need not *additionally* prove the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). *Freestream Aircraft*, 905 F.3d at 604. "[R]igidly applying the *Calder* effects test without taking into account where the allegedly tortious conduct occurred conflicts with [the Ninth Circuit's] approach in *Paccar* . . . ." *Id.* at 605. "*Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state." *Id.* at 606.

**B.    Plaintiffs Have Established That the Alleged Violations Occurred in California**

Plaintiffs allege that Defendants' discriminatory conduct occurred in California, forming a "connection between [California] and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017); *see also id.* at 1783 (allegation "that BMS engaged in relevant acts together with McKesson in California" supports personal jurisdiction).

**1.    Defendants' Active Use of Facebook to Create, Target, and Deliver Discriminatory Ads Occurred in California**

Under federal discrimination law, a violation occurs where the unlawful practices are implemented, rather than where the decision was made. *See Passantino v. J&J Consumer Prods.*, 212 F.3d 493, 505 (9th Cir. 2000). The ADEA makes it unlawful "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment . . . indicating any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). In this case, the claims arose (if anywhere) at Facebook in California, where Facebook and Defendants together took numerous actions that caused Defendants' job ads to be published from and in California.

Here, Plaintiffs allege Defendants reached out to Facebook in California and closely collaborated with Facebook in California to develop, design, and send discriminatory ad campaigns that expressly excluded older workers from receiving the ads. In particular, Plaintiffs allege Defendants "intentionally

created and purchased discriminatory ads in this District via Facebook's ad platform that is located in this District" and "interacted with [its] employees who are located in this District to create, purchase, and publish discriminatory ads." TAC ¶¶ 27, 33. They identify examples of age-restricted ads each Defendant coordinated with Facebook to develop, create, and publish. *Id.* ¶¶ 2, 101, 103; *id.*, Ex. A at 2-7, 18-31, 59-66. Facebook facilitates this exclusionary targeting since it "develops and provides databases of information on Facebook users to employers so that such employers can know which individuals are looking for employment, know various types of information about those applicants, such as their age and gender, and exclude certain groups of people from their ad campaigns." *Id.* ¶ 62. The job ads are not only sent *from Facebook in California*, but also direct workers to Defendants' Facebook pages in Facebook's California-based platform and servers. *Id.* ¶¶ 2, 57-58, 103, 113. Defendants also used Facebook's delivery algorithm in California to further target ads to younger workers. *Id.* ¶¶ 93-94.

These allegations are sufficient to meet Plaintiffs' *prima facie* burden. Even a small amount of interaction with a forum can form the basis of personal jurisdiction if it is directly related to the alleged violation. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984) (circulation of 15,000 magazines in state sufficient for specific jurisdiction over defamation claim); *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1229-32 (9th Cir. 2011) (operating website targeted at the forum state). Here, Defendants' contacts and collaboration with Facebook, employees, and servers is sufficient because Defendants' allegedly unlawful conduct is centered in this forum. *See e.g.*, *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (purposeful availment found where party accessed confidential documents in a server in the forum and used server's email to send files); *Fintech Fund, FLP v. Horne*, No. 18 Civ. 1125, 2018 WL 3329862, at *7 (S.D. Tex. July 6, 2018) ("[p]urposefully accessing or targeting a company's server that is located in the forum can satisfy minimum contacts"); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17 Civ. 00561, 2017 WL 3485881, at *26 (N.D. Cal. Aug. 15, 2017) (purposeful availment met where party accessed info on server in forum).

Indeed, "numerous courts have exercised personal jurisdiction over nonresident defendants where the minimum contacts with the forum consisted of committing a tort through accessing a server located in the forum state," *Rhapsody Sols., LLC v. Cryogenic Vessel Alts., Inc.*, No. 12 Civ.1168, 2013

WL 820589, at *5 (S.D. Tex. Mar. 5, 2013) (collecting cases), which Defendants did when they created, developed, and sent discriminatory job ads via Facebook's ad platform and servers in California.

Moreover, the Court must consider Facebook's contacts to the forum as Defendants' agent.  An agent's contacts can be imputed to the principal for personal jurisdiction purposes.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) (agency relationship "may be relevant to the existence of specific jurisdiction," as "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there"); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (agency relevant to specific jurisdiction if defendant retains right to substantially control agent's activities); *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002) (recruiters' activities in forum state enough to create personal liability for the client employer); *Herring Networks, Inc. v. AT&T Servs., Inc.*, No. 16 Civ. 01636, 2016 WL 4055636, at *7 (C.D. Cal. July 25 2016) ("to the extent AT&T, Inc. directed and/or authorized AT&T Services to engage in conduct in California, those actions may be attributed to AT&T, Inc. for purposes of evaluating personal jurisdiction"); *cf. Bristol-Myers Squibb*, 137 S. Ct. at 1783 ("that BMS engaged in relevant acts together with McKesson in California" would support jurisdiction).  Courts impose joint or vicarious liability when an employer uses an employment agency to recruit applicants, especially where, as here, the employer instructs the employment agency to recruit certain applicants.  *Ferrara Candy Co.*, 2014 WL 3611130, at *5-6 (agency relationship where employer asked employment agency not to assign blacks); *Lucas v. Gold Standard Baking, Inc.*, No. 13 Civ. 1524, 2014 WL 518000, at *3-4 (N.D. Ill. Feb. 10, 2014) (same).

Here, Plaintiffs allege that Defendants specifically directed Facebook to take actions in this forum that allegedly violated the ADEA, including excluding older workers from receiving their job ads; that Facebook served as Defendants' agent to "develop, purchase, and send [Defendants'] job advertisements to Facebook users;" that Defendants exerted control over "Facebook's conduct and activities with respect to the Defendant Class Members' advertising jobs, recruiting employees, and communicating information to Facebook users;" and that Facebook acted within the scope of its agency relationship with Defendants. TAC ¶ 34; *see also id.* ¶¶ 107, 166, 195-196.  Defendants do not contest these agency-related allegations, which should be credited for purposes of this motion.  (Defendants

mention agency only in passing, Mot. at 15-16, to argue that they did not authorize the "Why am I seeing this ad" statement, not to otherwise challenge their alleged agency relationship with Facebook).

Moreover, Plaintiffs have done far more than simply allege Facebook's *presence* in the forum—a theory rejected in *Bauman* and *Williams*.  Rather, Facebook's *participation* in the allegedly unlawful conduct is integral to the case.  Facebook "encourage[ed] employers to engage in" discrimination against potential applicants based on age and told employers that age-based targeting is an "acceptable industry practice."  TAC ¶ 23.  It counsels employers "to narrowly focus ad campaigns on the 'right people,' including by targeting younger people," and has required employers to submit "the age range of the users who will receive the ad."  *Id.* ¶ 19; *see also id.* ¶¶ 70, 72, 86-88.  Facebook performs many functions of a conventional employment agency, like collecting information on prospective workers so that employers can decide who to recruit, helping to create and publish job ad campaigns, and directing applicants to employers. *Id.* ¶¶ 62, 65. Facebook even identifies workers who are similar to a company's existing workers—including based on age—through its "Lookalike Audiences" feature.  *Id.* ¶¶ 82-83.

### 2.    Defendants' Use of Facebook to Advertise Jobs and Hire in California Independently Supports Personal Jurisdiction

Because Defendants published age-discriminatory ads in California through Facebook's platform—violating the rights of California residents age 40 and over to equal access to employment opportunities in California—this provides a separate basis for personal jurisdiction over CWA's claims. (As noted below, CWA has standing to assert federal and California claims on behalf of its members in California, who were subjected to Defendants' age discrimination, *see id.* ¶ 125; *infra* at 40-42).

*First*, Plaintiffs allege that Defendants purposefully directed their activities to California by engaging in recruiting activities here, including running ads directed at California residents.  *Id.* ¶¶ 27-34, 108; *Lodestar Anstalt v. Bacardi & Co. Ltd.*, No. 16 Civ. 06411, 2017 WL 3534984, at *10 (C.D. Cal. Aug. 14, 2017) ("[d]irecting ad[s] to consumers in California constitutes 'express aiming' at the forum state"); *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co, Inc.*, 170 F. Supp. 3d 1249, 1261 (C.D. Cal. 2016) (defendant "designed the allegedly infringing advertisement campaign knowing and intending it to be run in California and specifically directed to California consumers").  Defendants also sent age-restricted job ads via Facebook to solicit persons in California and elsewhere to apply for

thousands of jobs in California.  TAC ¶¶ 27-31; *Solis v. Northridge Custom Homes, LLC*, No. 10 Civ. 1743, 2011 WL 13213635, at *2 (E.D. La. Feb. 17, 2011) (personal jurisdiction established where defendant was "hiring employees to work in Louisiana"); *New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc.*, No. 08 Civ. 1731, 2010 WL 2674474, at *6 (D.N.J. June 30, 2010) (personal jurisdiction over "lawsuit . . . about hiring practices" proper in forum where hiring was done).

*Second*, the claims arise directly out of, or result from, Defendants' forum-related activity, in the "but-for" sense that running age-restricted Facebook ads in California violated the law in this District (and elsewhere).  *Lodestar Anstalt*, 2017 WL 3534984, at *10 ("specific targeting of consumers in this District" was "but for" cause); *Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1131-32 (D. Or. 2017) ("relevant question is: but for [defendant's] contacts with Oregon" including the contacts of defendant's agent, "would Plaintiffs' claims have arisen?").

Because the Court has personal jurisdiction over CWA's claims on behalf of its California members, the Court can exercise "pendent personal jurisdiction" over the remaining Plaintiffs' claims that rest on a common nucleus of operative facts.  *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists.") (internal quotation omitted).  This doctrine survived the Supreme Court's decision in *Bristol-Myers*.  *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 859-62 (N.D. Cal. 2018) (exercising pendent personal jurisdiction regarding claims of nonresident consumers in a national class, any burden on defendants was *de minimus*, and the alternative was fractured litigation); *Broomfield v. Craft Brew All., Inc.*, No. 17 Civ. 01027, 2017 WL 3838453, at *15 (N.D. Cal. Sept. 1, 2017) (provisionally exercising pendent personal jurisdiction over nonresident plaintiffs, expressing doubt that *Bristol-Myers* applies to federal action with a nationwide class).  Here, there is plainly a common nucleus of facts, because Defendants engaged in the same pattern-or-practice of using Facebook's ad platform to send discriminatory ads *nationwide*, and in some cases sent the same job ad to the entire United States (including California).  *See, e.g.*, TAC ¶¶ 2, 27-31.

### 3.   The Cases on Which Defendants Rely Are Distinguishable

The cases on which Defendants rely are distinguishable because, unlike here, the use of Facebook or other social media was extraneous to the claims.  *See Surface Supplied Inc. v. Kirby Morgan Dive Sys.*, No. 13 Civ. 575, 2013 WL 2355446, at *4 (N.D. Cal. May 29, 2013) (company's presence on Facebook and Google alone did not create jurisdiction in California); *JibJab Media Inc. v. White Castle Mgmt.*, No. 12 Civ. 04178, 2013 WL 12123696, at *7 (C.D. Cal. May 14, 2013) ("purportedly nationwide distribution of White Castle's Facebook ads does not constitute 'individual targeting' such as would support a finding of 'purposeful direction'"); *NuboNau, Inc. v. NB Labs, Ltd.*, No. 10 Civ. 2631, 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012) ("NuboNau alleges nothing in particular about Dotcom Retail's activities on Twitter and Facebook to support a finding that its alleged trademark infringement arises out of those activities."); *Advice Co. v. Novak*, No. 08 Civ. 1951, 2009 WL 210503, at *4, *15 (N.D. Cal. Jan. 23, 2009) (running ads on Google and Facebook alone not enough).  In contrast, here Plaintiffs allege that Defendants engaged Facebook to design, create, and deliberately target their ads based on the age, that is to commit the very statutory violations they allege.

Other cases on which Defendants rely are inapposite, because in those cases there were at most incidental connections to the forum (unlike here), *see Picot*, 780 F.3d at 1211-12 (two trips into state were incidental to claim); *Netgear, Inc. v. Redzone Wireless, LLC*, No. 16 Civ. 06974, 2017 WL 2351359, at *4 (N.D. Cal. May 31, 2017) (plaintiff's contact with forum was insufficient to establish defendant's contacts), or *no* connection between the claims and the forum (unlike here where the violations occurred in California).  *See, e.g.*, *Enoh v. Hewlett Packard Enter. Co.*, No. 17 Civ. 04212, 2018 WL 3377547, at *10 (N.D. Cal. July 11, 2018) ("none of the Plaintiffs or their direct managers worked for Defendants in this District and none of the specific decisions regarding hiring, lay-offs, and promotions occurred in this District"); *Horowitz v. AT&T Inc.*, No. 17 Civ. 4827, 2018 WL 1942525, at *15-16 (D. N.J. Apr. 25, 2018) ("no connection between [plaintiffs'] claims and the corporation's activities within the forum" where they worked in different states); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16 Civ. 06391, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (no allegation "that Samsung performed any relevant action in California").

1

**C.**     **Defendants Fail to Show It Would Be Unreasonable to Litigate in this Forum**

2          Exercising personal jurisdiction here comports with fair play and substantial justice, *i.e.*, it meets

3   the reasonableness standard.  For this standard, the Ninth Circuit uses a seven-factor balancing test that

4   considers: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the

5   burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

6   defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

7   resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

8   effective relief; and (7) the existence of an alternative forum."  *Freestream Aircraft*, 905 F.3d at 607.

9          Once a plaintiff establishes a prima facie basis for personal jurisdiction, the *defendant* bears the

10  burden to prove that maintaining the case in the forum is *unreasonable*.  *Axiom Foods, Inc. v. Acerchem*

11  *Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).  Defendants "must come forward with a 'compelling

12  case' that the exercise of jurisdiction would not be reasonable."  *Boschetto v. Hansing*, 539 F.3d 1011,

13  1016 (9th Cir. 2008) (quoting *Schwarzenegger*, 374 F.3d at 802).  Here, Defendants have made no

14  attempt to meet their burden, or show they would be deprived of due process due to the inconvenience

15  of litigating in this forum.  *Freestream Aircraft*, 905 F.3d at 608.  They knew under Facebook's terms of

16  service that their ads would be run in this forum and they consented to suit in this forum for claims

17  related to their discriminatory use of Facebook.  TAC ¶ 35; Decl. of Jason C. Schwartz, ECF No. 73-1,

18  Ex. A § 4(4); T-Mobile Br. at 1 (referring to Facebook as "a California-based platform").  Defendants

19  plainly did not consider this forum inconvenient.  They are also national employers with physical and

20  business presences here, further supporting the fairness of jurisdiction.  TAC ¶¶ 28-32; Cox Br. at 6.

21         Defendants' home states have no greater interest in the enforcement of *federal* law (the ADEA,

22  the centerpiece of this case) than this forum has, and this case will not raise any conflicts of law issues

23  with Defendants' home states' laws.  It is manifestly more efficient to litigate all of the claims in this

24  case in one forum, especially in the forum where Facebook has its headquarters, records, and witnesses.

25  Defendants have not proposed an alternative forum where these claims could be litigated together

26  efficiently.  Neither Amazon nor T-Mobile has sought to transfer this case to any other forum.  They

27  have waived any venue objections by not raising them in this motion.  Fed. R. Civ. P. 12(g)(2),

28  (h)(1)(A).  Cox's single sentence about venue in a footnote, Cox Br. at 7 n.1, should be disregarded.  *See*

*Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996) ("summary mention of an issue in a footnote, without reasoning in support," did not preserve it).  For these reasons, exercise of personal jurisdiction over Defendants is reasonable in this forum.

## III.  **Plaintiffs Have Standing to Pursue Their Claims**

As described herein, Plaintiffs have standing to pursue all of the claims that they bring in this action, including the state law claims.  The worker Plaintiffs have all alleged sufficient injury to confer standing over their claims, and CWA has associational standing to vindicate the rights of its members.

Where, as here, Defendants challenge Plaintiffs' statutory standing to pursue their claims, the Court should apply the same legal standard as Rule 12(b)(6), and limit its review to the allegations in the Complaint that are accepted as true.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). While a challenge to Article III standing under Rule 12(b)(1) could permit an inquiry beyond the pleadings, *id.*, where—as here—Defendants' "jurisdictional challenge is confined to the allegations pled in the complaint," the Court "assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal."  *Heldt v. Tata Consultancy Servs., Ltd.*, 132 F. Supp. 3d 1185, 1191 (N.D. Cal. 2015).   Moreover, when deciding standing at "the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim."  *Maya*, 658 F.3d at 1068 (internal quotation omitted).

### A.  **Plaintiffs Are Aggrieved Persons Injured by Defendants' Discrimination**

Plaintiffs have sufficiently alleged that they have standing to pursue their federal and state law claims.  Defendants assert that Plaintiffs lack standing because they are not "persons aggrieved" under the ADEA and have not alleged a "real, present interest in" employment.  Mot. at 5.  This argument misapprehends the law and ignores the Complaint's detailed facts that demonstrate standing.

Defendants focus their alleged "standing" argument on whether Plaintiffs are "persons aggrieved" under the ADEA.  *Id*.  The ADEA states that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."  29 U.S.C. § 626(c).  Under modern jurisprudence, however, this argument does not relate to standing but rather whether the statute authorizes the Plaintiffs to sue.  *See Bank of*

*Am. Corp. v. City of Miami, Fla.*, 137 S.Ct. 1296, 1302-03 (2017).  In the past decade, the Supreme Court has clarified that the argument about who is an "aggrieved" person authorized to sue under a statute is not a question of "prudential standing," but "whether the statute grants the plaintiff the cause of action that he asserts."  *Id.*; *accord Reyes v. Checksmart Fin., LLC*, 701 F. App'x 655, 656-7 (9th Cir. 2017) (citing *Lexmark Int'l, Inc.v. Static Control Components, Inc*., 134 S.Ct. 1377, 1388-90 (2014)).

Under Title VII—which uses nearly the same "aggrieved" person language as the ADEA, and which Defendants concede should be interpreted consistently with the ADEA, Mot. at 5—the determination of whether a plaintiff is an "aggrieved" person involves an inquiry into the "zone of interests."  *Thompson v. N. Am. Stainless*, *LP*, 562 U.S. 170, 177 (2011) (internal quotation omitted). Under the zone of interests test, Title VII "enabl[es] suit by any plaintiff with an interest arguably [sought] to be protected by the statute."  *Id.* at 178 (internal quotation omitted).  Thus, *Thompson* held that an employee fired due to his fiancé's protected activity was an aggrieved person, as "the purpose of Title VII is to protect employees from their employers' unlawful actions" like retaliation, and harming the employee "was the unlawful act by which the employer punished" the employee's fiancé.  *Id.*  In applying the zone of interests test, courts should not apply an "artificially narrow" standard and instead should consider whether the statute "arguably sought to" protect a plaintiff's purported interest. *Ollier v. Sweetwater Union High Sch. Dist*., 768 F.3d 843, 866, 868 (9th Cir. 2014) (internal quotation omitted).

Here, applying *Thompson's* zone of interests test, it is clear that Plaintiffs were not required to allege they had a real, present interest in a position to challenge Defendants' discriminatory advertising. The ADEA's publication provision is intended to ensure that older workers receive equal and non-discriminatory advertising of jobs, and does not require a plaintiff to show that she applied for or was denied a position.  *See* 29 U.S.C. § 623(e); *id.* § 621(a)-(b).  Thus, the purpose of the publication provision is offended simply when the employer denies the worker equal and non-discriminatory advertising, regardless of whether the worker had a real, present interest in a specific job.

Moreover, Defendants' denying older workers information on jobs and steering them away from opportunities solely due to their age, is comparable to conduct courts have found sufficient to confer Article III standing even when a plaintiff did not have a real interest in a housing or employment. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-75 (1982) (African American without interest in

renting had standing where he was denied housing information given to whites); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 297-98 (7th Cir. 2000) ("tester" subjected to bias had standing though he had no interest in job).  As the Seventh Circuit explained in interpreting Title VII's analogous language, the law "created a broad substantive right that extends far beyond the simple refusal or failure to hire," and a person subjected to classification in the hiring process "suffers an injury 'in precisely the form the statute was intended to guard against.'"  *Kyles*, 222 F.3d at 297-98 (quoting *Havens*, 455 U.S. at 373).

Even if the Court agrees with Defendants that Plaintiffs must have a real, present interest in employment to be "aggrieved persons" and have Article III standing, Mot. at 5, Plaintiffs easily satisfy this standard.  Based on *Hailes*, 464 F.2d at 1008, Defendants recognize that a person who is subjected to discriminatory advertising may be "aggrieved" even if she "did not apply for employment."  *Id.* Indeed, shortly after *Hailes*, the Supreme Court held that a worker could bring a Title VII claim to challenge exclusionary "recruitment techniques" or "publiciz[ing] of vacancies" without applying for the position.  *Teamsters*, 431 U.S. at 365.  As *Hailes* observed, requiring a plaintiff subject to discriminatory advertising to apply for the position to state a publication claim could result in "nobody . . . ever complain[ing] of this practice which Congress has so directly proscribed."  464 F.2d at 1008. While a "casual reader" of an ad would not be aggrieved, a person with "a real, present interest in the type of employment advertised" would be.  *Id.*  In *Hailes*, the plaintiff was aggrieved since he alleged he was interested in a flight attendant position with the defendant.  *See id.*

Here, Plaintiffs allege that they had a real and present interest in specific positions with the named Defendants and describe how Defendants' discriminatory advertising prevented them and others in the Class from receiving equal information about job opportunities and the chance to pursue them. They allege that Defendants sent age-restricted job ads nationally to advertise and recruit for hundreds of thousands of jobs, causing them and older workers to be deterred from seeking those positions, and caused significantly fewer older workers to apply for and be hired by Defendants.  TAC ¶¶ 28-35, 209. Plaintiffs also allege that they: (1) were qualified for specific positions with Defendants during the relevant time period; (2) possessed the education, experience, and skills required for those positions, *id.* ¶¶ 39, 41, 43; (3) were "routinely denied employment ad[s] and recruitment" by Defendants due to their

39                    PLAINTIFFS' OPPOSITION TO MOTION
                                      TO DISMISS, CASE NO. 17-CV-7232-BLF

age, *id*. ¶¶ 40, 42, 44; and (4) "would have clicked on th[e] [] ads [] to learn more about th[e] opportunities and [] would have pursued them" if they had received the ads.  *Id*. ¶¶ 40, 42, 44.

Plaintiffs allege that the statement harmed them because it "encourage[s] younger workers to apply for the relevant employment opportunities," "discourage[s] older workers from applying," and caused more younger workers and fewer older workers to apply and be hired.  *Id.* ¶ 97; *see also id.* ¶¶ 19, 113, 185.  The statement is also directly linked to Defendants' age-restricted ad campaigns.  As described above, Defendants violated ADEA § 623(e) and harmed Plaintiffs *because* their ad campaigns were *not sent to older workers*.  Moreover, this type of publication claim does not require the plaintiff to have actually seen the biased ad to assert the claim.  *Compare Sterling*, 404 F. Supp. 2d at 1193-94, *with Brazil v. Dole Food Co., Inc*., 2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013) (rejecting claim where element of claim was that plaintiff saw or relied on the information) (cited by Mot. at 6).

## B.  CWA Has Associational Standing to Sue on Behalf of its Members

CWA has associational standing to bring ADEA and state law claims on behalf of its members.

Traditionally, a union has associational "standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (internal quotation omitted).  However, the Supreme Court has clarified that the "third prong is a prudential one," and "is best seen as focusing on [] matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."  *Id.* at 554-56.  Here, Defendants only challenge the third prong, Mot. at 6-7, as CWA has amply alleged facts to support the first two.  TAC ¶¶ 123-128.

The third prong is satisfied when an association "seeks declaratory and prospective relief rather than money damages," as then its "members need not participate directly in the litigation."  *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) (citing *Olagues v. Russoniello*, 797 F.2d 1511, 1519 (9th Cir. 1986)); *accord Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998); *Maui Vacation Rental Ass'n,*

1   *Inc. v. Cty. of Maui*, No. 07 Civ. 00495, 2007 WL 4440962, at *4 (D. Haw. Dec. 19, 2007), *aff'd*, 303 F.

2   App'x 416 (9th Cir. 2008) ("third prong is satisfied where an association seeks declaratory relief only").

3           Here, CWA seeks only declaratory and injunctive relief (not damages), "to stop the Defendant

4   Class Members from engaging in age-restricted advertising and recruiting in order to ensure that CWA's

5   members can receive equal opportunity in searching for and applying for jobs." TAC ¶127. To the

6   extent the Complaint could be construed as CWA seeking damages, it waives any claim for damages.

7   As CWA seeks only non-monetary relief, it can litigate the claims without the direct participation of its

8   members. *Darensburg v. Metro. Transp. Comm'n*., No. 05 Civ. 01597, 2005 WL 2277031, at *9 (N.D.

9   Cal. Sept. 19, 2005) (union had associational standing where it sought declaratory and injunctive relief

10  against biased transit policies that harmed its members in a plaintiff class action challenging the same

11  policies); *Santiago v. City of L.A.*, No. 15 Civ. 08444, 2016 WL 7176694, at *6-7 (C.D. Cal. Nov. 17,

12  2016) (union had standing where it did not seek damages, even though other parties sought such relief).

13          Moreover, the employment practices that CWA seeks to enjoin are uniform, plain violations of

14  federal and state law, and will not require CWA's members to prove liability. CWA claims that: (1) ad

15  campaigns that exclude older workers violate § 623(e) and constitute a facially discriminatory practice

16  that violates § 623(a); and (2) sending job ads that state that Defendants want to reach workers in age

17  ranges that exclude many older workers violates § 623(e), regardless of where the ads are shown, the

18  industry, or the workers' qualifications. *Supra* at 10-16.

19          Even if Defendants are correct that establishing liability may require an inquiry into the

20  "geography, work history, and qualifications" of prospective applicants, Mot. at 7, this would not divest

21  CWA of standing. As noted above, the associational standing test's third prong is merely "prudential."

22  *UFCW Local 751*, 517 U.S. at 544. Moreover, the third prong need not be considered where—as

23  here—Congress has given an association the right to file an action under a statute. *See Or. Advocacy

24  Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003); *see* 29 U.S.C. §§ 626(c)(1), 630(a) (defining "person

25  aggrieved" to include an "association" and "labor organizations" like CWA).

26          Finally, to the extent some Defendants claim they stopped some of the practices Plaintiffs

27  challenge (which they could reinstate at any time), that is a question of mootness, not standing. As

28  described in Plaintiffs' response to the motion to strike, Defendants do not even try to satisfy the

1    "formidable burden" for mootness.  *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 860, 862 (N.D.

2    Cal. 2011) (holding defendant failed to meet its "formidable burden" of establishing alleged wrongful

3    behavior could not be expected to recur where it "could change or rescind its policies at any time").

4         **C.    The Worker Plaintiffs and CWA Have Standing to Assert Their State Law Claims**

5         Contrary to Defendants' assertion, all of the Plaintiffs have a right to sue under the state laws,

6    and thus a right to assert those claims on behalf of others.  *See* Mot. at 7-8 (challenging standing to

7    bring California and D.C. claims, though not Ohio claims).  Due to Defendants' discriminatory

8    advertising, Plaintiffs were injured in the states where they reside as well as in other states (*e.g*.,

9    California and D.C.), because they lost the opportunity to learn about jobs in those states and apply for

10   them.  Also, the practices Plaintiffs challenge originated in California where Defendants and Facebook

11   created and executed the discriminatory ad campaigns.  Thus, contrary to Defendants' contention,

12   Plaintiffs are not asking the Court to apply California law extraterritorially.  *See* Mot. at 7-8.

13        The DCHRA is a "powerful, flexible, and far-reaching prohibition against discrimination" and

14   must be "generously construed."  *George Wash. Univ. v. D.C. Bd. of Zoning Adjustment*, 831 A.2d 921,

15   939 (D.C. 2003) (internal quotation omitted).  A person may bring a DCHRA claim if the "effects" of

16   discrimination are "felt" in D.C.  *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301, 304 (D.C. 2009).

17   This occurs if a plaintiff alleges bias over jobs in D.C., no matter where decisions are made.  *Quarles v.*

18   *Gen. Invest. & Develop. Co*., 260 F. Supp. 2d 1, 19-21 (D.D.C. 2003); *Martin v. Holiday Universal Inc*.,

19   No. 90 Civ. 1188, 1990 WL 209266, at *4 (D. Md. Oct.3, 1990); *Green v. Kinney Shoe Corp*., 704 F.

20   Supp. 259, 260 (D.D.C. 1988); *Peterson v. Archstone*, 601 F. Supp. 2d 123, 128 (D.D.C. 2009).

21        Here, the effects of Defendants' discriminatory ad campaigns were felt nationwide, including in

22   D.C. where jobs that Defendants advertised nationwide were located.  Defendants sent age-restricted ads

23   nationwide, including to people in California, Ohio, D.C., and Maryland, advertising hundreds of

24   thousands of jobs located nationwide, including in D.C. TAC ¶¶ 28-33, 106, 108.  Plaintiffs allege that,

25   had they received these ads, they "would have pursued" jobs even outside the areas where they resided.

26   *Id.* ¶¶ 39, 41.  For example, Anscombe "has searched for work" in "the District of Columbia" and "has

27   been interested in receiving and responding to job opportunities" in D.C. "and other places."  *Id.* ¶ 41.

28

1    Plaintiffs similarly may pursue claims under California's FEHA.  Under California law, there is

2    no presumption against extraterritoriality where an unlawful act was committed in California, allowing

3    out-of-state plaintiffs "to recover damages suffered as a result of an unlawful act or omission committed

4    in California."  *Diamond Multimedia Syss., Inc. v. Super. Court*, 968 P.2d 539, 554 (1999).  "[T]o state

5    a viable claim under the FEHA, plaintiff must show that the conduct that allegedly violated FEHA

6    occurred in California."  *McCamey v. Hewlett Packard Co.*, No. 11 Civ. 0702, 2011 WL 4056158, at *3

7    (E.D. Cal. Sept. 12, 2011) (citing *Campbell v. Arco Marine*, 50 Cal. Rptr. 2d 626, 633 (1996) (FEHA

8    "should not be construed to apply to nonresidents employed outside of [California] when the tortious

9    conduct did not occur in California.")).  For example, where an out-of-state plaintiff alleged the decision

10   to fire him occurred California, the "locus" of that biased act in California was enough to state a claim.

11   *Sims v. Worldpac Inc.*, No. 12 Civ. 05275, 2013 WL 663277, at *3 (N.D. Cal. Feb. 22, 2013).

12          Plaintiffs' allegations clearly fall within the FEHA. The principal place where the discriminatory

13   conduct occurred is California, where Defendants combined with Facebook to create, develop, publish,

14   and send discriminatory ads to users in California and nationally, which solicited workers to apply for

15   positions in California and nationally.  TAC ¶ 27; *see id.* ¶¶ 31, 33.  For the same reason, Plaintiffs have

16   standing to pursue Unruh Act claims, as the unlawful decisions and conduct occurred in California.  For

17   Unruh claims, the Court should follow the general rule that "[i]f the conduct that 'creates liability'

18   occurs in California, California law properly governs that conduct."  *Oman v. Delta Air Lines, Inc.*, 889

19   F.3d 1075, 1079 (9th Cir. 2018) (quoting *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (2011)); *see Doe

20   v. Virgin Am., Inc.*, No. 18 Civ. 02420, 2018 WL 5291987, at *6 (N.D. Cal. Oct. 22, 2018) (leaving

21   open question of whether Unruh Act applies to conduct in California directed to non-residents).

22          Finally, CWA has standing to assert California and D.C. claims on behalf of its members.  CWA

23   alleges Defendants' discriminatory practices injured its members located in D.C. and California.  TAC

24   ¶¶ 125-127.  It alleges that "CWA's members who are 40-years-old or greater and have used Facebook

25   to seek employment opportunities have been subjected to and harmed by the unlawful discriminatory

26   practices described in this Complaint, and . . . these CWA members are located throughout the United

27   States, including in California, the District of Columbia, and Ohio."  *Id.* ¶ 125.  CWA members "located

28   in California, Ohio, the District of Columbia, and throughout the nation, would have received far more

job ad[s] from the Defendant[s]" had Defendants "not excluded these CWA members from receiving their job ad[s] and recruiting."  *Id.* ¶ 127.  CWA's members include Anscombe, who searched for work in the D.C. area where Defendants denied him job ads due to his age.  *Id.* ¶¶ 41, 127.

While the Complaint does not identify a CWA member in California by name, it alleges that CWA's California members were harmed by Defendants' practices and CWA seeks an injunction to protect all of its members, including in California.  *See id.* ¶ 127.  In this Circuit, organizational plaintiffs need not "specifically identif[y] a member of the organization to establish "standing for the organization."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be denied in its entirety.

PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS, CASE NO. 17-CV-7232-BLF

Dated: December 3, 2018                              Respectfully submitted,

                                                    */s/ Peter Romer-Friedman*
Jahan C. Safagi (Cal. Bar No. 224887)              P. David Lopez (*pro hac vice*)
OUTTEN & GOLDEN LLP                                 Peter Romer-Friedman (*pro hac vice*)
One California Street, 12th Floor                   OUTTEN & GOLDEN LLP
San Francisco, CA 94111                             601 Massachusetts Ave. NW
Telephone: (415) 638-8800                           Second Floor West
Facsimile:  (415) 638-8810                          Washington, DC 20001
E-mail: jsagafi@outtengolden.com                    Telephone: (202) 847-4400
                                                    Facsimile:  (646) 952-9114
                                                    E-mail: pdl@outtengolden.com
                                                    E-mail: prf@outtengolden.com

                                                    Adam T. Klein (*pro hac vice*)
Patricia Shea (*pro hac vice*)                      Robert N. Fisher (Cal. Bar No. 302919)
Katherine A. Roe (*pro hac vice*)                   Jared W. Goldman (*pro hac vice*)
COMMUNICATIONS WORKERS                              OUTTEN & GOLDEN LLP
OF AMERICA                                          685 Third Avenue, 25th Floor
501 3rd Street, N.W.                                New York, NY 10017
Washington, DC 20001                                Telephone: (212) 245-1000
Telephone: (202) 434-1100                           Facsimile:  (646) 509-2060
E-mail: jcalemine@cwa-union.org                     E-mail: atk@outtengolden.com
E-mail: aroe@cwa-union.org                          E-mail: rfisher@outtengolden.com
                                                    E-mail: jgoldman@outtengolden.com


*Attorneys for Plaintiffs and the Proposed Plaintiff Class and Collective*

PLAINTIFFS' OPPOSITION TO MOTION
                                                    TO DISMISS, CASE NO. 17-CV-7232-BLF