1  Jahan C. Sagafi (Cal. Bar No. 224887)              P. David Lopez (*pro hac vice*)
   OUTTEN & GOLDEN LLP                                Peter Romer-Friedman (*pro hac vice*)
2  One California Street, 12th Floor                  Pooja Shethji (*pro hac vice*)
   San Francisco, CA 94111                            OUTTEN & GOLDEN LLP
3  Telephone: (415) 638-8800                          601 Massachusetts Ave. NW
   Facsimile: (415) 638-8810                          Second Floor West
4  E-mail: jsagafi@outtengolden.com                   Washington, DC 20001
                                                      Telephone: (202) 847-4400
5                                                     Facsimile: (646) 952-9114
                                                      E-mail: pdl@outtengolden.com
6                                                     E-mail: prf@outtengolden.com
                                                      E-mail: pshethji@outtengolden.com
7  Patricia Shea (*pro hac vice*)
8  Katherine A. Roe (*pro hac vice*)
   COMMUNICATIONS WORKERS                             Adam T. Klein (*pro hac vice*)
9  OF AMERICA                                         Robert N. Fisher (Cal. Bar No. 302919)
   501 3rd Street, N.W.                               Jared W. Goldman (*pro hac vice*)
10 Washington, DC 20001                               OUTTEN & GOLDEN LLP
   Telephone: (202) 434-1100                          685 Third Avenue, 25th Floor
11 E-mail: pats@cwa-union.org                         New York, NY 10017
   E-mail: aroe@cwa-union.org                         Telephone: (212) 245-1000
12                                                    Facsimile: (646) 509-2060
                                                      E-mail: atk@outtengolden.com
13                                                    E-mail: rfisher@outtengolden.com
14                                                    E-mail: jgoldman@outtengolden.com

15   *Attorneys for Plaintiffs and the Proposed Plaintiff Class and Collective*

16                      **UNITED STATES DISTRICT COURT**
17                   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18   COMMUNICATIONS WORKERS OF
19   AMERICA, LINDA BRADLEY, MAURICE
     ANSCOMBE, LURA CALLAHAN,                      Case No. 17-cv-07232-BLF
20   RICHARD HAYNIE, and others similarly
     situated,                                     **FOURTH AMENDED CLASS AND**
21                                                 **COLLECTIVE ACTION**
                    Plaintiffs,                    **COMPLAINT**
22
                                                   **DEMAND FOR JURY TRIAL**
23            v.

24   T-MOBILE US, INC., and AMAZON.COM,
     INC.,
25
                    Defendants.
26

27

28

## **INTRODUCTION**

1.      In this action, the Communications Workers of America ("CWA"), Linda Bradley, Maurice Anscombe, Lura Callahan, and Richard Haynie (collectively, "Plaintiffs") seek to vindicate the rights of older workers to be free of age discrimination in employment advertising, recruitment, and hiring.  They bring this action against T-Mobile US, Inc. ("T-Mobile") and Amazon.com, Inc. ("Amazon"), major American employers that, upon information and belief, routinely exclude older workers from receiving their employment and recruiting ads on Facebook, and thus deny older workers job opportunities.  These companies eliminate older workers from receiving job ads by specifically targeting their employment ads to younger workers via Facebook's ad platform.  And these employers state in their job advertisements that they are interested in reaching younger workers who fall into a specific age band of Facebook users who were selected to receive the job advertisements, thereby encouraging younger workers to apply for various jobs and discouraging older workers from doing the same.

2.      For example, T-Mobile sent the following ad via Facebook to recruit prospective job applicants for its stores nationwide, and in doing so, upon information and belief, limited the population receiving the ad to 18- to 38-year-olds.  The screenshot to the right shows that T-Mobile sent the job ad because T-Mobile "wants to reach **people ages 18 to 38 who live or were recently in the United States**."





FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

3.      Plaintiffs allege that T-Mobile and Amazon have violated federal, state, and local laws that prohibit age discrimination in employment advertising, recruiting, and hiring, upon information and belief.  Plaintiffs seek an injunction to stop Defendants from engaging in unlawful age discrimination in employment, as well as other forms of relief for older workers who have been denied job opportunities due to the unlawful and harmful practices described in this Complaint.

4.      Fifty years before this action was filed, on December 15, 1967, Congress enacted the Age Discrimination in Employment Act to prohibit and eradicate systemic age discrimination that older workers faced in the workplace.  *See* Pub. L. No. 90-202, § 2 (Dec. 15, 1967).  Congress found that older workers faced discrimination in hiring and other employment opportunities, and that the arbitrary setting of age limits led to higher unemployment rates for older workers.  *Id.*; 29 U.S.C. § 621.  To combat this discrimination, Congress prohibited employers and employment agencies from discriminating based on age in employment advertising, recruiting, hiring, and other employment opportunities, and Congress made it unlawful to send or publish employment ads that discriminate or indicate a preference or limitation based on age.  29 U.S.C. § 623(a), (b), (e).

5.      Agreeing with Congress that age discrimination in employment was a systemic problem, numerous states, including California and Ohio, the District of Columbia, and many counties, cities, and towns enacted similar prohibitions on age discrimination in employment.

6.      Sadly, this case reveals that age discrimination remains an entrenched facet of the American workplace.  Defendants—major American companies—apparently believe that it is appropriate and desirable to exclude American workers from job opportunities *solely based on their age*.

7.      In every corner of America, when an older worker loses her job at a coal mine, a steel mill, a call center, a hospital, or an office, and she looks for a new job using the internet and social media to find job opportunities, she likely has no idea that major American companies are purposely refusing to tell her about the next job opportunity that may help her feed her family or make her next mortgage payment to stave off a devastating foreclosure.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

8.      Due to this lawsuit, older workers may finally understand why their job searches—that have migrated online in recent years—are more difficult than they ought to be.  In fact, their job searches are more difficult than our country's anti-discrimination laws allow.  If this lawsuit succeeds, American workers' job searches may be a lot easier in the future.

9.      Harm has already been done, and it continues, as Defendants have expressly and blatantly excluded older workers from receiving job advertisements and recruitment via Facebook's paid ad platform.  As a result, these companies have denied millions of workers the opportunity to learn about and obtain employment opportunities, upon information and belief.

10.      When selecting the population of Facebook users who will receive employment ads, Defendants have routinely focused their ads on prospective applicants who are in age bands that exclude many workers who are 40-years-old or greater, *e.g.*, targeting workers who are "ages 18 to 38," "ages 22 to 45," or "ages 21 to 55," thereby preventing older workers from receiving advertising and recruitment for job opportunities, upon information and belief.

11.      This pattern or practice of discrimination denies job opportunities to individuals who are searching for and interested in jobs, reduces the number of older workers who apply for jobs with the offending employers and employment agencies, and depresses the number of older workers who are hired by Defendants, causing working families to lose out on wages, benefits, and the dignity that comes with a good job.  In addition, these practices make older workers' job searches take far longer than they should, causing economic harm and other forms of distress to them and their families.  For the positions advertised, these age-based restrictions show that the selections for these positions are uniformly motivated by discriminatory animus against older workers.

12.      This practice is not just harmful to older workers—it is unlawful.  By actively excluding workers who are older than a certain age from receiving employment ads and by stating in the ads that the employers want to reach younger workers, Defendants clearly state a preference for recruiting and hiring younger workers over older workers; they discriminate against older workers in their advertising, recruitment, and hiring process; and they limit, segregate, and classify job applicants based on their age, all in violation of federal, state, and local laws that prohibit age

discrimination in employment.

13.     While advocates for older workers and civil rights have long suspected that employers screen out older workers from the employment pipeline, evidence from Facebook's ad platform confirms that, approximately 50 years after the passage of the ADEA, age discrimination, rather than equal opportunity, appears to be Defendants' common practice in employment advertising, recruiting and hiring, upon information and belief.

14.     Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift.  Like so many other parts of our society, Facebook and other social media platforms have become a dominant force in the national labor market.  In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers.

15.     Like many technologies in the modern economy, Facebook has an unfathomable capacity to make workers aware of economic opportunities, such as jobs.  Advertising on Facebook's paid ad platform could make it easy for workers to regularly receive employment opportunities on an equal basis.  For tens of millions of forgotten workers whose plants have shuttered, hospitals have closed, and retail stores have been driven out of business by e-commerce, receiving ads for job openings via Facebook could be a godsend—a ray of hope at the end of a long, dark tunnel in which American workers have been discarded by national companies that place profit over people.

16.     Upon information and belief, Facebook's powerful ad platform has been used as a mechanism for age discrimination, and  Defendants have coordinated with Facebook to exclude an enormous portion of the American labor force from receiving job ads, recruitment, and hiring opportunities.

17.     The basic practice at issue in this case is simple.  When an employer or an employment agency creates, purchases, and sends a Facebook ad to make workers aware of job opportunities and encourage them to apply for various jobs, Facebook requires the employers or employment agencies to select the population of Facebook users who will be eligible to receive the ad, including the age range of the users who will receive the ad.  Following Facebook's

5

encouragement to narrowly focus ad campaigns on the "right people," including by targeting younger people, upon information and belief, Defendants have routinely focused their Facebook employment ads on users who are under 40-years-old (and sometimes on users who are under higher age thresholds).  This prevents workers who are above the selected age threshold from receiving employment ads and pursuing relevant job opportunities.

18.     This case and the facts alleged should not come as a surprise.  The public, Facebook, and Defendants have known that Facebook's ad platform enabled and encouraged employers and employment agencies to exclude older workers from receiving job ads.  In November 2016, ProPublica revealed that Facebook's platform made it possible for African Americans, Latinos, and Asian Americans to be excluded from receiving ads for various economic opportunities, such as housing or employment ads.[1]  At that time, it was widely known that other protected characteristics, such as age, could be used to exclude Facebook users from receiving employment ads.

19.     In addition, in the wake of federal court litigation that was filed in 2016 over Facebook's ad platform being used to exclude people of color from receiving job advertisements due to their race or national origin, Defendants in this case knew and/or should have known that it was or could be unlawful to exclude older workers from receiving their job advertisements via Facebook.  Nevertheless, upon information and belief, Defendants continued to exclude older workers from receiving their job advertisements via Facebook and making statements on Facebook that they wanted to reach workers within younger age bands.  And upon information and belief, Defendants did not attempt to offset the harm of targeting of younger workers with job advertisements via Facebook by similarly targeting older workers with job advertisements via Facebook.

---

[1] Julia Angwin & Terry Parris Jr., *Facebook Lets Advertisers Exclude Users by Race*, ProPublica (Oct. 28, 2016, 1:00 PM), https://www.propublica.org/article/facebook-lets-advertisers-exclude-users-by-race.

**JURISDICTION AND VENUE**

20.     The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and it is a class action in which members of the proposed Plaintiff Class are citizens of different states than at least one defendant.  Plaintiffs Bradley and Callahan are citizens of Ohio, Plaintiff Anscombe is a citizen of Maryland, Plaintiff Haynie is a citizen of California, and Defendant T-Mobile US, Inc. is a citizen of Delaware and Washington.

21.     The Court has subject matter jurisdiction over Plaintiffs' and the collective members' ADEA claims pursuant to 29 U.S.C. § 1331.  The court also has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

22.     This Court has personal jurisdiction over T-Mobile and Amazon because upon information and belief, T-Mobile and Amazon conduct substantial business throughout this District; employ thousands of workers in this District and California; intentionally created and purchased discriminatory ads in this District via Facebook's ad platform that is located in this District; interacted with Facebook's employees who are located in this District to create, purchase, and publish discriminatory ads, upon information and belief; and intentionally sent such discriminatory ads from this District to Facebook users who are located in this District, California, and throughout the United States, and those advertisements intentionally solicited workers to apply for positions throughout the State of California, including in this District.

23.     Upon information and belief, during the events that are challenged in this action, Amazon employed tens of thousands of employees in California and intentionally sent Facebook advertisements throughout the nation (including advertisements sent to persons located in and outside of California, such as the District of Columbia, Ohio, and Maryland) that advertised thousands to tens of thousands of jobs that are located in California, including jobs that are located in this District, and Amazon excluded older workers from receiving those ads.  Upon information

and belief, during the events that are challenged in this action, Amazon operated 23 Fulfillment and Sortation Centers in California, 9 Prime Now Hubs in California, 2 Tech Hubs in California, 8 Campus Pick-Up locations in California, and 4 Amazon Books stores in California.  Indeed, Amazon has stated that it has created more than 39,000 full-time jobs in California.[2]

24.     Upon information and belief, during the events that are challenged in this action, T-Mobile employed thousands of employees in California (including in this District) and intentionally sent Facebook advertisements throughout the nation (including advertisements sent to persons located in and outside of California and this District, such as the District of Columbia, Ohio, and Maryland) that advertised thousands of jobs that are located in California, including jobs that are located in this District, and T-Mobile excluded older workers from receiving those ads, including workers in this District.  Upon information and belief, during the events challenged in this action, T-Mobile operated more than 700 locations in California.

25.     Upon information and belief, Amazon and T-Mobile each sent at least hundreds of thousands of age-restricted advertisements to Facebook users throughout the United States, including users in California and in this District, advertising positions in California (including in this District), the District of Columbia, Ohio, and many other states.  When Amazon and T-Mobile excluded older workers from receiving job advertisements about positions in California and this District, they caused harm to older workers throughout the United States who were deterred from seeking positions in California, and Amazon and T-Mobile knew that older workers in and outside of California (including in this District) would be harmed by such discriminatory advertising.

26.     Upon information and belief, Defendants used Facebook's ad platform to create, develop, purchase, and send their job advertisements to Facebook users in order to solicit and recruit workers to apply for positions in and outside of California.  Upon information and belief, in sending age-restricted job advertisements that excluded older workers from receiving such ads and in stating in the advertisements that Defendants wanted to reach Facebook users between specific

---

[2] *Amazon's Economic Impact Across the U.S.*, About Amazon, https://www.aboutamazon.com/investing-in-the-u-s (last visited Aug. 20, 2018).

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

ages, Defendants took such actions, published or made such advertisements, and/or caused Facebook to publish or make such discriminatory advertisements.

27.     Upon information and belief, Defendants agreed to follow the same terms and conditions of the same contract with Facebook by agreeing to Facebook's Statement of Rights and Responsibilities and/or Terms of Service ("Facebook contract").[3]  The Facebook contract requires its users, including Defendants who have advertised jobs on Facebook and the members of the Plaintiff Class who have used Facebook, to resolve any disputes related to their use of Facebook in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, to "submit to the personal jurisdiction of such courts for the purpose of litigating all such claims" related to their use of Facebook, and that any dispute over the use of Facebook will be resolved under California law.  In addition, the Facebook contract mandates that the advertisers not engage in any conduct that is "discriminatory," a requirement that all Defendants have violated by virtue of the practices challenged in this action.  By agreeing to the Facebook contract under which Defendants agreed to submit to the personal jurisdiction of this Court and resolve all disputes in this Court related to their use of Facebook, Defendants consented to personal jurisdiction and venue in this Court and have waived any argument that exercising personal jurisdiction over them with respect to their discriminatory advertising on Facebook is improper, unlawful, or unconstitutional. By excluding older workers from receiving job advertisements via the same Facebook ad platform, Defendants collectively altered, distorted, manipulated, and harmed national, regional, and local labor markets and job opportunities for the Plaintiff Class Members, including the labor market for workers in this District and California, and accordingly Defendants lengthened the time of older workers to obtain employment, including employees inside and outside of California who have sought employment in California and this District.

28.     Declaratory and injunctive relief are sought and authorized by 28 U.S.C. §§ 2201 and 2202.

---

[3] *Terms of Service*, Facebook, https://www.facebook.com/terms.php (last visited Aug. 20, 2018).

29.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, where Defendants created and purchased discriminatory ads via Facebook's ad platform that is located in this District, and sent such discriminatory ads from this District to Facebook users who are located in this District and throughout the United States, including for positions within this District.  Plaintiffs have exhausted their administrative remedies with respect to their federal ADEA claims and their California Fair Employment and Housing Act ("FEHA") claims.  On May 10, 2018, Plaintiffs Bradley, Maurice Anscombe, and Lura Callahan received right to sue letters from the Equal Employment Opportunity Commission ("EEOC") regarding their ADEA charges against Defendants, and on May 22, 2018, they received right to sue letters from the California Department of Fair Employment and Housing ("DFEH") regarding their FEHA charges against Defendants.  On May 7, 2019, Plaintiff Haynie received right to sue letters from the EEOC regarding his ADEA charges against Defendants and from the DFEH regarding his FEHA charges against Defendants.

## THE PARTIES

30.     The Communications Workers of America is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's headquarters are located in Washington, DC.  CWA also has offices, local unions, and members in California, and is accordingly a citizen of California.  Its members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA educates its members about the value of social media for networking and advocacy.  As a result, CWA members, including the over 160,000 who are over age 40, include hundreds of thousands of Facebook users.  CWA has thousands of members who are members of the proposed Class,

including Plaintiffs Bradley, Callahan, and Anscombe.  Numerous members of CWA who are also members of the proposed Class reside in this District and elsewhere in California, and they have been denied advertisements about jobs at Amazon and T-Mobile within the State of California concerning jobs in this District.

31.     Plaintiff Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio. Prior to the filing of the Original Complaint, she was laid off from her longstanding job at a call center in Franklin County, Ohio.  Ms. Bradley is and has been a member of CWA during the period in which she has been affected by the discrimination she challenges in this case.  She regularly uses Facebook and has used Facebook to seek employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has decades of customer service and sales experience in the telecommunications industry and the healthcare industry.  She has skills in a range of areas, including interpersonal communication skills and leadership skills. Ms. Bradley graduated from high school and has attended undergraduate courses.  Upon information and belief, due to her skills and experience, Ms. Bradley would be qualified for a range of positions at T-Mobile, including but not limited to Account Care Expert and Customer Service Representative Trainer; Ms. Bradley would be qualified for a range of positions at Amazon, including but not limited to Customer Service Associate, and Seller Support Associate.  Upon information and belief, T-Mobile and Amazon used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, and hire for some or all of these positions, including for positions in California and Ohio.  Upon information and belief, Defendants' employment advertisements were intended to draw readers of the advertisements into their online career portals in which such positions and numerous other positions were advertised so that such readers would apply for the listed positions.  Ms. Bradley is willing to work not just in Ohio but beyond her local geographic area.

32.     Upon information and belief, Ms. Bradley has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and

throughout the nation, including employment ads and recruitment from T-Mobile and Amazon.  If Ms. Bradley had received such ads from each Defendant, she would have clicked on those employment ads in order to learn more about those opportunities and she would have pursued them.  Because Ms. Bradley did not receive such ads from Defendants, she did not learn about specific job opportunities at those employers and was thus deterred from applying for such job opportunities.  Upon information and belief, Ms. Bradley was qualified to perform one or more job at each of the Defendants that was offered during the time period at issue in this case (including but not limited to January through December 2017).  Upon information and belief, Ms. Bradley was denied the opportunity to receive job advertisements from Amazon and T-Mobile because of her age, including the job advertisements of Amazon and T-Mobile that advertised positions in California.

33.     Plaintiff Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland.  Mr. Anscombe is and has been a member of CWA during the period in which he has been affected by the discrimination he challenges in this case.  He is seeking employment, having previously worked as a cable technician for almost two decades and, before that, in law enforcement.  He regularly uses Facebook and has used Facebook to seek employment opportunities.  Mr. Anscombe has skills in a range of areas, including telecommunications networks, computers, law enforcement, and corporate security.  He has an associate degree in Applied Science from Bronx Community College.  Upon information and belief, due to his skills and experience, Mr. Anscombe would be qualified for a range of positions at T-Mobile, including but not limited to Associate Installation Technician and Installation Supervisor; Mr. Anscombe would be qualified for a range of positions at Amazon, including but not limited to Cabling Technician, Network Technician, Data Center Technician, and Loss Prevention Specialist.  Upon information and belief, T-Mobile and Amazon used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for some or all of these positions, including for positions in California, Maryland, the District of Columbia, and Virginia.  Upon information and belief, Defendants' employment advertisements were intended to draw readers of the advertisements into their online career portals in which such positions and

1   numerous other positions were advertised so that such readers would apply for the listed positions.

2   Mr. Anscombe is willing to work not just in Maryland, but also beyond his local geographic area.

3   For example, Mr. Anscombe has searched for work in Maryland, the District of Columbia, and the

4   D.C. Metropolitan Area (which includes Virginia) when he was regularly using Facebook, and has

5   been interested in receiving and responding to job opportunities in these and other places.

6          34.     Upon information and belief, Mr. Anscombe has routinely been denied employment

7   advertisements and recruitment that similarly situated workers have received in Maryland and

8   throughout the nation, including employment ads and recruitment from T-Mobile and Amazon.  If

9   Mr. Anscombe had received such ads from each of the Defendants, he would have clicked on those

10  employment ads in order to learn more about those opportunities and he would have pursued them.

11  The only employment ad that Mr. Anscombe recalls receiving on his Facebook News Feed was via

12  a closed group in Facebook for former law enforcement officials and was sent by a company

13  recruiting former military and law enforcement officials.  Because Mr. Anscombe did not receive

14  such ads from the Defendants, he did not learn about specific job opportunities at those employers

15  and was thus deterred from applying for such job opportunities.  Upon information and belief, Mr.

16  Anscombe was qualified to perform one or more job at each of the Defendants that was offered

17  during the time period at issue in this case (including but not limited to January through December

18  2017).  Upon information and belief, Mr. Anscombe was denied the opportunity to receive job

19  advertisements from Amazon and T-Mobile because of his age, including advertisements of

20  Amazon and T-Mobile that advertised positions in California.

21         35.     Plaintiff Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio.

22  Ms. Callahan is and has been a member of CWA during the period in which she has been affected

23  by the discrimination she challenges in this case.  Prior to the filing of the Original Complaint, she

24  was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She

25  regularly uses Facebook and has used Facebook to seek employment opportunities.  Ms. Callahan

26  has decades of customer service and sales experience in the telecommunications industry and has

27  retail sales experience.  Ms. Callahan has skills in a range of areas, including interpersonal

28

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

communication skills.  Upon information and belief, due to her skills and experience, Ms. Callahan would be qualified for a range of positions at T-Mobile, including but not limited to Account Care Expert and Customer Service Representative Trainer; Ms. Callahan would be qualified for a range of positions at Amazon, including but not limited to Customer Service Associate and Seller Support Associate.  Upon information and belief, T-Mobile and Amazon used age-restricted job advertisements published on Facebook's ad platform during the relevant period to advertise, recruit, solicit, and hire for some or all of these positions, including for positions in California and Ohio. Upon information and belief, Defendants' employment advertisements were intended to draw readers of the advertisements into their online career portals in which such positions and numerous other positions were advertised so that such readers would apply for the listed positions.

36.     Upon information and belief, Ms. Callahan has routinely been denied employment advertisements and recruitment that similarly situated workers have received in Ohio and throughout the nation, including employment ads and recruitment from T-Mobile and Amazon.  If Ms. Callahan had received such ads from Defendants, she would have clicked on those employment ads in order to learn more about those opportunities and would have pursued them.  Because Ms. Callahan did not receive such ads from Defendants, she did not learn about specific job opportunities at those employers and was thus deterred from applying for such job opportunities. Upon information and belief, Ms. Callahan was qualified to perform one or more job at each of the Defendants that was offered during the time period at issue in this case (including but not limited to January through December 2017).  Upon information and belief, Ms. Callahan was denied the opportunity to receive job advertisements from Amazon and T-Mobile, because of her age, including advertisements of Amazon and T-Mobile that advertised positions in California.

37.     Plaintiff Richard Haynie is a 61-year-old man who lives in Oakland, California.  Mr. Haynie has had a long career in video and sound production.  He has been employed since 2003 producing corporate content and previously performed freelance camera and audio work.  Mr. Haynie has been looking for other full-time work over the past few years, including opportunities available throughout California (including throughout this District) and Pennsylvania, where he has

family.  He is skilled at video editing, sound editing, camera work, writing, and directing.  Mr. Haynie regularly uses Facebook and has used Facebook to seek employment opportunities.  Upon information and belief, due to his skills and experience, Mr. Haynie would be qualified for a range of positions at T-Mobile, including but not limited to Technology Innovation Designer Videographer.  Upon information and belief, Mr. Haynie would be qualified for a range of positions at Amazon, including but not limited to A/V Producer and Video Producer and Editor.  Upon information and belief, Defendants' employment advertisements were intended to draw readers of the advertisements into their online career portals in which such positions and numerous other positions were advertised so that such readers would apply for the listed positions.

38.     Upon information and belief, Mr. Haynie has routinely been denied employment advertisements and recruitment that similarly situated workers have received in California and throughout the nation, including employment ads and recruitment from T-Mobile and Amazon.  If Mr. Haynie had received such ads from Defendants, he would have clicked on those employment ads in order to learn more about those opportunities and would have pursued them. Because Mr. Haynie did not receive such ads from Defendants, he did not learn about specific job opportunities at those employers and was thus deterred from applying for such job opportunities.  Upon information and belief, Mr. Haynie was qualified to perform one or more job at each of the Defendants that was offered during the time period at issue in this case (including but not limited to January through December 2017).  Upon information and belief, Mr. Haynie was denied the opportunity to receive job advertisements from Amazon and T-Mobile because of his age, including advertisements of Amazon and T-Mobile that advertised positions in California.

39.     T-Mobile US, Inc. is one of the largest wireless companies in the United States. According to T-Mobile's 2016 Annual 10-K report, "T-Mobile provides wireless communications services, including voice, messaging and data, to more than 71 million customers in the postpaid,

prepaid and wholesale markets."[4]  In 2016, T-Mobile earned $37.2 billion in revenues, and

employed approximately 50,000 full-time and part-time employees as of December 16, 2016.  *Id.*

The company calls itself the "Un-carrier" that is "Un-satisfied with the status quo" and "Un-afraid

to innovate."  *Id.*  T-Mobile operates various brands of its wireless communications services,

including T-Mobile and MetroPCS, through its owned and operated stores, third party distributors,

and websites.  *Id.*  T-Mobile nationally advertises employment opportunities at its stores and other

operations that are located throughout the nation, both for the T-Mobile and MetroPCS brands.  At

the time of the Original Complaint, T-Mobile advertised jobs in 42 states and the District of

Columbia.  Upon information and belief, T-Mobile has regularly used Facebook's ad platform to

send employment advertisements to prospective applicants for a range of positions in its T-Mobile

and MetroPCS divisions, including jobs in its retail stores and beyond; and in doing so, T-Mobile

has restricted the age range of the population that T-Mobile intended to receive its employment ads

to focus on younger workers and exclude older workers.

40.     Amazon.com, Inc., one of the largest online retailers in the world, is a Delaware

corporation with its headquarters in Seattle, Washington.  Amazon sells hundreds of millions of

products to American consumers and employed 341,400 full-time and part-time employees as of

December 31, 2016.[5]  In 2016, Amazon had $135.9 billion in revenues.  *Id.*  Amazon nationally

advertises employment opportunities at its locations throughout the United States.  Upon

information and belief, Amazon has regularly used Facebook's ad platform to send employment

advertisements to prospective applicants for a range of positions at Amazon throughout the United

---

[4] T-Mobile US, Inc. Form 10-K for Calendar Year 2016, U.S. Sec. & Exchange Commission,
https://www.sec.gov/Archives/edgar/data/1283699/000128369917000010/tmus12312016form10-
k.htm.

[5] Amazon.com, Inc. Form 10-K for Calendar Year 2016, U.S. Sec. & Exchange Commission,
https://www.sec.gov/Archives/edgar/data/1018724/00010187241 7000011/amzn-
20161231x10k.htm.

States; and in doing so Amazon has restricted the age range of the population that Amazon intended

to receive its employment ads to focus on younger workers and exclude older workers.

## FACTUAL ALLEGATIONS

**A.    Facebook's paid advertising platform has become a critical venue and mechanism for employers to recruit workers**

41.    Facebook is the most popular social media platform in the world.  According to Facebook's 2017 Annual Report, Facebook had 1.40 billion daily active users on average for December 2017, and 2.13 billion monthly active users as of December 31, 2017.[6]

42.    According to the same report, "Facebook enables people to connect, share, discover, and communicate with each other on mobile devices and personal computers.  There are a number of different ways to engage with people on Facebook, the most important of which is News Feed which displays an algorithmically-ranked series of stories and advertisements individualized for each person." *Id.*

43.    The News Feed is the page on Facebook where users see their friends' posts, as well as "Sponsored Ads" that advertisers pay Facebook to post on users' News Feeds.  Upon information and belief, about one out of every four or five posts that Facebook users see on their News Feeds are so-called "Sponsored Ads."  Facebook earns billions of dollars a year by placing "Sponsored Ads" on Facebook users' News Feeds on behalf of advertisers, including employers and employment agencies.  In fact, in 2017 Facebook earned approximately $40.6 billion and "generate[d] substantially all of [its] revenue from selling advertising placements to marketers." *Id.*

44.    From its inception, Facebook has been a powerful tool for advertisers because it allows advertisers to target very specific populations with their ads.  Recently, the power to "micro-target" various populations has grown exponentially, as Facebook collects an unfathomable amount of information about ordinary Americans who use Facebook by monitoring what people post, what

---

[6] Facebook Inc. Form 10K for Fiscal Year Ending December 31, 2017, U.S. Sec. & Exchange Commission, https://www.sec.gov/Archives/edgar/data/1326801/000132680118000009/fb-12312017x10k.htm.

they read, how long they view posts, and who and what they interact with on their phones, tablets, and computers.  Facebook gives its advertisers the power to use that information to determine which Facebook users will be included or excluded in the population that will receive their ads.

45.    In explaining how it earns nearly all of its revenues, Facebook states that its "ads let marketers reach people based on a variety of factors including age, gender, location, interests, and behaviors."[7]  For example, in the context of employment recruiting, Facebook identifies which Facebook users are looking for a new job or are interested in employment, and advertisers can then send ads to those individuals who are looking for work so that advertisers minimize the cost of reaching people who are interested in new jobs and maximize the number of people who respond to employment ads (*i.e.*, the higher the percentage of users who click on the ad, the better for the advertiser and Facebook).  In September 2017, Facebook's Chief Operating Officer Sheryl Sandberg explained that "[t]argeted advertising is how Facebook has helped millions of businesses grow, find customers *and hire people*.  Our systems match organizations with [Facebook users] who may be interested in their products or services."[8]

46.    In recent years, Facebook has emerged as one of the largest venues for employers to seek applicants for employment and for workers to find job opportunities.  A 2015 survey reported that 92 percent of employment recruiters used social media to recruit applicants for employment.[9]

47.    In addition, a 2016 study by the Society for Human Resource Management found that 66 percent of employers who recruit via social media employ Facebook to recruit applicants for

[7] Facebook Inc. Form 10K for Fiscal Year Ending December 31, 2016, U.S. Sec. & Exchange Commission, https://www.sec.gov/Archives/edgar/data/1326801/000132680117000007/fb-12312016x10k.htm.

[8] Facebook COO Sheryl Sandberg, Facebook (Sept. 20, 2017), https://www.facebook.com/sheryl/posts/10159255449515177 (emphasis added).

[9] Kimberlee Morrison, *Survey: 92% of Recruiters Use Social Media to Find High-Quality Candidates*, Adweek, (Sept. 22, 2015), http://www.adweek.com/socialtimes/survey-96-of-recruiters-use-social-media-to-find-high-quality-candidates/627040.

employment.[10]  The ability to recruit passive job candidates is the top reason that employers use social media to recruit applicants for employment.  And some employers even use social media as their primary source of recruiting.  *Id.* at 7, 11.  In other words, employers know that Facebook users may not be specifically using Facebook to find a job, but that Facebook is a particularly good venue for employers to target prospective employees with job advertisements when such prospective employees are using Facebook—because prospective employees must look at the employers' advertisements in order to scroll through their Facebook News Feeds and see their friends' posts.

48.     Employers not only sponsor ads on Facebook users' News Feeds to seek applicants for specific employment opportunities, but they also use Facebook as a main source of showcasing their brands to potential applicants.  Enhancing a company's brand increases the likelihood that a person will apply for employment opportunities with that company in the future.  The vast majority of large employers, including T-Mobile and Amazon, have "Careers" or "Jobs" pages on Facebook—such as "T-Mobile Careers" and "Amazon Fulfillment Jobs"—where they post information about a range of specific job opportunities at the company nationwide, including for job opportunities in California in the case of T-Mobile and Amazon, and highlight the positive qualities of the company's career opportunities.

49.     When employers, including T-Mobile and Amazon, send employment ads to Facebook users, they ordinarily link the ad to or direct the Facebook user to their "Careers" or company Facebook pages, in addition to a page on the company's website page that has information about a range of job opportunities throughout the company.  By doing so, the employer draws the attention of the prospective applicant to all available positions for which she or he could apply and encourages prospective employees to apply for such positions.

---

[10] SHRM Survey Findings: Using Social Media for Talent Acquisition—Recruitment and Screening 9, Soc'y Hum. Resource Mgmt. (Jan. 7, 2016), https://www.shrm.org/hr-today/trends-and-forecasting/research-and-surveys/Documents/SHRM-Social-Media-Recruiting-Screening-2015.pdf.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

50.     Before the internet and social media, the same sort of advertising and recruitment happened offline, when employers would send direct mail to prospective applicants, hand out flyers, or place newspaper ads that directed prospective applicants to call a phone number to speak with the company's recruiters or attend a job fair.  The only difference between the employment advertising on Facebook and what employers and employment agencies did before the advent of the internet is the medium—Facebook and online social media—but nothing in the law changes or diminishes the obligations of employers or employment agencies to advertise to, recruit, and hire workers in a non-discriminatory manner.

**B.**     **Facebook has eliminated the middlemen in employment recruiting, collecting information on the age of its users and giving employers like the Defendants the data and tools to exclude older workers**

51.     Before the development of the modern internet, if an employer wanted to recruit workers, it would likely hire an employment agency or marketing firm to analyze the relevant labor market; determine the content of ads to send to prospective applicants; decide the audience to be targeted by the ads; identify publications in which to place the ads; and contact and negotiate with newspapers, magazines, television stations, and radio stations to place and pay for the ads.

52.     The employment agency or marketing firm would help the employer to determine how placing ads in different types of publications or media, or delivering mail or flyers to the homes of residents in certain areas, would allow the employer to reach a certain population of individuals who would respond to the ads by contacting the employer and applying for employment.  In some cases, employment agencies or marketing firms would—in contravention of federal, state, and local civil rights laws—offer tools for employers to exclude members of various protected classes (including older workers) from receiving such employment advertising and recruiting, and the employment agency or marketing firm would execute such discriminatory targeting strategies on behalf of those employers.

53.     Upon information and belief, currently when employers want to recruit applicants for employment, Facebook performs nearly all of the necessary functions of an employment agency and marketing firm: Facebook helps the employer to create the ad; collects, develops and provides

databases of information on Facebook users to employers so that such employers can know which individuals are looking for employment, know various types of information about those applicants, such as their age and gender, and exclude certain groups of people from their ad campaigns; coordinates with the employer to develop the recruitment, marketing and/or advertising strategy to determine which people will and will not receive the ads; delivers the ads to prospective applicants; collects payments for these services from the employer; informs the employer of the performance of the ad campaign with numerous data analytics; and retains copies of the ads and data related to them.

54.     In addition, on Facebook's ad platform, Facebook directs users who receive employment ads directly to the employer or employment agency's Careers web site or other web site that is embedded in Facebook's system so that the user can learn more about the company's job opportunities and apply for available positions.  This is no different than 20 years ago when an employment agency or recruiter would send an ad to a worker (such as a flyer or a brochure) or speak with a worker, and then assist the worker to contact the employer to apply for an open position.  These acts involve procuring job opportunities for employees and procuring employees for employers or employment agencies.

55.     Twenty years ago, employers like the Defendants that want to exclude older workers from receiving their job ads would have had to go to great lengths—at a great cost—to determine the age of all potential applicants so that the employer could exclude older workers from its advertising and recruitment.  But today Facebook does exactly that before a single ad has been purchased or sent, upon information and belief.  As described below, Facebook's ad platform identifies the ages of Facebook users and, in turn, encourages and permits Defendants and other employers to exclude older workers from their employment advertising and recruitment campaigns based on their age.

56.     In short, Facebook is an active player in the labor market in which employers and employment agencies search for workers and advertise employment opportunities.  Facebook's services, ad platform, and tools are a central feature of Defendants' and other employers' ability to

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

selectively market, recruit, advertise, and brand employment opportunities in a discriminatory

manner that excludes older workers.

57.     Though Facebook makes it possible to limit which Facebook users will see an ad

based on age of the user (including employment ads), federal, state, and local law prohibit age

discrimination in advertising and recruiting for job opportunities.  Rather than promoting non-

discrimination in employment, Facebook's services, ad platform, and tools, as used by Defendants

and other employers, have perpetuated and facilitated age discrimination in employment

nationwide, and have greatly diminished the employment opportunities of older Americans, upon

information and belief.

**C.     Facebook tells employers which workers are looking for a job and requires
employers to select the age of the people who will receive paid employment
ads and recruiting so that employers like the Defendants can exclude older workers
from receiving their job advertisements**

58.     Any employer, employment agency, corporation, or human being who has a

Facebook page can create and purchase a paid ad that will be sent to other Facebook users within

minutes of Facebook receiving payment for the ad (in dollars or other currencies).

59.     The simplest way to create a Facebook ad takes only a few minutes, and involves

several basic steps:

(1) the advertiser selects the population of Facebook users who will receive the ad;

(2) the advertiser creates the image and text of the ad, and directs where the ad will

link to when it is clicked on by a Facebook user; and

(3) the advertiser purchases the ad, paying Facebook money to show a certain

number of impressions of the ad to Facebook users in the selected population.  If the

selected population is greater than the number of impressions purchased by the

advertiser, then only a portion of the selected population will see the ad, but every

person who is not in the selected population will not receive the ad.

60.     The focus of this case is the first step of the process in which the advertiser selects

the population of Facebook users who will be eligible to receive the ad.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

61.   Upon information and belief, for each ad that an advertiser purchases on Facebook and that Facebook, in turn, sends to Facebook users, there are three mandatory filters that the advertiser is required to select in setting the population who will be eligible to receive the ad: (1) location; (2) age; and (3) gender.  The advertiser must either keep the default setting (the entire United States, 18 to 65+, and male and female), or narrow the scope of the population (for example, male users who live in California and are ages 18 to 40).

62.   First, Facebook requires the advertiser to select the location of the Facebook users who will receive the ad.  The default setting is the entire United States, but upon information and belief, Facebook strongly encourages advertisers to narrow the geographic scope of their ads to make them more effective.

63.   Second, Facebook requires the advertiser to select the age of the Facebook users who will receive the ad.  Upon information and belief, Facebook knows the age of its users because Facebook requires users to identify their birthdates in their individual Facebook profiles when they join Facebook.[11]  The default age setting for ads is 18 to 65+, which means that anyone who is 18-years-old or older would receive the ad.  But Facebook strongly encourages advertisers to narrow the age range of the individuals who will receive their ads to make them more effective, upon information and belief.  Because the default age setting is 18 to 65+, any employer or employment agency that selects a narrower and younger age range (such as ages 18 to 40) is consciously and purposefully choosing to target younger prospective applicants and thereby excluding older applicants who will not receive the ad.

64.   Upon information and belief, Facebook does not stop an employer or employment agency from selecting a younger age range (such as ages 18 to 40) that discriminates against older workers in setting the population that will receive an employment ad via Facebook.  And as

---

[11] *About ad targeting*, Facebook Business, https://www.facebook.com/business/help/ 717368264947302?helpref=faq_content (last visited Dec. 20, 2017) ("Age" can be used to "Target ads to people within an age range" and "Facebook's age data is from self-reported data meaning that as people sign up to use our services they let us know how old they are.").

described below, upon information and belief, Defendants have used these age range filters to exclude older workers from ever receiving their job ads.

65.     Finally, Facebook requires the advertiser to select the gender of the Facebook users who will receive the ad.  The default setting is both male and female, but advertisers, including T-Mobile and Amazon, retain the ability to narrow the gender of the individuals who will receive their ads.

**D.     On Facebook, employers like Defendants can send ads solely to "Young and Hip" people and "Millennials"**

66.     Facebook provides advertisers additional ways to target their employment ads to younger workers, thus excluding older workers from receiving job ads and recruitment.

67.     In addition to the three mandatory categories that advertisers must select to create a Facebook ad (location, age, and gender), Facebook's Detailed Targeting feature allows advertisers to search for and use thousands of additional categories into which Facebook places its users in order to further limit the population of Facebook users who will receive ads.

68.     Facebook divides these additional categories into what it calls Demographics, Interests, and Behaviors.  For example, at the time the Original Complaint was filed, Facebook identified more than 16 million American Facebook users as having an "Interest" in "Job Hunting." In addition, in the "Demographics" category, Facebook has sub-categories of "Work-Industries" that Facebook users fall into, such as "Sales," "Education and Libraries," "Health Care and Medical Services," "Legal Services," "Transportation and Moving," "Food and Restaurants," "Production," and "Construction and Extraction."  Facebook identifies "Job Title" categories, such as Facebook users who list their job title as "Factory Worker," "Maintenance Worker," or "Warehouse Worker." By putting tens of millions of American Facebook users into these categories, Facebook makes it easier for employers and employment agencies to identify prospective applicants who might be interested in the employment opportunities they are advertising on Facebook and looking to fill.

69.     Many of these additional categories are unrelated to employment or jobs.  For example, one can target an ad to innocuous subjects like the millions of American Facebook users

who are interested in the San Francisco Giants or golden retrievers, but one can also target ads to darker subjects like the millions of American Facebook users who are interested in the Confederate States of America.[12]

70.    Facebook's additional categories also include groups of Facebook users that are directly related to or highly correlated with age.  For example, Facebook has provided advertisers the ability to send employment ads to individuals who fall into the following categories related to a younger age group or categories that ordinarily would be a proxy for younger workers:

- Young & hip – a group of millions of people "whose activities strongly suggest they are young and hip" (according to Facebook), a category that was available at the time of the Complaint; and

- Millennials – a group of millions of people "who have expressed an interest in or like pages related to Millennials" (according to Facebook), a category that is available at the time of the filing of this amended complaint.

71.    Upon information and belief, like the age range category that all advertisers must select to send an ad, at this time it is still possible for employers to target their employment ads and recruiting solely to Facebook users who fall into these "Additional Categories" that primarily include people under the age of 40 and primarily exclude people who are 40 and over.

72.    In the context of employment advertising and recruiting, Facebook offers a feature that is legally indistinguishable from word-of-mouth hiring, which has long been considered a discriminatory and unlawful employment practice.

73.    Through Facebook's "Lookalike Audiences" feature, employers and employment agencies provide a list of their existing workers to Facebook, and Facebook then creates a list of Facebook users who are demographically similar to those existing workers.  Then, the employer or employment agency uses the new "Lookalike Audience" list created by Facebook as the population

---

[12] Noam Scheiber, *Facebook's Ad-Targeting Problem, Captured in a Literal Shade of Gray*, N.Y. Times (Sept. 28, 2017), https://www.nytimes.com/2017/09/28/technology/facebook-ads.html.

to receive its employment ads.  As Facebook explains, "[a] Lookalike Audience is a way to reach new people who are likely to be interested in your business because they're similar to your best existing customers."[13]  Facebook uses "traits" such as "location, age, gender and interests" to determine which Facebook users are similar to an advertiser's existing customers or workers.[14]  Facebook, not the advertiser, determines which prospective applicants are similar to the advertiser's existing customers or workers and will thus be targeted to receive an ad in a Lookalike Audience.  After the advertiser uploads its list of existing customers, Facebook will "hash [its] data, upload it and create [the] audience" that will be used for the Lookalike Audience ad.[15]

74.     Upon information and belief, using Facebook's Lookalike Audience feature in the context of employment advertising involves disparate treatment, because it determines which workers receive job advertising, recruitment, and hiring based in part on their age, thereby excluding them from the population that will receive the employment advertisement because of their age.

**E.     Facebook encourages advertisers, including Defendants, to use age to narrow the target audience of their advertisements**

75.     Facebook is clear about how its ad platform is supposed to work for companies that use it to advertise.  Facebook directs and encourages its advertisers (including employers and employment agencies) to use Facebook's ad platform to target their ads (including employment ads) to a narrow audience, including targeting audiences based on age.

76.     On the main Facebook Business page in which Facebook instructs advertisers on how to "[c]hoose your audience," Facebook emphasizes how its services can be used to identify or

---

[13] *About Lookalike Audiences*, Facebook Business, https://www.facebook.com/business/help /164749007013531 (last visited Dec. 20, 2017).

[14] *Targeting tips to reach the right people*, Facebook Business, https://www.facebook.com/business/a/facebook-ads-targeting-tips (last visited Dec. 20, 2017).

[15] *Create a Custom Audience from a customer file*, Facebook Business, https://www.facebook.com/business/help/170456843145568 (last visited Dec. 20, 2017).

target people who fall into various demographics groups.[16]  The page states that "[w]ith our powerful audience selection tools, you can target people who are right for your business.  Using what you know about your customers—like demographics, interests and behaviors—you can connect with people similar to them."  *Id.*  Facebook describes how "[t]here are three options for choosing your audience on Facebook."  *Id.*  The first is the "Core Audiences" option described above, where the advertiser can "[s]elect your audience manually *based on characteristics, like age and location*."  *Id.* (emphasis added).  Another option is "Lookalike Audiences" that "[u]se your customer information to find people similar to them on Facebook" (including age, as noted above).  *Id.*

77.      Facebook's main page on ad targeting goes on to describe how its "Core Audiences targeting options . . . allow you to reach people based on their demographics, location, interests and behaviors."  *Id.*  Immediately below, Facebook describes the "Demographics" category in which advertisers "[c]hoose people based on traits like *age*, gender, relationship status, education, workplace, job titles and more."  *Id.* (emphasis added).  In other words, *age is the first category* that Facebook says should be used to target "the people you want to reach" in an ad campaign.

78.      In a tutorial on how to target Facebook ads to "[c]hoose the right audience," Facebook encourages advertisers to "refine your ad's target audience based on content people have shared about themselves in their Facebook profiles, such as age, gender, relationship status, education and type of work they do."[17]  In the screenshot next to this text, a box shows an ad targeting selection to send the ad to people who are between ages 18 to 34.  *Id.*  At the bottom of the page, Facebook describes how a "narrow" reach of an ad campaign "could help you hone in on specific customers who matter most to your business," and again shows an ad targeting selection that will send the ad to people who are between ages 18 to 34.  *Id.*

---

[16] *Choose your audience*, Facebook Business, https://www.facebook.com/business/products/ads/ad-targeting (last visited Dec. 20, 2017).

[17] *Choose the Right Audience*, Facebook Business, https://www.facebook.com/business/a/targeting-audiences-advanced (last visited Dec. 20, 2017).

79.     While Facebook has a FAQ page about why advertisers "can't target certain age groups with ads," that FAQ answer describes how advertisers should limit their age range if they are "promoting products with age restrictions in different locations," but fails to warn advertisers that they should not narrow the age range when sending employment-related ads because it would violate federal, state, and local civil rights laws.[18]  To the contrary, Facebook's Help Desk has advised users that "[u]sing this age targeting will *prevent* your ads from being delivered to people outside of your age range."[19]

80.     Furthermore, to encourage its advertisers, including employers and employment agencies, to exclude Facebook users from receiving advertisements, Facebook provides detailed analytical ad performance data to advertisers on how their ad campaigns are performing, including on how the ad is performing among Facebook users within certain age ranges.  By providing this data on an ongoing basis, Facebook encourages advertisers to limit the age range of their advertisements so that their advertisements will focus on the highest performing age ranges, even if that means completely excluding users who are outside the highest performing age ranges from receiving the ads.

81.     Since 2016, Facebook's advertising platform has come under public and legal scrutiny for discriminating in employment advertising, including a pending class action lawsuit that challenges Facebook's practice of tagging each Facebook user with a racial identity or perceived racial identity (determined by Facebook, not by its users) and allowing employers to exclude people of color from receiving employment ads.  *See* First Amended Complaint, ECF No. 28, *Onuoha v. Facebook, Inc.*, No. 16-cv-06440-EJD (N.D. Cal.).

---

[18] *I can't target certain age groups with ads*, Facebook Business, https://www.facebook.com/business/help/103928676365132 (last visited Dec. 20, 2017).

[19] *I want to impose age restrictions on my ads on instagram*, Facebook Business, https://www.facebook.com/business/help/community/question/?id=10154466593016819 (last visited Dec. 20, 2017).

82.     Upon information and belief, in addition to encouraging and allowing employers and employment agencies to restrict which Facebook users will receive job ads based on their age, Facebook determines within a population selected by an employer or employment agency to receive a job advertisement which Facebook users will actually receive the advertisement, and in making this decision about which users will receive the job ads Facebook considers the age of its users; and often, this means that a disproportionate number of job ads are sent to younger workers instead of older workers.  Upon information and belief, when advertisers like Defendants rely upon Facebook's algorithm that disproportionately directs ads to younger workers at the exclusion of older workers because of the age of the older workers, to send their job advertisements and recruit employees, they are engaging in disparate treatment and intentional discrimination.  This phenomenon compounds and exacerbates the age discrimination that employers like Defendants engage in when they manually select a younger population to send their job ads via Facebook's ad platform.  When Defendants have selected a ceiling on the age of people who will receive their job advertisements, older workers have been automatically excluded from receiving the advertisement, they had no chance of receiving such ads, and the sole reason why older workers—including Plaintiffs Bradley, Anscombe, Callahan, and Haynie—have been completely excluded from receiving the job advertisements at issue is Defendants' intentional decisions to prevent older workers from receiving their job advertisements.  Even older workers who have not been automatically excluded from seeing the advertisements because their age does not exceed the ceiling selected by the employer or employment agency will be less likely to receive the advertisements due to Facebook's algorithm employed by Defendants.

83.     Upon information and belief, when advertisers like Defendants rely on Facebook's ad delivery algorithm to determine which users will actually receive job advertisements via its ad platform, the advertisers like Defendants know or should know that the ad delivery algorithm on which they are relying will use the age of workers to exclude them from receiving their job ads (they surely were aware of this problem after Plaintiffs made this very allegation in the First

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

Amended Complaint in this case).[20]  Thus, advertisers like Defendants are fully responsible for intentionally using a discriminatory recruitment tool that excludes older workers.  By relying on the ad delivery algorithm to determine which prospective workers will receive their ads, as well as by engaging in the other acts alleged in this Complaint, Defendants are not using Facebook as an agent or acting as the principal of Facebook.

**F.     In job advertisements, employers like Defendants state that they want to reach workers within younger age ranges, communicating that the advertiser has a preference to target, receive applications from, interview, and hire younger workers over older workers**

84.     When Facebook places an ad on a person's Facebook page on behalf of an employer, Facebook and the employer who purchased the ad give the Facebook user an opportunity to see why he or she has been selected to see that particular ad and they inform the user why the employer or employment agency selected that user and other users to receive the advertisement.

85.     Under the so-called "Why am I seeing this" function, Facebook and the advertiser tell the users, for example, that they are seeing the ad because "T-Mobile wants to reach **people ages 18 to 38 who live or were recently in the United States**."  *Supra* ¶ 2 (emphasis in original).

86.     In the T-Mobile example, the ad is communicating that T-Mobile is interested in recruiting and hiring workers who are ages 18 to 38 throughout the United States, and thus T-Mobile is less interested in or not interested in recruiting or hiring workers who are older than 38-years-old.  The ad also informs the public that the employer sending the ad has a preference for younger workers over older workers or does not want to recruit or hire people older than the relevant age ceiling.  These ads are calculated and intended to encourage younger workers to apply for the relevant employment opportunities.  These ads are calculated and intended to discourage

---

[20] Indeed, in Facebook's Help Center that educates advertisers and consumers about advertising on Facebook, Facebook answered the question "How does Facebook decide which ads to show me?" by stating that "We want the ads you see on Facebook to be as interesting and useful to you as possible.  These are examples of things we use to decide which ads to show you: . . . information about you from your Facebook account (example: for age, your gender, your location, the devices you use to access Facebook)."  *How does Facebook decide which ads to show me?*, Facebook Help Center, https://www.facebook.com/help/562973647153813 (last visited May 8, 2019).

older workers from applying for the relevant employment opportunities.  In fact, research shows that people who click on the "Why am I seeing this" portion of paid advertisements are more likely to engage with an advertisement when they are told that they are seeing the ad because of information that they have provided to Facebook, such as a person's age.  Moreover, these ads have the same effect of encouraging younger workers and discouraging older workers from pursuing these employment opportunities.  Furthermore, any and all selections for the positions advertised are tainted by discriminatory age animus.

**G.**  **Defendants have excluded millions of older workers from receiving job ads when sending employment ads on Facebook**

87.   Upon information and belief, Defendants have routinely used Facebook's ad platform to exclude older workers from receiving employment ads, primarily by selecting an age range for the ad population that excludes older workers.

88.   Upon information and belief, by using Facebook's ad platform to exclude older workers, employers like the Defendants work hand-in-hand with Facebook to exclude a large portion of the labor force from hearing about employment opportunities that are routinely advertised to younger workers.

89.   Defendants' pattern or practice of age discrimination in employment advertising, recruiting, and hiring—excluding older workers from receiving employment ads on Facebook and other comparable venues and/or relying on Facebook's age-biased ad delivery algorithm (hereinafter "pattern or practice of age discrimination")—has occurred and/or is occurring throughout the United States.

90.   The named Defendants in this action have purchased and sent employment advertisements via Facebook that exclude older workers from receiving those advertisements.  In these employment ads:

- **Amazon.com, Inc.**, an e-commerce giant, restricted employment ads to people "ages 18-54," "ages 18 to 50," "ages 28 to 55," and "ages 22 to 40."

- **T-Mobile**, one of the largest wireless companies in the nation, restricted

employment ads to people "ages 18 to 38" and "ages 18 to 54."

91.     Exemplars of the employment advertisements that Defendants purchased in 2017 and sent to Facebook users are set forth in **Exhibit A** to this Fourth Amended Complaint.

92.     The following are exemplars of Amazon employment advertisements/notices:

 

93.     The exemplars in Exhibit A are merely a small number of the numerous age-restricted job advertisements that Defendants each sent in the past years throughout the nation, including to Facebook users in this District and elsewhere in California.

94.     Upon information and belief, prior to December 2017, job advertising campaigns that T-Mobile and Amazon were running and sending via Facebook were age-restricted and set an upper age limit on which Facebook users would receive the job advertisements that excluded older workers.

95.     Upon information and belief, T-Mobile and Amazon each sent age-restricted job advertisements and notices to Facebook users who resided, were located, and/or were searching for employment throughout the United States, including in this District and elsewhere in California, the District of Columbia, Ohio, and Maryland.

96.     Upon information and belief, Defendants each used Facebook's ad platform to exclude persons above certain ages from receiving their job advertisements or notices that were sent

throughout the United States regarding employment throughout the United States, including in this District and elsewhere in California, and knew and/or should have known that by selecting such age ranges in their advertisements that Facebook would include as a portion of the job advertisements or notices a statement that the employer "wants to reach people" between certain "ages."  As a result, Defendants' job advertisements on Facebook excluded older workers from receiving the job advertisements or notices and stated in the content of the advertisements that these employers "want[] to reach people" between certain "ages."

97.     Upon information and belief, the age-restricted advertisements that T-Mobile and Amazon purchased, directed, approved of, authorized, and sent advertised jobs and provided information to Facebook users who received the ads about jobs that were located throughout the states where these employers employ workers, including jobs in this District and elsewhere in California, the District of Columbia, and Ohio.  Accordingly, upon information and belief, all of the job advertisements that Defendants sent to Facebook users directed the Facebook users to information about their jobs in this District and elsewhere in California and all of the other states in which these employers employ employees.

98.     T-Mobile and Amazon purchased, developed, created, and sent their age-restricted job advertisements in and from Facebook's ad platform and business that is located in California.

99.     Upon information and belief, at least prior to the filing of this Complaint, T-Mobile and Amazon expressly sent job advertisements via Facebook that  excluded older workers from receiving the ads, and thus in this critical medium of Facebook job advertising and recruiting Defendants only targeted younger workers without similarly targeting older workers to receive their job advertisements, and nor did they use other forms of social media to disproportionately target older workers with job advertisements to offset the harm of excluding older workers from receiving their job advertisements via Facebook.

100.     Defendants' pattern or practice challenged in this case has harmed older workers who have been systematically excluded from hearing about job opportunities throughout the United States, upon information and belief, and CWA's members have been harmed by these practices.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

101.    In addition, since the filing of the original Complaint and on an ongoing basis, Defendants have continued and are continuing to rely upon Facebook's age-biased delivery algorithm to deliver their job ads on Facebook, thereby excluding Plaintiffs, other workers, and CWA members from receiving their job ads, upon information and belief.

102.    The pattern or practice challenged in this case has caused massive amounts of harm to older workers who have been systematically excluded from hearing about job opportunities throughout the United States, upon information and belief.  Like the worker Plaintiffs in this case, millions of Americans who are unemployed or looking for a new job with better wages and benefits routinely receive information about employment opportunities via employment ads on Facebook and other forms of social media.  Whereas 20 or 30 year ago workers may have received information about job opportunities in local or regional newspapers or through direct mail, today the internet (and especially social media) is the primary way in which workers search for and obtain information about employment opportunities.

103.    Defendants routinely send paid Facebook ads to encourage prospective applicants to apply for open positions and/or to explore their "Careers" or "Jobs" pages on Facebook to learn about a range of job opportunities that are available.  Often, the positions that are being advertised and recruited for are temporary or seasonal positions that will be filled immediately, which means that receiving and responding to the specific advertisement on Facebook is critical to pursuing and obtaining the position of employment and not receiving the specific advertisement will mean that a person will not hear about, pursue, or obtain the position of employment.

104.    Defendants send these ads and conduct this recruitment via Facebook because they know that a significant portion of prospective applicants will only learn about the relevant job opportunities – and will only apply – if they receive a paid ad that is directed to their Facebook news feed.

105.    In fact, upon information and belief, Defendants collect information about how individuals come to apply for jobs and thus can readily identify how many and what portion of applicants apply for positions of employment due to seeing a Facebook ad.  In many cases, the

34

number and portion of applicants who apply for positions solely or primarily due to seeing a Facebook ad is significant, such that excluding older workers from receiving job ads may result in thousands of fewer applications at a single company in a year and/or result in hundreds to thousands of fewer older workers hired in a single year.

106.   Excluding older workers from receiving employment ads makes it far less likely that older prospective applicants will hear about employment opportunities and, in turn, apply for or secure jobs that are open.  When older workers do not receive an ad, they will not likely know about the specific employment opportunities being offered.  Or, if there is a deadline to apply for a position, they will be less likely to meet that deadline than younger workers.

107.   Due to this pattern or practice of age discrimination in advertising and recruiting, upon information and belief, the number and proportion of older workers in Defendants' applicant pools is artificially depressed.  In turn, Defendants are less likely to hire older workers than they would have otherwise been if they had advertised to and recruited prospective applicants without regard to age—even if they process workers' applications on an equal basis.

108.   Upon information and belief, members of the proposed Plaintiff Class have all suffered these harms by regularly being denied employment ads and recruiting by Defendants, which, in turn, deterred them from applying and being hired for various positions at T-Mobile and Amazon.

109.   As noted above, upon information and belief, all of the named Plaintiffs have regularly used Facebook to seek employment opportunities, have skills in a range of areas that would qualify them for a range of positions at T-Mobile and Amazon; have routinely been denied Defendants' employment advertisements and recruitment that similarly situated workers have received throughout the nation; and if they had received such ads from each Defendant, they would have clicked on those employment ads in order to learn more about those opportunities and they would have pursued them.  Because these named Plaintiffs did not receive such ads from Defendants, they did not learn about specific job opportunities at those employers and were thus deterred from applying for such job opportunities and prevented from being hired for these

positions.  Upon information and belief, the named Plaintiffs were qualified to perform one or more job at each Defendants that was offered during the time period at issue in this case (including but not limited to January through December 2017).

110.    The magnitude of the harm of this pattern or practice of discrimination on the proposed Plaintiff Class Members is great, because older workers are a large and growing portion of the American labor force.  It is long past the time when workers retired at age 50 or 55 and left the labor force.  Today, older workers are a substantial portion of the national labor force in the United States.  And the labor force participation of older workers has grown much faster in recent years than the labor force participation of younger workers.

111.    According to the Bureau of Labor Statistics ("BLS"), in 2016 there were 86.1 million full time workers between the ages of 25 and 54, and 26.9 million full-time workers who were at least 55 years old.[21]  For part-time workers, older workers make up an even greater share of the employed labor force: in 2016, there were 11.8 million part-time workers between the ages of 25 and 54, and 7.5 million part-time workers who were at least 55 years old.  *Id.*

112.    In addition, the share of older workers in the American labor force is increasing every year.  As BLS recently reported in May of 2017, "about 40 percent of people ages 55 and older were working or actively looking for work in 2014.  That number, known as a labor force participation rate, is expected to increase fastest for the oldest segments of the population—most notably, people ages 65 to 74 and 75 and older—through 2024.  In contrast, participation rates for most other age groups in the labor force aren't projected to change much over the 2014–24 decade."[22]  In addition, "[b]etween 1977 and 2007, employment of workers 65 and over increased

---

[21] *Labor Force Statistics from the Current Population Survey: Employed and unemployed full- and part-time workers by age, sex, race, and Hispanic or Latino ethnicity*, Bureau of Lab. Stat., https://www.bls.gov/cps/cpsaat08.htm.

[22] Mitra Toossi & Elka Torpey, *Older workers: Labor force trends and career options*, Bureau of Lab. Stat., https://www.bls.gov/careeroutlook/2017/article/older-workers.htm.

101 percent, compared to a much smaller increase of 59 percent for total employment (16 and over).  The number of employed men 65 and over rose 75 percent, but employment of women 65 and older increased by nearly twice as much, climbing 147 percent."[23]

113.    CWA challenges this pattern or practice of age discrimination on behalf of its own 160,000-plus members who are 40 years old or greater.

114.    As noted above, CWA is an international labor union representing over 700,000 workers in the telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, healthcare, and other industries.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  An important part of protecting the rights of workers and CWA's members is ensuring that all workers are treated fairly and equally in the workplace, regardless of their age, race or color, gender, national origin, disability, sexual orientation, military status or service, and other protected categories recognized by federal, state, and local law.  CWA and its national, regional, and local leaders strive to ensure that the civil rights of workers are respected in the workplaces where they represent workers.

115.    CWA's 700,000-plus members live and work throughout the United States, and search for job opportunities throughout the United States.  In California alone, CWA has approximately 51,500 members.  Over 160,000 of CWA's members are over age 40 and are protected by federal, state, and local laws that prohibit age discrimination in employment, including in advertising, recruiting, and hiring.  CWA's membership is one of the most diverse in the labor movement, particularly with respect to the variety of industries and positions in which its members work and the industries and positions in which their members seek employment on a regular basis.  CWA's members who are 40-years-old or greater and have used Facebook to seek employment opportunities have been subjected to and harmed by the unlawful discriminatory practices described in this Complaint, and upon information and belief these CWA members are located throughout the

[23] *Older workers: Are there more older people in the workplace?*, Bureau of Lab. Stat. (July 2008), https://www.bls.gov/spotlight/2008/older_workers/.

United States, including in California.  CWA seeks relief in this action on behalf of all of these CWA members who have been impacted nationwide.  CWA and its members have long advocated for civil rights and equality in the workplace.  CWA and its members all have an interest in seeing that employers do not discriminate based on age, gender, race, and other protected statuses, regardless of the specific age, gender, race, or other characteristics of the specific members. CWA's members all have an interest in seeing greater diversity in their workplaces, as discrimination and the denial of equal opportunity deprives them of an integrated working environment and makes employers less efficient.

116.    CWA has associational standing to bring this suit on behalf of its members because it is a membership organization; many of its members would have standing to sue T-Mobile and Amazon under the age discrimination laws under which Plaintiffs assert claims in this action; the interests CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA.  *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333 (1977).

117.    Upon information and belief, thousands of older CWA members have been harmed by being excluded from advertising and recruiting by the Defendants in this action, including Plaintiffs Bradley, Anscombe, and Callahan.  CWA members, who are geographically located in this District and elsewhere in California, Ohio, the District of Columbia, and throughout the nation, would have received far more job advertisements from Defendants had Defendants not excluded these CWA members from receiving their job advertisements and recruiting.  The exclusion of older workers from new job opportunities makes it harder for them to find jobs when they are unemployed or to find better jobs when they are employed.  As a result, older workers experience longer periods of unemployment and receive lower wages and benefits.  CWA Members Bradley, Anscombe, and Callahan have all experienced longer periods of employment because they have not received job advertisements from Defendants because of their respective ages.  In this action, CWA seeks an injunction to stop Defendants from engaging in age-restricted advertising and recruiting on Facebook and any other digital platform in order to ensure that CWA's members can receive equal

1  opportunity in searching for and applying for jobs and that they will benefit from working in more

2  diverse workplaces when they obtain employment.

3       118.    The practice of excluding older workers from receiving job advertisements via

4  Facebook involves and causes the harm of segregating and classifying applicants and employees

5  based on their age; discriminating against persons because of their age and age-based stereotypes,

6  including the stereotype that older workers are less desirable, productive, efficient, or employable;

7  steering away older applicants from applying for positions for which they are qualified; and

8  denying information to older workers who are entitled to receive information about job

9  opportunities in a non-discriminatory manner.  All of the Plaintiff Class Members, including

10  Plaintiffs Bradley, Anscombe, Callahan, Haynie, have been harmed in all of these ways by

11  Defendants.

12       119.    Defendants' continued reliance on the age-biased ad delivery algorithm, is a

13  continuing violation, and Facebook continues to offer Defendants and all employers tools to

14  exclude older workers from receiving their job advertisements.

15  **CLASS ACTION ALLEGATIONS**

16       120.    Plaintiff Haynie seeks to certify a Plaintiff Class of older workers who reside in

17  California and were excluded from receiving employment ads by T-Mobile and Amazon.  Plaintiff

18  will seek to certify the Plaintiff Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of

19  Civil Procedure for both the purposes of injunctive and monetary relief.  In the alternative, Plaintiff

20  will seek to certify the Plaintiff Class pursuant to Rules 23(a), (b)(2), and (c)(4), or merely under

21  Rules 23(a) and (b)(2).

22  **Rule 23(a)**

23       121.    **Plaintiff Class Definition.**  Plaintiff Haynie brings each claim set forth herein

24  pursuant to Rules 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure on

25  behalf of the following persons:

26      All persons who from the earliest date actionable under the limitations applicable to
the given claim until the date of judgment in this action (1) were 40 years old or

27  older (2) used Facebook during a time in which they were searching for employment

39

and resided in California, and (3) were excluded from being eligible to receive an employment-related advertisement or notice because one or more Defendants placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement or notice.

The limitations period for each claim is the full statute of limitations period for each such claim under California law.

122.    Not included in the Class are the following individuals and/or entities: Facebook's officers and directors and all judges assigned to hear any aspect of this litigation, as well as their staffs and immediate family members.

123.    Plaintiff will only seek to certify a Plaintiff Class for the purpose of asserting California state law claims against Defendants.

124.    Plaintiff may seek to modify the proposed Plaintiff Class as the case proceeds, including to add subclasses based on the industries or interests of the employees and/or add additional Class Representatives who would represent such subclasses.

125.    **Numerosity.**  The Plaintiff Class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known.  Upon information and belief, the class consists of hundreds of thousands to millions of Facebook users who are at least 40 years old, and those users are geographically dispersed throughout California.  However, the number of individuals who may seek individual monetary or equitable relief may be far smaller, such as thousands of individuals.

126.    **Commonality.**  There are numerous questions of law or fact that are common to the Class Members.  Upon information and belief, the proposed Plaintiff Class Members were subjected to and injured by the same uniform practice in California in which Defendants used Facebook's uniform ad platform to exclude older workers from receiving employment advertisements and recruiting; and each Defendant engaged in the same practice that Plaintiffs and the Plaintiff Class challenge, which caused Plaintiffs and Plaintiff Class Members to experience the same type of harm, because they were excluded from the population of Facebook users who were eligible to receive employment-related Facebook ads and thus were deprived important information

about job opportunities, including job opportunities that were advertised for positions in this District and elsewhere in California.  Each Defendant used Facebook's ad platform to place an age ceiling on which Facebook users would see their job advertisements and requested that Facebook not send the advertisement to anyone above the relevant age ceiling.  Each Defendant consequently excluded older workers from receiving their job advertisements.  And each Defendant made the same exact statement in its job advertisements on Facebook that it wanted to reach people between a certain age range, communicating the same message regarding its preference, discrimination, or limitation based on age.  And each Defendant have relied upon Facebook's age-biased ad delivery algorithm to publish or cause to publish their advertisements on Facebook.

127.   The questions of law or fact that are common to the class members include:

(a)   Did Defendants' rely upon an ad platform in which they can limit which Facebook users will receive employment-related advertisements based on their age?

(b)   Did Defendants purchase and send job ads via Facebook's uniform ad platform that excluded older workers, including members of the Plaintiff Class, from receiving employment-related ads on Facebook?

(c)   Were members of the Plaintiff Class denied the opportunity to receive employment-related advertisements that were purchased and sent by Defendants because the Defendants placed an upper limit on the age of the Facebook users who were eligible to receive the advertisements?

(d)   Did Defendants, in excluding older workers from receiving employment-related advertisements, violate California state laws that prohibit age discrimination in employment advertising, recruiting, and hiring, including because (1) the ads challenged in this action indicate a preference or discrimination based on age, and (2) the challenged practice constitutes intentional discrimination in advertising, recruiting, and hiring?

(e)   Whether the pattern or practice challenged in this action is a continuing violation.

(f)   Whether and what types of injunctive and/or declaratory relief should be ordered

41

with respect to the past and ongoing pattern or practice of Defendants, including whether the Court should prohibit Defendants from engaging in age-based exclusionary advertising on all digital platforms on which Defendants advertise?

(g)     Whether and what types and amounts of damages should be awarded to Plaintiff and the members of the proposed Plaintiff Class.

128.    **Typicality.**  The claims of the Named Plaintiff are typical of the claims of the Plaintiff Class they seek to represent.  The claims of the Named Plaintiff arise from the same pattern or practice and rely upon the same legal theories and factual allegations that the challenged pattern or practice violates a variety of state civil rights statutes.

129.    **Adequacy.**  The Named Plaintiff will adequately represent the members of the Class, does not have any conflicts with the other Class Members, and is represented by experienced counsel who have substantial experience in employment discrimination and class action litigation, and who will vigorously prosecute the action on behalf of the Class.

**Rule 23(b)(3)**

130.    This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

131.    The questions of law and fact common to the members of the Plaintiff Class predominate over questions affecting individual class members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

132.    By resolving the common issues described above in a single class proceeding, each member of the proposed Plaintiff Class will receive a determination of whether Defendants violated California age discrimination laws by excluding the Plaintiff Class Members from employment ads in the same uniform manner.

133.    Members of the Class do not have a significant interest in individually controlling the prosecution of separate actions.  Although the relative damages that the Plaintiff Class Members have suffered are not *de minimis*, their damages are modest compared to the expense and burden of individual prosecution of this litigation.  In fact, because T-Mobile and Amazon do not disclose to

42

individuals which employment ads they have been excluded from receiving, many Plaintiff Class Members will have no reasonable likelihood of obtaining such information and asserting their claims unless this action proceeds as a class action.

134.    Other than this action and a charge against Facebook that some of the Plaintiffs in this litigation have filed, no pending litigation concerning age discrimination in advertising and recruiting via Facebook ads has been commenced by any member of the Plaintiff Class.

135.    This is not only an appropriate forum for these claims because jurisdiction and venue are proper, but it is the most appropriate forum because all of the purchasing, creating, and sending of the unlawful employment advertisements took place in this District via Facebook's operations and ad platform, because Defendants published age-restricted jobs ads to persons in this District and elsewhere in California, and because those age-restricted job ads are located in this District in the case of T-Mobile and Amazon..  Facebook has its headquarters and a substantial portion of its operations in this District.  Moreover, prosecuting this case as a single class action against Defendants, who are properly joined in this action, will ensure that there are not inconsistent judgments and that a single injunction and rule will apply to two large publicly-traded companies, T-Mobile and Amazon, that engaged in the challenged practice and continue to advertise jobs on Facebook and other digital platforms..

136.    Concentration of the litigation in this forum is desirable, as this action challenges company-wide practices, and it will benefit the Plaintiff Class Members and Defendants to have the Class Members' claims and defenses adjudicated in a single proceeding.

**Rule 23(b)(2)**

137.    This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Upon information and belief, T-Mobile and Amazon have violated age discrimination laws in the same manner as to all members of the Plaintiff Class, and have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff Haynie and the Proposed Class he seeks to represent.

43

138.     Upon information and belief, T-Mobile and Amazon expressly excluded older workers from receiving employment advertisements sent via Facebook, and continue to use Facebook's ad platform in a manner that excludes older workers from receiving their job ads on an equal basis as younger workers.  Plaintiffs CWA, Haynie, and the Plaintiff Class seek a declaration that the age discrimination challenged in this action is unlawful and an injunction preventing Defendants from sending such discriminatory ads in the future on Facebook and all other digital platforms that Defendants use to advertise, recruit, and hire employees.

**Rule 23(c)(4)**

139.     Pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action to adjudicate particular issues that are appropriate to adjudicate with respect to T-Mobile and Amazon, including but not limited to whether the pattern or practice that they have all, upon information and belief, engaged in—excluding older workers from receiving employment advertisements and recruiting via Facebook's ad platform, and relying on an age-biased ad delivery algorithm—violates various civil rights laws that prohibit discrimination in employment advertising, recruiting, and hiring, and whether such unlawful practices should be enjoined to prevent continuing and additional harm to older workers impacted by this practice.

## COLLECTIVE ACTION ALLEGATIONS

140.     Plaintiffs Bradley, Anscombe, Callahan, and Haynie bring this collective action pursuant to the ADEA, 29 U.S.C. § 216(b), 626(b), seeking liability-phase injunctive and declaratory relief, monetary relief, and other make-whole relief on behalf of a collective of all members of the proposed Plaintiff Class ("Plaintiff Collective"):

All persons in in the United States who from the earliest date actionable under the limitations applicable to the given claim until the date of judgment in this action (1) were 40 years old or older (2) used Facebook during a time in which they were searching for employment, and (3) were excluded from being eligible to receive an employment-related advertisement or notice because one or more of the Defendants placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement or notice.

141.     Plaintiffs and other potential members of the collective are similarly situated in that

they were all subjected to the same discriminatory publishing, advertising, recruiting, and hiring practices by Defendants that had the purpose and effect of denying them equal opportunity in job advertising, recruitment, and hiring because of their age.

142.   There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

143.   As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiffs and the collective.  The pattern, practice, and/or policy includes, but is not limited to:

   (a)   Publishing or causing to be published employment advertisements or notices that indicate a limitation, preference, or discrimination based on age; and

   (b)   Willfully utilizing a system for advertising, recruiting, and hiring employees that classifies and segregates applicants based on age, that excludes applicants ages 40 and over from receiving advertising, recruiting, and hiring opportunities, and that discriminates based on age.

Defendants maintained and implemented these policies or practices with the purpose and effect of denying advertising, recruiting, and hiring opportunities to Plaintiffs and members of the collective because of their age, and discouraging and deterring members of the collective from seeking job opportunities at the Defendants.  These policies or practices cannot be justified on the basis of reasonable factors other than age.

144.   Defendants are aware or should have been aware that federal law requires them to conduct advertising, recruitment, and hiring without regard to the applicant's age.

## COUNTS

### FIRST COUNT

**Discriminatory Publication or Advertising by an Employer**
**Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(e)**

**By the Plaintiffs and Plaintiff Collective Members Against T-Mobile and Amazon**

145.    Plaintiffs incorporate all foregoing paragraphs into this Count.

146.    The federal Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to print or publish or cause to be printed or published notices or advertisements that relate to employment or referral for employment by an employer or employment agency that indicate any preference, limitation, specification, or distinction based on age.  29 U.S.C. § 623(e) ("It shall be unlawful for an employer . . . to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age.").

147.    Defendants are employers within the meaning of the ADEA, as they each employ 20 or more employees in the current calendar year and/or "regularly undertak[e] with or without compensation to procure employees for an employer" or are "an agent of such a person." *Id.* § 630(b).

148.    The Plaintiff Collective Members are applicants and/or employees within the meaning of the ADEA as they are seeking employment from an employer whether directly or through an employment agency.  *Id.* § 630(f).

149.    The Plaintiff Collective Members are protected by the ADEA, as they are at least 40 years old.  *See id.* § 631(a).

150.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements and recruiting on Facebook's ad platform.

46

151.    This pattern or practice violates the publication provision of the ADEA, 29 U.S.C. § 623(e).  When Defendants make a statement within an employment advertisement or notice—in the "Why am I seeing this" portion of the advertisement or notice—that they want to reach people between an age range that excludes all or many workers who are 40-years-old or greater—for example, by T-Mobile stating that the company wants to reach people between the ages of 18 and 38—the advertisement or notice communicates the message that the employer is less interested in or not interested in recruiting or hiring older workers, including workers who are older than the upper age to which the advertisement or notice was sent.  Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including the named Plaintiffs and proposed Plaintiff Collective Members, that the employer sending the advertisement or notice has a preference for younger workers over older workers in recruiting and hiring and that the employer is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, or limitation based on age.

152.    In addition, an ordinary reader of the "Why am I seeing this" portion of the advertisement or notice would understand that the Defendant advertiser is, in fact, sending the advertisement solely to or primarily to persons who are within the stated age range (such as 18 to 38 years old or 22 to 40 years old) and understand that the Defendant advertiser has a preference, discrimination, or limitation based on age.

153.    T-Mobile and Amazon knew or reasonably should have known that when they used Facebook's ad platform to exclude older workers from seeing their job advertisements that a portion of the "Sponsored Ad" would make a statement on behalf of the advertiser that the they want to reach people with a limited age range.  And by taking the action of limiting the age range of the ad audience with the knowledge that doing so will cause them and/or Facebook to publish the "Why Am I Seeing This Ad" statement as part of their advertisements, Defendants have published or caused to be published an ad or notice that indicates a preference, limitation, specification, or

47

discrimination based on age.  By taking these actions, as well as by engaging in the other acts alleged in this Complaint, Defendants are not using Facebook as an agent or acting as the principal of Facebook.

154.    Facebook clearly informs its advertisers about how its ad platform works and in particular how Facebook's ad transparency functions will be included with ads that are created and disseminated on Facebook's platform. Facebook's publicly available "Advertiser Help Center" details its policy of telling users why they are being shown specific ads.  Facebook describes the "Why am I seeing this" function under a sub-section titled "Our Advertising Principles," and Facebook highlights this function as part of Facebook's commitment to advertising transparency. Facebook emphasizes that "anyone can visit their Ad Preferences to learn about the interests and information that influence the ads they see."

155.    In addition, regardless of the content of the advertisement or notice, the practice of excluding older workers from receiving employment-related advertisements or notices constitutes the publishing of an advertisement or notice that indicates a preference based on age.  In the same manner that refusing to advertise jobs or housing in predominantly African-American communities indicates a preference based upon race, when Defendants undertake advertising campaigns that remove older workers from the population that will receive job-related advertisements and notices that they publish or cause to be published, the ad campaigns indicate a preference, discrimination, or limitation based on age.  An ordinary reader of Defendants' age-restricted job advertising campaigns would clearly understand that by excluding older workers from seeing the job ads, the ad campaigns and advertisers are expressing a preference, discrimination, or limitation based on age.

156.    Moreover, when Defendants use Facebook's ad platform to limit the population of Facebook users who will receive their job advertisements or notices—for example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38 years old—they are publishing or causing to be published to Facebook an advertisement or notice that indicates a preference or discrimination based on age.   These types of advertisements or notices that state that

the employer wants to reach younger workers and that intentionally exclude older workers from receiving the ads or notices are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

157.    Plaintiffs have exhausted their administrative remedies with respect to their ADEA claims.

## SECOND COUNT

**Disparate Treatment Discrimination in Recruiting and Hiring by an Employer
Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1)-(2)**

**By the Plaintiffs and Plaintiff Collective Members Against T-Mobile and Amazon**

158.    Plaintiffs incorporate all foregoing paragraphs into this Count.

159.    The ADEA makes it unlawful for an employer to fail or refuse to hire an individual, or to limit or segregate or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their status as an employee.  29 U.S.C. § 623(a)(1)-(2).

160.    Specifically, section 623(a) provides that it is "unlawful for an employer" "to fail or refuse to hire or to discharge any individual . . . , because of such individual's age," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." *Id.* § 623(a)(1)-(2).

161.    Both provisions prohibit disparate treatment in employment, including with respect to prospective applicants or applicants for employment.

162.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

163.    Defendants are employers within the meaning of the ADEA, as they each employ 20 or more employees in the current calendar year and/or "regularly undertak[e] with or without

compensation to procure employees for an employer" or are "an agent of such a person." *Id.*
§ 630(b).

164.    The Plaintiff Collective Members are applicants and/or employees within the
meaning of the ADEA as they are seeking employment from an employer whether directly or
through an employment agency. *Id.* § 630(f).

165.    The Plaintiff Collective Members are protected by the ADEA, as they are at least 40
years old. *See id.* § 631(a).

166.    This pattern or practice of discrimination challenged in this action is undertaken by
Defendants with the intent and purpose of discouraging and preventing older workers from
applying for jobs with such companies based on their age, and with the intent of failing or refusing
to hire older workers who are excluded from receiving such employment ads based on their age.
This pattern or practice of discrimination constitutes intentional discrimination and disparate
treatment under the ADEA.  It treats older workers who are 40-years old or greater worse than
younger workers who are under 40-years old in advertising, recruiting, and hiring prospective
applicants for job opportunities based on their age, because Defendants exclude older workers from
receiving the same employment advertisements that younger workers do.

167.    In addition, this practice limits, segregates, and classifies older workers in the
advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of
employment opportunities based on age, because older workers are classified based on their age,
segregated from younger workers who receive ads that older workers do not receive, and excluded
from receiving advertising, recruitment, and hiring opportunities that young workers do receive
from the same employers and employment agencies.

168.    Upon information and belief, Defendants have intentionally excluded older workers
from receiving their job advertisements via Facebook because Defendants prefer to have younger
workers apply for jobs at their companies at a higher rate than older workers do, and because
Defendants know and intend that sending thousands to millions of job advertisements to younger
workers but not to older workers will increase the number of younger persons who will click on the

50

ads and apply for jobs at Amazon and T-Mobile and will decrease the number of older persons who will click on the ads and apply for jobs at these employers, and moreover Defendants know and intend that this discriminatory advertising practice will increase the number of younger workers hired by them and decrease the number of older workers hired by them.  Indeed, in the case of each Defendant, at least one of its employees or agents knowingly and purposefully changed the age range for the job advertisement population from the standard 18+ setting (which reaches all people 18 and over) to a smaller range such as 18 to 38-years-old.  In addition, upon information and belief, even after Plaintiffs informed Defendants that they were relying upon an age-biased ad delivery algorithm in the First Amended Complaint, Defendants continued to use such a discriminatory ad delivery system that discriminates based on age, and Defendants continue to do so.

169.    Upon information and belief, by excluding older workers from receiving their job advertisements via Facebook, Defendants and their discriminatory advertising campaigns have caused significantly fewer older workers to click on job ads for these employers or employment agencies, significantly fewer older workers to apply for the advertised positions, and significantly fewer older workers to be hired by these employers, including the named Plaintiffs who would have pursued employment opportunities for which they were qualified at Defendants had they been affirmatively contacted by the companies via a job advertisement on Facebook.

170.    Moreover, upon information and belief, Defendants received real-time information from Facebook about the performance of their job advertising campaigns, which informed Defendants that their discriminatory exclusion of older workers from the population that would receive the job advertisements was working as Defendants intended—to effectively eliminate older workers from receiving, seeing, and interacting with the ads, and applying for positions at their companies.

171.    Upon information and belief, even when certain job openings are posted on the internet publicly, a substantial portion of people who apply for those job openings will hear about and apply for those jobs solely because they become aware of those job openings through a paid job

advertisement on Facebook.  Accordingly, refusing to send older workers job advertisements on Facebook while sending job advertisements to younger workers causes a larger number of younger workers to apply for the jobs than older workers compared to a situation in which all workers received the job advertisements without regard to their age.  This practice is analogous to offline discriminatory recruitment that steers younger workers into applying and steers older workers away from applying.  Upon information and belief, each Defendant received significantly fewer applications from older workers and hired fewer workers than they would have received and hired had they not excluded older workers from receiving their job advertisements on Facebook.  And by artificially reducing the number of older workers who applied and were hired, Defendants' practice of excluding older workers from receiving their job advertisements on Facebook caused a greater number of similarly situated younger workers to apply and be hired by Defendants relative to similarly situated older workers.

172.    As noted above, Plaintiffs have exhausted their administrative remedies with respect to their ADEA claims against Defendants.

### THIRD COUNT

**Discriminatory Publication or Advertising by an Employer**
**California Fair Employment and Housing Act, Cal. Gov. Code §12940(d)**

**By Plaintiff Haynie and Plaintiff Class Members Against T-Mobile and Amazon**

173.    Plaintiffs incorporate all foregoing paragraphs into this Count.

174.    The California Fair Employment and Housing Act ("FEHA") makes it unlawful for an employer to print or circulate or cause to be printed or circulated any publication that expresses, directly or indirectly, any limitation, specification, or discrimination based on age.  Cal. Gov. Code §12940(d).

175.    Defendants are employers within the meaning of the California FEHA as they each regularly employ five or more persons.  *Id.* § 12926(d).

176.    The Plaintiff Class Members are applicants and/or employees within the meaning of the California FEHA as they are seeking employment from an employer.  *Id.* § 12926(c).

1   177.    The Plaintiffs Class Members are protected by FEHA, as they are at least 40 years
2   old.  *See id.* § 12926(b).

3   178.    As described above, upon information and belief, T-Mobile and Amazon have a
4   pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring,
5   including by excluding older workers from the population of individuals to whom T-Mobile and
6   Amazon direct their employment advertisements and recruiting on Facebook's ad platform.

7   179.    This pattern or practice violates the publication provision of the California FEHA
8   identified earlier in this count.  When Defendants make a statement within an employment
9   advertisement or notice that they want to reach people between an age range that excludes all or
10  many workers who are 40-years-old or greater—for example, by T-Mobile stating that the company
11  wants to reach people between the ages of 18 and 38—the advertisement or notice communicates
12  the message that the employer is less interested in or not interested in recruiting or hiring older
13  workers, including workers who are older than the upper age to which the advertisement or notice
14  was sent.  Such an advertisement or notice informs the ordinary reader of the advertisement and the
15  public at large, including Plaintiff Haynie and proposed Plaintiff Class Members, that the employer
16  sending the advertisement or notice has a preference for younger workers over older workers in
17  recruiting and hiring and that the employer or employment agency is limiting job opportunities to
18  younger workers and drawing a distinction between younger and older workers in the advertising,
19  recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at
20  large would, in fact, understand that this message is expressing a preference, discrimination, or
21  limitation based on age.

22  180.    In addition, an ordinary reader of the "Why am I seeing this" portion of the
23  advertisement or notice would understand that the Defendant advertiser is, in fact, sending these
24  advertisements solely to or primarily to persons who are within the stated age range (such as 18 to
25  38 years old, or 22 to 40 years old) and understand that the Defendant advertiser has a preference,
26  discrimination, or limitation based on age.

27
28

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

181.    T-Mobile and Amazon knew or reasonably should have known that when they chose to exclude older workers from seeing their job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach people between a certain age range.

182.    In addition, regardless of the content of the advertisement or notice, the practice of excluding older workers from receiving employment-related advertisements or notices constitutes the printing or circulating or causing to be printed or circulated a publication that indicates a preference based on age.  In the same manner that refusing to advertise jobs or housing in predominantly African-American communities indicates a preference based upon race, when Defendants undertake ad campaigns that remove older workers from the population that will receive publications that they print or circulate or cause to be printed or circulated, the ad campaigns express a limitation, specification, or discrimination based on age.  An ordinary reader of Defendants' age-restricted job advertising campaigns would understand that, by excluding older workers from seeing the job ads, the ad campaigns and Defendants are expressing a limitation, specification, or discrimination based on age.

183.    Moreover, when Defendants use Facebook's ad platform to limit the population of Facebook users who will receive their job advertisements or notices—for example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38 years old—they are printing or circulating or causing to be printed or circulated a publication that expresses a preference or discrimination based on age.   These types of advertisements or notices that state that the employer wants to reach younger workers and that intentionally exclude older workers from receiving the ads or notices are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

184.    Plaintiff Haynie has exhausted his administrative remedies with respect to his California FEHA claims against Defendants.

## FOURTH COUNT

**Discriminatory Publication or Advertising by an Employer**
**District of Columbia Human Rights Act, D.C. Code § 2–1402.11(a)**

**By Plaintiff Maurice Anscombe Against T-Mobile and Amazon**

185.    Plaintiffs incorporate all foregoing paragraphs into this Count.

186.    The District of Columbia Human Rights Act ("DCHRA") makes it unlawful for an employer to print or publish or cause to be printed or published notices or advertisements that relate to employment by an employer that indicate any preference, limitation, specification, or distinction based on age.  D.C. Code § 2–1402.11(a)(4)(B).

187.    Defendants are employers within the meaning of the DCHRA as they each employ for compensation an individual.  *Id.* § 2–1401.02(10).

188.    Plaintiff Anscombe is an applicant and/or employee within the meaning of the DCHRA as he is seeking employment from an employer.  *Id.* § 2–1401.02(9).

189.    Plaintiff Anscombe is protected by the DCHRA, as he is at least 18 years old.  *See id.* § 2–1401.02(2) (age protects individuals 18 years of age or older).

190.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon target their employment advertisements and recruiting on Facebook's ad platform.

191.    This pattern or practice violates the publication provision of the DCHRA identified earlier in this count.  Defendants' age-restricted advertisements or notices inform the ordinary reader of the advertisement and the public at large, including Plaintiff Anscombe, that the employer sending the advertisement or notice has a preference for younger workers over older workers in recruiting and hiring and that the employer is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, limitation, specification, or discrimination

55

based on age.

192.    In addition, an ordinary reader of the "Why am I seeing this" portion of the advertisement or notice would understand that the Defendant advertiser is, in fact, sending these advertisements solely to or primarily to persons who are within the stated age range (such as 18 to 38 years old, or 22 to 40 years old) and understand that the Defendant advertiser has a preference, limitation, specification, or discrimination based on age.

193.    T-Mobile and Amazon knew or reasonably should have known that when they used Facebook's ad platform to exclude older workers from seeing their job advertisements that a portion of their job ads or notices would make a statement that the employer wants to reach people between a certain age range.

194.    In addition, regardless of the content of the advertisement or notice, the practice of excluding older workers from receiving employment-related advertisements or notices constitutes publishing or causing to published an advertisement or notice that indicates a preference based on age.  An ordinary reader of Defendants' age-restricted job advertising campaigns would understand that, by excluding older workers from seeing the job ads, the ad campaigns and Defendants are expressing a preference, limitation, specification, or discrimination based on age.

195.    Moreover, when Defendants use Facebook's ad platform to limit the population of Facebook users who will receive their job advertisements or notices—for example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38 years old—the employers are publishing or causing to be published an advertisement or notice that indicates a preference or discrimination based on age.   These types of advertisements or notices that state that the employer wants to reach younger workers and that intentionally exclude older workers from receiving the ads or notices are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

196.     The DCHRA, under which Plaintiff Maurice Anscombe brings this claim, does not require exhaustion of administrative remedies before filing an action in court.  *See* D.C. Code § 2–1403.16(a) (stating that an action may be filed in court without filing a charge of discrimination).

## FIFTH COUNT

**Discriminatory Publication or Advertising by an Employer**
**Ohio Fair Employment Practices Law ("OFEPL"), Ohio Rev. Code Ann. § 4112.02(E)(4)**

**By Plaintiffs Linda Bradley and Lura Callahan Against T-Mobile and Amazon**

197.     Plaintiffs incorporate all foregoing paragraphs into this Count.

198.     The Ohio Fair Employment Practices Law ("OFEPL") makes it unlawful for an employer to print or publish or cause to be printed or published notices or advertisements that relate to employment that indicate any preference, limitation, specification, or discrimination based on age.  Ohio Rev. Code Ann. § 4112.02(E)(4).

199.     Defendants are employers within the meaning of the OFEPL as they each employ four or more persons in Ohio.  *Id.* § 4112.01(A)(2).

200.     Plaintiffs Linda Bradley and Lura Callahan are applicants and/or employees within the meaning of the OFEPL as they are seeking employment from an employer.  *Id.* § 4112.01(3).

201.     Plaintiffs Linda Bradley and Lura Callahan are protected by OFEPL, as they are at least 40 years old.  *See id.* § 4112.14(A).

202.     As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements and recruiting on Facebook's ad platform.

203.     This pattern or practice violates the publication provision of the OFEPL identified earlier in this count.  Defendants' age-restricted advertisements or notices inform the ordinary reader of the advertisement and the public at large, including Plaintiffs Bradley and Callahan, that the employer sending the advertisement or notice has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job

opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees, and an ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, limitation, specification, or discrimination based on age.

204.    In addition, an ordinary reader of the "Why am I seeing this" portion of the advertisement or notice would understand that the Defendant advertiser is, in fact, sending these advertisements solely to or primarily to persons who are within the stated age range (such as 18 to 38 years old, or 22 to 40 years old) and understand that the Defendant advertiser has a preference, limitation, specification, or discrimination based on age.

205.    T-Mobile and Amazon knew or reasonably should have known that when they directed Facebook to exclude older workers from seeing their job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach people between a certain age range.

206.    In addition, regardless of the content of the advertisement or notice, the practice of excluding older workers from receiving employment-related advertisements or notices constitutes publishing or causing to published an advertisement or notice that indicates a preference based on age.  In the same manner that refusing to advertise jobs or housing in predominantly African-American communities indicates a preference based upon race, when the Defendants undertake ad campaigns that remove older workers from the population that will receive job-related advertisements and notices that they publish or cause to be published, the ad campaigns indicate a preference, limitation, specification, or discrimination based on age.  An ordinary reader of Defendants' age-restricted job advertising campaigns would understand that, by excluding older workers from seeing the job ads, the ad campaigns and Defendants are expressing a preference, limitation, specification, or discrimination based on age.

207.    Moreover, when Defendants use Facebook's ad platform to limit the population of Facebook users who will receive their job advertisements or notices—for example, by changing the age range to receive the ad or notice from 18 to 64+ years old to 18 to 38 years old—the employers

58

are publishing or causing to be published to Facebook an advertisement or notice that indicates a preference or discrimination based on age.   These types of advertisements or notices that state that the employer wants to reach younger workers and that intentionally exclude older workers from receiving the ads or notices are intended to have and do have the effect of encouraging younger workers to apply for the relevant employment opportunities and discouraging older workers from applying for the relevant employment opportunities.

208.    The OFEPL under which Plaintiffs Bradley and Callahan bring their claims do not require exhaustion of administrative remedies before filing an action in court. *See id.*  § 4112.02(L) (stating that an aggrieved individual may enforce his or her rights by instituting a civil action).

## SIXTH COUNT

### Intentional Discrimination in Recruiting and Hiring by an Employer
### California Fair Employment and Housing Act, Cal. Gov. Code § 12940(a)

**By the Plaintiff Haynie and Plaintiff Class Members Against T-Mobile and Amazon**

209.    Plaintiffs incorporate all foregoing paragraphs into this Count.

210.    The California FEHA makes it unlawful for an employer to refuse to hire an individual because of age or to otherwise discriminate against the person.  Cal. Gov. Code § 12940(a).

211.    The California FEHA provision identified in the prior paragraph prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

212.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

213.    This pattern or practice of discrimination challenged in this action is undertaken by these employers with the intent and purpose of discouraging and preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing

59

to hire older workers who are excluded from receiving such employment ads based on their age. This pattern or practice of discrimination constitutes intentional discrimination under the California FEHA provision identified earlier in this Count.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.  In addition, this practice discriminates against prospective employees by segregating and classifying older workers in the advertising, recruitment, and hiring of employees based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that young workers do receive from the same employers and employment agencies.

214.    Upon information and belief, Defendants have intentionally excluded older workers from receiving their job advertisements via Facebook because Defendants prefer to have younger workers apply for jobs at their companies at a higher rate than older workers do, and because the Defendants know and intend that sending thousands to millions of job advertisements to younger workers but not to older workers will increase the number of younger persons who will click on the ads and apply for jobs at the employers or employment agencies and will decrease the number of older persons who will click on the ads and apply for jobs at the employers, and moreover the Defendants know and intend that this discriminatory advertising will increase the number of younger workers hired by them and decrease the number of older workers hired by them.  Indeed, in the case of each Defendant, at least one of its employees or agents knowingly and purposefully changed the age range for the job advertisement from the standard 18+ setting (which reaches all people 18 and over) to a smaller range such as 18 to 38 years old.

215.    Upon information and belief, by excluding older workers from receiving their job advertisements via Facebook, Defendants and their discriminatory advertising campaigns have caused significantly fewer older workers to click on job ads for these employers, significantly fewer

older workers to apply for the advertised positions, and significantly fewer older workers to be hired by these employers, including Plaintiff Haynie who would have pursued employment opportunities for which he was qualified at Defendants had he been affirmatively contacted by the companies via a job advertisement on Facebook.

216.    Moreover, upon information and belief, Defendants received real-time information from Facebook about the performance of their job advertising campaigns, which informed Defendants that their discriminatory exclusion of older workers from the population that would receive the job advertisements was working as intended—to effectively eliminate older workers from receiving, seeing, and interacting with the ads, and applying for positions at their companies.

217.    Upon information and belief, even when certain job openings are posted on the internet publicly, a substantial portion of people who apply for those job openings will hear about and apply for those jobs solely because they become aware of those job openings through a paid job advertisement on Facebook.  Accordingly, refusing to send older workers job advertisements on Facebook while sending job advertisements to younger workers causes a larger number of younger workers to apply for the jobs than older workers to apply for the jobs compared to a situation in which all workers received the job advertisements without regard to their age.  This practice is analogous to offline discriminatory recruitment.  Upon information and belief, each of the Defendants received significantly fewer applications from older workers and hired fewer workers than they would have otherwise received and hired had they not excluded older workers from receiving their job advertisements on Facebook.  And by reducing the number of older workers who applied and were hired, Defendants' practice of excluding older workers from receiving their job advertisements on Facebook caused a greater number of similarly situated younger workers to apply and be hired by Defendants relative to similarly situated older workers.

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

## SEVENTH COUNT

**Intentional Discrimination in Recruiting and Hiring by an Employer**
**District of Columbia Human Rights Act, D.C. Code § 2–1402.11(a)(1)**

**By Plaintiff Maurice Anscombe <u>Against T-Mobile and Amazon</u>**

218.    Plaintiffs incorporate all foregoing paragraphs into this Count.

219.    The DCHRA makes it unlawful for an employer, on the basis of age, to fail or refuse to hire an individual, or to limit, segregate, or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities. D.C. Code § 2–1402.11(a)(1).

220.    The DCHRA provision identified in the prior paragraph prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

221.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

222.    This pattern or practice of discrimination challenged in this action is undertaken by these employers with the intent and purpose of discouraging and preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age. This pattern or practice of discrimination constitutes intentional discrimination under the DCHRA provision identified earlier in this Count.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their

62

age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that young workers do receive from the same employers and employment agencies.

223.    Upon information and belief, by excluding older workers from receiving their job advertisements via Facebook, Defendants and their discriminatory advertising campaigns have caused significantly fewer older workers to click on job ads for these employers, significantly fewer older workers to apply for the advertised positions, and significantly fewer older workers to be hired by these employers, including Plaintiff Anscombe, who would have pursued employment opportunities for which he was qualified at Defendants had he been affirmatively contacted by the companies via a job advertisement on Facebook.

### EIGHTH COUNT

**Intentional Discrimination in Recruiting and Hiring by an Employer
Ohio Fair Employment Practices Law, Ohio Rev. Code Ann. §§ 4112.02(A), 4112.14(A)**

**By Plaintiffs Linda Bradley and Lura Callahan Against T-Mobile and Amazon**

224.    Plaintiffs incorporate all foregoing paragraphs into this Count.

225.    The OFEPL make it unlawful for an employer or an employment agency to fail or refuse to hire an individual, or otherwise discriminate against a job applicant. Ohio Rev. Code Ann. §§ 4112.02(A), (B), 4112.14(A).

226.    The OFEPL provisions identified in the prior paragraph prohibit intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

227.    As described above, upon information and belief, T-Mobile and Amazon have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring, including by excluding older workers from the population of individuals to whom T-Mobile and Amazon direct their employment advertisements, recruiting, and hiring on Facebook's ad platform.

228.    This pattern or practice of discrimination challenged in this action is undertaken by these employers and employment agencies with the intent and purpose of discouraging and

preventing older workers from applying for jobs with such companies based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.  This pattern or practice of discrimination constitutes intentional discrimination under the OFEPL provisions identified earlier in this Count.  It treats older workers who are 40-years old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the employers or employment agencies exclude older workers from receiving the same employment advertisements that younger workers do.  In addition, this practice discriminates against job applicants because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that young workers do receive from the same employers and employment agencies.

229.    Upon information and belief, by excluding older workers from receiving their job advertisements via Facebook, Defendants and their discriminatory advertising campaigns have caused significantly fewer older workers to click on job ads for these employers, significantly fewer older workers to apply for the advertised positions, and significantly fewer older workers to be hired by these employers, including Plaintiffs Bradley and Callahan, who would have pursued employment opportunities for which they were qualified at Defendants had they been affirmatively contacted by the companies via a job advertisement on Facebook.

### NINTH COUNT

**California Unruh Civil Rights Act
Cal. Civ. Code § 51**

**By the Plaintiffs CWA, Haynie, and Plaintiff Class Members Against T-Mobile and Amazon**

230.    Plaintiffs incorporate all foregoing paragraphs into this Count.

231.    The California Unruh Civil Rights Act provides in part: "All persons within the jurisdiction of this state are free and equal" and "are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

64

232.    The lists of protected classes in the Unruh Act are not exclusive and extend beyond the protected classes enumerated in the law.  Accordingly, California appellate courts have held that "the Unruh Act proscribes arbitrary discrimination based on an individual's age—a personal characteristic similar to the classifications enumerated in the Act."  *Candelore v. Tinder, Inc*., 19 Cal. App. 5th 1138, 1145 (Ct. App. 2018).

233.    Defendants are business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51(b), as they have fixed locations of business in California, they sell goods and services to consumers throughout California, their primary purpose and goals are to conduct business, generate revenue, and earn profit, and they earn millions of dollars—and likely billions of dollars in the case of T-Mobile and Amazon—in revenues from their business activities in California.

234.    The Unruh Act applies to business transactions and services that are conducted via the internet, as well as internet-related conduct that is related to the activities of traditional brick-and-mortar establishments that have fixed, traditional presences.

235.    By purchasing, authorizing, and sending job advertisements to Facebook users throughout the nation (including in California) that excluded older workers from receiving such job advertisements, and segregating younger and older workers in their job advertising, Defendants intentionally discriminated against persons because of their age and deprived persons the full and equal advantages, privileges, and services in their business establishments because of such persons' ages, including by denying them information about employment opportunities and information about their services, goods, and establishments.  By engaging in this unlawful practice in their online job advertising, T-Mobile and Amazon discriminatorily prevented older workers from experiencing online and offline opportunities to learn about and participate fully in the employment opportunities and other services of these employers' business establishments and prevented or deterred them from contracting with such employers.

236.    These and other discriminatory practices described in this Complaint constitute disparate treatment and intentional discrimination that violates Cal. Civ. Code § 51(b).

237.    For violating Cal. Civ. Code § 51, Defendants are liable to Plaintiffs and the Plaintiff Class Members in the amount of no less than $4,000 for each and every violation.  In this case, there is a violation each time an impression of a job ad of the Defendant was not sent to a person who is 40-years-old or older because the person was excluded from receiving the advertisement because of his or her age.

### TENTH COUNT

### California Unruh Civil Rights Act
### Cal. Civil Code § 51.5

**By the Plaintiffs CWA, Haynie, and Plaintiff Class Members Against T-Mobile and Amazon**

238.    Plaintiffs incorporate all foregoing paragraphs into this Count.

239.    The California Unruh Civil Rights Act provides in part:  "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."  Cal. Civ. Code § 51.5(a).

240.    Cal. Civ. Code § 51(b) prohibits age discrimination.

241.    Defendants are business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51(b), as they have fixed locations of business in California, they sell goods and services to consumers throughout California, their primary purpose and goals are to conduct business, generate revenue, and earn profit, and they earn millions of dollars—and likely billions of dollars in the case of T-Mobile and Amazon—in revenues from their business activities in California.

242.    By purchasing, authorizing, authorizing, and sending job advertisements to Facebook users throughout the nation that excluded older workers from receiving such job advertisements, and segregating younger and older workers in their job advertising, T-Mobile and

Amazon intentionally discriminated against persons because of their age and have boycotted, blacklisted, refused to contract with, sell to, and trade with persons because of their age, including by denying them information about employment opportunities and information about their services, goods, and establishments, and preventing or deterring them from contracting with such employers. By engaging in this unlawful practice in their online job advertising, T-Mobile and Amazon discriminatorily prevented older workers from experiencing the online and offline opportunities to learn about and participate fully in the employment opportunities and other services of these employers' business establishments.  These and other discriminatory practices described in this Complaint constitute disparate treatment and intentional discrimination that violates Cal. Civ. Code § 51.5.

243.    For violating Cal. Civ. Code § 51.5, Defendants are liable to Plaintiffs and the Plaintiff Class Members in the amount of no less than $4,000 for each and every violation.  In this case, there is a violation each time an impression of a job ad of a Defendant was not sent to a person who is 40-years-old or older because the person was excluded from receiving the advertisement because of his or her age.

### ELEVENTH COUNT

**Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200, *et seq*.**

**By the Plaintiffs CWA, Haynie, and Plaintiff Class Members Against T-Mobile and Amazon**

244.    Plaintiffs incorporate all foregoing paragraphs into this Count.

245.    Unfair practices prohibited by the UCL include "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

246.    Defendants have committed unlawful   and unfair business practices, including but not limited to discriminating against Plaintiffs and Plaintiff Class Members because of their age in violation of the FEHA's employment discrimination provisions and in violation of the Unruh Act.

247.    As described above, due to the unlawful and unfair business practices of the Defendants, Plaintiffs and Plaintiff Class Members have suffered injury in fact, including being denied information about job opportunities and other services, and being denied wages and other

1  benefits of employment that they would have pursued and obtained had they received equal and fair

2  employment advertising, recruitment, and hiring.

3       248.   Defendants' conduct alleged herein occurred during the four years preceding the

4  filing of the Original Complaint.

5       249.   Defendants unfairly obtained profits as a direct and proximate result of their

6  unlawful and unfair conduct alleged herein.  Plaintiffs and Plaintiff Class Members are therefore

7  entitled to disgorgement by the Defendants of those profits.

8       250.   Defendants committed the unlawful actions herein despicably, maliciously,

9  fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs and Plaintiff Class

10  Members, from an improper and evil motive amounting to malice, and in conscious disregard of the

11  rights of Plaintiffs and the Plaintiff Class Members. Plaintiffs and Plaintiff Class Members are

12  therefore entitled to recover punitive damages from Defendants in an amount according to proof.

13       251.   Plaintiffs and Plaintiff Class Members are entitled to declaratory relief declaring that

14  the Defendants' pattern or practice of excluding older workers from receiving equal advertising,

15  recruiting, and hiring is unlawful and appropriate injunctive relief.

16                          *       *       *

17                        **PRAYER FOR RELIEF**

18       WHEREFORE, Plaintiffs pray that judgment be entered against T-Mobile and Amazon on

19  all claims and respectfully request that this Court award the following relief:

20       A.   Declare that the pattern or practice described above violates the federal
21            ADEA, the California FEHA, California Unruh Act, California UCL,
             DCHRA, and OFEPL;
22
       B.   Enter an order permanently enjoining T-Mobile and Amazon from engaging
23            in the types of discriminatory advertising, recruiting, and hiring practices
             alleged in this complaint, either on Facebook or other platforms.
24
25       C.   Certify a Plaintiff Class under Rule 23(a), (b)(3), or in the alternative under
             Rule 23(a), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, certify
26            a collective action under 29 U.S.C. § 216(b) and 626(b), appoint Plaintiffs'
             counsel as Class Counsel, and appoint the Named Plaintiffs as the Plaintiff
27            Class and Collective Representatives;

28
                                68

D.    Require T-Mobile and Amazon to pay Plaintiffs and members of the Plaintiff Class and Collective for the back pay and other economic harm they have suffered due to such unlawful age discrimination, as well as any restitution, penalties, liquidated damages, exemplary damages, punitive damages, and pre-judgment and post-judgment interest as provided by law, that may be owed;

E.    Require T-Mobile and Amazon to pay Plaintiffs' attorneys' fees and costs;

F.    Appoint a monitor to ensure that T-Mobile and Amazon comply with the injunction provisions of any decree that the Court orders;

G.    Enter an order retaining jurisdiction over this action to ensure that T-Mobile and Amazon comply with such a decree; and

H.    Grant such other and further relief as the Court deems proper, appropriate, just, or equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 623(c)(2), Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

June 5, 2019

Respectfully submitted,

*/s/ Peter Romer-Friedman*

Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com

P. David Lopez (*pro hac vice*)
Peter Romer-Friedman (*pro hac vice*)
Pooja Shethji (*pro hac vice*)*
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com
E-mail: pshethji@outtengolden.com

FOURTH AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
CASE NO. 17-CV-07232-BLF

Patricia Shea (*pro hac vice*)
Katherine A. Roe (*pro hac vice*)
COMMUNICATIONS WORKERS
OF AMERICA
501 3rd Street, N.W.
Washington, DC 20001
Telephone: (202) 434-1100
E-mail: pats@cwa-union.org
E-mail: aroe@cwa-union.org

Adam T. Klein (*pro hac vice*)
Robert N. Fisher (Cal. Bar No. 302919)
Jared W. Goldman (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rfisher@outtengolden.com
E-mail: jgoldman@outtengolden.com

\* Admitted in New York and the U.S. District
Court for the District of Maryland; not yet a
member of the D.C. Bar; supervised by a
member of the D.C. Bar.

*Attorneys for Plaintiffs and the Proposed Plaintiff Class and Collective*