# Exhibit 3



Advocates for Workplace Fairness

January 25, 2018

**Via Hand Delivery**
Washington District Office
U.S. Equal Employment Opportunity Commission
131 M Street, NE
Fourth Floor, Suite 4NWO2F
Washington, DC 20507-0100
Fax: (202) 419 0739

        Re:     ***Bradley et al. v.*** ███████, ***et al.***

Dear EEOC Charge Intake Coordinator,

        Enclosed for filing, please find four sets of class charges of age discrimination on behalf of the Communications Workers of America, Linda Bradley, Maurice Anscombe, and Lura Callahan, and all others similarly situated. Each charge is accompanied by a statement of particulars and each set of charges includes a notice of appearance for this firm. Please file the foregoing and inform us of the charge number and investigator assigned to this charge. We are submitting this charge via hand delivery.

        Should you have any questions, please feel free to call me.

                        Respectfully submitted,

                        /s/ Peter Romer-Friedman

                        Peter Romer Friedman

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One Embarcadero Center  38th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington, DC  601 Massachusetts Ave NW  Second Floor West Suite  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☐ EEOC | |

| EEOC and Any Applicable State or Local Agency |
|---|

| NAME (Indicate <u>Mr.</u>, Ms., Mrs.)<br>Linda Bradley | HOME TELEPHONE (Include Area Code)<br>████ |
|---|---|

| STREET ADDRESS<br>████ | CITY, STATE & ZIP CODE<br>████ | DATE OF BIRTH<br>████ |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under *PARTICULARS* below.)

| NAME<br>Capital One Financial Corporation | NUMBER OF EMPLOYEES, MEMBERS<br>500+ | TELEPHONE (Include Area Code)<br>(703) 720-1000 |
|---|---|---|

| STREET  ADDRESS      CITY, STATE, AND ZIP CODE<br>1680 Capital One Dr.    McLean, VA, 22102 | COUNTY<br>Fairfax |
|---|---|

**CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))**

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN

☐ RETALIATION    ☒ AGE    ☐ DISABILITY    ☐ GENETIC INFORMATION

☐ OTHER (specify) _____

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ALL)        LATEST (ALL)

☒ CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):**

See attachment.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | *NOTARY – (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 1/19/18<br>Date        Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

# Charge of Discrimination

The particulars are:

1.  This charge of discrimination challenges Capital One Financial Corporation's (the "Company") violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[1]  *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-40 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, §§ 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-303 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*

2.  The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.

3.  Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek

---

[1]  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

employment opportunities. In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position. Ms. Bradley has skills in a range of areas and would be qualified for a range of positions in various fields. She is willing to work not just in Ohio but beyond her local geographic area.

4. Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland. He is currently seeking full-time employment, having previously worked as a cable technician for almost two decades and, before that, in law enforcement. He regularly uses Facebook, and has used Facebook to seek employment opportunities. Mr. Anscombe has skills in a range of areas and would be qualified for a range of positions in various fields. He is willing to work not just in Maryland, but also beyond his local geographic area.

5. Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio. She was recently laid off from her longstanding job at a call center in Franklin County, Ohio. She regularly uses Facebook, and has used Facebook to seek employment opportunities. Ms. Callahan has skills in a range of areas and would be qualified for a range of positions in various fields.

6. This charge is being filed against the Company and all employers or employment agencies who have purchased or sent employment-related Facebook advertisements that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Defendant Class Members").

7. Ms. Bradley, Mr. Anscombe, and/or Ms. Callahan have routinely been denied employment advertisements and recruitment that similarly situated workers who are less than 40-years-old have received. If Ms. Bradley, Mr. Anscombe, and/or Mr. Callahan had received such ads, they would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

8. Ms. Bradley, Mr. Anscombe, and Ms. Callahan are filing this charge on behalf of all Facebook users in the United States who are 40-years-old or older who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and are being or were excluded from being eligible to receive an employment-related advertisement because the Company and/or one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Plaintiff Class Members").

9.     CWA is filing this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977). CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company and Defendant Class Members under applicable federal, state, and local laws prohibiting age discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

10.    Additionally, CWA is filing this charge as an aggrieved person who has been harmed by the Company and Defendant Class Members' violations of federal, state, and local laws that prohibit age discrimination. Through this charge, CWA seeks to remedy past and continuing harm caused by the Company and Defendant Class Members. CWA has undertaken efforts to identify and combat the age discrimination described in this charge, including by engaging in an investigation of the systemic violations and by contacting dozens of employers and employment agencies to educate them about their harmful and unlawful practices and to ask them to stop such practices. As a result of CWA's education and outreach to combat this ongoing discrimination, it appears that a number of larger and smaller companies have temporarily stopped excluding older workers from their advertising and recruiting on Facebook. By engaging in these efforts to identify and combat discrimination, CWA's resources have been diverted from activities in which CWA would ordinarily engage, including collective bargaining, counseling, and assisting its members in various ways, towards addressing such discrimination, and CWA's mission to protect the labor and civil rights of its members has been frustrated.

11.    Both CWA and its members have been harmed in other ways by the exclusion of older workers from advertising and recruiting. The exclusion of older workers from new job opportunities restricts the labor market for CWA's members and makes it harder for them to find jobs when they are unemployed or to find better jobs when they are employed. When the job market is tightened for a segment of CWA's membership or potential membership because of age discrimination, it reduces the bargaining power of CWA and its members to obtain better wages and benefits in negotiations with employers. Accordingly, this loss of bargaining power adversely affects the wages and benefits of CWA's members and, in turn, adversely affects the membership dues of CWA and the ability of CWA to grow its ranks.

12.    The ADEA and analogous state and local statutes that prohibit age discrimination in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such

an employment agency, indicating any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e).

13.     The ADEA and analogous state and local statutes make it unlawful for an employer or an employment agency to: fail or refuse to hire any individual because of such individual's age; limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age; or fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age. *See* 29 U.S.C. § 623(a), (b).

14.     The Company and Defendant Class Members are employers and/or employment agencies pursuant to 29 U.S.C. § 630(b), (c) and analogous state and local anti-discrimination laws, because they are: engaged in an industry affecting commerce and have twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year; and/or regularly undertaking with or without compensation to procure employees for an employer, to procure for employees opportunities to work for an employer, and/or are agents of such persons.

15.     Ms. Bradley, Mr. Anscombe, and Ms. Callahan, members of CWA, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

16.     When advertising employment via Facebook's advertising platform, the Company and Defendant Class Members have targeted their employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment advertising and recruiting that is directed to younger workers.

17.     When the Company has sent advertisements on Facebook to prospective applicants, the Company's employment ads have stated that the Company wants to reach people who are below a certain age threshold. These statements thereby exclude certain workers who 40-years-old or older from receiving the employment ads and opportunities.

18.     The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

19.     When the Company makes a statement within an employment advertisement that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater, the advertisement communicates the message that the Company is less interested in or not interested in recruiting or hiring older

workers. Such an advertisement informs the reader of the advertisement and the public at large that the employer or employment agency sending the advertisement or advertising the position has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.

20.     The pattern or practice of discrimination challenged by the charging parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

21.     This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the Company excludes older workers from receiving the same employment advertisements that younger workers receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

22.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding older workers who are 40-years-old or greater from receiving employment advertising, recruiting, and hiring opportunities based on their age.

23.     Excluding older workers from receiving the same employment advertisements that are provided to younger workers causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.

24.   This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under the ADEA and analogous state and local laws, including violations of publication or advertising provisions of such laws.  We are filing this charge on behalf of all individuals nationwide who have been excluded from receiving employment advertisements via Facebook's advertising platform, and we are filing this charge against all employers nationwide who have used Facebook's advertising platform to place an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge.

25.   Through this charge and legal action, CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan, and others similarly situated, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under the ADEA and the state and local statutes identified above.

26.   CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan request that the EEOC investigate all of the claims made in this charge on a class-wide basis.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Washington Direct Dial:  (202) 419-0713
FAX (202) 419-0740
Website:  www.eeoc.gov

Charge Number: 570-2018-01036

Ms. Linda Bradley                                         Charging Party

█████████████

Capital One Financial Corporation                        Respondent
1680 Capital One Drive
McLean, VA 22102

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the age of individuals who could apply.

Respondent denies that it violated the ADEA.

Evidence gathered during the investigation established that between March 2017 and November 2017, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated the ADEA by advertising on a social media platform and limiting the audience for their advertisement to younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

**JUL 0 5 2019**

Date

Mindy E. Weinstein
Acting Director

cc:     Peter Romer Friedman, Charging Party's Representative
        Outten & Golden
        601 Massachusetts Avenue, NW Second Floor West Suite
        Washington, DC 20001

cc:     Jason C. Schwartz, Respondent's Representative
        Gibson, Dunn & Crutcher, LLP
        1050 Connecticut Avenue, N.W.
        Washington, DC20036-5306



OUTTEN & GOLDEN LLP

Advocates for Workplace Fairness

May 29 2018

<u>**Via Hand Delivery**</u>
Washington District Office
U.S. Equal Employment Opportunity Commission
131 M Street, NE
Fourth Floor, Suite 4NWO2F
Washington, DC 20507-0100
Fax: (202) 419 0739

Re:   *Bradley et al. v.* ████████ *et al.*

Dear EEOC Charge Intake Coordinator,

Enclosed for filing, please find four sets of class charges of age discrimination on behalf of the Communications Workers of America, Linda Bradley, Maurice Anscombe, and Lura Callahan, and all others similarly situated. Each charge is accompanied by a statement of particulars and each set of charges includes a notice of appearance for this firm. Please file the foregoing and inform us of the charge number and investigator assigned to this charge. We are submitting this charge via hand delivery.

Should you have any questions, please feel free to call me.

Respectfully submitted,

_/s/ Peter Romer-Friedman_

Peter Romer Friedman

New York   685 Third Avenue  25th Floor   New York, NY 10017   Tel (212) 245-1000   Fax (646) 509-2060
Chicago   161 N Clark Street  Suite 1600   Chicago, IL 60601   Tel (312) 809-7010   Fax (312) 809-7011
San Francisco   One Embarcadero Center  38th Floor   San Francisco, CA 94111   Tel (415) 638-8800   Fax (415) 638-8810
Washington, DC   601 Massachusetts Ave NW   Second Floor West Suite   Washington, DC 20001   Tel (202) 847-4400   Fax (202) 847-4410
www.outtengolden.com

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA ☐ EEOC | |

EEOC and Any Applicable State or Local Agency

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Linda Bradley | ▮▮▮▮ |

| STREET ADDRESS | CITY, STATE & ZIP CODE | DATE OF BIRTH |
|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| DriveTime Automotive Group Inc. | 3500+ | (314) 824-1170 |

| STREET ADDRESS        CITY, STATE, AND ZIP CODE | COUNTY |
|---|---|
| 1720 West Rio Salado Pkwy, Tempe, AZ 85281 | Maricopa County |

**CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))**

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (specify) _____

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ALL)        LATEST (ALL)

☒ CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):**

See attachment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | *NOTARY – (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| May 29, 2018 | SIGNATURE OF COMPLAINANT |
| Date          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

## Charge of Discrimination

The particulars are:

1.  This charge of discrimination challenges DriveTime Automotive Group Inc.'s (the "Company") violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[8]  *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-40 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, §§ 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-303 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*

2.  The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.

3.  Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek

---

[1]  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has skills in a range of areas and would be qualified for a range of positions in various fields.  She is willing to work not just in Ohio but beyond her local geographic area.

4.      Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland.  He is currently seeking full-time employment, having previously worked as a cable technician for almost two decades and, before that, in law enforcement.  He regularly uses Facebook, and has used Facebook to seek employment opportunities.  Mr. Anscombe has skills in a range of areas and would be qualified for a range of positions in various fields.  He is willing to work not just in Maryland, but also beyond his local geographic area.

5.      Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Callahan has skills in a range of areas and would be qualified for a range of positions in various fields.

6.      This charge is being filed against the Company and all employers or employment agencies who have purchased or sent employment-related Facebook advertisements that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Defendant Class Members").

7.      Ms. Bradley, Mr. Anscombe, and/or Ms. Callahan have routinely been denied employment advertisements and recruitment that similarly situated workers who are less than 40-years-old have received.  If Ms. Bradley, Mr. Anscombe, and/or Mr. Callahan had received such ads, they would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

8.      Ms. Bradley, Mr. Anscombe, and Ms. Callahan are filing this charge on behalf of all Facebook users in the United States who are 40-years-old or older who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and are being or were excluded from being eligible to receive an employment-related advertisement because the Company and/or one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Plaintiff Class Members").

9.      CWA is filing this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977). CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company and Defendant Class Members under applicable federal, state, and local laws prohibiting age discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

12.     The ADEA and analogous state and local statutes that prohibit age discrimination in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age."  29 U.S.C. § 623(e).

13.     The ADEA and analogous state and local statutes make it unlawful for an employer or an employment agency to: fail or refuse to hire any individual because of such individual's age; limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age; or fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.  *See* 29 U.S.C. § 623(a), (b).

14.     The Company and Defendant Class Members are employers and/or employment agencies pursuant to 29 U.S.C. § 630(b), (c) and analogous state and local anti-discrimination laws, because they are: engaged in an industry affecting commerce and have twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year; and/or regularly undertaking with or without compensation to procure employees for an employer, to procure for employees opportunities to work for an employer, and/or are agents of such persons.

15.     Ms. Bradley, Mr. Anscombe, and Ms. Callahan, members of CWA, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

16.     When advertising employment via Facebook's advertising platform, the Company and Defendant Class Members have targeted their employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment

advertising and recruiting that is directed to younger workers.  In addition, the Company and Defendant Class Members have used Facebook's ad platform to distribute their job advertisements.  Upon information and belief, when using Facebook as an agent to distribute their job ads, the Company and Defendant Class Members have utilized Facebook's algorithm that determines which people within a chosen population will receive the ads, and that algorithm makes such determinations based upon age in a manner that routinely sends the ads disproportionately to younger workers rather than older workers.  Upon information and belief, the utilization of Facebook's algorithm compounds the discrimination that the Company and Defendant Class Members have engaged in by further excluding older workers from receiving these job ads, and the Company and Defendant Class Members are responsible for using this algorithm to make decisions about which people will receive their job ads.

17.    When the Company has sent advertisements on Facebook to prospective applicants, the Company's employment ads have stated that the Company wants to reach people who are below a certain age threshold.  These statements thereby exclude certain workers who 40-years-old or older from receiving the employment ads and opportunities.

18.    The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

19.    When the Company makes a statement within an employment advertisement that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater, the advertisement communicates the message that the Company is less interested in or not interested in recruiting or hiring older workers. Such an advertisement informs the reader of the advertisement and the public at large that the employer or employment agency sending the advertisement or advertising the position has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.

20.    The pattern or practice of discrimination challenged by the charging parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

21.    This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and

hiring prospective applicants for job opportunities based on their age, because the Company excludes older workers from receiving the same employment advertisements that younger workers receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

22.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding older workers who are 40-years-old or greater from receiving employment advertising, recruiting, and hiring opportunities based on their age.

23.     Excluding older workers from receiving the same employment advertisements that are provided to younger workers causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.

24.     This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under the ADEA and analogous state and local laws, including violations of publication or advertising provisions of such laws.  We are filing this charge on behalf of all individuals nationwide who have been excluded from receiving employment advertisements via Facebook's advertising platform, and we are filing this charge against all employers nationwide who have used Facebook's advertising platform to place an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge.

25.     Through this charge and legal action, CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan, and others similarly situated, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under the ADEA and the state and local statutes identified above.

26.   CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan request that the EEOC investigate all of the claims made in this charge on a class-wide basis.  This charge is intended to toll the statute of limitations for all applicants or employees nationwide who may have similar claims and to piggy-back on any prior charges that CWA or other individuals have filed challenging the same practices by the Company and any of the Defendant Class Members.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Washington Direct Dial:  (202) 419-0713
FAX (202) 419-0740
Website:  www.eeoc.gov

Charge Number: 570-2018-02351

Ms. Linda Bradley                                         Charging Party

▇▇▇▇▇▇▇▇

Drive Time Automotive Group, Inc.                        Respondent
1720 West Rio Salado Parkway
Tempe, AZ 85281

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the age of individuals who could apply.

Respondent denies that it violated the ADEA.

Evidence gathered during the investigation established that between on or about December 8, 2017 and on or about January 13, 2018, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated the ADEA by advertising on a social media platform and limiting the audience for their advertisement to younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

JUL 05 2019

Date

Mindy E. Weinstein
Acting Director

cc:   Peter Romer Friedman, Charging Party's Representative
      Outten & Golden
      601 Massachusetts Avenue, NW Second Floor West Suite
      Washington, DC 20001

cc:   Kevin M. Kraham, Respondent's Representative
      Littler Mendelson, PC
      815 Connecticut Avenue, NW
      Suite 400
      Washington, DC 20006-4046



Advocates for Workplace Fairness

May 29 2018

<u>**Via Hand Delivery**</u>
Washington District Office
U.S. Equal Employment Opportunity Commission
131 M Street, NE
Fourth Floor, Suite 4NWO2F
Washington, DC 20507-0100
Fax: (202) 419 0739

Re:    ***Bradley et al. v.*** ███████████ *et al.*

Dear EEOC Charge Intake Coordinator,

Enclosed for filing, please find four sets of class charges of age discrimination on behalf of the Communications Workers of America, Linda Bradley, Maurice Anscombe, and Lura Callahan, and all others similarly situated. Each charge is accompanied by a statement of particulars and each set of charges includes a notice of appearance for this firm. Please file the foregoing and inform us of the charge number and investigator assigned to this charge. We are submitting this charge via hand delivery.

Should you have any questions, please feel free to call me.

Respectfully submitted,

*/s/ Peter Romer-Friedman*

Peter Romer Friedman

**New York**  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
**Chicago**  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
**San Francisco**  One Embarcadero Center  38th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
**Washington, DC**  601 Massachusetts Ave NW  Second Floor West Suite  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410
www.outtengolden.com

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER |
| --- | --- | --- |

EEOC and Any Applicable State or Local Agency

| NAME (Indicate Mr., Ms., Mrs.)<br>Linda Bradley | HOME TELEPHONE (Include Area Code) |
| --- | --- |

| STREET ADDRESS | CITY, STATE & ZIP CODE | DATE OF BIRTH |
| --- | --- | --- |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| NAME<br>Edward Jones US | NUMBER OF EMPLOYEES, MEMBERS<br>10,000+ | TELEPHONE (Include Area Code)<br>(314) 515-2000 |
| --- | --- | --- |

| STREET ADDRESS   CITY, STATE, AND ZIP CODE<br>12555 Manchester Road, Saint Louis, MO 63131 | COUNTY<br>St. Louis County |
| --- | --- |

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es))

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (specify) _____

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ALL)    LATEST (ALL)

☒ CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):**

See attachment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the foregoing is true and correct. | *NOTARY – (When necessary for State and Local Requirements) |
| --- | --- |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| <u>May 29, 2018</u><br>Date     Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(Day, month, and year)* |

## Charge of Discrimination

The particulars are:

1.   This charge of discrimination challenges Edward Jones US's (the "Company") violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[9]  See, e.g., Ariz. Rev. Stat. Ann. §§ 41-1461 et seq.; Colo. Rev. Stat. Ann. §§ 24-34-40 et seq.; Conn. Gen. Stat. §§ 46a-51 et seq.; Fla. Stat. Ann. §§ 760.01 et seq.; Haw. Rev. Stat. Ann. §§ 378-1 et seq.; Idaho Code Ann. §§ 67-5901 et seq.; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 et seq.; Iowa Code Ann. §§ 216.1 et seq.; Kan. Stat. Ann. §§ 44-1111 et seq.; Mass. Gen. Laws Ann. ch. 151B, §§ 1 et seq.; Md. Code Ann., State Gov't §§ 20-101 et seq.; Mo. Ann. Stat. §§ 213.010 et seq.; Mont. Code Ann. §§ 49-2-303 et seq.; Nev. Rev. Stat. Ann. §§ 613.310 et seq.; N.H. Rev. Stat. Ann. §§ 354-A:1 et seq.; N.M. Stat. Ann. §§ 28-1-1 et seq.; 43 Pa. Stat. Ann. §§ 951 et seq.; 28 R.I. Gen. Laws Ann. §§ 28-5-1 et seq.; S.C. Code Ann. §§ 1-13-10 et seq.; Tex. Labor Code Ann. § 21.001 et seq.; Utah Code Ann. §§ 34A-5-101 et seq.; Va. Code Ann. §§ 2.2-3900 et seq.; Wis. Stat. Ann. §§ 111.31 et seq.

2.   The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.

3.   Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek

---

[1]  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 et seq.; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 et seq.; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 et seq.; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 et seq.; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 et seq.; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 et seq., see also id. § 49.44.090.

employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has skills in a range of areas and would be qualified for a range of positions in various fields.  She is willing to work not just in Ohio but beyond her local geographic area.

4.      Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland.  He is currently seeking full-time employment, having previously worked as a cable technician for almost two decades and, before that, in law enforcement.  He regularly uses Facebook, and has used Facebook to seek employment opportunities.  Mr. Anscombe has skills in a range of areas and would be qualified for a range of positions in various fields.  He is willing to work not just in Maryland, but also beyond his local geographic area.

5.      Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Callahan has skills in a range of areas and would be qualified for a range of positions in various fields.

6.      This charge is being filed against the Company and all employers or employment agencies who have purchased or sent employment-related Facebook advertisements that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Defendant Class Members").

7.      Ms. Bradley, Mr. Anscombe, and/or Ms. Callahan have routinely been denied employment advertisements and recruitment that similarly situated workers who are less than 40-years-old have received.  If Ms. Bradley, Mr. Anscombe, and/or Mr. Callahan had received such ads, they would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

8.      Ms. Bradley, Mr. Anscombe, and Ms. Callahan are filing this charge on behalf of all Facebook users in the United States who are 40-years-old or older who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and are being or were excluded from being eligible to receive an employment-related advertisement because the Company and/or one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Plaintiff Class Members").

9.      CWA is filing this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977). CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company and Defendant Class Members under applicable federal, state, and local laws prohibiting age discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

12.     The ADEA and analogous state and local statutes that prohibit age discrimination in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e).

13.     The ADEA and analogous state and local statutes make it unlawful for an employer or an employment agency to: fail or refuse to hire any individual because of such individual's age; limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age; or fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age. *See* 29 U.S.C. § 623(a), (b).

14.     The Company and Defendant Class Members are employers and/or employment agencies pursuant to 29 U.S.C. § 630(b), (c) and analogous state and local anti-discrimination laws, because they are: engaged in an industry affecting commerce and have twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year; and/or regularly undertaking with or without compensation to procure employees for an employer, to procure for employees opportunities to work for an employer, and/or are agents of such persons.

15.     Ms. Bradley, Mr. Anscombe, and Ms. Callahan, members of CWA, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

16.     When advertising employment via Facebook's advertising platform, the Company and Defendant Class Members have targeted their employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment

advertising and recruiting that is directed to younger workers.  In addition, the Company and Defendant Class Members have used Facebook's ad platform to distribute their job advertisements.  Upon information and belief, when using Facebook as an agent to distribute their job ads, the Company and Defendant Class Members have utilized Facebook's algorithm that determines which people within a chosen population will receive the ads, and that algorithm makes such determinations based upon age in a manner that routinely sends the ads disproportionately to younger workers rather than older workers.  Upon information and belief, the utilization of Facebook's algorithm compounds the discrimination that the Company and Defendant Class Members have engaged in by further excluding older workers from receiving these job ads, and the Company and Defendant Class Members are responsible for using this algorithm to make decisions about which people will receive their job ads.

17.  When the Company has sent advertisements on Facebook to prospective applicants, the Company's employment ads have stated that the Company wants to reach people who are below a certain age threshold.  These statements thereby exclude certain workers who 40-years-old or older from receiving the employment ads and opportunities.

18.  The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

19.  When the Company makes a statement within an employment advertisement that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater, the advertisement communicates the message that the Company is less interested in or not interested in recruiting or hiring older workers. Such an advertisement informs the reader of the advertisement and the public at large that the employer or employment agency sending the advertisement or advertising the position has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.

20.  The pattern or practice of discrimination challenged by the charging parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

21.  This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and

hiring prospective applicants for job opportunities based on their age, because the Company excludes older workers from receiving the same employment advertisements that younger workers receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

22.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding older workers who are 40-years-old or greater from receiving employment advertising, recruiting, and hiring opportunities based on their age.

23.     Excluding older workers from receiving the same employment advertisements that are provided to younger workers causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.

24.     This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under the ADEA and analogous state and local laws, including violations of publication or advertising provisions of such laws.  We are filing this charge on behalf of all individuals nationwide who have been excluded from receiving employment advertisements via Facebook's advertising platform, and we are filing this charge against all employers nationwide who have used Facebook's advertising platform to place an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge.

25.     Through this charge and legal action, CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan, and others similarly situated, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under the ADEA and the state and local statutes identified above.

26.     CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan request that the EEOC investigate all of the claims made in this charge on a class-wide basis.  This charge is intended to toll the statute of limitations for all applicants or employees nationwide who may have similar claims and to piggy-back on any prior charges that CWA or other individuals have filed challenging the same practices by the Company and any of the Defendant Class Members.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Washington Direct Dial:  (202) 419-0713
FAX (202) 419-0740
Website:  www.eeoc.gov

Charge Number: 570-2018-02352

Ms. Linda Bradley                                    Charging Party

███████████████

Edward D. Jones & Co., L.P.                          Respondent
12555 Manchester Road
Saint Louis, MO 63131

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the age of individuals who could apply.

Respondent denies that it violated the ADEA.

Evidence gathered during the investigation established that between in or about July 2017 and in or about May 2018, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated the ADEA by advertising on a social media platform and limiting the audience for their advertisement to younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

JUL 05 2019
‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

Mindy E. Weinstein
Acting Director

cc:   Peter Romer Friedman, Charging Party's Representative
      Outten & Golden
      601 Massachusetts Avenue, NW Second Floor West Suite
      Washington, DC 20001

cc:   Jason C. Schwartz, Respondent's Representative
      Gibson, Dunn & Crutcher, LLP
      1050 Connecticut Avenue, N.W.
      Washington, DC 20035-5306



Advocates for Workplace Fairness

January 25, 2018

**Via Hand Delivery**
Washington District Office
U.S. Equal Employment Opportunity Commission
131 M Street, NE
Fourth Floor, Suite 4NWO2F
Washington, DC 20507-0100
Fax: (202) 419 0739

      Re:    *Bradley et al. v. ███████, et al.*

Dear EEOC Charge Intake Coordinator,

      Enclosed for filing, please find four sets of class charges of age discrimination on behalf of the Communications Workers of America, Linda Bradley, Maurice Anscombe, and Lura Callahan, and all others similarly situated. Each charge is accompanied by a statement of particulars and each set of charges includes a notice of appearance for this firm. Please file the foregoing and inform us of the charge number and investigator assigned to this charge. We are submitting this charge via hand delivery.

      Should you have any questions, please feel free to call me.

                             Respectfully submitted,

                             /s/ Peter Romer-Friedman

                             Peter Romer Friedman

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One Embarcadero Center  38th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington, DC  601 Massachusetts Ave NW  Second Floor West Suite  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | |

EEOC and Any Applicable State or Local Agency

| NAME (*Indicate Mr., Ms., Mrs.*) | HOME TELEPHONE (*Include Area Code*) |
|---|---|
| Linda Bradley | █████████ |

| STREET ADDRESS | CITY, STATE & ZIP CODE | DATE OF BIRTH |
|---|---|---|
| ███████████ | ████████████ | ████████ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two are named, list under PARTICULARS below.*)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (*Include Area Code*) |
|---|---|---|
| Enterprise Holdings, Inc. | 500+ | (732) 271-3535 |

| STREET ADDRESS      CITY, STATE, AND ZIP CODE | COUNTY |
|---|---|
| 600 Corporate Park Drive   St. Louis, Missouri, 63105 | St. Louis |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (specify) _____

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ALL)      LATEST (ALL)

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):

See attachment.

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

*NOTARY – (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*Day, month, and year*)

1/19/18
Date        ██████████████████
Charging Party (*Signature*)

**Charge of Discrimination**

The particulars are:

1.    This charge of discrimination challenges Enterprise Holdings, Inc.'s (the "Company") violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[1] *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-40 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, §§ 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-303 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*

2.    The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.

3.    Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek

---

[1]  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

employment opportunities.  In fact, on the one occasion that Ms. Bradley received an employment ad via Facebook on her Facebook News Feed, she contacted the employer to inquire about an open position.  Ms. Bradley has skills in a range of areas and would be qualified for a range of positions in various fields.  She is willing to work not just in Ohio but beyond her local geographic area.

4.  Maurice Anscombe is a 57-year-old man who lives in Baltimore County, Maryland.  He is currently seeking full-time employment, having previously worked as a cable technician for almost two decades and, before that, in law enforcement.  He regularly uses Facebook, and has used Facebook to seek employment opportunities.  Mr. Anscombe has skills in a range of areas and would be qualified for a range of positions in various fields.  He is willing to work not just in Maryland, but also beyond his local geographic area.

5.  Lura Callahan is a 67-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Callahan has skills in a range of areas and would be qualified for a range of positions in various fields.

6.  This charge is being filed against the Company and all employers or employment agencies who have purchased or sent employment-related Facebook advertisements that placed an upper age limit on the population of Facebook users that was eligible to receive an advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Defendant Class Members").

7.  Ms. Bradley, Mr. Anscombe, and/or Ms. Callahan have routinely been denied employment advertisements and recruitment that similarly situated workers who are less than 40-years-old have received.  If Ms. Bradley, Mr. Anscombe, and/or Mr. Callahan had received such ads, they would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

8.  Ms. Bradley, Mr. Anscombe, and Ms. Callahan are filing this charge on behalf of all Facebook users in the United States who are 40-years-old or older who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and are being or were excluded from being eligible to receive an employment-related advertisement because the Company and/or one or more of the Defendant Class Members placed an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge ("Plaintiff Class Members").

9.     CWA is filing this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977). CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company and Defendant Class Members under applicable federal, state, and local laws prohibiting age discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

10.    Additionally, CWA is filing this charge as an aggrieved person who has been harmed by the Company and Defendant Class Members' violations of federal, state, and local laws that prohibit age discrimination. Through this charge, CWA seeks to remedy past and continuing harm caused by the Company and Defendant Class Members. CWA has undertaken efforts to identify and combat the age discrimination described in this charge, including by engaging in an investigation of the systemic violations and by contacting dozens of employers and employment agencies to educate them about their harmful and unlawful practices and to ask them to stop such practices. As a result of CWA's education and outreach to combat this ongoing discrimination, it appears that a number of larger and smaller companies have temporarily stopped excluding older workers from their advertising and recruiting on Facebook. By engaging in these efforts to identify and combat discrimination, CWA's resources have been diverted from activities in which CWA would ordinarily engage, including collective bargaining, counseling, and assisting its members in various ways, towards addressing such discrimination, and CWA's mission to protect the labor and civil rights of its members has been frustrated.

11.    Both CWA and its members have been harmed in other ways by the exclusion of older workers from advertising and recruiting. The exclusion of older workers from new job opportunities restricts the labor market for CWA's members and makes it harder for them to find jobs when they are unemployed or to find better jobs when they are employed. When the job market is tightened for a segment of CWA's membership or potential membership because of age discrimination, it reduces the bargaining power of CWA and its members to obtain better wages and benefits in negotiations with employers. Accordingly, this loss of bargaining power adversely affects the wages and benefits of CWA's members and, in turn, adversely affects the membership dues of CWA and the ability of CWA to grow its ranks.

12.    The ADEA and analogous state and local statutes that prohibit age discrimination in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such

an employment agency, indicating any preference, limitation, specification, or discrimination, based on age."  29 U.S.C. § 623(e).

13.     The ADEA and analogous state and local statutes make it unlawful for an employer or an employment agency to: fail or refuse to hire any individual because of such individual's age; limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age; or fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.  *See* 29 U.S.C. § 623(a), (b).

14.     The Company and Defendant Class Members are employers and/or employment agencies pursuant to 29 U.S.C. § 630(b), (c) and analogous state and local anti-discrimination laws, because they are: engaged in an industry affecting commerce and have twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year; and/or regularly undertaking with or without compensation to procure employees for an employer, to procure for employees opportunities to work for an employer, and/or are agents of such persons.

15.     Ms. Bradley, Mr. Anscombe, and Ms. Callahan, members of CWA, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

16.     When advertising employment via Facebook's advertising platform, the Company and Defendant Class Members have targeted their employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment advertising and recruiting that is directed to younger workers.

17.     When the Company has sent advertisements on Facebook to prospective applicants, the Company's employment ads have stated that the Company wants to reach people who are below a certain age threshold.  These statements thereby exclude certain workers who 40-years-old or older from receiving the employment ads and opportunities.

18.     The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

19.     When the Company makes a statement within an employment advertisement that it wants to reach people between an age range that excludes all or many workers who are 40-years-old or greater, the advertisement communicates the message that the Company is less interested in or not interested in recruiting or hiring older

workers. Such an advertisement informs the reader of the advertisement and the public at large that the employer or employment agency sending the advertisement or advertising the position has a preference for younger workers over older workers in recruiting and hiring and that the employer or employment agency is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.

20.     The pattern or practice of discrimination challenged by the charging parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

21.     This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or greater worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the Company excludes older workers from receiving the same employment advertisements that younger workers receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

22.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding older workers who are 40-years-old or greater from receiving employment advertising, recruiting, and hiring opportunities based on their age.

23.     Excluding older workers from receiving the same employment advertisements that are provided to younger workers causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.

24.     This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under the ADEA and analogous state and local laws, including violations of publication or advertising provisions of such laws.  We are filing this charge on behalf of all individuals nationwide who have been excluded from receiving employment advertisements via Facebook's advertising platform, and we are filing this charge against all employers nationwide who have used Facebook's advertising platform to place an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the charging parties herein in relation to the claims asserted in this charge.

25.     Through this charge and legal action, CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan, and others similarly situated, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under the ADEA and the state and local statutes identified above.

26.     CWA, Ms. Bradley, Mr. Anscombe, and Ms. Callahan request that the EEOC investigate all of the claims made in this charge on a class-wide basis.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Direct Dial: (202) 419-0713
FAX (202) 419-0740
Website:  www.eeoc.gov

Charge Number: 570-2018-01060

Ms. Linda Bradley                                                   Charging Party

███████████

Enterprise Holdings, Inc.                                          Respondent
600 Corporate Park Drive
Saint Louis, MO 63105

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the age of individuals who could apply.

Respondent denies that it violated the ADEA.

Evidence gathered during the investigation established that between March 2017 and January 2018, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated the ADEA by advertising on a social media platform and limiting the audience for their advertisement to younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.





Date

Mindy E. Weinstein
Acting Director

cc:   Peter Romer Friedman, Charging Party's Representative
      Outten & Golden
      601 Massachusetts Avenue, NW Second Floor West Suite
      Washington, DC 20001

cc:   William B. Jones, Respondent's Representative
      Enterprise Holdings - Corporate Headquarters
      600 Corporate Park Drive
      Saint Louis, MO 63105

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

| EEOC and Any Applicable State or Local Agency | | |
|---|---|---|

| NAME (Indicate _Mr_., Ms., Mrs.)<br>Linda Bradley | HOME TELEPHONE (Include Area Code)<br>▉ | |
|---|---|---|
| STREET ADDRESS<br>▉ | CITY, STATE & ZIP CODE<br>▉ | DATE OF BIRTH<br>▉ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| NAME<br>Nebraska Furniture Mart, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>1001+ | TELEPHONE (Include Area Code)<br>(402) 397-6100 |
|---|---|---|
| STREET ADDRESS     CITY, STATE, AND ZIP CODE<br>808 S 74th Plaza, Omaha, NE 68114 | | COUNTY<br>Douglas |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ALL)        LATEST (ALL) |
|---|---|
| ☐ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN<br><br>☐ RETALIATION    ☒ AGE    ☐ DISABILITY    ☐ GENETIC INFORMATION<br><br>☐ OTHER (specify) _____ | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):

See attachment.

*[stamp: 2018 SEP 18  AM 9: 15   131 M STREET, N.E. WASHINGTON, DC 20507   EEOC WASHINGTON FIELD OFFICE]*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the foregoing is true and correct. | *NOTARY – (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| September 18, 2018     ▉<br>Date          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

## Charge of Discrimination

The particulars are:

1.     This charge of discrimination challenges Nebraska Furniture Mart's (the "Company") violations of federal, state, and local laws that prohibit sex discrimination (including discrimination based on gender identity) in employment advertising, recruitment, and hiring, including Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on sex discrimination in employment.  This charge also challenges the Company's violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[1]

2.     As described herein, the Company has a pattern, practice, or policy of targeting job advertisements and related recruitment and hiring opportunities on Facebook's advertising platform to younger male Facebook users as prospective applicants, while excluding all female and other non-male prospective applicants, and all prospective applicants over 50 years old, from receiving the job advertisements and opportunities.  In the context of advertising for employment (as well as for other economic opportunities), the practice of segregating prospective applicants and excluding women, other non-male individuals, and all applicants over 50 years old from receiving job opportunities violates federal, state, and local laws prohibiting sex and age discrimination in employment advertising, recruiting, and hiring, even though targeting certain types of advertisements based on gender, such as clothing, may not be unlawful in various jurisdictions.

3.     Facebook requires each of its users to identify their gender when opening an account.  In turn, through its advertising platform, Facebook enables employers to target advertisements and recruitment based on the user's gender, by allowing advertisers to select either "All," "Male," or "Female" users to receive the ad.

---

[1]  *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-401 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, § 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-101 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*   The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

4.      Once the employer limits its target audience for a job advertisement based on the gender of the users it wants to reach, Facebook then effectuates the employer's gender-based targeting preferences by delivering the ads only to users who identify as the selected gender, using the gender assigned to or selected by the user to target ads on the basis of sex, while excluding all other users from receiving the advertisement.  Thus, if an advertiser selects "Male," the advertisement will not be shown to persons who publicly identify as "Female" or a "custom" gender that publicly identifies their gender pronoun as "Neutral."[2]

5.      The Company availed itself of this option and chose to deliver its ads for various positions, including highlighting the position of Delivery Prep Specialist, via Facebook's ad platform to male prospective applicants who are 18 to 50 years old, and to exclude all other users from receiving the ad.  Even when the Company highlighted a specific position on the front page of the advertisement, the advertisement was intended to and had the effect of showing a Facebook user who clicked on the advertisement a range of positions at the Company.

6.      Concurrent with the filing of this charge, the Charging Parties have filed charges against Facebook for enabling, encouraging, and assisting a number of employers and employment agencies, including the Company, to unlawfully target their advertisements based on sex and age, and for delivering the ads in a discriminatory manner.  Facebook targeted all of these discriminatory advertisements, as both an employment agency and an agent of the Company, in exchange for the Company's payment.

7.      The effect of this discriminatory sex-based targeting of employment ads is profound and only increasing as the world becomes more connected through social media.  Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift.  Facebook and other social media platforms have become a dominant force in the national labor market.  In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers, particularly through the use of targeted ads.

**THE PARTIES**

8.      Bobbi Spees is a 36-year-old woman who lives in McKean County, Pennsylvania.  She has been seeking full-time employment for approximately three and one-half years.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Spees has skills in a range of areas and would be qualified for

---

[2] As detailed in the Charge filed concurrently against Facebook, when signing up for a Facebook account, users must click a box to select either "Male" or "Female."  After creating an account, users may edit the gender identity listed in their profile and select "male," "female," or "custom," which allows them to select one of several dozen other options reflecting a range of gender identities.  If a user does not edit the gender associated with their profile, then a "he" or "she" pronoun is assigned automatically based on the initial gender the person selected.  If a user edits the gender associated with their account from their initial category selected when they opened the account, whether from male to female or from female to male, then the associated pronoun also changes automatically accordingly, although a warning pops up informing the user that pronouns are public and appear on their public profile.  If a user changes their gender to "custom," then the user must select one of three pronoun choices: "Male," "Female," or "Neutral."  Upon information and belief, Facebook's ad targeting tool is based on the gender pronoun associated with the user's profile.

numerous positions in various fields.  She is willing to work not just in Pennsylvania but beyond her local geographic area.

9.      Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Bradley has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in Ohio but also beyond her local geographic area.

10.     Renia Hudson is a 58-year-old woman who lives in Chicago, Illinois and previously lived and worked in Sacramento County, California.  For the two years prior to the filing date, she has been unemployed and/or seeking employment.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Hudson has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in California but also beyond her local geographic area.

11.     The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.  Approximately half of CWA's members are women.

12.     CWA files this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977).  CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company under applicable federal, state, and local laws prohibiting age and sex discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

13.     Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members have routinely been denied the opportunity to receive employment advertisements and recruitment on Facebook from the Company that similarly situated male Facebook users have received.

14.     If Ms. Spees, Ms. Bradley, Ms. Hudson, and/or CWA's female and other non-male members had received such ads, they would have clicked on those

3

employment ads in order to learn more about those opportunities and pursue them.

15.     Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and all female and other non-male Facebook users in the United States of any age who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and were or are currently being excluded from receiving an employment-related advertisement because the Company placed a sex-based limitation on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge ("Plaintiff Sex Class Members").

## SEX DISCRIMINATION

16.     The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding female and other non-male job applicants from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform based on their sex, including by directing Facebook to publish an employment advertisement seeking applicants for the position of Delivery Prep Specialist only to men who are 18 to 50 years old.  Examples of the Company's exclusionary employment advertisements are attached hereto as Exhibit A.

17.     Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to "print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer . . . , or relating to any classification or referral for employment by such an employment agency,  . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment."  42 U.S.C. 2000e-3(b).

18.     Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her or his status as an

employee, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. 2000e-(a), (b).

19.    The Company is an employer pursuant to 42 U.S.C. § 2000e(b) and analogous state and local anti-discrimination laws, because it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

20.    Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members are employees within the meaning of all applicable state and local laws prohibiting sex discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

21.    When advertising employment via Facebook's advertising platform, the Company has targeted its employment ads towards male prospective job applicants on the Facebook advertising platform based on their sex and simultaneously excluded female and all other non-male prospective job applicants from receiving the same employment advertising and recruiting.

22.    Facebook's ad targeting tools permit the user who receives an ad on Facebook's platform to click an icon leading to a drop-down menu that allows them to click "Why am I seeing this ad?". When the Company has elected to send its advertisements on Facebook to prospective male applicants, the notice provided states that the Company wants to reach men.  The notice does not indicate that the Company wants to reach women or other non-male users.

23.    The Company knew or reasonably should have known that when it directed Facebook—its agent in creating, developing, and sending its job advertisements—to exclude all female and other non-male users from seeing its job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach men.  Facebook clearly informs its advertisers about how its ad platform works and in particular how Facebook's ad transparency functions will be included with ads that are created and disseminated on Facebook's platform. Facebook's publicly available "Advertiser Help Center" details its policy of telling users why they are being shown specific ads.  Facebook describes the "Why am I seeing this ad" function under a sub-section titled "Our Advertising Principles," and Facebook highlights this function as part of Facebook's commitment to advertising transparency.  Facebook emphasizes that "anyone can visit their Ad Preferences to learn about the interests and information that influence the ads they see."

24.    By providing this notice along with the advertisement, Facebook publishes and causes to be published this discriminatory statement about employment as both an employment agency and an agent of the Company.  Likewise, the Company publishes or causes to be published this discriminatory notice about employment as an employer or employment agency.  This notice is evidence that the employer *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

25.     The notice stating that the Company wants to reach men without mentioning female or other non-male individuals informs the reader of the advertisement and anyone else who may view the ad that the Company has a preference for male workers over female and other non-male workers in recruiting and hiring and that the Company is limiting job opportunities to male applicants and drawing a distinction between male applicants and female/non-male applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding women and other non-male individuals from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on sex.

26.     The pattern or practice of discrimination based on sex challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing female and other non-male workers from applying for jobs with the Company based on their sex, and with the intent of failing or refusing to hire female and other non-male workers who are excluded from receiving such employment ads based on their sex.

27.     The pattern or practice of discrimination described above constitutes intentional discrimination and disparate treatment under Title VII and analogous state and local anti-discrimination laws.  It treats female and other non-male prospective applicants worse than male applicants in advertising, recruiting, and hiring prospective applicants for job opportunities based on their sex, because the Company excludes Facebook users identified as female or other non-male categories from receiving the same employment advertisements that are directed towards users identified as male.  In addition, this practice limits, segregates, and classifies workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on sex, because workers are classified based on their sex, segregated from receiving ads that other workers receive, and excluded from receiving advertising, recruitment, and hiring opportunities that workers of another gender receive from the Company.

28.     The practice also constitutes unlawful sex-based stereotyping, because in excluding female and other non-male Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that female and other non-male workers will not be or are not interested in the relevant job opportunities because of their sex, or that they will not be or are not qualified applicants for the position because of their sex.

29.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding female and other non-male Facebook users from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform based on their sex has the effect of disproportionately excluding female and other non-male potential job applicants from receiving employment advertising, recruiting, and hiring opportunities based on their sex.

30.     Excluding female and other non-male Facebook users from receiving the same
employment advertisements that are provided to male users causes and has a
disproportionate adverse effect on the employment advertising and recruitment
opportunities that female and other non-male potential job applicants receive and
their opportunities to be hired by the Company.  This pattern or practice has the
effect of limiting, segregating, and classifying workers based on their sex and
depriving them of employment opportunities because it places prospective
applicants into groups that will and will not be targeted for advertising and
recruitment opportunities in a manner that results in female and other non-male
workers disproportionately being in the group of prospective applicants who will
not receive advertising or recruiting.  In addition, this practice has the effect of
depriving all workers of a diverse work environment regardless of their own sex.

## AGE DISCRIMINATION

31.     Ms. Bradley, Ms. Hudson, and CWA's members have routinely been denied the
opportunity to receive employment advertisements and recruitment on Facebook
from the Company that similarly situated Facebook users who are younger than
40-years-old have received.  If Ms. Bradley, Ms. Hudson, and/or CWA's
members had received such ads, they would have clicked on those employment
ads in order to learn more about those opportunities and pursue them.

32.     Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and
all Facebook users in the United States who are 40-years-old or older who are or
were interested in receiving employment-related advertisements or recruiting
from employers or employment agencies via Facebook's ad platform and were or
are currently being excluded from receiving employment-related advertisements
because the Company placed an upper age limit on the population of Facebook
users that was eligible to receive an employment-related advertisement, at any
time from the earliest date actionable under the limitations period applicable to
the given claim until the date of judgment in any judicial proceeding initiated by
the Charging Parties herein in relation to the claims asserted in this charge
("Plaintiff Age Class Members").

33.     The ADEA and analogous state and local statutes that prohibit age discrimination
in employment advertising, recruitment, and hiring make it unlawful for an
employer or employment agency "to print or publish, or cause to be printed or
published, any notice or advertisement relating to employment by such an
employer . . . or relating to any classification or referral for employment by such
an employment agency, indicating any preference, limitation, specification, or
discrimination, based on age."  29 U.S.C. § 623(e).

34.     The ADEA and analogous state and local statutes make it unlawful for an
employer or an employment agency to: fail or refuse to hire any individual
because of such individual's age; limit, segregate, or classify employees in any
way which would deprive or tend to deprive any individual of employment
opportunities because of such individual's age; or fail or refuse to refer for
employment, or otherwise to discriminate against, any individual because of such

7

individual's age, or to classify or refer for employment any individual on the basis of such individual's age.  *See* 29 U.S.C. § 623(a), (b).

35.  The Company is an employer pursuant to 29 U.S.C. § 630(b) and analogous state and local anti-discrimination laws, because it is engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

36.  Ms. Bradley, Ms. Hudson, and CWA's members, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

37.  When advertising employment via Facebook's advertising platform, the Company has intentionally targeted its employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment advertising and recruiting that is directed to younger workers.

38.  The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

39.  When the Company has sent advertisements on Facebook to prospective applicants, the notice that states "Why am I seeing this ad?" has stated that the Company wants to reach people who are below a certain age threshold.  This statement is evidence that the Company *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

40.  The notice informs the reader of the advertisement and the public at large that the Company has a preference for younger applicants rather than older applicants in recruiting and hiring and that the Company is limiting job opportunities to younger applicants and drawing a distinction between younger and older applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding older Facebook users from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on age.

41.  The pattern or practice of discrimination based on age challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

42.  This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or older worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the

Company excludes older Facebook users from receiving the same employment advertisements that younger users receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

43.     The practice also constitutes unlawful age-based stereotyping, because in excluding older Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that older workers are not or will not be interested in or qualified for the relevant job opportunities because of their age.

44.     In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older Facebook users from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding potential job applicants who are 40-years-old or older from receiving employment advertising, recruiting, and hiring opportunities based on their age.

45.     Excluding older Facebook users from receiving the same employment advertisements that are provided to younger users causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.  In addition, this practice has the effect of depriving all workers of an age-diverse work environment regardless of their age.

## CLASS CLAIMS

46.     This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under Title VII and the ADEA, and analogous state and local laws, including violations of publication or advertising provisions of such laws.  The charging parties file this charge on behalf of all individuals nationwide who have been excluded from receiving the Company's employment advertisements via Facebook's advertising platform based on their sex or gender and/or age at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge.

47.     Through this charge and legal action, Ms. Spees, Ms. Bradley, Ms. Hudson, and all others similarly situated, along with CWA and its female and other non-male members, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under Title VII and the ADEA and the state and local statutes identified above.

48.     Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA request that the EEOC investigate all of the claims made in this charge on a class-wide basis.

49.     This charge is intended to toll the statute of limitations for all potential applicants or employees nationwide who may have similar claims and to piggy-back on any prior charges that Ms. Bradley, Ms. Hudson, CWA, or other individuals have filed challenging the same practices by the Company.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Washington Direct Dial: (202) 419-0713
FAX (202) 419-0740
Website: www.eeoc.gov

Charge Number: 570-2018-03517

Ms. Linda Bradley                                    Charging Party

Nebraska Furniture Mart, Inc.                        Respondent
808 S 74th Plaza
Omaha, NE 68114

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated Title VII of the Civil Rights Act (Title VII), as amended, on the basis of sex (female) and the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the sex and age of individuals who could apply.

Respondent denies that it violated Title VII and the ADEA.

Evidence gathered during the investigation established that between June 2017 and December 2017, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the sex and age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated Title VII and the ADEA by advertising on a social media platform and limiting the audience for their advertisement to male and younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.



JUL 0 5 2019
_____
Date

Mindy E. Weinstein
Acting Director

cc:     Peter Romer Friedman, Charging Party's Representative
        Outten & Golden
        601 Massachusetts Avenue, NW Second Floor West Suite
        Washington, DC 20001

cc:     Anthony J. Romano, Respondent's Representative
        Littler Mendelson, P.C.
        1201 Walnut
        Suite 1450
        Kansas City, MO 64106

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

EEOC and Any Applicable State or Local Agency

| NAME (Indicate Mr., Ms., Mrs.)<br>Linda Bradley | HOME TELEPHONE (Include Area Code) |
|---|---|
| STREET ADDRESS ▮▮▮ | CITY, STATE & ZIP CODE ▮▮▮ | DATE OF BIRTH ▮▮▮ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| NAME<br>Renewal by Andersen LLC | NUMBER OF EMPLOYEES, MEMBERS<br>500+ | TELEPHONE (Include Area Code)<br>(651) 264-5150 |
|---|---|---|
| STREET ADDRESS    CITY, STATE, AND ZIP CODE<br>100 4th Ave North, Bayport, MN 55003-1096 | | COUNTY<br>Washington |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ALL)    LATEST (ALL) |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br><br>☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION<br><br>☐ OTHER (specify) _____ | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):

See attachment.

*(stamp, rotated:)* WASHINGTON EEOC FIELD OFFICE 2018 SEP 18 AM 9: 15 131 M STREET N.E. WASHINGTON, DC 20507

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | *NOTARY – (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| September 18, 2018<br>Date    Charging Party (Signature) ▮▮▮ | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

## Charge of Discrimination

The particulars are:

1. This charge of discrimination challenges Renewal by Andersen LLC's (the "Company") violations of federal, state, and local laws that prohibit sex discrimination (including discrimination based on gender identity) in employment advertising, recruitment, and hiring, including Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on sex discrimination in employment.  This charge also challenges the Company's violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[1]

2. As described herein, the Company has a pattern, practice, or policy of targeting job advertisements and related recruitment and hiring opportunities on Facebook's advertising platform to younger male Facebook users as prospective applicants, while excluding all female and other non-male prospective applicants, and all prospective applicants over 45 years old, from receiving the job advertisements and opportunities.  In the context of advertising for employment (as well as for other economic opportunities), the practice of segregating prospective applicants and excluding women, other non-male individuals, and all applicants over 45 years old from receiving job opportunities violates federal, state, and local laws prohibiting sex and age discrimination in employment advertising, recruiting, and hiring, even though targeting certain types of advertisements based on gender, such as clothing, may not be unlawful in various jurisdictions.

3. Facebook requires each of its users to identify their gender when opening an account.  In turn, through its advertising platform, Facebook enables employers to target advertisements and recruitment based on the user's gender, by allowing advertisers to select either "All," "Male," or "Female" users to receive the ad.

---

[1] *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-401 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, § 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-101 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

4.      Once the employer limits its target audience for a job advertisement based on the gender of the users it wants to reach, Facebook then effectuates the employer's gender-based targeting preferences by delivering the ads only to users who identify as the selected gender, using the gender assigned to or selected by the user to target ads on the basis of sex, while excluding all other users from receiving the advertisement. Thus, if an advertiser selects "Male," the advertisement will not be shown to persons who publicly identify as "Female" or a "custom" gender that publicly identifies their gender pronoun as "Neutral."[2]

5.      The Company availed itself of this option and chose to deliver its ads for various positions, including highlighting the position of Installer, via Facebook's ad platform to male prospective applicants who are 25 to 45 years old, and to exclude all other users from receiving the ad. Even when the Company highlighted a specific position on the front page of the advertisement, the advertisement was intended to and had the effect of showing a Facebook user who clicked on the advertisement a range of positions at the Company.

6.      Concurrent with the filing of this charge, the Charging Parties have filed charges against Facebook for enabling, encouraging, and assisting a number of employers and employment agencies, including the Company, to unlawfully target their advertisements based on sex and age, and for delivering the ads in a discriminatory manner. Facebook targeted all of these discriminatory advertisements, as both an employment agency and an agent of the Company, in exchange for the Company's payment.

7.      The effect of this discriminatory sex-based targeting of employment ads is profound and only increasing as the world becomes more connected through social media. Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift. Facebook and other social media platforms have become a dominant force in the national labor market. In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers, particularly through the use of targeted ads.

**THE PARTIES**

8.      Bobbi Spees is a 36-year-old woman who lives in McKean County, Pennsylvania. She has been seeking full-time employment for approximately three and one-half years. She regularly uses Facebook, and has used Facebook to seek employment opportunities. Ms. Spees has skills in a range of areas and would be qualified for

---

[2] As detailed in the Charge filed concurrently against Facebook, when signing up for a Facebook account, users must click a box to select either "Male" or "Female." After creating an account, users may edit the gender identity listed in their profile and select "male," "female," or "custom," which allows them to select one of several dozen other options reflecting a range of gender identities. If a user does not edit the gender associated with their profile, then a "he" or "she" pronoun is assigned automatically based on the initial gender the person selected. If a user edits the gender associated with their account from their initial category selected when they opened the account, whether from male to female or from female to male, then the associated pronoun also changes automatically accordingly, although a warning pops up informing the user that pronouns are public and appear on their public profile. If a user changes their gender to "custom," then the user must select one of three pronoun choices: "Male," "Female," or "Neutral." Upon information and belief, Facebook's ad targeting tool is based on the gender pronoun associated with the user's profile.

numerous positions in various fields.  She is willing to work not just in Pennsylvania but beyond her local geographic area.

9. Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Bradley has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in Ohio but also beyond her local geographic area.

10. Renia Hudson is a 58-year-old woman who lives in Chicago, Illinois and previously lived and worked in Sacramento County, California.  For the two years prior to the filing date, she has been unemployed and/or seeking employment.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Hudson has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in California but also beyond her local geographic area.

11. The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.  Approximately half of CWA's members are women.

12. CWA files this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977).  CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company under applicable federal, state, and local laws prohibiting age and sex discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

13. Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members have routinely been denied the opportunity to receive employment advertisements and recruitment on Facebook from the Company that similarly situated male Facebook users have received.

14. If Ms. Spees, Ms. Bradley, Ms. Hudson, and/or CWA's female and other non-male members had received such ads, they would have clicked on those

employment ads in order to learn more about those opportunities and pursue them.

15.     Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and all female and other non-male Facebook users in the United States of any age who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and were or are currently being excluded from receiving an employment-related advertisement because the Company placed a sex-based limitation on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge ("Plaintiff Sex Class Members").

## SEX DISCRIMINATION

16.     The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding female and other non-male job applicants from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform based on their sex, including by directing Facebook to publish an employment advertisement seeking applicants for the position of Installer only to men who are 25 to 45 years old.  Examples of the Company's exclusionary employment advertisements are attached hereto as Exhibit A.

17.     Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to "print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer . . . , or relating to any classification or referral for employment by such an employment agency,  . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment."  42 U.S.C. 2000e-3(b).

18.     Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her or his status as an

4

employee, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. 2000e-(a), (b).

19.   The Company is an employer pursuant to 42 U.S.C. § 2000e(b), and analogous state and local anti-discrimination laws, because it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

20.   Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members are employees within the meaning of all applicable state and local laws prohibiting sex discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

21.   When advertising employment via Facebook's advertising platform, the Company has targeted its employment ads towards male prospective job applicants on the Facebook advertising platform based on their sex and simultaneously excluded female and all other non-male prospective job applicants from receiving the same employment advertising and recruiting.

22.   Facebook's ad targeting tools permit the user who receives an ad on Facebook's platform to click an icon leading to a drop-down menu that allows them to click "Why am I seeing this ad?". When the Company has elected to send its advertisements on Facebook to prospective male applicants, the notice provided states that the Company wants to reach men.  The notice does not indicate that the Company wants to reach women or other non-male users.

23.   The Company knew or reasonably should have known that when it directed Facebook—its agent in creating, developing, and sending its job advertisements—to exclude all female and other non-male users from seeing its job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach men.  Facebook clearly informs its advertisers about how its ad platform works and in particular how Facebook's ad transparency functions will be included with ads that are created and disseminated on Facebook's platform. Facebook's publicly available "Advertiser Help Center" details its policy of telling users why they are being shown specific ads.  Facebook describes the "Why am I seeing this ad" function under a sub-section titled "Our Advertising Principles," and Facebook highlights this function as part of Facebook's commitment to advertising transparency.  Facebook emphasizes that "anyone can visit their Ad Preferences to learn about the interests and information that influence the ads they see."

24.   By providing this notice along with the advertisement, Facebook publishes and causes to be published this discriminatory statement about employment as both an employment agency and an agent of the Company.  Likewise, the Company publishes or causes to be published this discriminatory notice about employment as an employer or employment agency.  This notice is evidence that the employer *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

25.   The notice stating that the Company wants to reach men without mentioning female or other non-male individuals informs the reader of the advertisement and anyone else who may view the ad that the Company has a preference for male workers over female and other non-male workers in recruiting and hiring and that the Company is limiting job opportunities to male applicants and drawing a distinction between male applicants and female/non-male applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding women and other non-male individuals from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on sex.

26.   The pattern or practice of discrimination based on sex challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing female and other non-male workers from applying for jobs with the Company based on their sex, and with the intent of failing or refusing to hire female and other non-male workers who are excluded from receiving such employment ads based on their sex.

27.   The pattern or practice of discrimination described above constitutes intentional discrimination and disparate treatment under Title VII and analogous state and local anti-discrimination laws.  It treats female and other non-male prospective applicants worse than male applicants in advertising, recruiting, and hiring prospective applicants for job opportunities based on their sex, because the Company excludes Facebook users identified as female or other non-male categories from receiving the same employment advertisements that are directed towards users identified as male.  In addition, this practice limits, segregates, and classifies workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on sex, because workers are classified based on their sex, segregated from receiving ads that other workers receive, and excluded from receiving advertising, recruitment, and hiring opportunities that workers of another gender receive from the Company.

28.   The practice also constitutes unlawful sex-based stereotyping, because in excluding female and other non-male Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that female and other non-male workers will not be or are not interested in the relevant job opportunities because of their sex, or that they will not be or are not qualified applicants for the position because of their sex.

29.   In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding female and other non-male Facebook users from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform based on their sex has the effect of disproportionately excluding female and other non-male potential job applicants from receiving employment advertising, recruiting, and hiring opportunities based on their sex.

6

30.     Excluding female and other non-male Facebook users from receiving the same
        employment advertisements that are provided to male users causes and has a
        disproportionate adverse effect on the employment advertising and recruitment
        opportunities that female and other non-male potential job applicants receive and
        their opportunities to be hired by the Company.  This pattern or practice has the
        effect of limiting, segregating, and classifying workers based on their sex and
        depriving them of employment opportunities because it places prospective
        applicants into groups that will and will not be targeted for advertising and
        recruitment opportunities in a manner that results in female and other non-male
        workers disproportionately being in the group of prospective applicants who will
        not receive advertising or recruiting.  In addition, this practice has the effect of
        depriving all workers of a diverse work environment regardless of their own sex.

## AGE DISCRIMINATION

31.     Ms. Bradley, Ms. Hudson, and CWA's members have routinely been denied the
        opportunity to receive employment advertisements and recruitment on Facebook
        from the Company that similarly situated Facebook users who are younger than
        40-years-old have received.  If Ms. Bradley, Ms. Hudson, and/or CWA's
        members had received such ads, they would have clicked on those employment
        ads in order to learn more about those opportunities and pursue them.

32.     Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and
        all Facebook users in the United States who are 40-years-old or older who are or
        were interested in receiving employment-related advertisements or recruiting
        from employers or employment agencies via Facebook's ad platform and were or
        are currently being excluded from receiving employment-related advertisements
        because the Company placed an upper age limit on the population of Facebook
        users that was eligible to receive an employment-related advertisement, at any
        time from the earliest date actionable under the limitations period applicable to
        the given claim until the date of judgment in any judicial proceeding initiated by
        the Charging Parties herein in relation to the claims asserted in this charge
        ("Plaintiff Age Class Members").

33.     The ADEA and analogous state and local statutes that prohibit age discrimination
        in employment advertising, recruitment, and hiring make it unlawful for an
        employer or employment agency "to print or publish, or cause to be printed or
        published, any notice or advertisement relating to employment by such an
        employer . . . or relating to any classification or referral for employment by such
        an employment agency, indicating any preference, limitation, specification, or
        discrimination, based on age."  29 U.S.C. § 623(e).

34.     The ADEA and analogous state and local statutes make it unlawful for an
        employer or an employment agency to: fail or refuse to hire any individual
        because of such individual's age; limit, segregate, or classify employees in any
        way which would deprive or tend to deprive any individual of employment
        opportunities because of such individual's age; or fail or refuse to refer for
        employment, or otherwise to discriminate against, any individual because of such

individual's age, or to classify or refer for employment any individual on the basis of such individual's age.  *See* 29 U.S.C. § 623(a), (b).

35.   The Company is an employer pursuant to 29 U.S.C. § 630(b) and analogous state and local anti-discrimination laws because it is engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

36.   Ms. Bradley, Ms. Hudson, and CWA's members, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

37.   When advertising employment via Facebook's advertising platform, the Company has intentionally targeted its employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment advertising and recruiting that is directed to younger workers.

38.   The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

39.   When the Company has sent advertisements on Facebook to prospective applicants, the notice that states "Why am I seeing this ad?" has stated that the Company wants to reach people who are below a certain age threshold.  This statement is evidence that the Company *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

40.   The notice informs the reader of the advertisement and the public at large that the Company has a preference for younger applicants rather than older applicants in recruiting and hiring and that the Company is limiting job opportunities to younger applicants and drawing a distinction between younger and older applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding older Facebook users from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on age.

41.   The pattern or practice of discrimination based on age challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs with the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

42.   This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-discrimination laws.  It treats older workers who are 40-years-old or older worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the

Company excludes older Facebook users from receiving the same employment advertisements that younger users receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

43.   The practice also constitutes unlawful age-based stereotyping, because in excluding older Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that older workers are not or will not be interested in or qualified for the relevant job opportunities because of their age.

44.   In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older Facebook users from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding potential job applicants who are 40-years-old or older from receiving employment advertising, recruiting, and hiring opportunities based on their age.

45.   Excluding older Facebook users from receiving the same employment advertisements that are provided to younger users causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired by the Company.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.  In addition, this practice has the effect of depriving all workers of an age-diverse work environment regardless of their age.

**CLASS CLAIMS**

46.   This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under Title VII and the ADEA, and analogous state and local laws, including violations of publication or advertising provisions of such laws.  The charging parties file this charge on behalf of all individuals nationwide who have been excluded from receiving the Company's employment advertisements via Facebook's advertising platform based on their sex or gender and/or age at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge.

47.   Through this charge and legal action, Ms. Spees, Ms. Bradley, Ms. Hudson, and all others similarly situated, along with CWA and its female and other non-male members, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under Title VII and the ADEA and the state and local statutes identified above.

48.   Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA request that the EEOC investigate all of the claims made in this charge on a class-wide basis.

49.   This charge is intended to toll the statute of limitations for all potential applicants or employees nationwide who may have similar claims and to piggy-back on any prior charges that Ms. Bradley, Ms. Hudson, CWA, or other individuals have filed challenging the same practices by the Company.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Direct Dial: (202) 419-0713
FAX (202) 419-0740
Website: www.eeoc.gov

Charge Number: 570-2018-03520

Ms. Linda Bradley                                    Charging Party

█████████████████

Renewal by Andersen, LLC                              Respondent
100 4th Avenue N
Bayport, MN 55003

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated Title VII of the Civil Rights Act (Title VII), as amended, on the basis of sex (female) and the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the sex and age of individuals who could apply.

Respondent denies that it violated Title VII and the ADEA.

Evidence gathered during the investigation established that between September 2017 and January 2018, Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the sex and age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated Title VII and the ADEA by advertising on a social media platform and limiting the audience for their advertisement to male and younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.



JUL 0 5 2019
_____
Date

Mindy E. Weinstein
Acting Director


cc:   Peter Romer Friedman, Charging Party's Representative
      Outten & Golden
      601 Massachusetts Avenue, NW Second Floor West Suite
      Washington, DC 20001

cc:   Sarah Bryan Fask, Respondent's Representative
      Littler Mendelson, P.C.
      1600 Cherry Street
      Suite 1400
      Philadelphia, PA 19102

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before<br>completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER |
| --- | --- | --- |

| EEOC and Any Applicable State or Local Agency |
| --- |

| NAME (Indicate Mr., Ms., Mrs.)<br>Linda Bradley | HOME TELEPHONE (Include Area Code)<br>████████████ | |
| --- | --- | --- |
| STREET ADDRESS<br>████████ | CITY, STATE & ZIP CODE | DATE OF BIRTH<br>████████ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| NAME<br>Sandhills Publishing Company | NUMBER OF EMPLOYEES, MEMBERS<br>1001+ | TELEPHONE (Include Area Code)<br>(402) 458-2912 |
| --- | --- | --- |
| STREET ADDRESS      CITY, STATE, AND ZIP CODE<br>120 W. Harvest Drive, Lincoln, NE 68521 | | COUNTY<br>Lancaster |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ALL)      LATEST (ALL) |
| --- | --- |
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br><br>☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION<br><br>☐ OTHER (specify) _____ | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):

See attachment.

*[stamp: 131 M STREET, N.E. WASHINGTON, DC 20507   2018 SEP 18  AM 9: 15   WASHINGTON FIELD OFFICE EEOC]*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | *NOTARY – (When necessary for State and Local Requirements) |
| --- | --- |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>September 18, 2018<br>Date       Charging Party (Signature) | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

## Charge of Discrimination

The particulars are:

1.      This charge of discrimination challenges Sandhills Publishing Company d/b/a Need Work Today's (the "Company") violations of federal, state, and local laws that prohibit sex discrimination (including discrimination based on gender identity) in employment advertising, recruitment, and hiring, including Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on sex discrimination in employment.  This charge also challenges the Company's violations of federal, state, and local laws that prohibit age discrimination in employment advertising, recruitment, and hiring, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and all state and local anti-discrimination statutes that have parallel prohibitions on age discrimination in employment.[1]

2.      As described herein, the Company has a pattern, practice, or policy of targeting job advertisements and related recruitment and hiring opportunities on Facebook's advertising platform to younger male Facebook users as prospective applicants, while excluding all female and other non-male prospective applicants, and all prospective applicants over 60 years old, from receiving the job advertisements and opportunities.  In the context of advertising for employment (as well as for other economic opportunities), the practice of segregating prospective applicants and excluding women, other non-male individuals, and all applicants over 60 years old from receiving job opportunities violates federal, state, and local laws prohibiting sex and age discrimination in employment advertising, recruiting, and hiring, even though targeting certain types of advertisements based on gender, such as clothing, may not be unlawful in various jurisdictions.

3.      Facebook requires each of its users to identify their gender when opening an account.  In turn, through its advertising platform, Facebook enables employers to target advertisements and recruitment based on the user's gender, by allowing advertisers to select either "All," "Male," or "Female" users to receive the ad.

---

[1]  *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 41-1461 *et seq.*; Colo. Rev. Stat. Ann. §§ 24-34-401 *et seq.*; Conn. Gen. Stat. §§ 46a-51 *et seq.*; Fla. Stat. Ann. §§ 760.01 *et seq.*; Haw. Rev. Stat. Ann. §§ 378-1 *et seq.*; Idaho Code Ann. §§ 67-5901 *et seq.*; 775 Ill. Comp. Stat. Ann. §§ 5/1-101 *et seq.*; Iowa Code Ann. §§ 216.1 *et seq.*; Kan. Stat. Ann. §§ 44-1111 *et seq.*; Mass. Gen. Laws Ann. ch. 151B, § 1 *et seq.*; Md. Code Ann., State Gov't §§ 20-101 *et seq.*; Mo. Ann. Stat. §§ 213.010 *et seq.*; Mont. Code Ann. §§ 49-2-101 *et seq.*; Nev. Rev. Stat. Ann. §§ 613.310 *et seq.*; N.H. Rev. Stat. Ann. §§ 354-A:1 *et seq.*; N.M. Stat. Ann. §§ 28-1-1 *et seq.*; 43 Pa. Stat. Ann. §§ 951 *et seq.*; 28 R.I. Gen. Laws Ann. §§ 28-5-1 *et seq.*; S.C. Code Ann. §§ 1-13-10 *et seq.*; Tex. Labor Code Ann. § 21.001 *et seq.*; Utah Code Ann. §§ 34A-5-101 *et seq.*; Va. Code Ann. §§ 2.2-3900 *et seq.*; Wis. Stat. Ann. §§ 111.31 *et seq.*  The following state laws are excluded from this charge, because Plaintiffs need not exhaust administrative remedies to bring an action in court under those statutes: the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20 *et seq.*; the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363A.01 *et seq.*; the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code Ann. §§ 4112.01 *et seq.*; and the Washington Law Against Discrimination, Wash. Rev. Code Ann. §§ 49.60.10 *et seq.*, *see also id.* § 49.44.090.

4.   Once the employer or employment agency limits its target audience for a job advertisement based on the gender of the users it wants to reach, Facebook then effectuates the employer or employment agency's gender-based targeting preferences by delivering the ads only to users who identify as the selected gender, using the gender assigned to or selected by the user to target ads on the basis of sex, while excluding all other users from receiving the advertisement. Thus, if an advertiser selects "Male," the advertisement will not be shown to persons who publicly identify as "Female" or a "custom" gender that publicly identifies their gender pronoun as "Neutral."[2]

5.   The Company availed itself of this option and chose to deliver its ads for various positions, including highlighting positions in farming, construction, trucking and aviation, via Facebook's ad platform to male prospective applicants who are 21 to 60 years old, and to exclude all other users from receiving the ad.  Even when the Company highlighted a specific position on the front page of the advertisement, the advertisement was intended to and had the effect of showing a Facebook user who clicked on the advertisement a range of positions.

6.   Concurrent with the filing of this charge, the Charging Parties have filed charges against Facebook for enabling, encouraging, and assisting a number of employers and employment agencies, including the Company, to unlawfully target their advertisements based on sex and age, and for delivering the ads in a discriminatory manner.  Facebook targeted all of these discriminatory advertisements, as both an employment agency and an agent of the Company, in exchange for the Company's payment.

7.   The effect of this discriminatory sex-based targeting of employment ads is profound and only increasing as the world becomes more connected through social media.  Over the past five years, employment advertising, recruiting, and hiring has undergone a seismic shift.  Facebook and other social media platforms have become a dominant force in the national labor market.  In fact, social media has become a primary means for big and small employers to identify, recruit, and hire workers, particularly through the use of targeted ads.

**THE PARTIES**

8.   Bobbi Spees is a 36-year-old woman who lives in McKean County, Pennsylvania. She has been seeking full-time employment for approximately three and one-half years.  She regularly uses Facebook, and has used Facebook to seek employment

---

[2] As detailed in the Charge filed concurrently against Facebook, when signing up for a Facebook account, users must click a box to select either "Male" or "Female."  After creating an account, users may edit the gender identity listed in their profile and select "male," "female," or "custom," which allows them to select one of several dozen other options reflecting a range of gender identities.  If a user does not edit the gender associated with their profile, then a "he" or "she" pronoun is assigned automatically based on the initial gender the person selected.  If a user edits the gender associated with their account from their initial category selected when they opened the account, whether from male to female or from female to male, then the associated pronoun also changes automatically accordingly, although a warning pops up informing the user that pronouns are public and appear on their public profile.  If a user changes their gender to "custom," then the user must select one of three pronoun choices: "Male," "Female," or "Neutral."  Upon information and belief, Facebook's ad targeting tool is based on the gender pronoun associated with the user's profile.

opportunities.  Ms. Spees has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in Pennsylvania but beyond her local geographic area.

9.      Linda Bradley is a 45-year-old woman who lives in Franklin County, Ohio.  She was recently laid off from her longstanding job at a call center in Franklin County, Ohio.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Bradley has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in Ohio but also beyond her local geographic area.

10.     Renia Hudson is a 58-year-old woman who lives in Chicago, Illinois and previously lived and worked in Sacramento County, California.  For the two years prior to the filing date, she has been unemployed and/or seeking employment.  She regularly uses Facebook, and has used Facebook to seek employment opportunities.  Ms. Hudson has skills in a range of areas and would be qualified for numerous positions in various fields.  She is willing to work not just in California but also beyond her local geographic area.

11.     The Communications Workers of America ("CWA") is an international labor union representing over 700,000 workers in a broad range of industries, including telecommunications, cable, information technology, airline, manufacturing, print and broadcast news media, education, public service, and healthcare, among others.  CWA's central purpose is protecting the rights of workers through collective bargaining and public advocacy.  CWA's members work, live, and seek employment throughout the United States.  CWA members reflect an impressive diversity of skills, interests, work experience, and talent, making them a rich pool of potential candidates for job opportunities.  As a union, CWA has a strong social media presence and invests substantial resources in educating its members about the value of social media for networking and advocacy.  CWA, which has an estimated over 160,000 members who are over age 40, counts hundreds of thousands of Facebook users among its ranks.  Approximately half of CWA's members are women.

12.     CWA files this charge on behalf of its members pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (U.S. 1977).  CWA has associational standing to pursue the claims asserted herein because many of CWA's members have standing to sue the Company under applicable federal, state, and local laws prohibiting age and sex discrimination; the interests that CWA seeks to protect are germane to its purpose; and neither the claims asserted nor the relief requested by CWA requires the participation of any individual member of CWA for the relief that CWA is seeking.

13.     Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members have routinely been denied the opportunity to receive employment advertisements and recruitment on Facebook from the Company that similarly situated male Facebook users have received.

14.     If Ms. Spees, Ms. Bradley, Ms. Hudson, and/or CWA's female and other non-male members had received such ads, they would have clicked on those

3

employment ads in order to learn more about those opportunities and pursue them.

15.    Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and all female and other non-male Facebook users in the United States of any age who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and were or are currently being excluded from receiving an employment-related advertisement because the Company placed a sex-based limitation on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge ("Plaintiff Sex Class Members").

## SEX DISCRIMINATION

16.    The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding female and other non-male job applicants from the population of individuals to whom the Company directs employment advertisements and recruiting on Facebook's ad platform based on their sex, including by directing Facebook to publish an employment advertisement seeking applicants for positions in farming, construction, trucking, and aviation only to men who are 21 to 60 years old.  Examples of the Company's exclusionary employment advertisements are attached hereto as Exhibit A.

17.    Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to "print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer . . . , or relating to any classification or referral for employment by such an employment agency,  . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment."  42 U.S.C. 2000e-3(b).

18.    Title VII and analogous state and local statutes that prohibit sex discrimination (including gender identity discrimination) in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her or his status as an

4

employee, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. 2000e-(a), (b).

19.  The Company is an employer and employment agency pursuant to 42 U.S.C. § 2000e(b), (c) and analogous state and local anti-discrimination laws, because it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and it regularly undertakes with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer.

20.  Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA's female and other non-male members are employees within the meaning of all applicable state and local laws prohibiting sex discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

21.  When advertising employment via Facebook's advertising platform, the Company has targeted employment ads towards male prospective job applicants on the Facebook advertising platform based on their sex and simultaneously excluded female and all other non-male prospective job applicants from receiving the same employment advertising and recruiting.

22.  Facebook's ad targeting tools permit the user who receives an ad on Facebook's platform to click an icon leading to a drop-down menu that allows them to click "Why am I seeing this ad?". When the Company has elected to send its advertisements on Facebook to prospective male applicants, the notice provided states that the Company wants to reach men.  The notice does not indicate that the Company wants to reach women or other non-male users.

23.  The Company knew or reasonably should have known that when it directed Facebook—its agent in creating, developing, and sending its job advertisements— to exclude all female and other non-male users from seeing its job advertisements that a portion of the "Sponsored Ad" would make a statement that the employer wants to reach men.  Facebook clearly informs its advertisers about how its ad platform works and in particular how Facebook's ad transparency functions will be included with ads that are created and disseminated on Facebook's platform.  Facebook's publicly available "Advertiser Help Center" details its policy of telling users why they are being shown specific ads.  Facebook describes the "Why am I seeing this ad" function under a sub-section titled "Our Advertising Principles," and Facebook highlights this function as part of Facebook's commitment to advertising transparency.  Facebook emphasizes that "anyone can visit their Ad Preferences to learn about the interests and information that influence the ads they see."

24.  By providing this notice along with the advertisement, Facebook publishes and causes to be published this discriminatory statement about employment as both an employment agency and an agent of the Company.  Likewise, the Company publishes or causes to be published this discriminatory notice about employment as an employer or employment agency.  This notice is evidence that the employer

or employment agency *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

25.   The notice stating that the Company wants to reach men without mentioning female or other non-male individuals informs the reader of the advertisement and anyone else who may view the ad that the Company has a preference for male workers over female and other non-male workers in recruiting and hiring and that the Company is limiting job opportunities to male applicants and drawing a distinction between male applicants and female/non-male applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding women and other non-male individuals from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on sex.

26.   The pattern or practice of discrimination based on sex challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing female and other non-male workers from applying for jobs advertised by the Company based on their sex, and with the intent of failing or refusing to hire female and other non-male workers who are excluded from receiving such employment ads based on their sex.

27.   The pattern or practice of discrimination described above constitutes intentional discrimination and disparate treatment under Title VII and analogous state and local anti-discrimination laws.  It treats female and other non-male prospective applicants worse than male applicants in advertising, recruiting, and hiring prospective applicants for job opportunities based on their sex, because the Company excludes Facebook users identified as female or other non-male categories from receiving the same employment advertisements that are directed towards users identified as male.  In addition, this practice limits, segregates, and classifies workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on sex, because workers are classified based on their sex, segregated from receiving ads that other workers receive, and excluded from receiving advertising, recruitment, and hiring opportunities that workers of another gender receive from the Company.

28.   The practice also constitutes unlawful sex-based stereotyping, because in excluding female and other non-male Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that female and other non-male workers will not be or are not interested in the relevant job opportunities because of their sex, or that they will not be or are not qualified applicants for the position because of their sex.

29.   In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding female and other non-male Facebook users from the population of individuals to whom the Company directs employment advertisements and recruiting on Facebook's ad platform based on their sex has the effect of disproportionately excluding female and other non-male potential job

applicants from receiving employment advertising, recruiting, and hiring opportunities based on their sex.

30.    Excluding female and other non-male Facebook users from receiving the same employment advertisements that are provided to male users causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that female and other non-male potential job applicants receive and their opportunities to be hired.  This pattern or practice has the effect of limiting, segregating, and classifying workers based on their sex and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in female and other non-male workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.  In addition, this practice has the effect of depriving all workers of a diverse work environment regardless of their own sex.

## AGE DISCRIMINATION

31.    Ms. Bradley, Ms. Hudson, and CWA's members have routinely been denied the opportunity to receive employment advertisements and recruitment on Facebook from the Company that similarly situated Facebook users who are younger than 40-years-old have received.  If Ms. Bradley, Ms. Hudson, and/or CWA's members had received such ads, they would have clicked on those employment ads in order to learn more about those opportunities and pursue them.

32.    Ms. Bradley, Ms. Hudson, and CWA file this charge on behalf of themselves and all Facebook users in the United States who are 40-years-old or older who are or were interested in receiving employment-related advertisements or recruiting from employers or employment agencies via Facebook's ad platform and were or are currently being excluded from receiving employment-related advertisements because the Company placed an upper age limit on the population of Facebook users that was eligible to receive an employment-related advertisement, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge ("Plaintiff Age Class Members").

33.    The ADEA and analogous state and local statutes that prohibit age discrimination in employment advertising, recruitment, and hiring make it unlawful for an employer or employment agency "to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer . . . or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification, or discrimination, based on age."  29 U.S.C. § 623(e).

34.    The ADEA and analogous state and local statutes make it unlawful for an employer or an employment agency to: fail or refuse to hire any individual because of such individual's age; limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age; or fail or refuse to refer for

employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.  *See* 29 U.S.C. § 623(a), (b).

35.   The Company is an employer and employment agency pursuant to 29 U.S.C. § 630(b), (c) and analogous state and local anti-discrimination laws, because it is engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and it regularly undertakes with or without compensation to procure employees for an employer.

36.   Ms. Bradley, Ms. Hudson, and CWA's members, are employees within the meaning of all applicable state and local laws prohibiting age discrimination in employment advertising, recruitment, and hiring, because they are seeking employment from an employer or employment agency or an agent of an employer or employment agency.

37.   When advertising employment via Facebook's advertising platform, the Company has intentionally targeted employment ads towards younger prospective job applicants on the Facebook advertising platform and simultaneously excluded older workers from receiving the same employment advertising and recruiting that is directed to younger workers.

38.   The Company has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by excluding older workers from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform.

39.   When the Company has sent advertisements on Facebook to prospective applicants, the notice that states "Why am I seeing this ad?" has stated that the Company wants to reach people who are below a certain age threshold.  This statement is evidence that the Company *in fact* requested the illegal steering, and that Facebook *in fact* executed the illegal steering.

40.   The notice informs the reader of the advertisement and the public at large that the Company has a preference for younger applicants rather than older applicants in recruiting and hiring and that the Company is limiting job opportunities to younger applicants and drawing a distinction between younger and older applicants in the advertising, recruiting, and hiring of employees.  In addition, by excluding older Facebook users from receiving the advertisements and recruiting, the Company's ad campaign indicates a preference, discrimination, or limitation based on age.

41.   The pattern or practice of discrimination based on age challenged by the Charging Parties herein is undertaken with the intent and purpose of discouraging and preventing older workers from applying for jobs advertised by the Company based on their age, and with the intent of failing or refusing to hire older workers who are excluded from receiving such employment ads based on their age.

42.   This pattern or practice of discrimination constitutes intentional discrimination and disparate treatment under the ADEA and analogous state and local anti-

discrimination laws.  It treats older workers who are 40-years-old or older worse than younger workers who are under 40-years-old in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because the Company excludes older Facebook users from receiving the same employment advertisements that younger users receive.  In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age, segregated from younger workers who receive ads that older workers do not receive, and excluded from receiving advertising, recruitment, and hiring opportunities that younger workers receive from the Company.

43. The practice also constitutes unlawful age-based stereotyping, because in excluding older Facebook users from receiving advertising, recruiting, and hiring the Company is motivated by and acting upon a harmful stereotype that older workers are not or will not be interested in or qualified for the relevant job opportunities because of their age.

44. In addition to constituting intentional discrimination, the pattern or practice of discrimination challenged in this charge constitutes unlawful disparate impact discrimination.  Excluding older Facebook users from the population of individuals to whom the Company directs its employment advertisements and recruiting on Facebook's ad platform has the effect of disproportionately excluding potential job applicants who are 40-years-old or older from receiving employment advertising, recruiting, and hiring opportunities based on their age.

45. Excluding older Facebook users from receiving the same employment advertisements that are provided to younger users causes and has a disproportionate adverse effect on the employment advertising and recruitment opportunities that older workers receive and their opportunities to be hired.  This pattern or practice has the effect of limiting, segregating, and classifying older workers and depriving them of employment opportunities because it places prospective applicants into groups that will and will not be targeted for advertising and recruitment opportunities in a manner that results in older workers disproportionately being in the group of prospective applicants who will not receive advertising or recruiting.  In addition, this practice has the effect of depriving all workers of an age-diverse work environment regardless of their age.

## CLASS CLAIMS

46. This class charge is meant to exhaust all class-based disparate treatment, class-based disparate impact, and all other class-based claims that are actionable under Title VII and the ADEA, and analogous state and local laws, including violations of publication or advertising provisions of such laws.  The charging parties file this charge on behalf of all individuals nationwide who have been excluded from receiving the Company's employment advertisements via Facebook's advertising platform based on their sex or gender and/or age at any time from the earliest date actionable under the limitations period applicable to the given claim until the date

of judgment in any judicial proceeding initiated by the Charging Parties herein in relation to the claims asserted in this charge.

47. Through this charge and legal action, Ms. Spees, Ms. Bradley, Ms. Hudson, and all others similarly situated, along with CWA and its female and other non-male members, seek all injunctive, equitable, legal, monetary, punitive, and/or other forms of relief or damages that are available under Title VII and the ADEA and the state and local statutes identified above.

48. Ms. Spees, Ms. Bradley, Ms. Hudson, and CWA request that the EEOC investigate all of the claims made in this charge on a class-wide basis.

49. This charge is intended to toll the statute of limitations for all potential applicants or employees nationwide who may have similar claims and to piggy-back on any prior charges that Ms. Bradley, Ms. Hudson, CWA, or other individuals have filed challenging the same practices by the Company.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Direct Dial: (202) 419-0713
FAX (202) 419-0740
Website: www.eeoc.gov

Charge Number: 570-2018-03524

Ms. Linda Bradley                                      Charging Party

████████████

Sandhills Publishing Company                           Respondent
120 W. Harvest Drive
Lincoln, Nebraska 68521

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination as to the merits of the subject charge. All requirements for coverage have been met.

Charging Party filed a charge of discrimination alleging that Respondent violated Title VII of the Civil Rights Act (Title VII), as amended, on the basis of sex (female) and the Age Discrimination in Employment Act (ADEA), as amended, when it advertised on Facebook for a position with its company and used language which limited the sex and age of individuals who could apply.

Respondent denies that it violated Title VII and the ADEA.

Evidence gathered during the investigation established that between January 2, 2018 and May 30, 2018 Respondent advertised on Facebook, with national exposure, and when doing so it used language to limit the sex and age of individuals who were able to view the advertisement.

Based upon the foregoing, I find reasonable cause to believe that Respondent violated Title VII and the ADEA by advertising on a social media platform and limiting the audience for their advertisement to male and younger applicants.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court

enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

JUL 0 3 2019

Date

F0

Mindy E. Weinstein
Acting Director


cc:     Peter Romer Friedman, Charging Party's Representative
        Outten & Golden
        601 Massachusetts Avenue, NW Second Floor West Suite
        Washington, DC 20001


cc:     Alex Essay, Respondent's Representative
        Sandhills Publishing Company
        120 W. Harvest Dr.
        Lincoln, NE 68521